# Exhibit 1

Case: 3:25-cv-00170-wmc     Document #: 95-1     Filed: 03/26/25     Page 1 of 13

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO JOIN NECESSARY PARTIES AND INDISPENSIBLE PARTIES, AND MOTION TO DISMISS OR STAY PENDING A PARALLEL SUBSTANTIVE ACTION

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

PARAGON COMPONENT SYSTEMS, LLC,

          Plaintiffs,

                                            Case No.: 3:25-cv-00170-wmc

QUALTIM INC., CENTER FOR BUILDING
INNOVATION LLC, DRJ ENGINEERING LLC,
INSPIRED PURSUITS LLC, KIRK GRUNDAHL,
AND SUZANNE GRUNDAHL

          Defendants.

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO JOIN NECESSARY AND INDISPENSIBLE PARTIES, AND MOTION TO DISMISS OR STAY PENDING A PARALLEL SUBSTANTIVE ACTION

Defendants submit this memorandum in support of their Motion to Dismiss for Failure to Join Necessary and Indispensable Parties, pursuant to Fed. Rule Civ. Pro. 12(b)7. Additionally, in light of procedural events, Defendants move this court to dismiss or stay this case pending a parallel substantive action.

### I. PROCEDURAL POSTURE

This case was transferred from the Eastern District of Tennessee due to lack of personal jurisdiction and improper venue. Outstanding issues remain undecided and among them is Defendants' Motion to Dismiss for Failure to Join Necessary and Indispensable Parties. (Doc. 73, p. 14). Defendants now submit this memorandum applying Seventh Circuit District law.

A state court action was also filed by present Defendants against Paragon and fourteen other defendants, with identical and related interests to the subject matter at issue here.[1] The state court case was removed to this Court and a motion to remand is pending. Because that substantive action is parallel to this case, Defendants move this court to apply the discretionary standard extended in *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995), stating that where another suit involving the same parties, and presenting the opportunity to address similar issues, the declaratory judgment case should be dismissed or stayed. Furthermore, this case for declaratory relief has ripened into a full substantive action, thus, a claim for declaratory judgment serves no "useful purpose" and should be dismissed. *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1065 (N.D. Ill. 2013), aff'd, 791 F.3d 729 (7th Cir. 2015).

## II.  THE INTELLECTUAL PROPERTY AT ISSUE

As early as 1999, more formally in 2009, and up to Dan Holland's untimely death on January 17, 2024, Dan, Kirk and Suzi collaborated continuously. The common bond was their passion for and deep knowledge of the structural building components and engineered framing industries, and their individual expertise was well-known within the industry. (Doc. 50-1 Kirk Dec. I, ¶¶ 12, 16-18; Doc. 50-3 Kirk Dec. II, ¶¶ 10, 48, 49, and Doc. 50-4 Suzi Dec., ¶¶ 18-20). One key attribute of this close and confidential collaboration was the development and protection of structural component engineering, manufacturing and software trade secrets. *Id.* This highly confidential collaboration was intended to create unique intellectual property, held by Inspired Pursuits, LLC ("IP-LLC"). *Id.* IP-LLC, which would be used by DrJ Engineering ("DrJ") to produce the copyrighted engineered design drawings for Clearspan Components, Inc. ("Clearspan") manufactured structural building components and engineered framing. (Doc. 50-1 Kirk Dec. I, ¶¶

---

[1] *See Inspired Pursuits, LLC, et al., v. Paragon Component Systems, LLC, et al.,* Case No. 3:25-cv-0075-wmc in the U.S. District Court for the Western District of Wisconsin.

12, 16-18). This was the basis for the creation of IP-LLC. *Id.* It was formed to serve as the holding company for all intellectual property that the Grundahls and Holland developed, as memorialized in various meetings held in Wisconsin (Doc. 50-1, Kirk Dec. I, ¶¶ 12, 16-18 and Doc. 50-3 Kirk Dec. II, ¶¶ 20, 21, 34, 46-49).

Paragon Component Systems, LLC ("Paragon") claims sole ownership of the software and the intellectual property (collectively "Developed IP") used to develop that software. Paragon also argues that there is no connection between Paragon and IP-LLC (Compl. ¶ 5). However, Paragon contradicts itself in the same paragraph because it also states that Dan Holland, who founded Paragon, is also an owner of Defendant IP-LLC. Therefore, Paragon's claims are erroneous, as a clear and strong connection between Paragon and Defendants exists. *Id.* Dan and Kirk's vision, knowledge, and experience together were the foundation upon which all the engineering, truss design techniques, mathematical implementation, engineering mechanics methodology, applied loading conditions and deployment of the software at issue was built upon (Doc. 50-1, Kirk Dec. I, ¶¶ 12, 16-18 with Doc. 50-2 Kirk Dec. II, ¶¶ 10, 21, 40, 48, 49, Suzi Dec., ¶¶ 18-20).

Paragon was created to be a math/data processing, and software company whose mission was to automate metal plated connected wood trusses, wall panels, and all related structural component manufacturing and engineering, while utilizing the component and manufacturing trade secrets and intellectual property of IP-LLC. (Compl., ¶ 21, Doc. 50-1 Kirk Dec. I, ¶¶ 12, 14-18; Doc. 50-3 Kirk Dec. II, ¶¶ 10, 21, 40, 48, 49; Doc. 50-4 Suzi Dec., ¶¶ 18-20).

DrJ was the necessary professional engineering firm providing direct supervision of all engineering related decision making because Paragon and its DBA, Truss Pal, stipulate on their websites that they are not engineering companies. (Doc. 50-6). Furthermore, Paragon had and has a paucity of truss industry knowledge on staff and no professional engineers with any metal plate

connected wood truss testing and engineering expertise. (Doc. 50-1 Kirk Dec. I, ¶¶ 15-17; Doc. 50-3 Kirk Dec. II, ¶¶ 10, 22, 34, 35, 40, 48, 49).

Clearspan is primarily a metal plated connected wood truss and wall panel manufacturing company, whose manufacturing expertise was to be extended to other product lines. This expertise is including but not limited to, new and innovative products such as sheathing stud, fast truss, finger joints, safety rail and software to improve manufacturing efficiency and quality control. This list touches on only a fraction of IP-LLC's trade secret products developed or being developed. (Comp. ¶ 2, Doc. 50-1,Kirk Dec. I, ¶¶ 12, 14-17 with Doc. 50-3 Kirk Dec. II, ¶¶ 48, 49). Clearspan is not an engineering company, yet it sold engineering products because the partnership between DrJ and Clearspan was well understood by Dan and Kirk to be essential to achieve the IP-LLC vision and mission. (Doc. 50-1 Kirk Dec. I, ¶¶ 12, 14-18, Doc. 50-3 Kirk Dec. II, ¶¶ 10, 20, 21, 34, 46-49, and Doc. 50-4 Suzi Dec., ¶¶ 18-20).

To encapsulate the key facts about Kirk and Dan's unique partnership: Qualtim, CBI, and DrJ are under the leadership of Kirk, who is a professional engineer licensed in 47 states. (Doc. 50-3 Kirk Dec. II, ¶¶ 3, 10, 27, 35, 36, 48, 49). Dan was a mechanical engineer and owned Clearspan, a manufacturing company, and Paragon, a software company. (Compl., ¶ 21. Doc. 50-1 Kirk Dec. I, ¶¶ 12, 14-18, Doc. 50-3 Kirk Dec. II, ¶¶ 10, 20, 21, 34, 46-49, Doc. 50-4 Suzi Dec., ¶¶ 18-20).

Thus, a trifecta of trade secret innovation via the combination of professional engineering, engineered product manufacturing, and a math/data processing software, resulted in intellectual property creation held within IP-LLC for use by DrJ and Clearspan for structural component industry competitive advantage. (Doc. 50-1 Kirk Dec. I, ¶¶ 12, 14-18, Doc. 50-3 Kirk Dec. II, ¶¶ 48, 49, Doc. 50-4 Suzi Dec., ¶¶ 18-20).

DrJ's engineering and Clearspan's manufacturing were the market implementation team for IP-LLC-owned trade secrets and intellectual property, where Paragon was merely a data processing tool needed to streamline DrJ's and CBI's work to generate engineered product sales. (Compl. ¶ 2, Doc. 50-1 Kirk Dec. I, ¶¶ 12, 14-18, Doc. 50-3 Kirk Dec. II, ¶¶ 21, 34-36, 40, 46-49, and Doc. 50-4 Suzi Dec., ¶¶ 18-20).

### III. THIS CASE SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(7) AS IT FAILS TO JOIN NECESSARY AND INDISPENSABLE PARTIES UNDER RULE 19

From the early stages of developing Paragon, fingerprints of the partnership between Defendants, Clearspan, and Dan Holland are evident in the vision, invoices, meeting agendas, and other documents (Docs 50-1 through 50.5, Doc. 1-10 p. 10-13). Rule 19 protects interested parties and avoids waste of judicial resources. *Moore v. Ashland Oil, Inc.,* 901 F.2d 1445, 1447 (7th Cir. 1990). Rule 19(a) provides for joinder of absent parties that will not deprive the court of jurisdiction, while Rule 19(b) provides for absent parties that would not be feasible and sets forth four factors in determining whether an action must be dismissed. *Id.*

#### A. Clearspan Has a Legally Protected Interest in the Subject Matter of This Action and Should be Joined as a Necessary Party

According to the two-step inquiry under the Rule 19, the analysis starts with defining the necessary parties to be all persons whose joinder would be desirable for just adjudication. *Burger King Corp. v. Am. Nat. Bank and Tr. Co. of Chicago*, 119 F.R.D. 672, 675 (N.D. Ill. 1988), citing 7 *Wright, Miller & Kane, Federal Practice and Procedure: Civil* § 1604 at 36–37. In this case, Clearspan is a Mississippi Corporation and will not deprive this court of subject-matter jurisdiction. The analysis now turns as to whether there would be just adjudication in the absence of Clearspan.

Clearspan participated in the pre-conception stage of Paragon as evidenced by the leadership of Dan Holland. The invoices between Defendant Qualtim and Clearspan dating back to 2009, and meetings between Clearspan and Qualtim until the day before Dan Holland died, support that Clearspan has more than a financial interest, but a legally protected ownership interest. (Doc. 1-10 p. 10, 13). Clearspan's current president, Rob Eason, submitted an affidavit foregoing their interest in this litigation. (Doc. 51-20). But the inquiry should not stop there. The court in *Burger King v. Am. Nat. Bank,* looked at other considerations beyond the absent party's declaration, such as their relationship with existing parties. *Burger King v. Am Nat Bank* at 679.

Mr. Eason's declaration may be compelled by other considerations such as his status vis-à-vis the Holland family. For example, Dan Holland's firstborn son, James Holland works at Clearspan. (Doc. 84-2 Dec. James Holland, ¶ 1). Should Paragon prevail in this case, there would be no further dispute, because Dan Holland's second son, John Holland, is the current president of Paragon. (Doc. 51-1 Dec. of J. Holland, ¶ 1). In contrast, if any of the Defendants prevail, shareholders or other officers would have standing for a derivative suit against Mr. Eason for non-action, or against the prevailing Defendant for Clearspan's share of the partnership. There would be a substantial risk for the Defendants to incur double, multiple, or otherwise inconsistent obligations. Therefore, regardless of Mr. Eason's failure to intervene in this lawsuit, it is not relevant to Clearspan's status under Rule 19(a).

Paragon could argue that Clearspan's interest is sufficiently represented by Paragon especially since James Holland and John Holland are siblings. Joinder is not required if the absent party's interest is fully represented. *Burger King* at 678. However, the court here can take judicial notice that individuals, regardless of their interest in their company, are separate persons from the business entity itself. Clearspan has been partnering with Qualtim since 2009, while Paragon wasn't created until 2016. Although Dan Holland was the president of Clearspan and the founder of Paragon, they

are different business entities. Their interests may be similar, but they are not identical and shouldn't be considered as such. In the Seventh Circuit, merely similar interest will not do; there must be an identical interest. *Id.* Hence, Clearspan is a necessary party and must be joined in this case.

### B. Estate of Daniel Holland ("Estate") Does Not Meet the Requirements of Rule 19(A), so This Case Should be Dismissed Based on the Four Factor Test

The initial requirement of Rule 19(a) is that the absent party to be joined cannot deprive the court of subject-matter jurisdiction, which is derived from either a case of federal question or complete diversity between opposing parties. 28 U.S.C. § 1331 and § 1332.

Subject-matter jurisdiction was brought forth as a federal law question under the Declaratory Judgment Act 28 U.S.C. §§ 2201 and 2202 that would be based on Copyright, Patent, and Trademark statutes, as well as Federal Trade Secrets Act 18 U.S.C. § 1836. (Complaint ¶ 16). Paragon then filed for relief from filing with the Copyright office for two main reasons: a) there is no copyright infringement claim, and 2) this is a trade-secreted software. (Doc. 7 p.2, 3). This action contradicts Paragon's initial Complaint and further supports that the trade secrets at issue here are not preempted by federal law due to the confidential and contractual relationship between the parties. *See generally IP-LLC et al v. Paragon et al,* Case no. 25-CV-0075, *Motion to Remand.* The issue raised here is the ownership of a "trade secret that is kept confidential" (Doc. 7, 3). Trade secrets between confidential and contractual parties are regulated by state law, which is the reason the substantive case was filed in Dane County Circuit Court.[2] But even if this case remains in this federal court, the federal question under the Declaratory Judgment Act has fully ripened to a substantive suit so this case should be dismissed. Further analysis of the ripened dispute will be discussed in Part IV or this memorandum.

---

[2] *See Inspired Pursuits, et al v. Paragon Components, et al,* Case No. 25-CV-36, Dane County Circuit Court.

The analysis now turns to the diversity source of subject matter jurisdiction under 28 U.S.C. § 1332. Joinder will not be feasible if the Estate is joined as a plaintiff or involuntary plaintiff pursuant to Rule 19(2), because the joinder would deprive this court of subject matter jurisdiction based on diversity. The Estate is a party to a contract with Defendants but also has a membership interest in Defendant IP-LLC. Dan Holland was a founding member of IP-LLC along with Kirk Grundahl and Suzi Grundahl. At the founding of IP-LLC, Dan Holland held 50% interest while Kirk and Suzi each individually held 25% (Doc. 50-5 IP-LLC Operating Agreement, p. 2 ¶ IV., Sec. 1). Upon the death of Dan Holland, the Estate holds an interest in IP-LLC as an assignee pursuant to Wis. Stat. § 183.06. Therefore, even if the court applies Section 1332(c)(2) stating that the legal representative of a decedent shall be deemed to be a citizen only of the same state as the decedent, there would not be complete diversity between the parties.

Now, regarding Mr. Marvin Speed's affidavit foregoing the Estate's interest in this litigation (Doc. 51-19). This affidavit does not absolve the Estate from being a necessary party to this case because it holds a legally protected interest relating to the subject matter of the action. Rule 19(b) provides that when a Joinder is not feasible, the court considers four factors to determine whether, in equity and good conscience, the action should proceed or be dismissed. These factors are: 1) the extent to which a judgment entered in the absence of a party will be prejudicial to those currently before the court; 2) the extent to which such prejudice can be lessened or avoided by reshaping the judgment; 3) whether a judgment entered in a party's absence will be adequate; and 4) whether the plaintiff will have an adequate remedy if the action is dismissed.

There is sufficient evidence to conclude the partnership between Dan, Kirk and Suzi. (Doc. 1-10, p. 10-13, vision of Dan, Kirk, Suzi with implementation underway and Doc. 50-5 Operating Agreement between Dan, Kirk, and Suzi). An absent party has a legally protected interest

if he is a party to a contract. *Burger King v. Am Bank* at 675. Rule 19(a) and the first factor overlap, leaning towards dismissal of this case.

As to the second factor, the court could render protective provisions in the judgment preventing the Estate from further action against any of the Defendants, but that would not fully protect the Estate from being sued by the Estate's beneficiaries for inaction. There would still be further need to utilize court resources to settle that dispute.

The third factor relates to the alignment of interest between absent and present parties; whether a judgment would be adequate for the absent party. Similar to Mr. Eason, the Estate submitted a declaration forgoing interest in this litigation. (Doc. 51-19). But this declaration should be viewed in light of the Estate's status with Paragon, *Burger King* at 679. Paragon's President is John Holland, Dan Holland's son. (Doc. 51-1). Should Paragon prevail, it is likely adequate for the Estate. However, should Defendants prevail in this case, the judgment would be inadequate for the Estate as it was not able to protect its legal interest.

Finally, the fourth factor weighs in favor of dismissal because of the substantive suit also currently pending in this court, *See* IP-LLC *et al* v. Paragon *et al*, case no. 25-cv-75. The substantive suit has all necessary and indispensable parties joined including Clearspan and the Estate. The ownership issue here will be addressed in that substantive action. Consequently, in equity and good conscience, this action should be dismissed.

## IV. DISTRICT COURTS POSSESS DISCRETION TO DISMISS OR STAY A CASE FOR A DECLARATORY JUDGMENT IF THE DISPUTE HAS RIPENED INTO A SUBSTANTIVE ACTION

Declaratory Judgments contemplate whether the controversy has ripened to where one of the parties can invoke a lawsuit for remedy but has not done so, and if it hasn't, it would be unfair or inefficient to require the parties to wait for a decision. *Eli's Chicago Finest, Inc. v. Cheesecake Factory, Inc.*, 23 F. Supp. 2d 906, 907-908 (N.D. Ill. 1998), citing *Tempco*, 819 F. 2d at 749.

In *Eli v. Cheesecake*, the plaintiffs filed an anticipatory case after ceasing communications with Defendants, which is similar in this case. At the time this case was filed, Paragon and Defendants were engaging in confidential communications to address ownership disputes. (Compl. ¶ 8). The negotiations attempting to work through the dispute were conducted through email exchanges between Defendants and Paragon's counsel. (Doc. 1-8 through 1-17). Amidst the communication, Paragon filed this anticipatory action to avail themselves in the venue of their choosing.

Paragon did not file this action because they were not certain of their rights (they were in fact very sure, as they wanted declare themselves as the sole owner of the intellectual property at issue). They filed this lawsuit in order to avail themselves of the "first in time" rule. In fact, just like the plaintiff in *Eli*, the plaintiffs here were not unfairly deprived of an opportunity to adjudicate their rights. *Eli v. Cheesecake* at 908. In fact, Paragon has continued to operate unrestricted and unchecked in their software promotion to the public, which is contradictory to their claim that the software is a "trade-secreted software that was kept confidential." (Doc. 7 p. 2).

The intent of the Declaratory Judgment Act is to avoid accrual of avoidable damages to one not certain of his rights. *See Med. Assur. Co. v. Hellman,* 610 F.3d 371, 377 (7th Cir. 2010) *citing Edelmann & Co. v. Triple–A Specialty Co.,* 88 F.2d 852, 854 (7th Cir.1937). By Paragon severing a longstanding partnership without any notice, violating a nondisclosure agreement, and unilaterally restricting Defendants' access to the software Defendants created and developed, Defendants here suffered actual and accruing damages, the very type of damage declaratory actions were created to prevent. (Doc. 1-11 p. 1. *See also Inspired Pursuits LLC et al v. Paragon et al,* Case no. 25-cv-00075, Complaint).

At the time Paragon filed this suit, Defendants were already sustaining damages and were in a position to commence a civil suit including breach of contract and misappropriation of trade secrets, just like the defendants in the *Eli* case. The dispute has already ripened to a substantive suit.

Federal courts should adjudicate claims considering the practicality of a declaratory judgment. *Med. Assur. V. Hellman* at 378, citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995) and *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995). Although the inquiry does not stop when there is a parallel proceeding, the court is given the discretion to determine if the parallel proceeding is adequate. *Med. Assur. V. Hellman* at 379. The court may exercise discretion to dismiss or stay the declaratory judgment case if the parallel action contains the claims of all the parties, whether necessary parties have been joined, and whether such parties are amenable to process in that proceeding. *Wilton v. Seven Falls* at 283. Although Paragon is not likely to agree to dismiss this case for full adjudication in the parallel case, the Court here has discretion to do so. The parallel action here was initially filed in state court and pending a remand addresses the ownership and possessory interest at issue, as well as including all necessary and indispensable parties. In sum, Defendants respectfully move this court to dismiss or stay this declaratory judgment case.

## V.     CONCLUSION

Paragon wants to convince this court that the business mission and legacy Dan Holland intended was for Paragon to stand alone as a proprietary software. However, flipping through the stacks of evidence shows that as far back as 2009, Dan spoke for Clearspan, Dan spoke for Paragon, and Dan spoke for IP-LLC alongside Kirk and Suzi. Innovation through collaboration and teamwork were the actions that Dan was taking to grow IP-LLC's collective intellectual property, where the mission was to foster material benefits inuring to each of the companies where he was a fiduciary.

This Declaratory Judgment falls short of that by asking this court to decide that software at issue is solely owned by Paragon. Defendants respectfully request this court to dismiss, or alternatively stay this action, for two main reasons: 1) failure to join the proper parties, and 2) because

the underlying substantive suit will address the ownership and possessory interest that is at issue here.

Respectfully submitted,

*/s/Mayville La Rosa*
Mayville La Rosa, WI Bar #1119613
6300 Enterprise Ln.
Madison, WI 53719
Phone: (608) 800-7353
mlarosa@kfinnovations.com
*Attorney for Defendants*