IN THE UNITED STATED DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PARAGON COMPONENT SYSTEMS,
LLC,

    Plaintiff,

V.

QUALTIM, INC., CENTER FOR BUILDING
INNOVATION, LLC,
DRJ ENGINEERING, LLC, INSPIRED
PURSUITS, LLC, KIRK GRUNDAHL, and
SUZANNE GRUNDAHL,

    Defendants.

Case No. 3:25-cv-00170-wmc

## PLAINTIFF'S MOTION TO COMPEL

Plaintiff Paragon Component Systems, LLC ("Paragon"), by and through counsel and pursuant to Fed. R. Civ. P. 37, respectfully moves this Court to compel all Defendants to: (i) identify all intellectual property, including trade secrets, that any Defendant claims to have contributed to Paragon's Software as a basis for asserting ownership or authorship of Paragon's Software as Paragon's Interrogatory No. 5 requests; and (ii) provide substantive responses to Paragon's second sets of Interrogatories, Requests for Admission, and Requests for Production.

The parties have met and conferred on these discovery issues in good faith, including via video conference and email, and have reached an impasse. Declaration of Erin Steelman ¶ 2 (August 6, 2025).

    I.    **BACKGROUND**

Paragon is a software company that has developed and commercializes truss design software ("Paragon Software"). This declaratory judgment action stems from Defendants' ownership claim to the Paragon Software, essentially laying claim to the entirety of Paragon's

1

business. Defendants stake this claim, in part, on allegations that the Paragon Software contains Defendants' unspecified trade secrets. On July 23, 2024, Paragon filed its Declaratory Judgment Complaint to establish sole ownership of the Paragon Software. On December 3, 2024, Paragon served its First Set of Interrogatories to Defendants, including Interrogatory No. 5, asking Defendants to identify all alleged trade secrets that any Defendant claims it contributed to the Paragon Software. Paragon needs this information to understand the basis for, and assess the validity of, Defendants' ownership claim, as well as to identify the scope of relevant documents and thus tailor its discovery to the actual issues in this case.

Paragon raised this issue in two notice letters to Defendants on April 22, 2025, and June 23, 2025, in a good-faith effort to resolve these deficiencies without the Court's intervention. <u>Exhibit A</u> (Letter dated April 22, 2025); <u>Exhibit B</u> (Letter dated June 23, 2025). After meeting with Defendants' counsel on July 10, 2025, it was clear the parties have reached an impasse on this issue. <u>Exhibit C</u> (Email dated July 11, 2025).

On December 13, 2024, Paragon served its Second Sets of Interrogatories, Requests for Admission, and Requests for Production on Defendants. These requests sought information related to emails that Defendant Kirk Grundahl sent to others in the truss industry (including Paragon's employees) commenting on this litigation and related issues (Docs. 53-2 through 53-4). Defendants take the position that no substantive responses are required now because Mr. Grundahl's emails are the basis for Paragon's proposed tortious interference claim, which is the subject of Paragon's pending Motion to File a First Supplemental or Amended Complaint (Docs. 52-53). Paragon disagrees because the information sought is relevant to the original case as filed, and the fact-discovery clock continues to run.

## II.     LEGAL STANDARDS

Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any unprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden or response of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 37 allows a party to move for an order compelling disclosure or discovery if a party fails to answer an interrogatory submitted under Rule 33. *See* Fed. R. Civ. P. 37(a)(1), (a)(3)(B)(iii). Further, and germane to this motion, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

Motions to compel discovery are subject to the broad discretion of the district court. *See Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646-47 (7th Cir. 2001). In ruling on motions to compel discovery, courts consider "the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Dauska v. Green Bay Packaging Inc.*, 291 F.R.D. 251, 258 (E.D. Wis. 2013) (internal citation omitted). Motions to compel are warranted and routinely granted where a party fails to identify a trade secret with sufficient specificity in response to an interrogatory. *See, e.g., Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 2013 WL 1332171, at *1 (N.D. Ind. Mar. 29, 2013) (granting motion to compel interrogatory response to "identify all trade secretes" and "state exactly what the trade secret is"); *Switch Commc'ns Grp. v. Ballard*, 2012 WL 2342929, at *5 (D. Nev. June 19,

2012) (granting motion to compel where an interrogatory response "falls short of describing its alleged trade secrets with reasonable particularity").

### III. ARGUMENT

#### A. Defendants Should Be Compelled to Fully Answer Paragon's Interrogatory No. 5

Defendants contend they own all of Paragon's Software, which is the basis for this declaratory judgment action. As best understood, Defendants make this claim because of an alleged oral agreement between Kirk Grundahl, Suzi Grundahl, and Dan Holland before Mr. Holland unexpectedly passed or, alternatively, based on technical consulting services that Defendants provided to Paragon (and for which they were handsomely paid) as Paragon was developing its software. Paragon's Interrogatory No. 5 is directed to Defendants' consulting services theory and simply asks the Defendants to identify their own intellectual property, including trade secrets, forming the basis of their ownership contentions:

> Interrogatory No. 5: ***Identify with specificity the intellectual property, including trade secrets, that any Defendant claims to have contributed to the Paragon Truss Software*** or Paragon Truss Marks, including the identity of each individual who made any such contribution by or on behalf of a Defendant, a detailed description of the specific contribution, when the contribution was made, who at Paragon received the contribution, and why the contribution was made.

Exhibit D at p. 3 (Paragon's First Set of Interrogatories to Defendants).

Defendants responded to this interrogatory multiple times, each time insisting they need access to all of Paragon's internal documents and files relating to their consulting services for Paragon before they will answer Interrogatory No. 5. Specifically, Defendants responded in relevant part: "***Defendants will need access to the information within Paragon's control to answer this interrogatory***" Exhibit E at p. 4 (Defendants' Responses to Paragon's First Set of Interrogatories); "***Defendants submitted a request for production of all meetings between Paragon and Defendants so as to specify the trade secrets that were used to determine the***

4

*language and instructions of the source code*" Exhibit F at p. 4 (Defendants' Supplemental Answer to Paragon's First Set of Interrogatories); "*Our response to Interrogatory No. 5 remains that ALL engineering decisions in the software were contributed by one or more of the Defendants. Further details will be provided once you respond to our First Request for Production of Documents*" Exhibit G at p. 1 (Email dated June 30, 2025); and *"Defendants do not have sufficient information to comply with this interrogatory*" Exhibit H at p. 4 (Letter dated July 31, 2025).[1]

Thus, the crux of this discovery dispute is that Defendants take the position that first Paragon must give them all of Paragon's business documents relating to Defendants' consulting work on the Paragon Software, then Defendants will find some trade secrets they can contend provide the basis for their existing ownership claims to the software. This is simply not the law and places an unreasonable discovery burden (and cost) on Paragon to provide copious internal documents for Defendants to scour to manufacture a trade-secret theory supporting the ownership claims they have been making for years. As discussed below, this litigation tactic is impermissible.

     i.    Defendants' Intended Reliance on Discovery to Respond to Interrogatory No. 5 Constitutes an Impermissible Fishing Expedition.

A trade secret owner may not use discovery to identify its own trade secret. *See AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001) ("Consequently, 'plaintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets.' . . . **It is not enough to claim that defendants will be**

---

[1] Exhibits E-H contain Defendants' complete responses to Interrogatory No. 5, including their objections. Notably, Defendants have not verified any of their responses (in violation of Rule 33), and improperly served several interrogatory responses in informal emails. Paragon therefore respectfully requests that this Court also order Defendants to re-serve these responses signed by an attorney and properly verified. Paragon has made this request multiple times to no avail.

5

***able to learn the details [of its own trade secret] through discovery. Plaintiff must provide them now*** so we can evaluate the relevance of plaintiff's discovery and address any objections" (quoting *Engelhard Corp. v. Savin Corp.,* 505 A.2d 30, 33 (Del. Ch. 1986) (emphasis added)). In *AutoMed*, a protective order was granted to prevent a plaintiff trade secret owner from compelling discovery of the opposing party's confidential information. The court held "***[w]e will not permit plaintiff to go on a fishing expedition through [defendant's] files. Plaintiff must articulate what specific [trade secret] information they believe defendants have misappropriated, so we can assess whether its requests are reasonably tailored to discover relevant evidence***." *Id*. at 926.

Here, a fishing expedition through Paragon's confidential internal files is precisely what Defendants demand before they will identify their own trade secrets allegedly provided to Paragon and incorporated into the Paragon Software. It appears from Defendants' discovery responses that they intend to use discovery to search for justification for their overly broad trade-secret assertion. For instance, one of Defendants' supplemental responses states:

> "[t]he conversations in platforms identified above between Paragon and Defendants will detail the discussions as to the engineering and testing data provided. . . Defendants submitted a request for production of all meetings between Paragon and Defendants so as to specify the trade secrets that were used to determine the language and instructions of the source code . . . Once Defendants provide the native files of the meetings that involved these individuals, Defendants will identify with specificity the intellectual property it provided."[2] *See* Exhibit F at p. 4.

This is an inappropriate use of discovery. Defendants cannot fish through Paragon's confidential business files to post-facto manufacture a justification for their software ownership claims. For months, Defendants have claimed their contributed "trade secrets" were incorporated in the

---

[2] Contrary to Defendants' suggestion, Paragon has already produced over 50 of the requested native Slack files and continues to work with Defendants to provide responsive native files. However, the scope of relevant Slack files to be produced will depend on the specific trade secrets Defendants are relying upon, which is the purpose of this motion to compel a full response to Interrogatory No. 5. Paragon does not agree that it must produce all of its native Slack files (as Defendants seem to demand), where most are not relevant to the issues in this case.

Paragon Software and give them an ownership interest. But now that Paragon is pushing Defendants to substantiate their claims, Defendants suddenly contend discovery is needed to identify the "trade secrets" they have claimed all along. This is improper and appears to be an excuse to rummage through all of Paragon's internal, confidential business documents and files. Defendants should be compelled to identify precisely *what* trade secrets they are referring to so that discovery can be limited to the documents and files that would be relevant to any specific alleged trade secrets in this case. Paragon is entitled to know the specific trade secrets that Defendants rely upon for their ongoing ownership claims to the Paragon Software, as such information is crucial for Paragon to prosecute its case.

      ii.    <u>Defendants' Responses to Interrogatory No. 5 Fail to Identify a Trade Secret and Are Therefore Deficient</u>

Paragon is entitled to the detailed descriptions of Defendants' alleged trade secrets requested in Interrogatory No. 5. A party asserting the existence of a trade secret has the burden to identify that trade secret. *See Kuryakyn Holdings, LLC v. Ciro, LLC*, 242 F. Supp. 3d 789, 798 (W.D. Wis. 2017) (holding a party seeking protection under the Wisconsin Uniform Trade Secret Act (UTSA) bears the burden of establishing the information at issue is actually a trade secret). Proprietary information cannot constitute a trade secret unless the trade secret owner makes reasonable efforts to specifically maintain the secrecy of the information. *See e.g.*, *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002) ("Trade secrets are a subset of all commercially valuable information."). ***Thus, a trade secret owner must know which of its own information it is actively protecting as a trade secret.***

Further, it is well established that a party alleging the existence of a trade secret "must define the allegedly misappropriated secrets with sufficient specificity." *Maxtech Consumer Prods., Ltd. v. Robert Bosch Tool Corp.*, 255 F. Supp. 3d 833, 853 (N.D. Ill. 2017). "This requires

7

identifying concrete secrets that the defendant allegedly misappropriated." *Id*. Broad blanket claims are insufficient to define a trade secret. *See e.g.*, *IDX*, 285 F.3d at 583 (rejecting allegation that "all information in or about its software is a trade secret"); *Kuryakyn Holdings,* 242 F. Supp. 3d at 798 (finding "generalized descriptions" are insufficient to establish the existence of a trade secret).

Here, Defendants' blanket response that they contributed "ALL engineering decisions" in the Paragon Software fails to identify any concrete trade secret, nor does it justify unlimited discovery into Paragon's files before Defendants will identify the trade secrets at issue. This is exactly the kind of overbroad assertion which the Seventh Circuit has found insufficient to establish a trade secret. *See, e.g.*, *IDX*, 285 F.3d at 583 (finding plaintiff assertion of a trade secret "has been both too vague and too inclusive, effectively asserting that all information in or about its software is a trade secret. That's not plausible—and, more to the point, such a broad assertion does not match up to the statutory definition"); *REXA, Inc. v. Chester*, 42 F.4th 652, 663 (7th Cir. 2022) (finding plaintiff's assertion of "2002 Designs" was too "vague and fails to sufficiently describe a concrete concept, as required for trade secret protection"); *NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, 2020 WL 2836778, at *14 (N.D. Ill. May 31, 2020) (holding plaintiff's broad assertion that "combinations" of modules and features was insufficient to assert a trade secret and "[plaintiff] has not identified the secrets that it seeks to protect with specificity").

The purpose of Interrogatory No. 5 is to put Paragon on notice of why Defendants assert co-ownership of the Paragon Software, and whether Defendants' ownership allegations depend on any specific information that Defendants believe they contributed to the Paragon Software. To even begin assessing the validity of Defendants' ownership claims, Paragon must know the specific trade secrets or other intellectual property that Defendants claim they contributed. Paragon needs this information to identify relevant documents for discovery.

Moreover, Defendants' objection that the requested trade secret information "is within Paragon's control" and "Defendants will need access to the information within Paragon's control to answer this interrogatory" is nonsensical and puts the cart before the horse. If Defendants contend they contributed "trade secrets," they must know what those secrets are. Paragon cannot locate and produce relevant documents concerning unidentified trade secrets and intellectual property allegedly belonging to *Defendants*. Paragon does not know what information Defendants actively protect and deem a "trade secret," and their vague descriptions provided so far are useless. It is improper for the Defendants to allege to have contributed trade secrets and other intellectual property giving rise to an ownership claim to the Paragon Software while simultaneously refusing to identify those trade secrets and intellectual property unless they can first access Paragon's internal documents to manufacture alleged support for their currently unsupported claims.

Accordingly, Defendants should be compelled to identify, with specificity, the trade secret information supporting their ownership claim requested in Interrogatory No. 5.

B. <u>Defendants Should Be Compelled to Answer Paragon's Second Sets of Discovery</u>

Defendants' answers to Paragon's second sets of interrogatories, document requests, and requests for admission state, in relevant part: "Defendants will respond to this request upon the Court's ruling on Paragon's motion to amend or supplement the Initial Complaint." <u>Exhibit I</u>, (Defendants' Responses to Paragon's Second Requests for Admission and Requests for Production).³ Paragon acknowledges that its second set of discovery requests relate, *in part*, to the supplemental claims underlying its pending Motion to File a First Supplemental or Amended Complaint (Docs. 52-53). However, the information sought is relevant to the litigation regardless of whether supplementation is allowed. The subject matter of the second sets of discovery relate

---

³ Defendants never responded to Paragon's Second Set of Interrogatories, attached hereto as <u>Exhibit J</u>.

to various defamatory and disparaging emails that Defendant Kirk Grundahl sent to substantially all of the truss manufacturing industry (including Paragon's own employees) commenting on the present case as originally filed. (Docs. 53-2 to 53-4). Thus, Paragon's second sets of discovery requests are certainly related to, and may lead to admissible evidence in, the present case, with or without supplementing the original Complaint. Mr. Grundahl's emails make accusations concerning Paragon's business and alleged ownership and authorship of Paragon's software, which are relevant to the declaratory judgment action as filed. *See, e.g.*, Doc. 53-2 at 3 ("Ownership of Paragon Component Systems, LLC (Paragon)"); Doc. 53-3 at 3. Mr. Grundahl's emails also may have resulted in responsive communications regarding the parties' software-ownership dispute relevant to the claims in the original Complaint.

Fact discovery is ongoing and Defendants do not contend they are unable to provide answers to these second sets of requests at this time. Because Paragon's second set of requests to Defendants may lead to relevant evidence for the case as originally filed, and to avoid potentially prolonging the discovery period, Paragon requests that Defendants be compelled to answer these requests without further delay.

## IV.     CONCLUSION

Accordingly, for the reasons above, Paragon respectfully requests that the Court compel Defendants to fully respond to Paragon's Interrogatory No. 5, also respond to all of Paragon's second sets of discovery requests, and serve formal responses to Paragon's first sets of discovery, signed by an attorney and properly verified.

Dated:  August 6, 2025           **GASS TUREK LLC**
                                  *Counsel for Plaintiff Paragon Component Systems, LLC*

                                  *s/ Tamar B. Kelber*
                                  Tamar B. Kelber, SBN 1101802
                                  kelber@gassturek.com

Joshua S. Greenberg, SBN 1107959
greenberg@gassturek.com
241 North Broadway, Suite 300
Milwaukee, WI 53202