<u>**SENT VIA ELECTRONIC MAIL**</u>

July 31, 2025

Miller & Martin PLLC
Erin Steelman
Suite 1200 Volunteer Building
832 Georgia Ave.
Chattanooga, Tennessee 37402-2289
erin.steelman@millermartin.com

RE: 25-CV-00170 Defendants' Reply to Discovery Deficiencies Email 250711

Dear Erin:

We received your correspondence dated July 11, 2025. As discussed on our call and recapped in your email, all parties are at an impasse regarding Paragon providing the RFPs for the complete Slack channel contents. We have provided documents with this supplemental response: Qualtim 1929-Qualtim 2065 to provide additional support and context to the responses below. Our responses to the deficiencies you raised are as follows:

**Interrogatory #1**

250711 Plaintiff (Paragon) Steelman email

> **Interrogatory No. 1**: You confirmed that Inspired-Pursuits, LLC is the only Defendant entity claiming an ownership interest in the Paragon Software, and it claims to have sole and complete (100%) ownership of the Paragon Software. Your supplemental interrogatory response will reflect this.
>
> Identify every individual and business entity that each Defendant claims has any ownership interest in, or any right or title to, the Paragon Truss Software, and specify the relative ownership percentage of the Paragon Truss Software alleged for each individual or business entity.

250731 response by Defendants (IP-LLC)

> Inspired Pursuits, LLC claims to have 100% ownership interest in the Paragon Software; however, remaining Defendants claim ownership interest in the Paragon Software based upon authorship of the software by contributing the embedded testing, engineering calibrations & analysis, engineering decision-making, manufacturing, trade secret knowledge and related intellectual property, which is the engineering, truss design and truss manufacturing substance undergirding the Paragon data processing system. As stated and detailed in Interrogatory No. 5, Defendants will be able to respond in greater detail in regards to authorship once Paragon produces at a minimum RFP #5 and RFP #6 from the Second Set of IP-LLC Requests of Paragon for Production. In summary, these are the projects and meetings where Defendants and their employees participated in discussion and meetings with Paragon.

Exhibit H

**Interrogatory #5**

250711 Plaintiff (Paragon) Steelman email

> **Interrogatory No. 5**: It is your position that the Defendants cannot specifically identify the trade secrets/intellectual property at issue at this time without first reviewing Paragon's internal files.
>
> In contrast, we believe the Defendants' asserted trade secrets/intellectual property should be identified by the Defendants upfront to define the scope of relevant discovery and avoid highly burdensome and unnecessary collection, review, and production of irrelevant documents.
>
> While May's email below identifies the alleged trade secrets as "all engineering decisions" contributed by Defendants, we believe more specificity is required.
>
> The parties agreed to have reached an impasse on this issue.

250731 Response by Defendants (IP-LLC)

> Defendants object to this interrogatory on the grounds that Defendants requested information within Paragon's control in order to provide a detailed response. Mr. Kabakoff admitted during our call that Paragon arbitrarily decided what was relevant to provide instead of complying with Defendants' Request for Production. The documents requested would provide the following information to adequately address the answer to this item because:
>
> a) The companies and people that were involved in providing the trade secret knowledge creating intellectual property need to be known and the work understood in the context of all relevant discussions and related information.
>
> b) This is direct evidence, where the videos are tied to specifically typed communications regarding video content.
>
> c) This direct evidence provides the ability to completely understand the trade secret knowledge creating the intellectual property at issue. This direct evidence is best viewed in chronological order where complete context is then available for proper assessment.
>
> To reiterate the issues we discussed, in order to properly answer this interrogatory:
>
> 1. Paragon has in its possession Qualtim/DrJ Engineering ("DrJ") owned Slack data that Paragon, on or around May 23, 2024, unilaterally prevented Qualtim/DrJ from accessing and subsequently using.
>
> 2. When Paragon returns Qualtim/DrJ-owned Slack data, in its original form, then this data can be organized into a chronological order. This will provide the proper context to illuminate the testing, engineering calibrations & analysis, engineering decision-making, manufacturing, trade secret knowledge and related intellectual property, which is the engineering, truss design and truss manufacturing substance undergirding the Paragon data processing system.
>
> 3. See the following graphics with respect to Qualtim/DrJ information that Paragon has not provided back to Defendants. In other words, to properly address all Paragon inquiries of this type, we still need:

a. All communications that include Qualtim/DrJ personnel within any of the Paragon Slack channels. This information can then be processed into a chronological logic path.

  i. Each Slack channel video with the associated thread of text that is tied to the video in all pertinent Slack communications.

b. Given that Paragon and/or Qualtim staff recorded all Qualtim-DrJ-Paragon meetings, and Qualtim staff provided any of their recordings to Paragon staff following the meeting occurring, we need all Qualtim-DrJ-Paragon meeting videos. This information can then be processed into a chronological logic path.

c. These Slack channels need to be provided in original (native) form so that the proper chronology and context can be re-created and properly evaluated.

d. Examples of the form of information that Paragon needs to provide follow:





As we have stated previously, Paragon continues to refuse production of all the communication within Paragon's control as to the Defendants' contribution to the Paragon Truss Software. The files you provided on June 23, 2025 still do not provide a complete Slack export that adheres to the Slack backup format standards in order to be imported into a Slack import/export tool for processing. Based upon your client's expertise, they are certainly capable of this request. Once Paragon provides Defendants with information in a form that is usable to undertake the evaluation work needed to accurately respond to this interrogatory, we will then address all other discovery requests. Because of unilateral actions taken by Paragon, accurate answers to all inquiries cannot be readily addressed and will only be addressed when Qualtim/DrJ owned facts are in its possession. Until that time, Defendants do not have sufficient information to comply with this interrogatory.

Until the discovery production issues noted above are addressed either by Paragon directly or through the guidance of the court, Defendants' response to Interrogatory No. 5 remains that the Defendants provided ALL the embedded testing, engineering calibrations & analysis, engineering decision-making, manufacturing, trade secret knowledge and related intellectual property, which is the engineering, truss design and truss manufacturing substance undergirding the Paragon data processing system. This information and related software decisions were contributed by one or more of the Defendants. Mr. Kabakoff stated during our discussion that Paragon only disclosed conversations they felt were relevant and did not comply with Defendants' Request for Production. The impasse between parties remain.

**RFAs 1/8/15/16:**

250711 Request by Plaintiff (Paragon) (Steelman)

> RFAs 1/8/15/16:
>
> Based on May's email below, your clients now intend to outright deny these requests for admission.
>
> If that is so, your clients need to supplement their response to Interrogatory No. 6 and provide the facts supporting their denials.
>
> You represented that Defendants (IP-LLC) would supplement their response to Interrogatory No. 6 accordingly.

250731 Response by Defendants (IP-LLC)

> **RFA 1:** Admit that none of the Defendants wrote any of the source code included in the Paragon Truss Software.
>
>> Defendants deny this request on the grounds that the information it has available or can be readily obtain is insufficient to enable it to admit or deny. The insufficiency of this information is due to all parties being at an impasse on the issue of Paragon providing Defendants RFP #5 and RFP#6 stated in the Second Set of Request for Production.

**RFA 8:** Admit that none of the Defendants used any of the Paragon Truss Marks in commerce to sell, offer for sale, advertise, market, sponsor, endorse, or distribute the Paragon Truss Software.

> Defendants Qualtim, CBI, IP-LLC, Kirk Grundahl, and Suzanne Grundahl admit RFA#8 in its entirety.

> Defendant DrJ objects to this request on the grounds that it sealed truss design drawings where the testing and engineering content embedded in the software was created under its professional engineering supervision. These truss design drawings, engineered for Clearspan Components, Inc. and others, contain references to Paragon. Subject to this objection, Defendant DrJ admits that it did not use the Paragon Truss Marks in commerce to sell, offer for sale, advertise, market, sponsor, or distribute the Paragon Truss Software.

**RFA 15:** Admit that none of the Defendants entered into any written contractual agreement with Paragon in which Paragon assigned, sold, transferred, licensed, or sublicensed to the Defendant any copyright rights, trademark rights, patent rights, or trade secret rights in the Paragon Truss Software.

> Defendants IP-LLC, Qualtim, DrJ, CBI, Kirk Grundahl, and Suzanne Grundahl object to RFA#15 on the grounds that there was a general partnership between these Defendants and Paragon. Subject to this objection, Defendants IP-LLC, Qualtim, DrJ, CBI, Kirk Grundahl, and Suzanne Grundahl deny this request on the grounds that the general partnership was memorialized in a series of verbal and written agreements.

**RFA 16:** Admit that none of the Defendants entered into any written contractual agreement with Paragon in which any Defendant assigned, sold, transferred, licensed, or sublicensed to Paragon any copyright rights, trademark rights, patent rights, or trade secret rights in the Paragon Truss Software.

> Defendants IP-LLC, Qualtim, DrJ Engineering, CBI, Kirk Grundahl, and Suzanne Grundahl object to RFA#15 on the grounds that there was a general partnership between these Defendants and Paragon. Subject to this objection, Defendants IP-LLC, Qualtim, DrJ, CBI, Kirk Grundahl, and Suzanne Grundahl deny this request on the grounds that the general partnership was memorialized in a series of verbal and written agreements.

250711 Plaintiff (Paragon) Steelman email

### **RFPs 4/5/6**:

These requests seek production of certain written contracts.

Though Defendants previously denied these written contracts exist, May's email below now says Defendants "need additional time to provide these items."

As we noted on our call, this is confusing given your clients' prior position that expressly stated that no such written contracts exist and, additionally, your clients' exclusive reliance on implied/oral contracts in the co-pending Inspired Pursuits case.

Nevertheless, if you believe "emails" between Dan/Kirk and "invoices" constitute responsive written contracts, those need to be produced immediately.

To the extent there are other documents believed to constitute written contracts responsive to these RFPs 4-6, those should also be produced.

On our call today, May represented that any documents deemed to be written contracts responsive to these RFPs 4-6 would be produced **no later than July 31st**.

250731 Response by Defendants (IP-LLC)

**RFP 4.** All documents, including without limitation contracts, by which any of the Defendants assigned, sold, transferred, licensed, or sublicensed any right, title, or interest in the Paragon Truss Software to Paragon or any other third party.

    See Document 1-10, page 10-11

    Documents Bates labeled 1929-2065 (uploaded to the fileshare site 07/31/2025)

**RFP 5.** All documents identifying any trade secrets in the Paragon Truss Software that any Defendant assigned, sold, transferred, licensed, or sublicensed to Paragon or any other third party.

    See Document 1-10, page 10-11

    RFP Document Bates Label Qualtim 1086

Documents Bates labeled 1929-2065 (uploaded to the fileshare site 07/31/2025)

**RFP 6**. All documents, including without limitation contracts, by which any of the Defendants assigned, sold, transferred, licensed, or sublicensed any invention (whether reduced to practice or not), patents, trademarks, copyrights, or trade secrets in the Paragon Truss Software to Paragon or any other third party.

    See Document 1-10, page 10-11

    RFP Bates labeled Qualtim 0001-0003

    RFP Bates labeled Qualtim 181

    Documents Bates labeled 1929-2065 (uploaded to the fileshare site 07/31/2025)

250711 Plaintiff (Paragon) Steelman email

**Paragon's Second Set of Discovery**: This discovery seeks information pertaining to the tortious interference claim Paragon seeks to assert via its pending motion to supplement the complaint. The Court has not ruled on this motion, and we understand your clients decline to respond to these requests until the motion is resolved. We disagree with your position and believe this discovery should not be further delayed. The parties agreed to be at an impasse on this issue.

250731 Response by Defendants (IP-LLC)

The parties agreed to be at an impasse on this issue.

Thank you,
May La Rosa