UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PARAGON COMPONENT SYSTEMS, LLC,

        Plaintiffs,

        Case No.: 3:25-cv-00170-wmc

QUALTIM INC., CENTER FOR BUILDING
INNOVATION LLC, DRJ ENGINEERING LLC,
INSPIRED PURSUITS LLC, KIRK GRUNDAHL,
AND SUZANNE GRUNDAHL

        Defendants.

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Paragon's motion to compel is procedurally and substantively deficient. With regard to a response to an outstanding interrogatory, Paragon is requesting information currently in their full and complete custody. Additionally, Paragon requests discovery on a claim or defense that has not been made part of this case. For the reasons set forth below, Defendants respectfully request the Court to deny Paragon's motion to compel and grant Defendants' Motion to Compel Paragon to restore full access to information Paragon improperly and wrongfully seized from Defendants.

**I.**     **Defendants' response to Interrogatory No. 5 is proper until Paragon complies with Defendants' request for recordings that are in Paragon's full custody**

Under *Fed. R. Civ. P.* 26(b)(1), discovery is limited to relevant, non-privileged matter proportional to the needs of the case. Discovery obligations do not extend to materials that are already in the requesting party's possession, custody, or control, or that can be obtained from another source that is more convenient, less burdensome, or less expensive. Paragon seeks to

1

compel Defendants to answer Interrogatory No. 5 with more specificity on the basis that the answer "All engineering decisions" is "too vague." Doc. 117 at 8.

On its face, it can seem vague but the scope of the trade secrets has already been defined in one of the memoranda Paragon filed with their initial complaint. *See Doc. 1-10* at 5-6. These pages are among the many issues of the related case against Paragon and their counsel. The memorandum explains the business model and the role Defendants played in creating the software. According to the memorandum dated May 29, 2024, "Paragon uses the engineering inputs provided by DrJ's professional engineers." Doc. 1-10 at 6. Defendant DrJ under the supervision of Defendant Kirk Grundahl, a professional engineer, "certify[ies] the math is accurately processing engineering." Doc. 1-10 at 6. To support this point, the Truss Plate Institute confirms that trusses are an engineered product so companies that are involved in the manufacturing, selling, and distributing metal connector plates used in wood trusses are also a professional engineering company that has a "Certificate of Authorization – Architecture, Engineer, Designer of Engineering, or Interior Design."[1] In order to undertake truss design services, given these products support applied loads and need to be safe in doing so, all companies that design trusses are registered as professional engineering companies with professional engineers on staff. This is because they are offering professional engineering services via efficient data processing, which is simply implemented by "provide[ing] design software." *See Doc. 54-13*, also attached here as Exhibit A.

Furthermore, Paragon's Rule 26 initial disclosures confirm that, other than the Defendants, there were no professional engineers on Paragon's staff during the creation and development of the Paragon Truss Software. *See Rule 26 Plaintiff's Initial Disclosure,* attached as Exhibit B.

---

[1] https://license.wi.gov/s/licenseView?id=0cE3d0000007oarEAA Credential/License Summary for 726 – 11 As of August 13, 2025 Name : MiTek Inc. Credential/License Number :   726 – 11 Professions :   Certificate of Authorization – Architecture, Engineer, Designer of Engineering, or Interior Design Location :   Chesterfield, Missouri – 630175746 Credential/License Type :   Regular Status :   License is current (Active) Eligible To Practice :   Eligible Credential Expiration Date :   2026-01-31 Granted Date : 1972-04-14n (Last accessed August 13, 2025).

Therefore, Defendants' response to Interrogatory No. 5 that "All engineering decisions in the software" is accurate until Paragon proves otherwise. Defendants served as the professional engineer for the software in accordance with the partnership illustrated with great detail throughout Document 1-10. To further this point, the initial disclosure confirms that Paragon's agents and employees (namely Matt Van Stelle and Jeremy Bierema) served as the product manager and software developer respectively. *See Initial Disclosures* at 2.

Interrogatory No. 5 asks Defendants to "define with specificity intellectual property, including trade secrets, any Defendant claims to have contributed [to the Paragon Truss Software] including the identity of **each** individual who made the contribution… **detailed description**, **when** the contribution was made, **who** at Paragon received the contribution, and **why** the contribution was made." Defendants have indeed defined with specificity based on the information they currently have at this time and that intellectual property is narrowed down to *engineering decisions*. With respect to the "identity of each individual, who, what, when, and why," Defendants have repeatedly asked Paragon to restore the access to the weekly or bi-weekly video meeting information, and related Slack channel correspondence. This will explicitly show this exact information as explained below.

### A. *Paragon, as the data processing technology arm of the business partnership, routinely recorded meetings and managed team chats so they have custody of all the answers to Interrogatory No. 5*

As discussed in previous filings, Paragon was the data processing technology/software arm of the partnership between parties. As part of their role, they managed custody of the recorded meetings and chats such as Slack. Defendants have continuously raised the issue of the files provided by Paragon and after consulting with Defendants' Information Technology department ("IT"), Defendants determined that Paragon was arbitrarily concealing discussions they did not find relevant to the case instead of providing the complete channels where all the engineering

3

discussions took place. *See* Exhibit C. This was communicated to Paragon's counsel in the meet and confer held on July 10, 2025.

Defendants' counsel has provided an example of how the files display when opened and it continues to be an issue due to the fact that Paragon would not provide the entire "Channel." An example of the text Defendants have received is attached as Exhibit D. Aside from the document being unduly difficult to decipher, it does not contain dates as to when the conversation took place which would available if Paragon would produce the native files. Explanation as to the Slack issues will be discussed in Section III below.

**II.      The Tortious Interference claim is not relevant to this declaratory judgment issue.**

Paragon filed a motion that seeks leave to file a "supplemental" complaint that would dramatically alter the scope and nature of this litigation by introducing new factual allegations and legal theories arising from events that occurred well after the commencement of this action. Far from serving the narrow purpose of supplementation permitted under Federal Rule of Civil Procedure 15(d), Plaintiff's proposed pleading is an untimely attempt to raise claims and theories that could be pursued separately, or as Defendants previously argued, as a counterclaim to the substantive related claim, *Inspired Pursuits, LLC v. Paragon Component Systems, LLC*, Docket No. 25-CV-0073.

Rule 15(d) permits supplementation only to "set out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). While courts generally allow supplementation in the interest of judicial economy, leave should be denied where the supplementation is unduly delayed, prejudicial, futile, or where it fundamentally alters the nature of the case. *See Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996)

4

(supplementation inappropriate where it introduces unrelated claims or would cause undue delay). This decision rests within the sound discretion of the Court. *Id.*

Paragon's proposed Supplemental Complaint, filed on December 10, 2024, improperly expands the scope of this case. Rule 15(d) does not authorize a plaintiff to inject new, unrelated causes of action into an existing lawsuit. The proposed allegations here arise from different operative facts— a tort action involving alleged disparaging communications and damages—and would require the Court and parties to address issues far afield from those framed in the original pleadings. Rather than derail this case, Paragon may file a counterclaim in the related substantive suit addressing the post-complaint events. This approach preserves judicial economy while avoiding prejudice to Defendants and the current trial schedule.

In sum, compelling responses to Paragon's second set of discovery at this juncture would be inefficient and unjustified. However, if the new claims become part of the case, Defendants will promptly respond to the second set, subject to any appropriate objections, and will work with Paragon to complete that discovery.

### III. **Defendants respectfully move the court to compel Paragon to produce complete Slack Channels before responding any further to Interrogatory No. 5**

Defendants have been specific in their requests to Paragon. Defendants seek all Slack channel communications and meeting recordings in Paragon's possession, custody, or control that involve any of the Defendants or the key individuals who worked with Paragon staff. In particular, this includes conversations and meetings where any of the following persons are participants:

  a. Defendant Kirk Grundahl
  b. Defendant Suzanne Grundahl
  c. Daniel "Dan" Holland

    d.   DrJ Engineering staff including but not limited to: Ryan Dexter, Dan Hawk, Adam Heise, Eric Helmueller, Keith Hershey, Daniel Lawless, Joe Michels, Kevin Muich, Angie Protexter, Joe Schauer, and Jim Vogt.

This clearly is not a limitless fishing expedition into Paragon's internal communications; rather, it is a targeted request for the very communications channels that Defendants were part of or privy to during the collaboration. In fact, all of the requested Slack conversations and meetings included Defendants, which Defendants had full access to until Paragon unilaterally cut off Defendants' access. Therefore, Slack discussions or meetings involving any combination of those individuals and Defendants will enable Defendants to establish and/or defend their claim. Those communications contain information about requirements, designs, calculations, code implementations, and decisions that reflect Defendants' technical and professional engineering contributions.

From a proportionality standpoint, compelling this production is reasonable. Paragon is a software company fully capable of exporting and processing its own Slack data. The universe of Slack material sought is confined to specific participants and subject matter, Defendants and Defendant's staff involvement in the Paragon software project.

Defendants have attempted in good faith to resolve this issue without Court intervention. On April 22, 2025 and again on June 23, 2025, Paragon was sent letters itemizing the deficiencies in its production, including the missing Slack information. The parties met and conferred on July 10, 2025. Defendants followed up with a detailed email on June 30, 2025, reiterating the request for a complete Slack export and explaining why it is necessary. Paragon's counsel responded that they believed their production of Slack data was sufficient and that they would not agree to produce "all Slack files." The meet-and-confer process has thus reached an impasse on this point.

Given the central importance of this evidence, Defendants now turn to the Court for relief. Defendants respectfully request that the Court enter an order compelling Paragon to produce, within a short timeframe (e.g., 14 days), all remaining Slack communications and meeting video recordings involving the individuals identified above. This production should be in a usable form – for example, with respect to Slack, a complete Slack export for the relevant channels, and with respect to meeting videos, the standard video recording format, i.e. .mp4, .wmv, etc.. If it is easier for Paragon, it can deliver the Slack data in native format. Doing this, it needs to ensure that the export is fully functional (including user, channel, and timestamp information) so that Defendants can load it into a review platform or Slack workspace for analysis. Upon request, Defendants can provide the Court with a relevant video example of the information it seeks to obtain.

Compelling this discovery will serve the interests of justice and efficiency. It will enable Defendants to refine their discovery responses and their contentions regarding their engineering, testing and related intellectual property contributions. It will give both parties equal access to the evidentiary record of their collaboration and contribution. Once Defendants have the complete set of Slack and video meeting communications, the dispute over Interrogatory No. 5 may effectively resolve itself, as Defendants will be in a position to supplement with specifics gleaned from those communications.

Respectfully submitted,

*/s/Mayville La Rosa*
Mayville La Rosa, WI Bar #1119613
6300 Enterprise Ln.
Madison, WI 53719
Phone: (608) 800-7353

7

mlarosa@kfinnovations.com  
*Attorney for Defendants*