UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

Paragon Component Systems, LLC
                                        Plaintiffs

v.                                                                                Case No.: 3:25-cv-00170-wmc

Qualtim, Inc., *et al.*,
                                        Defendants

**DEFENDANT KIRK GRUNDAHL'S REPLY IN SUPPORT OF MOTION TO STAY**

**INTRODUCTION**

      This motion asks the Court to exercise its inherent authority to manage related cases efficiently. Paragon's Opposition misapprehends both the legal standard and the factual record. The Court possesses broad discretion under *Landis v. North American Co.*, 299 U.S. 248, 254 (1936), to stay proceedings for "economy of time and effort for itself, for counsel, and for litigants." The Seventh Circuit confirms this discretion extends to declaratory judgment actions even absent parallel state proceedings. *Medical Assurance Co. v. Hellman*, 610 F.3d 371, 379 (7th Cir. 2010) ("Even if there is no parallel proceeding, the district court still has discretion to decline to hear a declaratory judgment suit.").

      Paragon's opposition is undermined by its own prior representations to this Court. In the '75 Action, Paragon opposed remand by arguing that "[a]uthorship is a core question in both cases, an issue that only this Court has jurisdiction to resolve" and that "[b]oth actions plainly arise from the same controversy." (Doc. 30 in Inspired Pursuits LLC ("IP-LLC") v. Paragon Component Systems LLC. 3:25-cv-00075 ("the '75 Action") at 2, 15). Paragon cannot argue that these cases are inextricably linked when seeking to defeat remand, then argue they are unrelated when

opposing a stay. The interconnection Paragon itself identified is precisely why coordinated resolution serves judicial economy.

The facts are straightforward: both the Paragon Component Systems, LLC ("Paragon") v. Qualtim, Inc., 3:25-cv-00170 ("the '170 Action") and the '75 Action arise from the same business relationships, involve the same parties and witnesses, concern the same intellectual property, the same data processing software development, and will require substantially overlapping discovery, particularly with respect to the '75 Action given that Dan Holland's fiduciary responsibilities to IP-LLC, Paragon and Clearspan Components, Inc. ("CCI") are central issues, and as such, the '75 Action is much more comprehensive in nature. Proceeding in parallel does not promote judicial economy, it undermines it.

I.  **THIS MOTION IS PROPERLY BEFORE THE COURT**

Paragon's threshold objection, that this motion should be stricken as "duplicative," lacks merit. The earlier Motion to Dismiss or Stay (Doc. 95) was filed by all Defendants through counsel almost nine months ago and combined multiple distinct grounds, including dismissal for failure to join necessary parties. It sought dismissal or a stay based on improper anticipatory filing. This motion, filed *pro se* and individually, focuses solely on judicial efficiency given the current posture of both cases, which was not addressed in the prior motion.

No rule bars a defendant from individually seeking a stay in good faith. Federal Rule of Civil Procedure 42(a) authorizes courts to "issue any other orders to avoid unnecessary cost or delay" when actions involve common questions. This motion invokes the Court's inherent authority under *Landis,* and its discretion under the Declaratory Judgment Act, so as to avoid unnecessary costs, avoid piecemeal litigation, and promote judicial economy.

## II. THE STAY FACTORS SUPPORT THIS MOTION

### A. A Stay Would Promote Judicial Economy

Paragon dismisses concerns about duplicative litigation as "unsupported rhetoric." (Doc. 130 at 2). This ignores reality. Both cases involve the same business relationships, the same witnesses, substantially overlapping documentary evidence, and the development of the same data processing software. The trial dates are set approximately six weeks apart. Without a stay, the parties and Court face duplicate discovery, duplicate motion practice, and potentially inconsistent jury verdicts on overlapping factual issues.

Paragon contends that inconsistency risk is "virtually non-existent" because both cases are before the same judge. This argument misses the point. Even with the same presiding judge, *separate juries could reach conflicting conclusions on overlapping facts*. For example:

- Whether a partnership or joint venture existed among Dan Holland, Kirk Grundahl, and their associated entities for development of component manufacturing technology;
- What duties, if any, Dan Holland owed to IP-LLC and its members regarding intellectual property developed during the collaborative relationship;
- Who contributed to the development of the software and under what terms;
- Whether confidential information and trade secrets were shared among the parties pursuant to their business relationship; and
- The nature and scope of the parties' agreements—express or implied—regarding ownership and use of jointly developed technology.

### B. The Intertwined Business Relationships Demonstrate Why the '75 Action Will Resolve or at Minimum Simplify the Issues Here

Paragon's suggestion that these cases involve distinct issues ignores the fundamental business relationships from which both actions arise. The late Dan Holland was simultaneously: (1) the majority owner and principal decision-maker of Paragon (Plaintiff in this action); (2) a 50% member of IP-LLC, the plaintiff in the '75 Action, together with Kirk and Suzi Grundahl each owning 25%; and (3) the majority owner and principal decision-maker of CCI. *See* Exhibit 1, Grundahl Dec. ¶ 3.

This ownership structure is not a peripheral detail, it is central to understanding why the '75 Action will necessarily resolve or simplify the issues in this declaratory action. Dan Holland, wearing his Paragon hat, now sues entities in which Dan Holland, wearing his IP-LLC hat, held ownership interests. The question "why would Dan Holland sue Dan Holland?" encapsulates the logical inconsistencies in treating these cases as unrelated. The data processing software at issue was developed in the context of these interrelated business relationships, relationships that the '75 Action will squarely address through its partnership, fiduciary duty, and business relationship claims. *See* Exhibit 1, Grundahl Dec. ¶¶ 5-6.

The Seventh Circuit's analysis in *GeLab Cosmetics LLC v. Zhuhai Aobo Cosmetics Co.*, 99 F.4th 424 (7th Cir. 2024), is instructive. There, the court affirmed staying federal litigation pending resolution of a related ownership dispute in state court. The Court observed that if the parallel proceeding resolved the ownership question one way, "the federal suit would be a senseless action by [the owner] against itself." Id. at 431. The same logic applies here. If the '75 Action determines that the data processing software was developed as part of the collaborative engineering and manufacturing enterprise among entities controlled by Dan Holland and the Grundahls, this

4

declaratory action becomes superfluous. Even if the '75 Action does not fully dispose of the ownership question, its resolution of the partnership claims, fiduciary duty issues, and the nature of the collaborative enterprise will establish binding factual and legal predicates that substantially simplify, if not eliminate, the disputed issues in the '170 action. Either outcome justifies a stay: complete resolution renders this action unnecessary, while substantial simplification makes proceeding now inefficient and potentially inconsistent with forthcoming determinations.

### C.    Paragon Will Not Suffer Cognizable Prejudice

Paragon claims it will be "severely prejudiced" by a stay. (Doc. 130 at 2). This overstates the impact. A stay is not a dismissal. Paragon's rights are preserved, and work already completed is not lost.

The Supreme Court has identified what constitutes cognizable prejudice warranting denial of a stay: "loss of evidence, including the inability of witnesses to recall specific facts" or "the possible death of a party." *Clinton v. Jones*, 520 U.S. 681, 707-08 (1997). *See e-Image Data Corp. v. Digital Check Corp.*, 2017 WL 657462 (E.D. Wis. Feb. 17, 2017) (same). Paragon identifies none of these harms. The evidence can be gathered in the '75 Action. Thus, temporary delay without evidence loss, inconvenience of waiting, and general litigation costs do not constitute cognizable prejudice.

### D.    Paragon Overstates the Progress of Discovery

Paragon argues that this case "has progressed substantially further than the '75 Action" and that the parties are "on the verge of taking depositions." (Doc. 130 at 2). This characterization is misleading. Paragon served its Rule 30(b)(6) deposition notice on **November 17, 2025**, just *three days* before filing its Opposition on November 20, 2025. Paragon cannot claim to be "on the verge"

of depositions when it only just issued the notice, presumably timed to bolster its opposition brief. *See* Exhibit 1, Grundahl Dec. ¶ 7.

The reality is that discovery in this action remains at an early stage. The parties have exchanged written discovery and document productions, but no depositions have been taken. Much of the discovery conducted here will be directly usable in the '75 Action, given the substantial overlap in parties, witnesses, and subject matter. A stay now would prevent duplicative deposition preparation, duplicative expert discovery, and duplicative motion practice, rather than derail a nearly completed case. *See* Exhibit 1, Grundahl Dec. ¶ 8.

### E. Case Progress Is One Factor, Not Determinative

Even accepting Paragon's characterization, case progress is only one factor in the stay analysis. The Supreme Court explicitly rejected mechanical prioritization based on filing date or case advancement. *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952) ("[W]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" militates against "rigid mechanical" application of first-to-file rule). The Seventh Circuit applied this principle in *Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640 (7th Cir. 2021), upholding a stay where the parallel action would likely "dispose of a majority of the factual and legal issues," even where the federal case had progressed further. The '75 Action is the comprehensive proceeding that will determine ownership, partnership obligations, trade secret claims, and related damages. Its resolution will either fully resolve or simplify any issue that remains here. *See Ulliro Cas. Co. v. Matthiesen Wicket & Lehrer, S.C.*, 2013 WL 1288155 (E.D. Wis. Mar. 27, 2013) (Staying case in favor of other Federal action which was more comprehensive and to avoid duplication).

### III. PARAGON'S LEGAL ARGUMENTS FAIL

#### A. The Court Has Discretion to Stay This Declaratory Action

Paragon argues that *Wilton/Brillhart* abstention is inapplicable because there is no parallel state court proceeding. Those cases were cited as instructive on the types of considerations that can be made. Paragon omits from its discussion that in *Medical Assurance Co.*, the Seventh Circuit held that: "The decision to stay an action under the Declaratory Judgment Act does not require the court to reach for a judicially-created abstention doctrine. Rather, *the Act itself provides the district court with the necessary discretion*… [D]iscretion under the Declaratory Judgment Act does not turn on the existence of parallel proceedings." 610 F.3d at 378-79. This holding is dispositive. The Court's inherent authority under *Landis* provides an independent basis for the stay, regardless of any abstention doctrine.

#### B. The First-Filed Rule Does Not Control

The Seventh Circuit has specifically rejected rigid application of the first-filed rule in declaratory judgment contexts. *Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 750 (7th Cir. 1987) ("The mere fact that [plaintiff] filed its declaratory judgment action first does not give it a 'right' to choose a forum. This circuit has never adhered to a rigid 'first to file' rule."). The court warned that "the wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing." *Id.*

### IV. PARAGON'S REMAINING ARGUMENTS ARE UNAVAILING

#### A. This Motion Is Not a Discovery Avoidance Tactic

Paragon characterizes this motion as a "transparent attempt" to avoid discovery. (Doc. 130 at 3). This accusation is unfounded. I have participated in discovery, producing substantial materials and engaging in past hearings and meet-and-confer discussions as appropriate. My intent

7

is to prevent wasteful duplication, not to block document production or anything else for that matter.

The timing Paragon emphasizes actually undercuts its argument. Paragon served its 30(b)(6) notice on November 17, the same period when the parties were meeting and conferring on discovery issues, with respect to which Paragon took subsequent unilateral action by submitting a second motion to compel. That Paragon rushed to serve a deposition notice days before filing its opposition does not transform a legitimate efficiency motion into a "delay tactic." Filing a stay motion supported by legitimate efficiency grounds is proper under *Landis*.

If the Court denies the stay or orders specific production, obviously I will comply with the Court's counsel as I always have, given my work with the Court system since 1983.

B.   **The Prior Schedule Does Not Bar This Motion**

Paragon argues that because counsel participated in the May 2025 scheduling conferences without objection, I am foreclosed from seeking a stay. This argument misunderstands the applicable standard. Federal Rule of Civil Procedure 16(b)(4) permits modification of scheduling orders "for good cause and with the judge's consent." The emergence of parallel litigation creating coordination needs constitutes good cause. At the scheduling conference, the '75 Action had just been removed to federal court and motions were pending. The full extent of overlap was not yet apparent. The standard is "good cause," not waiver or estoppel.

C.   **The "Contradiction" Argument Is Misplaced**

Paragon contends that my prior statements in the '75 Action remand briefing, distinguishing the "Model" from the "Software" and noting that "ownership nor authorship are not being addressed here," contradict my current position. (Doc. 130 at 9-10). This argument misunderstands both the context of those statements and what the '75 Action will actually resolve.

8

Paragon takes statements made in the remand motion out of context. As we stated in the remand motion, ownership of the copyright in the data processing software is analytically independent from the business methods, operational logic, and trade-secret information embodied in the software. The core controversy between the parties is whether IP-LLC's Model was disclosed, dismantled, or misused—not whether Paragon holds a copyright certificate.

Resolving copyright ownership in isolation will not resolve the factual dispute in the '75 Action. Both lawsuits arise from the same factual nucleus—how the data processing software and Model were used, marketed, and leveraged following Dan Holland's death. Proceeding on parallel tracks invites duplicative discovery, inconsistent factual determinations, and repetitive motion practice, particularly on issues such as the purpose of the data processing software, its integration into the Model, and the parties' respective roles in its development and deployment.

A stay therefore promotes judicial economy in two meaningful ways.

First, the '75 Action addresses the broader and controlling factual issues—the existence, confidentiality, and alleged misappropriation of the Model. Because the Model encompasses the data processing software's use, its business logic, and its commercial integration, the resolution of the '75 Action will necessarily determine whether Paragon's claimed authorship or copyright ownership is even relevant.

Second, allowing this case to proceed risks findings that are inconsistent with the '75 Action's adjudication of how the Model functioned and who contributed to or controlled its operation. That is the kind of piecemeal, duplicative litigation federal courts routinely avoid through stays.

Finally, my earlier statements correctly identified that the '75 Action—not this declaratory-judgment action—is the substantive action that will resolve the parties' real dispute. Paragon's

9

effort to carve out a single legal issue divorced from its factual context only confirms that this case should pause until the broader and dispositive issues in the '75 Action have been adjudicated. A stay will ensure consistent rulings, avoid unnecessary duplication, and allow the Court to address the parties' dispute in the order that promotes efficiency and fairness.

**4. GeLab confirms that comprehensive resolution informs declaratory issues.** Under *GeLab Cosmetics LLC v. Zhuhai Aobo Cosmetics Co.*, 99 F.4th 424 (7th Cir. 2024), cases are "parallel" if there is "a substantial likelihood that the [other] litigation will dispose of all claims." *Id.* at 430. Cases "need not be identical to be parallel." *Id.* The Seventh Circuit affirmed staying federal litigation pending resolution of a related ownership dispute, noting that if ownership were resolved one way, "the federal suit would be a senseless action by [the owner] against itself." *Id.* at 431. That is precisely the situation here: if the '75 Action determines that the data processing software was developed as part of the collaborative enterprise among entities Dan Holland controlled, this declaratory action becomes superfluous. The Court should await that resolution rather than permit parallel litigation that may prove unnecessary.

## V. ALTERNATIVE REMEDY: CONSOLIDATION OR COORDINATION

If the Court is disinclined to grant a full stay, Federal Rule of Civil Procedure 42(a) provides an alternative: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." For cases before the same judge, consolidation offers a middle ground. Rather than staying the declaratory action entirely, the Court could consolidate discovery, coordinate scheduling, and sequence resolution. This would preserve both actions while achieving efficiency. *See Champ v. Siegel Trading Co.*, 55 F.3d 269 (7th Cir. 1995) (consolidation "promotes the expeditious resolution of related claims").

10

**CONCLUSION**

For the foregoing reasons, I respectfully request that the Court stay all proceedings and deadlines in this case pending final judgment in the '75 Action. The stay should lift automatically upon resolution of that action. All pending motions in the '170 Action should be held in abeyance, with leave to renew within 14 days after the stay is lifted. Existing protective order terms and preservation obligations should remain in effect during the stay.

While there are sound reasons for a stay being the appropriate and best solution, if an alternative needs to be considered, I request that the Court consolidate discovery in both cases, coordinate scheduling, and sequence resolution to avoid unnecessary duplication.


Dated: December 1, 2025

Respectfully submitted,

*/s/ Kirk Grundahl*
Kirk Grundahl
1130 Fairway Court
Lake Mills, WI  53551
Ph.: 608-217-3713
kgrundahl@qualtim.com
*Defendant, pro se*