IN THE UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF WISCONSIN

---

PARAGON COMPONENT SYSTEMS, LLC,

                             Plaintiff,

v.                                                  Case No. 3:25-cv-00170-wmc

QUALTIM INC., CENTER FOR BUILDING
INNOVATION LLC, DRJ ENGINEERING LLC,
INSPIRED PURSUITS LLC, KIRK GRUNDAHL,
SUZANNE GRUNDAHL,
                             Defendants.

---

**PARTIES' JOINT STATUS REPORT**

---

**INTRODUCTION**

Pursuant to the Court's order at the December 10, 2025 discovery hearing, the parties met and conferred regarding three discovery issues. The parties exchanged proposals, clarified their respective positions, and held a conferral call on January 2, 2026, but were unable to reach agreement on several issues.

*First*, the parties disagree on the appropriate method for Slack discovery.

*Second*, the parties disagree regarding the scope of information required by Revised Interrogatory No. 5.

*Third*, the parties remain at an impasse regarding the Amended Protective Order. A proposed Amended Protective Order reflecting the parties' discussions, including provisions on which there is agreement and Attorneys' Eyes Only provisions that remain in dispute, is attached as Exhibit 1.

These issues are discussed in more detail below.

## DISCUSSION OF SPECIFIC ISSUES

I.  **SLACK DISCOVERY.**

**Defendants' position:** Preliminarily, Defendants understood the Court's directive at the December 10 hearing to contemplate a joint status update following the parties' conferrals, rather than merits briefing. In Defendants' view, the present record is not suitable for resolution of the disputed issues without full briefing. Defendants remain willing to continue conferring in good faith and stand ready to brief any issues the Court determines require resolution. With that context, Defendants set forth their position below:

At the December 10 hearing, the Court addressed discovery concerning collaborative communications exchanged during the parties' relationship and noted that such communications may be relevant to Defendants' asserted ownership theories. The Court directed the parties to meet and confer regarding a reasonable and proportional approach to Slack discovery. Defendants previously had full access to this channel during the parties' collaboration and used it jointly with Paragon for communications over a period of years.

Defendants initially sought production of four Slack channels used by the parties during their collaboration. Defendants then reduced the number to two during the conferral. Following the Court's guidance and subsequent meet-and-confer discussions, Defendants narrowed their request to a single Slack channel: **#drj-paragon-engineering-discussions.** Defendants note that Paragon relies on a June 30, 2025 email to suggest it is now willing to produce what Defendants previously requested. Assuming that characterization were accurate, Paragon does not explain why such Slack materials were not produced earlier, particularly when Defendants have since narrowed their request to the **#drj-paragon-engineering-discussions** channel.

2

Paragon created that channel for the parties' joint use and as their primary collaborative engineering workspace. It was used for more than six years for engineering discussions, technical analyses, design exchanges, and bi-weekly collaborative meetings. It was designated by Paragon itself as the channel for the parties' **"approval, use, and improvement of Paragon's software and analysis,"** as the following screenshot shows:



Defendants contend that *all* communications in this channel are relevant to Defendants' contribution-based theory of ownership, including the nature, scope, and timing of Defendants' contributions. Defendants further contend that production of a single Slack channel to which Defendants previously had full access during the collaboration is a proportional and efficient approach and avoids the need for one party to determine relevance on behalf of the other. Defendants proposed beginning with production of the complete contents of this channel in native format and reassessing thereafter whether any additional Slack discovery is warranted.

Defendants' concern with Paragon's proposed filtering approach is that it would require Paragon to determine, in the first instance, which communications are relevant to Defendants' ownership theories, rather than producing the shared collaborative record as it existed. Defendants

3

submit that production of the complete channel avoids disputes over context and relevance determinations being made unilaterally by one party.

**Paragon's position:**  In response to Revised Interrogatory No. 5, which asks Defendants to identify contributions they intend to rely upon for their ownership claims, Defendants listed sixty contributions and identified the individuals responsible for those contributions.  Paragon's position is that its proposals to conduct targeted searches using the names of the individuals whom Defendants identified as contributing to the Paragon software as a basis for Defendants' ownership claims in this case is reasonable and proportional to the needs of the case. This offer was communicated to Defendants at the January 2, 2026 meeting.  In a good-faith effort to resolve the dispute, Paragon has since offered to expand its search terms to include not only the contributors alleged in response to Revised Interrogatory No. 5, but also *all* employees of Defendants who had any participation in the subject Slack channel. This would include not only all direct communications between and among all of Defendants' employees who participated in the channels, but also the entirety of the communications of that particular discussion string, regardless of whether an employee of Defendants was a party to any reply or further communication in the same message thread as the initial message involving the Defendants' employees.

This approach is virtually identical to Defendants' initial demands regarding Paragon's production of Slack channels set forth in Defendants' prior-counsel's email dated June 30, 2025:

> "our [Slack] request is not overly broad as **we are requesting *ALL* *conversations and meeting recordings that involve any of the Defendants and their employees or former employees.*** To be more specific, this includes but is not limited to conversations and meetings where any of these individuals are present:
>
> - Kirk Grundahl
> - Suzanne Grundahl

4

- Daniel Holland
- Ryan Dexter
- Dan Hawk
- Adam Heise
- Eric Helmueller
- Keith Hershey
- Daniel Lawless
- Joe Michels
- Kevin Muich
- Angie Protexter
- Joe Schauer
- Jim Vogt

This is not a fishing expedition *because the conversations and meetings we are requesting are limited in scope.*"

(*See* June 30, 2025, Email from May La Rosa, attached as Exhibit 2). Paragon has now offered to produce essentially what Defendants previously demanded —i.e., Slack channel communications involving any of the above-listed individuals (except for Daniel Holland, who was a principal of Paragon). Defendants now seek to greatly expand this by demanding 100% of the messages in Paragon's Slack channels, even though their position is contrary to what the parties previously discussed with respect to limiting Slack production.

Additionally, Paragon's offer is consistent with the reasonable limitations on discovery expressed by Court at the parties' December 10, 2025, hearing:

> If there are searches that plaintiff can run internally to get at relevant documents that would bear on whatever contributions defendants are asserting, those need to be produced. And I understand defendants' points about it's better to have all the communications so that you have context. I get that, *but discovery isn't unlimited, and so there's probably going to have to be some compromise on what plaintiffs produce.* (Hrg. Tr. at 41 (emphasis added))

Paragon respectfully submits it has proposed a reasonable approach to discovery that expressly ties the Slack searches to Defendants' alleged contributions to the Paragon software and avoids review, processing, production, and hosting of copious amounts of Slack messages and related data that are not related to the specific alleged contributions underlying Defendants'

5

ownership claims that they identified in their response to Revised Interrogatory No. 5. This approach is both tailored and consistent with the Court's order.

## II.     REVISED INTERROGATORY NO. 5.

The parties respectfully request that the Court also resolve a pending dispute regarding whether Defendants' response to Revised Interrogatory No. 5 was complete.

**Defendants' position:** At the December 10 hearing, the Court revised Interrogatory No. 5 to narrow its scope. Revised Interrogatory No. 5 required Defendants to:

> Identify with specificity the intellectual property, ~~including trade secrets,~~ that any Defendant claims to have contributed to the Paragon Truss Software or Paragon Truss Marks <u>and that any Defendant relies upon to assert ownership of the Paragon Truss Software or Paragon Truss Marks</u>, including the identity of each individual who made any such contribution by or on behalf of a Defendant, a detailed description of the specific contribution, when the contribution was made, who at Paragon received the contribution, and why the contribution was made.

Defendants answered Revised Interrogatory No. 5 by identifying sixty distinct contribution items across approximately sixty pages of narrative response. For each item, Defendants provided factual information including identification of individuals involved; narrative descriptions of the engineering methodologies, frameworks, or technical concepts at issue; approximate timeframes; identification of recipients at Paragon; the context and manner in which the contributions were developed and communicated; the purpose for which each contribution was made; and an explanation of how each contribution relates to Defendants' asserted ownership theories. Defendants also identified limitations resulting from Paragon's exclusive control over source code and collaboration records and reserved the right to supplement as discovery proceeds.

After receiving this response, Paragon requested additional information not required by Revised Interrogatory No. 5, including identification of the specific Defendant entity associated with each contribution and categorization of each contribution by asserted intellectual-property

regime, such as trade secret, copyright, patent, or trademark. Based on the Court's discussion at the December 10 hearing, Defendants did not understand either category to be required by the revised interrogatory. (*See* Hrg. Tr. at 15, 18-19, 36.) Nevertheless, in an effort to narrow the dispute, Defendants agreed to supplement to identify the Defendant entity or entities associated with each contribution and timely served that supplementation on January 7.

Defendants maintain that Revised Interrogatory No. 5 does not require categorization of each contribution by intellectual-property scheme. The Court declined to frame the interrogatory around trade secret or other intellectual-property classifications and instead required disclosure of the specific factual contributions on which Defendants rely to assert ownership. Requiring Defendants to assign each contribution to a particular intellectual-property regime would impose a legal characterization the Court did not order. It would also be premature, given that Paragon retains exclusive control over critical contextual materials—including source code and the jointly used Slack communications—that bear directly on how, where, and in what form those contributions were implemented. Defendants' refinement of their ownership theories necessarily depends on ongoing discovery.

Defendants have identified the factual bases on which they rely to assert ownership, consistent with the interrogatory as revised. Their answer provides the specificity required by the revised interrogatory while appropriately reserving legal characterization for a stage of the case when the full factual record is available. Defendants will continue to supplement as discovery proceeds.

**Paragon's position:** Revised Interrogatory No. 5 expressly asks Defendants to "**Identify with specificity *the intellectual property*** that any Defendant claims to have contributed to the Paragon Truss Software . . . including the identity of each individual who made any such

7

contribution *by or on behalf of a Defendant* . . ." In their response dated December 22, Defendants provided a list of 60 alleged contributions by Defendants to Paragon's software but did not identify: (1) the specific type of intellectual property being asserted for each contribution (i.e., patent, trademark, copyright, or trade secret—"the intellectual property" requested in Revised Interrogatory No. 5), or (2) which Defendant is allegedly the owner of each contribution (i.e., attributing each contribution as being "by or on behalf of" a particular Defendant).

After a meet-and-confer process, Defendants agreed to further supplement to provide item (2) above by January 7. However, as of the time this report is being prepared for submission, Paragon has not yet received a supplementation identifying which Defendant is allegedly the owner of each contribution. The parties seek the Court's resolution of item (1) to avoid further motion practice on this issue.

Paragon disagrees with Defendants' contention that specifying the type of intellectual property is not required by Revised Interrogatory No. 5, which expressly asks Defendants to identify with specificity "the intellectual property" (i.e., patent, trademark, copyright, or trade secret) that they are asserting in this case. Such is required by the plain language of the request. Moreover, this requested information is particularly important here because Defendants recently served other supplemental interrogatory responses taking conditional positions indicating that they *may* assert copyright ownership of Paragon's software "*to the extent*" they made any copyrightable contributions. Defendants' Dec. 31, 2025 Supplemental Response to Interrogatory No. 1. At this stage, it is unhelpful for Defendants to identify 60 specific alleged contributions that they expressly rely upon to assert ownership of Paragon's software, but then refuse to disclose their underlying basis regarding which of these alleged contributions they contend are based on copyright

8

ownership. Paragon is left to guess which alleged contributions were identified by Defendants based on their reasoning that they have copyright ownership rights in Paragon's software.

Further still, Defendants must know which of their identified contributions that they are actively protecting as trade secrets, are covered by their own patents, or are deemed trademarks used to identify their own goods or services in commerce. The type of intellectual property being asserted for each of Defendants' identified contributions should be readily available to them now, and there is really no reason to withhold this information from Paragon at this stage of the case other than to prejudice Paragon from fully understanding what Defendants are alleging as their legal theories of ownership of the Paragon software. As the Court noted, "[e]veryone should know at this stage in the game what each party is asserting in terms of a factual and legal basis as to their ownership in the software." (Hrg. Tr. at 35). Thus, Defendants should be required to identify the intellectual property form of each alleged contribution which they rely upon to assert ownership in Paragon's software.

Finally, Paragon disagrees with Defendants' characterization that the Court somehow condoned withholding this requested information at the Dec. 10 hearing. Rather, the Court emphasized it "expect[s] the defendants to come to the table and get specific about their theory of ownership" and that "***this should not be mystery. Everyone should know at this stage in the game what each party is asserting in terms of a factual and legal basis to their ownership in the software.***" Hrg. Tr. at 35; *id.* at 29 ("And whatever defendants say is the basis for their ownership, that is going to dictate the ultimate scope of discovery…"). Yet Defendants continue to stonewall Paragon from knowing the specific type(s) of intellectual property that they contend form the basis of their ownership claims for their alleged contributions to Paragon's software. This

9

frustrates Paragon's efforts to fully engage in discovery and defend against Defendants' ownership claims.

### III.   AMENDED PROTECTIVE ORDER.

The parties exchanged drafts of a proposed Amended Protective Order and met and conferred regarding its terms. A proposed Amended Protective Order reflecting the provisions discussed by the parties is attached as Exhibit 1. Exhibit 1 identifies provisions on which the parties are aligned (highlighted in yellow), as well as "Attorneys' Eyes Only" provisions that remain in dispute (highlighted in grey).

**Defendants' position:** As a threshold matter, Defendants note that the currently operative Protective Order does not limit access to materials designated "Attorneys' Eyes Only" to "outside" counsel. Earlier in this litigation, Defendants' former in-house counsel was counsel of record and, under the existing order, she would have been entitled to access such materials. Paragon's proposed insertion of "outside" counsel represents a substantive change from the prior framework, not a continuation of it. The current revisions to the Protective Order were initially driven by Paragon's refusal to produce documents in the related action until the Protective Order is amended to address Mr. Grundahl's pro se status. The parties agree on that revision.

Defendants also propose to amend the Protective Order to permit limited, controlled access to materials designated "Attorneys' Eyes Only" by two specifically identified in-house legal professionals on an as-needed basis to assist outside counsel. Outside counsel was hired after in-house counsel left employment and withdrew from the cases. Defendants note that by Paragon's own admission at the December 10 hearing, the parties are not competitors and do not operate in the same market. (Hrg. Tr. at 21.) Nevertheless, Defendants proposed multiple concrete safeguards to ensure compliance with the Protective Order and to protect any legitimately sensitive

information while at the same time protecting Defendants' due process rights to adequately defend themselves in the action.

Specifically, Defendants proposed that access to AEO materials be limited to two identified in-house legal professionals by name; permitted solely on an as-needed basis and solely to assist outside counsel; restricted to litigation use only with no business, operational, commercial, or competitive use; and prohibited from disclosure to any officers, engineers, employees, or other non-authorized personnel. Defendants further proposed execution of written confidentiality acknowledgments subjecting the individuals to the Court's jurisdiction; electronic sequestration of AEO materials through access controls limited to the authorized individuals; written certification from an IT professional confirming restricted access; separate storage of AEO materials; audit logs or periodic re-certification if requested; and immediate termination of access if either individual's role materially changes. All access would remain subject to the Protective Order, applicable ethical obligations, and court-enforceable sanctions. *See* Ex. 1 § 13.

Paragon's objections rest largely on assumptions regarding Defendants' corporate size and reporting structure, rather than evidence of any misuse or violation of existing protective obligations. Paragon references a PACER filing incident that was inadvertent, occurred in a separate proceeding, and did not involve disclosure of protected materials or result in any misuse of confidential information. Defendants submit that this incident does not support denial of access subject to the many safeguards proposed here, which include Court sanctions.

**Paragon's position:** Paragon's position is that the risk of inadvertent disclosure by an in-house attorney and paralegal who report directly to Mr. Grundahl is substantial. Contrary to Defendants' assertions, Paragon and Defendants both serve the same truss market, albeit in different ways. They attend and participate in the same trade shows. They work with many of the

11

same customers. And, significantly, Mr. Grundahl has taken actions outside this litigation to create competitive harm to Paragon. For example, he improperly reported Paragon to a Wisconsin licensing board, claiming Paragon had engaged in engineering without a license, a claim that was quickly and summarily dismissed. He sent disparaging emails to Paragon's customers, communications which form the basis of Paragon's pending motion to supplement the Complaint to include counts of tortious interference.

Paragon has substantial concerns about allowing Mr. Grundahl's in-house legal team access to its highly sensitive information including, for example, its highly confidential financial information and related customer information.

As evidenced by information publicly available online, Defendants are relatively small companies without the formal, separate departments of larger companies for such areas as marketing, accounting, R&D, and legal. Because of their limited size, Mr. Grundahl dominates the day-to-day business of his companies as "boss" of all aspects of Defendants including (apparently) micro-managing its litigation against Paragon. Indeed, Kirk and Suzi Grundahl (who are both parties to this litigation) are the President and Vice President of the entities. Defendants' in-house counsel and paralegal therefore work for a relatively small company dominated by a single figure, who is intimately involved in the litigation. This is not a case involving a large company's in-house counsel, who works within a sizable in-house practice group and is largely insulated from the company's management side; to the contrary, Mr. Grundahl's in-house counsel is taking direct instructions in this case straight from the top of the company  Indeed, as further evidence of the intimate relationship between Mr. Grundahl and his in-house counsel, Paragon notes that Mr. Grundahl (or one of his employees), in his *pro se* capacity, previously filed a document under his then in-house counsel's PACER credentials while the case was still in

Tennessee. *See* Docket No. 1:24-cv-00246-CEA-CHS (E.D. Tenn.) (Doc. 96) (explaining that a motion filed by *pro se* Defendant Grundahl "was inadvertently filed by Mr. Grundahl's staff member under the incorrect NextGen ECF account that belonged to undersigned counsel" May La Rosa.) Mr. Grundahl and his direct reporting employees clearly have access to and at least some control over his in-house counsel's accounts, demonstrating a real risk of harm should his in-house counsel have access to highly sensitive AEO or source code documents produced in this litigation.

These are precisely the circumstances in which courts have denied sharing AEO information with in-house counsel. *See, e.g., Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 237 F.R.D. 405, 407 (N.D. Ill. 2006) (the court accepted that in-house counsel who reported directly to CEO intended to abide by the protective order in good faith but nonetheless denied them access to certain documents because: "In light of [the CEO's] pervasive participation in the case, it cannot be doubted that there will be discussions about the redacted documents. But [in-house counsel] will have in mind—if they are allowed access to the unredacted versions—those portions that have been redacted as well as those that have not. Compartmentalization would be exceedingly difficult, if not impossible, and thus the risk of inadvertent disclosure would be heighted to an unacceptable degree").

These circumstances are equally present here. Given the close interaction between Mr. Grundahl and his in-house counsel, and other historical instances in this litigation, Paragon's concerns about the significant risk of disclosure are not mitigated by Defendants' purported safeguards. It should suffice for Defendants' outside counsel – Scott Salemi – and his staff, who have some degree of separation from Mr. Grundahl, to review any AEO or source code materials produced in this litigation.

An Amended Protective Order is also an issue in the copending '075 case involving multiple other defendants. Because the parties anticipate entering identical protective orders in both cases, Paragon therefore requests that the Court address the PO issue jointly with the other case so that all parties may be heard on this in-house counsel issue.

## IV. STATUS.

The parties met and conferred pursuant to the Court's directive following the December 10 hearing and exchanged proposals and positions regarding each of the identified discovery issues. Although the parties clarified the issues for discussion, they were unable to reach agreement on the remaining disputes concerning Slack discovery methodology, completeness of Defendants' response to Revised Interrogatory No. 5, and certain terms in the Amended Protective Order. Accordingly, these issues remain unresolved and may require further guidance from the Court.

Dated this 7th day of January, 2026.

**MURPHY DESMOND S.C.**
Attorneys for Qualtim, Inc., Center For Building Innovation, LLC, DrJ Engineering, LLC, Inspired Pursuits, LLC, and Suzanne Grundahl.

Electronically Signed By: */s/ Scott G. Salemi*
Scott G. Salemi
State Bar Number: 1118960
33 East Main Street, Suite 500
Madison, WI 53701-2038
Phone: (608) 257-7181
Fax: (608) 257-2508
ssalemi@murphydesmond.com

**KIRK GRUNDAHL**
Pro Se Defendant

Electronically Signed By: */s/ Kirk Grundahl*
Kirk Grundahl
1130 Fairway Court
Lake Mills, WI 53551
Ph.: 608-217-3713

kgrundahl@qualtim.com

**MILLER & MARTIN, PLLC**

<u>s/</u> Stephen E. Kabakoff

Stephen E. Kabakoff, GA Bar No. 143164,
*appearing pro hac vice*
MILLER & MARTIN PLLC
1180 W. Peachtree Street, NW
Suite 2100
Atlanta, Georgia 30309
Telephone: (404) 962-6100
Stephen.Kabakoff@millermartin.com

James T. Williams, TN BPR 16341
Erin E. Steelman, TN BPR 38463
MILLER & MARTIN PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402-2289
Telephone: (423) 756-6600
James.Williams@millermartin.com
Erin.Steelman@millermartin.com

*Attorneys for Paragon Component Systems, LLC*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 7, 2026, I served upon all counsel of record via the Court's ECF system Parties' Joint Status Report.

Electronically Signed By: */s/ Scott G. Salemi*