# Exhibit 7

33 East Main Street Suite 500
Madison, WI 53703-3095

**Mailing Address:**
P.O. Box 2038
Madison, WI 53701-2038

**Phone:**
608.257.7181

**Fax:**
608.257.2508

www.murphydesmond.com

Scott G. Salemi
Direct Line 608.268.5646
Facsimile 608.257.2508
ssalemi@murphydesmond.com



12 February 2026

**VIA EMAIL ONLY**
Stephen E. Kabakoff, et al.
1180 W. Peachtree Street, NW
Suite 2100
Atlanta, GA 30309-7706
stephen.kabakoff@millermartin.com

> Re: *Paragon Component Systems, LLC v. Qualtim, Inc., et al.*
> U.S. Dist. Court WDWI 3:25-cv-00170-wmc

Dear Counsel:

I write regarding Plaintiff Paragon Component Systems, LLC's Responses to Defendants' Third Set of Requests for Production of Documents, which were served on February 11, 2026.

After careful review, Paragon's responses do not meaningfully comply with Rules 26 and 34 of the Federal Rules of Civil Procedure. With limited exceptions, Paragon has either asserted generalized objections and withheld responsive materials, referred Defendants to broad prior productions without identifying which documents are responsive to which Requests, stated it "will produce" documents without confirming whether responsive documents exist or whether production is complete, or asserted that no responsive documents exist—in several instances preceded by narrowing language that makes it unclear whether documents do not exist under the Requests as written or only under Paragon's narrowed interpretation.

As a result, Paragon has not identified any specific new documents it will produce in response to these Requests, nor has it identified which previously produced documents satisfy which Requests. The responses leave Defendants unable to determine what, if anything, Paragon agrees to produce.

This correspondence is sent in good faith pursuant to Rule 37(a)(1) to identify specific deficiencies and provide Paragon an opportunity to cure before Court intervention is sought.

### I. THRESHOLD NONCOMPLIANCE UNDER RULE 34

Paragon incorporates a set of "General Objections" into each response "as if fully set forth therein." Rule 34(b)(2)(B) requires objections to be stated with specificity. Rule 34(b)(2)(C) requires that, if documents are being withheld on the basis of an objection, the response must so

Page 2

state. Across Requests 18-87, Paragon generally does not clearly distinguish what responsive documents exist, what is being withheld, and whether production is complete.

Paragon repeatedly objects to producing documents on the ground that they are "already in Defendants' possession." *See* General Objection C and Requests 63, 68, 69, 74, 76, 86, and 87. Rule 34 contains no such exception. A party may not refuse to produce responsive documents within its possession, custody, or control merely because it believes the requesting party may also possess copies. To the extent Paragon is withholding documents on that basis, the objection is improper and must be withdrawn.

Paragon also repeatedly objects that certain Requests are "not relevant" because this is a declaratory judgment action concerning ownership. *See, e.g.*, Requests 54-67, 73, 86-87. Yet Paragon's Complaint places ownership, authorship, trade secrets, patentability, funding, and alleged sole development squarely at issue. Relevance under Rule 26(b)(1) is determined by the claims and defenses actually pleaded. The relevance objections are inconsistent with the breadth of the allegations Paragon has chosen to assert and do not justify withholding responsive discovery.

In response to numerous Requests—including Requests 20, 37, 40-42, 50-53, 59-62, 72, and 75—Paragon asserts that no responsive documents exist. For several of those Requests, most notably Requests 59-62, this assertion is preceded by objection and narrowing language ("as this request is best understood"), making it unclear whether documents do not exist under the Requests as written or only under Paragon's narrowed construction. Rule 34 requires a clear statement of whether responsive documents exist under the Requests as served, not as Paragon has chosen to reinterpret them.

**II.     AMBIGUITY REGARDING WHAT, IF ANYTHING, IS BEING PRODUCED**

In response to Requests including 22, 23, 29, 33-35, 43-45, 48, 85, and others, Paragon states it "will produce responsive and non-privileged documents," but qualifies production with: "to the extent they exist and are not duplicative or merely cumulative."

These responses are ambiguous. Paragon does not state whether responsive documents presently exist, whether the referenced production fully satisfies the Request, whether production is complete as to any Request, or whether additional responsive documents exist but are being withheld. Rule 34 requires a definitive statement as of the response date. For each Request, Paragon must confirm whether responsive documents exist, identify the specific Bates-numbered documents responsive to that Request, state whether production is complete, and, if additional documents will be produced, state when.

Rule 34(b)(2)(C) requires a responding party to state whether any responsive materials are being withheld on the basis of an objection. Paragon's responses do not consistently do so.

Page 3

### III. BLANKET CITATION TO PRIOR PRODUCTION AND CROSS-REFERENCE CHAINS

In response to Requests including 18, 19, 21, 31, 63, 68, 69, and 76, Paragon cites the broad Bates range PARAGON-000001 - PARAGON-005467 without identifying which documents within that production are responsive to which Requests. In response to Requests 83 and 84, Paragon points to the Estate of Daniel Holland's third-party subpoena production (DHE00000001-DHE00023193) without confirming whether Paragon searched its own files or whether it possesses additional responsive communications.

In addition, numerous other responses—including Requests 24-27, 36, 38-39, 46-47, 49, 71, and 80-82—cross-reference other responses that are themselves blanket citations or otherwise deficient. These cross-reference chains compound the deficiency rather than cure it.

Rule 34(b)(2)(E)(i) requires that documents be produced either as kept in the usual course of business or organized and labeled to correspond to the categories in the Request. A blanket reference to thousands of pages of prior production does not satisfy either requirement. If Paragon contends that previously produced documents satisfy any Request, it must identify the specific Bates-numbered documents that are responsive and confirm whether production is complete.

### IV. REQUEST-SPECIFIC DEFICIENCIES

**Requests 18-27, 30, 46-53, 59-62** (IP Identification and Ownership)

Paragon seeks a declaratory judgment of sole authorship and ownership of the Paragon Truss Software (Complaint ¶¶ 55-72) and alleges that no Defendant authored or contributed to the software (¶¶ 64-66, 100-01). Yet Paragon refuses to identify its trade secrets with particularity as to any specific modules, features, algorithms, or functionality (Request 18), limits its response regarding copyright assignments and work-made-for-hire agreements to those "between Paragon and its software developers" without confirming whether such agreements exist or whether production is complete (Requests 22, 26), and asserts that "no responsive documents exist" when asked whether any other entity has ever held an interest in the software (Requests 59-62).

Paragon's response to Request 22 improperly limits production to agreements "between Paragon and its software developers." Request 22 is not so limited. It seeks all documents reflecting any assignment, transfer, or conveyance of copyright rights by which Paragon claims ownership of the Paragon Truss Software. This necessarily includes any agreements or understandings with Defendants or other third parties. To the extent Paragon contends that no such agreements exist with Defendants or nonemployees, it must expressly so state in compliance with Rule 34.

In response to Requests 59-62, Paragon asserts that "the intellectual property in the Paragon Truss Software is the only intellectual property at issue." That assertion improperly narrows the scope of the Requests and the pleadings. The Requests seek documents relating to ownership, funding, and asserted interests, not merely documents reflecting Paragon's preferred framing of the case.

Page 4

Requests 59-62 do not ask Paragon to concede ownership. They ask for documents reflecting whether any other entity or individual—including Related Parties, Daniel Holland, and Clearspan—has ever held an ownership, beneficial, economic, or reversionary interest in the software. Paragon's assertion of its litigation position—that it "is and has been the only owner"—is not a proper Rule 34 response. Nor is it a substitute for a document search. Even if Paragon asserts sole ownership, documents may exist reflecting discussions, agreements, funding arrangements, governance structures, or other circumstances relating to potential or asserted interests. Rule 34 requires Paragon to search for and produce responsive documents—not merely restate its legal conclusion.

Paragon's response to Request 22 states it "will produce" work-made-for-hire agreements but does not confirm whether such agreements exist, how many exist, or when they will be produced. The IP classification Requests (46-53) are largely deflected through cross-references to other inadequate responses. A party seeking a declaratory judgment of sole ownership cannot simultaneously refuse to produce the documents establishing that ownership.

Request 30—seeking communications reflecting any discussion about whether someone other than Paragon may have ownership rights—is particularly revealing. Paragon directs Defendants to "Paragon's pre-litigation communications by its legal counsel to Mr. Grundahl which are already in Defendants' possession." Paragon attempts to avoid production by asserting that Defendants already have them. The Request, however, asks for Paragon's **internal** communications reflecting such discussions—not merely those Paragon sent to Defendants. Paragon must search its own files and produce all responsive communications.

**Requests 28-29, 32, 68-69, 74, 76-78** (Engineering Inputs and Third-Party Contributions)

Paragon's own Complaint alleges that Defendants provided "engineering consulting and testing services" (¶¶ 31-35) and that no Defendant contributed to authorship (¶¶ 64-66, 100-01). Documents reflecting engineering inputs go directly to those allegations. Paragon cannot make those allegations and then object to production of the very documents that would test them.

Paragon objects to the definition of "Engineering Inputs" as overbroad, characterizing it as seeking "all engineering-related communications received by Paragon since its formation." This mischaracterizes the definition. "Engineering Inputs" is defined with specificity in the Requests, enumerating nine categories of engineering-based technical information. The definition is targeted to engineering materials relating to the Paragon Truss Software—not to all engineering communications. The relevant custodians and data sources associated with these engineering inputs are discrete and known to Paragon. Defendants are not seeking company-wide or undifferentiated searches, but production from the limited custodial and technical sources associated with the development of the Paragon Truss Software.

Paragon's response to Requests 77-78 (source code versions reflecting Engineering Inputs) conditions production on Defendants "specifically identify[ing] the 'Engineering Inputs' they believe were contributed." This improperly shifts the burden of production. Many of these issues can be addressed through non-source-code materials, including design documentation, version histories, change logs, validation records, internal analyses, and related communications. At

Page 5

present, Paragon has not produced such materials. At minimum, Paragon must confirm whether responsive materials exist and produce non-source-code engineering documentation, validation materials, and revision histories. The Protective Order provides procedures governing source code review, if and to the extent such review becomes necessary.

**Requests 33-40** (Trade Secret Protection Measures)

Paragon alleges that the software embodies proprietary trade secrets and that Paragon took reasonable measures to protect secrecy (Complaint ¶¶ 114-16, 135-37). Requests 33-40 seek documents reflecting the protective measures Paragon claims to have taken—confidentiality agreements, access controls, internal policies, marking practices, training, and breach response.

Paragon's response to Request 37 is particularly notable: Paragon asserts that "no known responsive documents exist as it has not disclosed the software code for implementing the Paragon Truss Software outside of Paragon." This response narrows the trade secret at issue to "software code" and ignores Paragon's broader claims of trade secret status for the software's functionality and design. This apparent narrowing from the broader trade secret allegations pleaded in the Complaint underscores the need for Paragon to identify with specificity the trade secrets it claims are at issue and to respond to the Requests as written, rather than unilaterally redefining the scope of its claims. Documents reflecting reasonable protective measures go directly to the statutory elements Paragon has placed at issue. Further, Paragon's response is not the same as stating that no responsive documents exist following a reasonable search. Rule 26(g) requires a reasonable inquiry before certifying responses.

**Requests 41-42** (Patent Count)

The Complaint alleges that the Paragon Truss Software includes inventions that may be subject to patent protection. It also alleges conception and reduction to practice of patentable inventions embodied in the software. Documents reflecting those activities are responsive regardless of whether any patent application was ultimately filed.

If Paragon contends that patentable subject matter exists, it must produce documents reflecting invention disclosures, internal patentability analyses, communications evaluating potential patent filings, or other materials concerning the existence, scope, or ownership of such inventions. The absence of any such production, coupled with categorical "no responsive documents" assertions, appears inconsistent with the allegations Paragon has placed at issue.

If Paragon is withdrawing the patent claim, it must expressly state so.

Page 6

**Requests 54-67** (Financial Investment and Funding)

Paragon expressly pleads that it invested over $5 million in development of the Paragon Truss Software (Complaint ¶¶ 1, 3). Paragon relied upon its alleged $5 million investment to invoke the Court's jurisdiction and to establish the amount in controversy.

Having placed that figure at the center of its case, Paragon cannot now withhold the financial records substantiating it as "not relevant." Paragon's response to Request 54 points to prior production and work-made-for-hire agreements but expressly states it "has withheld documents on the basis of its objections." The relevance objection to Paragon's own pleaded investment is untenable.

Defendants do not seek Paragon's complete financial history. They seek summary documentation sufficient to substantiate the $5 million investment Paragon itself placed at issue, including the source of funds, how outside funding was recorded, and whether any Related Party provided financial support. Defendants are willing to begin with summary financial reports or funding documentation sufficient to show the source and allocation of development funds, with more granular documentation to be addressed as needed. Documents may be designated under the Protective Order, but they may not be withheld entirely.

**Requests 70-75, 79-84** (Ownership Assertions and Awareness of IP-LLC)

Paragon's responses to Requests 83-84 (communications with Daniel Holland and the Estate of Daniel Holland regarding IP ownership) point to the Estate's third-party subpoena production (DHE00000001-DHE00023193). Paragon does not state whether it searched its own custodians for responsive communications, whether it has copies of such communications in its own files, or whether additional responsive communications exist beyond what the Estate produced. Rule 34 requires Paragon to produce documents in its own possession, custody, or control—not merely to point to a third party's production.

Requests 79-82 (Paragon's awareness of and dealings with IP-LLC) are directly relevant. Paragon's objection that "Paragon" is vague because it is "an entity and not a specific individual who could obtain knowledge" is not a recognized basis for refusing production. Paragon is required to search the files of its custodians with knowledge of these matters and produce responsive documents. Paragon's own response to Request 79 concedes that Daniel Holland was a founding member of IP-LLC and that Paragon through Holland has had knowledge of IP-LLC since its inception—which only confirms the relevance of the Requests.

**Requests 85-87** (Licensing, Commercialization, and DrJ Sealed Drawings)

These Requests concern how Paragon licenses the software to customers and the truss design drawings generated using the software and sealed by DrJ. They are relevant to the nature and scope of Paragon's use of Defendants' engineering work, the representations Paragon makes to customers regarding ownership, and the ongoing commercial reliance on Engineering Inputs during and after the Development Time Period.

Page 7

Paragon's objection that Requests 86-87 seek documents "sealed by DrJ" that are within DrJ's possession is misplaced. The Requests seek Paragon's copies of such drawings—the output of Paragon's own software. That DrJ also possesses copies does not relieve Paragon of its production obligation. These documents directly bear on the scope and integration of Engineering Inputs.

## V.   REQUIRED CURE

**Within five (5) business days**, Paragon must serve amended responses that comply with Rule 34, withdraw unsupported objections, state expressly whether responsive documents exist for each Request, identify the specific Bates-numbered documents responsive to each Request, state whether production is complete as to each Request, identify categories of documents withheld and the basis for withholding, provide a privilege log where applicable, and confirm custodians and data sources searched.

If Paragon contends that any Request cannot be answered fully, it must explain specifically why and identify what efforts were made to obtain responsive documents.

Absent timely cure, Defendants will seek relief under Rule 37 without further notice, including an order compelling production and appropriate fee-shifting.

Defendants remain available to meet and confer promptly following service of amended responses if any narrow disputes remain.

Sincerely,

Scott G. Salemi

cc: See corresponding email.
4913-7553-1919, v. 1