# Exhibit 8

**MILLER & MARTIN PLLC**

James T. Williams
Direct Dial (423) 785-8244
Direct Fax (423) 321-1576
James.Williams@millermartin.com

February 25, 2026

**VIA EMAIL**

Mr. Scott G. Salemi
Murphy Desmond S.C.
33 East Main Street Suite 500
Madison, WI 53703-3095

Re:  *Paragon Component Systems, LLC v. Qualtim, Inc., et al.*
U.S. Dist. Court W.D. Wis. Case No. 3:25-cv-00170-wmc

Dear Scott:

This will respond to your letters dated February 12, 2026, regarding Paragon's Responses to Defendant Qualtim, Inc.'s Third Set of Interrogatories (inaccurately titled as "First" Interrogatories) and Paragon's Responses to Defendant Qualtim, Inc.'s Third Request for Production of Documents.

We note your letters demand full responses and commitment to produce responsive materials within five business days, or by February 20, 2026, as a condition of further meeting and conferring on these issues. We believe such approach is counter-productive and, more importantly, contrary to the letter and spirit of the Case Management Order entered in this case including its meet and confer requirements that must be met before filing a discovery motion.

**INTERROGATORIES**

As you know, Defendants exceeded the parties' agreed-upon limit of 40 interrogatories per party Defendants served their Second Interrogatories on June 14, 2025. We note that your letter addressing Paragon's objections does not dispute this point.

Rather, you assert that Defendants' Second interrogatories—to which Paragon objected and responded on August 1, 2025—have been "withdrawn" based on a pleading you served on January 26, 2026 titled "Defendants' Notice of Withdrawal and Substitute Interrogatory." Defendants' purported withdrawal and substitution are ineffective. The case law is clear that all interrogatories served and objected to count against the numerical limit on interrogatories. Thus, a propounding party cannot "avoid or sidestep the numerical limit" on interrogatories by "withdrawing" them after they are served, "particularly not after the responding party has incurred the burden of preparing and serving objections" and responses. *See Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 588 (C.D. Cal. 1999); *Robinson v. Mathis*, 2021 WL 6804133, n. 10 (W.D. Tenn. Sep. 14, 2021). Accordingly, we believe Defendants' attempt to circumvent the interrogatory limit agreed to by the parties will be rejected by the Court. Your clients chose how they wished to use their 40 interrogatories and are bound to that decision.

Volunteer Building Suite 1200
832 Georgia Avenue | Chattanooga, TN | 37402-2289
Office 423.756.6600 Fax 423.785.8480
millermartin.com

ATLANTA
CHARLOTTE
CHATTANOOGA
NASHVILLE

41003283v1

February 25, 2026
Page 2

## REQUEST FOR PRODUCTION OF DOCUMENTS

Defendants have served 69 separate document requests, many of which are directed at inquiries regarding Paragon's ownership of the software that it developed. Paragon's responses should be considered not only in light of its previous document production of 5,467 pages of responsive material, but also its more recent supplemental production including Slack materials, corporate documents, software licensing terms and conditions, and non-disclosure and work for hire arrangements with its software developers. We believe such materials are responsive to many of the document requests you identify in your letter.

Further, in accordance with the parties' February 20, 2026 meet and confer regarding Mr. Grundahl's 57 document requests submitted in the '075 Action, Paragon will also be supplementing the discovery record with additional documents that will be responsive to certain of the documents requests at issue in your letter.

Your assertions regarding Paragon's responses to RFP Nos. 63, 68, 69, 74, 76, 86 and 87 are misplaced. RFP Nos. 63, 68, 69, 74 and 76 primarily relate to communications between Paragon and Defendants during the development period of the Paragon Software including engineering inputs provided by defendants. Paragon has produced substantial materials including emails and Slack communications comprising the requested communications. Contrary to your assertion, Paragon has not refused to produce responsive documents, but Paragon acknowledges that many responsive documents have already been produced as part of its rolling production in this case including, most recently, its production of Slack materials on February 13, 2026, comprising Slack message threads including messages to/from employees of Defendants. With regard to RFP Nos. 86 and 87, we fail to see how these Requests have any bearing on the ownership or authorship of the Paragon Truss Software. We are happy to discuss with you your basis for asserting the relevance or proportionality of these materials to the needs of this action.

Defendants challenge Paragon's responses to RFP Nos. 20, 37, 40-42, 50-53, 59-62, 72, and 75, in which it stated that it was not aware of responsive documents, on the basis that Paragon objected to the requests. Paragon stands on its objections and substantive answers to these requests.

Defendants further assert that Paragon's responses to RFP Nos. 22, 23, 29, 33-35, 43-45, 48, and 85 contain ambiguous responses. They do not. To the extent Paragon has not stated it is withholding responsive documents for these particular requests, Paragon will produce responsive and non-privileged documents to the extent they exist.

## REQUEST SPECIFIC DEFICIENCIES

### A.  Requests 18-27, 30, 46-53, 59-62 (IP Identification and Ownership)

Defendants assert that Paragon has failed to identify its trade secrets with particularity. That is incorrect. Paragon has made clear that its trade secret in the Paragon Truss Software is the software code itself, which Paragon stores securely, restricts access to, and does not make publicly available. Paragon made this clear in response to RFP No. 18 and incorporated that response into other requests as appropriate. Paragon also has stated that the Paragon Truss Software code also constitutes its copyrighted work. In response to RFP No. 22, Paragon has produced its work-made-for-hire agreements with its

41003283v1

February 25, 2026
Page 3

software developers. Further, Paragon has properly stated that no responsive documents exist for RFP Nos. 59-62.

With respect to RFP No. 30, Paragon will review whether any additional responsive and non-privileged communications exist. However, Paragon is presently not aware of the existence of such documents apart from those referenced in response to RFP No. 30.

Paragon is willing to meet and confer with you to the extent that Defendants have further questions concerning Paragon's responses.

### B. Requests 28-29, 32, 68-69, 74, 76-78 (Engineering Inputs and Third-Party Contributions)

Defendants' definition of "Engineering Inputs" includes all engineering information "generated or exchanged" during the development of the software, "regardless of whether such information was ultimately used, relied upon, or incorporated into the final software or its outputs." This overly expansive definition goes well beyond Defendants' 60 alleged engineering contributions that form the basis of their ownership interest in the Paragon Truss Software. As you know, Magistrate Judge Boor expressly limited Paragon's Interrogatory No. 5 to the engineering contributions upon which Defendants rely to assert ownership in the Paragon software. Yet Defendants' definition of "Engineering Inputs," if taken at face value, would require Paragon to audit every communication (both internal and external) that occurred over a period of nearly nine years and produce every document memorializing any possible "Engineering Input"[1] exchanged in such communications, *irrespective of whether the alleged input is part of Defendants' alleged intellectual property that forms the basis of their asserted ownership interest in Paragon's software.*

Despite these issues regarding the scope of Defendants' requests on this topic, Paragon is nonetheless willing to meet and confer with Defendants with an eye towards identifying a reasonable, proportional, and workable approach with respect to producing documents sufficient to show which, if any, of the 60 alleged engineering contributions identified by Defendants were incorporated into the Paragon Truss Software. Please advise.

### C. Requests 33-40 (Trade Secret Protection Measures)

Again, as Paragon has made clear, its asserted trade secret in the Paragon Truss Software is the software code itself, which Paragon does not make publicly available. As one might expect, access to its highly confidential and trade secret Paragon Truss Software code is restricted. Additionally, and with respect to RFP Nos. 33 and 34, Paragon has produced all of its non-disclosure and work-made-for-hire

---

[1] Under Defendants' all-encompassing and overly-broad definition of "Engineering Input," which includes "any engineering-based technical expertise, know-how, or professional judgment, including any analysis, information, data, assumptions, criteria, logic, parameters, rules, methodologies, testing concepts, quality-control concepts, or manufacturing concepts," it is difficult to imagine how any of the extensive communications between Paragon and Defendants occurring during the nearly nine-year development period would not potentially involve an "Engineering Input."

February 25, 2026
Page 4

agreements with each of its software developers. Paragon is not aware of additional responsive documents to these requests.

With respect to RFP Nos. 35 and 36, Paragon is further reviewing these Requests, and while it currently is not aware of responsive non-source-code documents, it will continue to review these Requests and produce any such responsive and non-privileged documents if they are found to exist. Paragon is, however, aware of certain text files in its source code and screenshots of its login screen which may be responsive and will make those documents available under the appropriate confidentiality designations. Paragon's response to RFP Nos. 38-39 properly incorporate its response to RFP Nos. 33 and 34. Paragon is not aware of additional documents that would be responsive to these requests.

### D. Request Nos. 41-42 (Patent Count)

Paragon has properly stated that no responsive documents exist to these requests. To the extent that Paragon files patent applications related to its implementation in the software, Paragon will supplement accordingly.

### E. Request Nos. 54-67 (Financial Investment and Funding)

Paragon has further reviewed these requests and will supplement its responses to this request.

### F. Request Nos. 70-75, 79-84 (Ownership Assertions and Awareness of IP-LLC)

You assert deficiencies with respect to a number of Requests that seek production of documents "sufficient to identify" various aspects of Paragon's ownership of its Paragon Truss Software. Your letter makes no reference to any deficiency asserted with respect to Paragon's responses to RFP Nos. 70-75. With respect to Requests Nos. 79-82, Paragon believes that it has responded appropriately to these Requests. With respect to RFP Nos. 83-84, which seek communications with Dan Holland "concerning ownership of the intellectual property" of the Paragon Truss Software, Paragon believes certain of its previously produced documents may be responsive to this request and will supplement its response accordingly.

### G. Request Nos. 85-87 (Licensing, Commercialization and DrJ Sealed Drawings)

These Requests seek truss design drawings generated by the Paragon Truss Software and sealed by an engineer at DrJ. These are documents that would have gone through your clients' organization. We fail to see how such documents bear any relevance to the issues in this action and, in any event, you clearly have copies of them since your client sealed them. *See, e.g.*, Rule 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) ***the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive***; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)").

41003283v1

February 25, 2026
Page 5

    As noted above, the Case Management Order requires the parties to meet and confer prior to filing any motion. We trust that you will act accordingly and look forward to discussing these matters with you at your earliest convenience.

Sincerely,

*/s/ James Williams*

James Williams

JTW/dac

41003283v1