UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

PARAGON COMPONENT SYSTEMS, LLC,

          Plaintiff,

v.

QUALTIM INC., CENTER FOR BUILDING
INNOVATION LLC, DRJ ENGINEERING LLC,
INSPIRED PURSUITS LLC, KIRK GRUNDAHL,
and SUZANNE GRUNDAHL,

          Defendants.

Case No. 3:25-cv-00170-wmc

## DECLARATION OF SCOTT G. SALEMI IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL INSPECTION OF SOURCE CODE REPOSITORY

1. I am an attorney with the law firm Murphy Desmond S.C. and am one of the attorneys of record representing Defendants Qualtim, Inc., Center for Building Innovation, LLC, DrJ Engineering, LLC, Inspired Pursuits, LLC, and Suzanne Grundahl (collectively, "Defendants") in the above-captioned matter. I make this Declaration in support of Defendants' Motion to Compel Source Code Repository.

2. In the '75 action, Defendants, who are Plaintiffs in that action, served Requests seeking production of source code repository artifacts, including exports of branches or paths implementing computational models and input value tables, commit logs, and documents reflecting evaluation or integration of engineering contributions.

3. In November 2025, Paragon served its first set of written responses and objections to that discovery, refusing to produce the source code repository.

4. Shortly thereafter, Defendants (as Plaintiffs) identified the deficiencies related to the discovery requests, including Paragon's refusal to produce source code repository documents. Attached as **Exhibit 1** is a true and correct copy of that letter.

5. Paragon continued to object to producing the source code repository. Attached as **Exhibit 2** is a true and correct copy of its letter.

6. In January 2026, Plaintiffs served another round of source code discovery.

7. Again, Paragon objected to the production of the source code repository. Attached as **Exhibit 3** is a true and correct copy of the response.

8. Immediately thereafter, another deficiency letter was sent to Paragon. Attached as **Exhibit 4** is a true and correct copy of that letter.

9. On February 20, 2026, the parties held a conferral call. Paragon agreed it would supplement its responses, which it did a week later. Attached as **Exhibit 5** is a true and correct copy of its supplemental responses.

10. In Paragon's supplemental response, it confirmed that it "will not produce any portion of the code of the Paragon Truss Software." *Id.* at Request 11.

11. In the '170 action, Defendants also served requests for code repository documents. Specifically, Requests 77 and 78 sought production of source code versions sufficient to show Engineering Inputs incorporated into the Paragon Truss Software during the development and post-termination time periods, subject to the Agreed Protective Order.

12. Paragon served its written responses and objections to Defendants' requests. It took the position that it could not respond unless Defendants first specifically identified the "Engineering Inputs" they believed were contributed to the Paragon Truss Software. Attached as **Exhibit 6** is a true and correct copy of Paragon's response.

13. Immediately thereafter, Defendants sent a deficiency letter that highlighted the issues with Paragon's position on the inspection of the source code. Attached as **Exhibit 7** is a true and correct copy of that letter.

14. In response, Paragon would not agree to produce anything, instead placing the burden on Defendants to identify how production should occur. Attached as **Exhibit 8** is a true and correct copy of that letter.

15. The Court has entered Agreed Protective Orders in both actions that include a source code inspection protocol set forth in ¶ 14.

16. In February 2026, Defendants in the '170 and as Plaintiffs in the '75 action served written notice requesting inspection of the Paragon Truss Software source code repository under ¶ 14 of the Agreed Protective Orders. Attached as **Exhibit 9** is a true and correct copy of the notice of source code inspection.

17. Following service of the inspection notice, counsel for the parties conferred regarding inspection of the repository. Attached as **Exhibit 10** is a true and correct copy of the exchanges.

18. In that correspondence, Paragon maintained that Defendants must first identify specific portions of code before any inspection would be permitted in the '170 action and asserted that the source code was irrelevant to the '75 action. *Id.* at 1.

19. Those positions left no practical way to obtain discovery of Paragon's source code in either action. The parties were at an impasse and could not resolve the dispute. *Id.* at 1.

20. In consultation with a technical consultant, Plaintiffs have confirmed that there are multiple categories of documents and information needed to analyze complex software systems

and their development history. The source code repository requests are consistent with the types of documents and information reviewed by source code experts.

21. The requests seek access to the source code repository and associated repository artifacts, including version-control history, commit metadata, build and configuration files, and related technical materials. Such materials are necessary to understand how software functionality is implemented, how particular features evolved over time, and whether specific contributions appear in or were incorporated into the software.

22. For example, version-control history reflects authorship, modification chronology, and integration of functionality across different versions of the codebase; build and configuration files are necessary to understand how the software is compiled and executed; and repository structure and dependencies provide context necessary to evaluate how individual code segments interact within the larger system.

23. The discovery requests and inspection notice were therefore designed to obtain the categories of materials necessary to permit meaningful technical review of the Paragon Truss Software and its development history. Without access to those materials and repository artifacts, it is not possible to evaluate authorship, development chronology, or whether particular engineering contributions were implemented within the software.

24. In correspondence, Paragon has implied that Slack communications are a substitute for the source code repository. Slack is a messaging platform used by the parties during the joint venture to exchange written communications, files, and recordings concerning engineering analysis, proposed changes, and operational matters. This was the primary form of communication between the parties during the joint venture, yet Paragon has refused to provide full access to those communications in this action.

25. From the limited materials produced, Defendants have thus far identified at least sixty intellectual-property contributions to the Paragon Truss Software. Defendants contend the contributions were developed through proprietary engineering work, empirical testing programs, and professional judgment and were provided to Paragon as part of and to further the joint venture.

26. These contributions collectively consist of:

- Structural engineering methodologies
- Testing and calibration frameworks
- Structural analysis algorithms and modeling techniques
- Design decision rules and safety validation protocols
- Quality control and manufacturing tolerance systems
- Load-calculation procedures and building-code implementations
- Software architecture and engineering decision frameworks
- Data processing and output standards used in structural component design

27. The contributions were developed through the work of engineers and technical staff associated with Qualtim, DrJ Engineering, and the Center for Building Innovation and were communicated to Paragon to develop the Paragon Truss Software. Defendants contend that Paragon does not own Defendants' contributions and that Paragon is using them without authorization.

28. The Slack communications identify what was discussed between the parties. It is not the best evidence of what was implemented in the software. The best evidence of that is the source code repository itself.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 4th day of March, 2026.

                                           */s/ Scott G. Salemi*
                                           Scott G. Salemi (SBN1118960)