UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

PARAGON COMPONENT SYSTEMS, LLC,

        Plaintiff,

v.                                      Case No. 3:25-cv-00170-wmc

QUALTIM INC., CENTER FOR BUILDING
INNOVATION LLC, DRJ ENGINEERING LLC,
INSPIRED PURSUITS LLC, KIRK GRUNDAHL,
and SUZANNE GRUNDAHL,

        Defendants.

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO COMPEL INSPECTION OF SOURCE CODE REPOSITORY

### INTRODUCTION

This motion concerns the central evidence in this case: the Paragon Truss Software source code repository. In the '170 action, Paragon seeks a declaration it owns all intellectual property embodied in the software and that Defendants contributed nothing to its authorship, architecture, or implementation. In the related '75 action, Plaintiffs assert claims for misappropriation, unjust enrichment, and injunctive relief arising from incorporation and continued use of Plaintiffs' engineering contributions within that same software. Having placed the contents of the Paragon Truss Software at the center of their claims and defenses, the parties cannot resolve those issues without examination of the software itself.

Defendants therefore requested inspection of the source code repository under Rule 34 and the Agreed Protective Orders, which provide a secure protocol for source code review. Paragon has refused to permit inspection, instead insisting Defendants identify specific portions of code before examining the repository itself. Rule 37 authorizes an order compelling that inspection.

## FACTUAL BACKGROUND

### I. THE '170 ACTION.

The '170 action is a declaratory judgment action in which Paragon seeks a ruling that it is the exclusive owner of all intellectual property embodied in the Paragon Truss Software. Paragon alleges that it owns all copyright, patent, trademark, and trade secret rights in the software.

Paragon further alleges that no Defendant wrote, modified, or contributed to the source code; that no Defendant designed any portion of the software's architecture or implementation; and that Paragon's employees alone conceived of and reduced to practice any inventions embodied in the software. The Complaint alleges that the source code and its structure constitute proprietary trade secrets maintained in a secured repository.

### II. THE '75 ACTION.

The '75 action arises from the parties' former joint venture enterprise, which was structured to integrate multiple aspects of their operations within the truss industry. The enterprise encompassed engineering development, testing programs, professionally engineered and sealed design drawings, software tools, validation systems, engineered product manufacturing, and commercialization activities within a coordinated operational framework.

The Paragon Truss Software functioned as one tool within that broader enterprise. The Amended Complaint alleges that Plaintiffs contributed engineering know-how, methodologies, and related technical systems during the course of that enterprise.

The Amended Complaint further alleges that certain of those engineering contributions were implemented within the Paragon Truss Software, retained following termination of the enterprise, and continue to operate within the software. Based on those allegations, Plaintiffs assert claims including unjust enrichment, misappropriation, and injunctive relief.

### III. REQUESTS, NOTICE OF INSPECTION, CONFERRAL, AND IMPASSE.

#### A. The '170 Action.

In the '170 action, Defendants served Requests 77 and 78 seeking source code versions sufficient to show Engineering Inputs incorporated into the Paragon Truss Software during the development and post-termination time periods, subject to the Agreed Protective Order. (Salemi Decl. ¶¶ 11-12; Ex. 6.). Paragon objected to both requests and stated that it could not respond unless Defendants first specifically identified the "Engineering Inputs" they believe were contributed to the software. (*Id.; see also* Salemi Decl. ¶¶ 13-14; Exs. 7-8.)

#### B. The '75 Action.

In the '75 action, Plaintiffs served Requests 1, 10-12 seeking production of source code, including exports of branches or paths implementing core computational models and input value tables, commit logs, and documents reflecting evaluation or integration of engineering contributions. (Salemi Decl. ¶¶ 4, 7-8; Exs. 1, 3-4.) Following written deficiency letters and a conferral, Paragon served supplemental responses, confirming that it "will not produce any portion of the code of the Paragon Truss Software." (Salemi Decl. ¶¶ 9-10; Ex. 5 at Request 11.)

#### C. Notice of Inspection and Conferral.

The Agreed Protective Orders in both actions include a source code inspection protocol set forth in ¶ 14. Under that provision, Defendants served written notice requesting inspection of the Paragon Truss Software source code repository consistent with the protocol. (Salemi Decl. ¶ 16; Ex. 9.) Paragon did not provide inspection dates. Instead, it maintained its objections, including its position that Defendants must pre-identify specific portions of code before inspection would be permitted. It also maintained the code was irrelevant in the '75 action. The parties' conferrals were unable to resolve the dispute.

## IV.  SLACK PRODUCTION.

Paragon produced selected Slack communications in response to discovery requests. Slack is a messaging platform used by the parties during the joint venture to exchange written communications, files, and recordings concerning engineering analysis, proposed changes, and operational matters. This was the primary form of communication between the parties, yet Paragon has refused to provide full access to those communications. (Salemi Decl. ¶ 24.)

From the limited materials produced, Defendants have thus far identified at least sixty intellectual-property contributions to the Paragon Truss Software. Defendants contend the contributions were developed through proprietary engineering work, empirical testing programs, and professional judgment and were provided to Paragon as part of the joint venture. (*Id.* ¶ 25.) These contributions collectively consist of:

- Structural engineering methodologies
- Testing and calibration frameworks
- Structural analysis algorithms and modeling techniques
- Design decision rules and safety validation protocols
- Quality control and manufacturing tolerance systems
- Load-calculation procedures and building-code implementations
- Software architecture and engineering decision frameworks
- Data processing and output standards used in structural component design

The contributions were developed through the work of engineers and technical staff associated with Qualtim, DrJ Engineering, and the Center for Building Innovation and were communicated to Paragon to develop the Paragon Truss Software. (*Id.* ¶¶ 25-27.) Defendants contend that Paragon does not own Defendants' contributions and that Paragon is using them without authorization. (*Id.* ¶ 27.)

In correspondence, Paragon has asserted that the Slack production addresses issues of contribution and ownership. Paragon has not produced source code, repository exports, commit logs, or version-control artifacts reflecting the contents or history of the Paragon Truss Software.

4

**ARGUMENT**

**I.    THE SOURCE CODE REPOSITORY IS DIRECTLY RELEVANT AND NECESSARY UNDER RULE 26(b)(1).**

Rule 26(b)(1) permits discovery of any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case. Where ownership, authorship, incorporation, and retention of software functionality are disputed, the source code repository is not peripheral evidence—it is the operative evidence.

In the '170 action, Paragon seeks a declaration that it exclusively owns all intellectual property embodied in the Paragon Truss Software and that Defendants did not contribute to its authorship, architecture, or implementation. Those allegations concern what is embodied in the software and how it was implemented. The repository and its version history reflect authorship, modification, structure, and integration over time. No defenses or counterclaims have been filed because the time for Defendants to answer the complaint has not yet arisen.

In the '75 action, Plaintiffs assert claims for misappropriation, unjust enrichment, and injunctive relief arising from, among other things, the alleged incorporation and continued use of Plaintiffs' engineering contributions within the Paragon Truss Software. The Amended Complaint alleges that those contributions were implemented during the joint venture, wrongfully retained following termination, and continue to operate within the software.

Those claims require determining whether Plaintiffs' alleged contributions are embodied in the current and post-termination versions of the software, whether they were modified or integrated into the codebase, and whether Paragon continues to derive benefit from their operation. Those questions turn on the contents and version history of the source code repository. Communications or business records may reflect discussion of concepts, but they do not establish whether, how, or where those concepts were implemented in executable form, or whether they

5

remain present in the software today. When the software is alleged to embody the misappropriated engineering contributions, examination of the source code repository is not merely relevant—it is the only reliable way to determine whether those contributions were implemented and remain in the system. Stated differently, the source code itself is the best evidence of what the software does.

Courts routinely compel production of source code when it bears on disputed ownership or unjust enrichment claims. In *Metavante Corp. v. Emigrant Savings Bank*, the court compelled production of proprietary source code because it could illuminate central disputed issues. 2008 U.S. Dist. LEXIS 106539, at *3–4 (E.D. Wis. May 5, 2008). Similarly, in *John C. DiStefano & goDesk, LLC v. Nordic Consulting Partners, Inc.*, this Court compelled production of source code where unjust enrichment and related intellectual property claims required examination of the software itself. 2024 U.S. Dist. LEXIS 89603, at *4–5 (W.D. Wis. May 17, 2024).

Paragon has suggested that Slack communications address contribution and ownership issues. Slack messages reflect discussions. They do not reflect the contents of the repository, the structure of the codebase, the location of implemented functionality, or the version-control history documenting authorship and modification. Whether an idea discussed in Slack was incorporated into executable software, how it was implemented, and whether it remains present in current versions are questions answered by the repository—not by communications about it.

Rule 26 does not permit a producing party to limit discovery to communications or business records when the claims place the contents of a software system itself at issue. A party is entitled to discover relevant evidence even if other forms of proof may exist. *Metavante*, 2008 U.S. Dist. LEXIS 106539, at *6. Having placed authorship, ownership, and exclusive rights in the Paragon Truss Software squarely at issue, Paragon cannot shield the repository from inspection under an existing protective order.

## II. THE REPOSITORY IS PROPORTIONAL TO THE NEEDS OF THE CASE.

Rule 26(b)(1) requires that discovery be proportional to the needs of the case, considering the importance of the issues, the parties' relative access to information, and whether the burden outweighs the benefit. Courts apply these same proportionality principles to source code. *DiStefano*, 2024 U.S. Dist. LEXIS 89603, at *3-4.

The issues here concern the ownership and continued use of intellectual property embodied in software. The repository is uniquely within Paragon's possession, custody, and control. Defendants have no alternative access to the executable implementation or its version history. Nor has Paragon articulated a specific burden associated with secure inspection of the repository. It must maintain the software and its history for its own use. It is not required to produce the software; it is simply being asked to allow inspection.

Generalized assertions that source code is proprietary or confidential are also insufficient. *Metavante* rejected similar objections because confidentiality concerns were adequately addressed by a protective order. 2008 U.S. Dist. LEXIS 106539, at *4-6. As such, concerns regarding competitive harm do not outweigh demonstrated need. *Id.* at *5-6.

## III. THE PROTECTIVE ORDER FULLY PROTECTS PARAGON AND CONTEMPLATES COMPLETE, SEARCHABLE INSPECTION.

Paragon's confidentiality concerns do not justify withholding the source code repository. The Court has already entered an Agreed Protective Order upon a finding of good cause, expressly recognizing that this dispute involves "valuable proprietary and confidential intellectual property, including software source code." ('170 ECF #110-1, '75 ECF #45-1 at 1-2.) The Order defines "Source Code" broadly and creates a heightened designation—"Highly Confidential – Source Code"—for proprietary source code material. (*Id.* ¶ 13.)

Paragraph 14 establishes a detailed inspection protocol. Source code must be produced for review on a secured computer in a secured room, without Internet or network access. Electronic copying is prohibited. Only limited paper excerpts may be requested, and access is restricted to outside counsel and disclosed testifying experts. (*Id.* ¶ 14.) These protections are more than sufficient to safeguard proprietary interests. Courts routinely compel source code production under comparable protocols. *Metavante*, 2008 U.S. Dist. LEXIS 106539, at *4-6.

Nothing in the Protective Order requires a receiving party to identify specific files or portions of code before inspection. Paragraph 14 provides that source code shall be made available in a format allowing it to be "reasonably reviewed and searched." ('170 ECF #110-1, '75 ECF #45-1 ¶ 14.) The Order contemplates inspection first; it does not impose a pre-identification requirement as a condition precedent to review. If Paragon had sought to limit access to particular modules or portions of the source code repository, it could have brought those issues to Defendants' and the Court's attention when it participated in the drafting of the Protective Order.

Paragon's position is also circular. It asserts that it "cannot respond" to Requests 77 and 78 unless Defendants first identify specific Engineering Inputs within the source code. (Salemi Decl. ¶¶ 11-12; Ex. 6.) Yet Paragon alone possesses the repository, its architecture, version history, and commit metadata. If Paragon cannot identify where such Engineering Inputs reside within its own codebase, Defendants cannot reasonably be expected to identify file paths or modules without inspection. Rule 26 does not condition discovery on prior technical certainty. Inspection precedes narrowing—not the reverse.

Nor has Paragon produced repository structure, architectural documentation, or version-control metadata sufficient to enable meaningful narrowing in advance. Production under ¶ 14 does not require copying, exporting, or transferring the repository outside Paragon's control. It

requires only that the existing repository be made available on a secured computer for inspection. The burden of review falls on Defendants and their retained expert—not on Paragon. Paragon necessarily maintains and accesses the same repository in the ordinary course of its own software development. Making that repository available for inspection under the Court's Protective Order therefore imposes no new technical burden.

Paragon's claims and defenses rely on knowledge of the contents of its own source code repository. Defendants cannot meaningfully respond to technical assertions about authorship, implementation, or functionality while being denied access to that repository. Rule 26 does not permit one party to rely on technical knowledge of a software system while preventing the opposing party from examining that system under an existing protective order.

Although Defendants have identified certain engineering contributions based on Slack communications, those contributions do not correspond to isolated files or discrete modules whose locations are known in advance. Modern software systems are architectural and interdependent. Implementation of engineering logic may span multiple modules, configuration files, and revision histories. Such materials are necessary to understand how software functionality is implemented, how particular features evolved over time, and whether specific contributions appear in or were incorporated into the software. The requests and inspection notice were designed to permit meaningful technical review of the Paragon Truss Software and its development history. Without access, it is not possible to evaluate authorship, development chronology, or whether particular engineering contributions were implemented within the software. (Salemi Decl. ¶¶ 20-23.)

Finally, ¶ 14 requires that the code be produced in a format allowing it to be reasonably reviewed and searched. ('170 ECF #110-1, '75 ECF #45-1 ¶ 14.) Defendants do not seek to circumvent the security restrictions of the Order; they seek inspection consistent with it.

## IV. RULE 37 RELIEF IS WARRANTED.

Rule 37(a)(3)(B)(iv) authorizes a motion to compel where a party fails to permit inspection requested under Rule 34. Defendants served Requests Nos. 77 and 78 seeking access to the source code versions subject to the Agreed Protective Order and thereafter noticed inspection under ¶ 14 of that Order. Paragon has refused to permit inspection, conditioning access on a pre-identification requirement not found in Rule 34 or the Protective Order. An order compelling inspection is therefore appropriate.

## CONCLUSION

Defendants respectfully request that the Court order Paragon, by a date certain:

1. To make available, on a secured computer consistent with ¶14, the complete source code repository, including repository tree and version-control history (branches, tags, and commit logs);

2. To provide the repository in a format that permits it to be reasonably reviewed and searched, including standard search and code-navigation functionality consistent with ¶ 14; and

3. To provide inspection dates within 5 business days of the Court's order.

Dated this 4th day of March, 2026.

                                  **MURPHY DESMOND S.C.**
Attorneys for Qualtim, Inc., Center for Building Innovation, LLC, DrJ Engineering, LLC, Inspired Pursuits, LLC, and Suzanne Grundahl.

Electronically Signed By: */s/ Scott G. Salemi*
    Scott G. Salemi
    State Bar Number: 1118960
    33 East Main Street, Suite 500
    Madison, WI 53701-2038
    Phone: (608) 257-7181
    Fax: (608) 257-2508
    ssalemi@murphydesmond.com

**KIRK GRUNDAHL**
Pro Se Defendant

Electronically Signed By: */s/ Kirk Grundahl*
    Kirk Grundahl
    1130 Fairway Court
    Lake Mills, WI 53551
    Phone: 608-217-3713
    kgrundahl@qualtim.com