**IN THE UNITED STATED DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

PARAGON COMPONENT SYSTEMS,
LLC,

      Plaintiff,

 v.

QUALTIM, INC., CENTER FOR BUILDING
INNOVATION, LLC, DRJ ENGINEERING,
LLC, INSPIRED PURSUITS, LLC, KIRK
GRUNDAHL, and SUZANNE GRUNDAHL,

      Defendants.

Case No. 3:25-cv-00170-wmc

---

**PLAINTIFF PARAGON COMPONENT SYSTEMS, LLC'S RESPONSE TO
DEFENDANTS' MOTION TO COMPEL**

---

## I.    INTRODUCTION

This declaratory judgment action involves one narrow legal issue: ownership of the
Paragon Truss Software. Though Defendants received hundreds of thousands of dollars for
engineering consulting services that they provided in connection with Paragon's development of
its software, Defendants now claim these consulting services constitute protectable trade secrets
and other intellectual property that make them owners of the Paragon Truss Software. Paragon
vigorously denies those assertions and maintains that it is the sole and exclusive owner of its
software.

Only after this Court's order compelling a response to Paragon's discovery, Defendants
identified 60 alleged engineering contributions that they rely upon to support their ownership
claim. The parties have engaged in substantial discovery related to these alleged contributions,
including Paragon's production of Slack messages between Paragon and Defendants' alleged

1
41045385v2

contributors. Now that the Slack messages have been produced, Defendants have turned their attention to Paragon's source code.

Paragon acknowledges that its source code, in some capacity, may be relevant to the software authorship and ownership issues at the center of this litigation. However, Defendants' request to compel production of Paragon's entire source-code repository, without limitations, is woefully overbroad, unduly burdensome, and disproportionate to the needs of this case. Paragon has made multiple offers to produce a set of Paragon's source-code files that are relevant to this case, namely all of the source-code files that are actually compiled into the executable version of the Paragon Truss Software used by Paragon's customers, but Defendants continue to take an unreasonable "all or nothing" position.

Defendants' motion to compel is also premature. Defendants made no effort to meet and confer with Paragon about source-code production before filing this motion, despite Paragon's repeated offers and the Court's clear directive that "[a] party may not file a motion regarding discovery until that party has made a good faith attempt to resolve the dispute." (Doc. 106 at 4).

As detailed below, the Court should deny Defendants' request to compel production of the full source-code repository and, instead, allow Paragon to produce the limited source code files consistent with its proposal to Defendants.

## II.    BACKGROUND

### A. This Action Is the Only Case Where Paragon's Source Code Has Relevance.

The Parties' have two cases before this Court: this case (3:25-cv-00170-wmc, "the '170 Action") and Defendants' affirmative case (3:25-cv-00075-wmc, "the '75 Action"). These cases are distinct. The present case involves only Paragon and the Defendants and one narrow legal issue: ownership of the Paragon Truss Software. By contrast, Defendants' affirmative case—the '75 Action—involves several additional parties (including a customer of Paragon) and is premised

2
41045385v2

upon contractual issues related to an alleged partnership dispute and breach of an alleged confidential business model. ('75 Action, Doc. 39) As Defendants have represented in multiple court pleadings, the Paragon Truss Software is merely "a tool used in the partnership" and the '75 Action "can be adjudicated independently from the ['170 Action]." (*Id.*; *see also* '75 Action, Doc. 38). As argued in Paragon's opposition to Defendants' duplicative motion to compel source code filed in the '75 Action, this present case is the only one where Paragon's Truss Software is directly at issue and thus the only one where its source code arguably has any relevance. Yet Defendants have focused their efforts to discover Paragon's source code almost exclusively in the '75 Action. Paragon objected to Defendants' source-code demands as having no relevance in the '75 Action and maintains this position in its opposition to Defendants' duplicative motion to compel filed there.

  **B.  Discovery in This Case Is Properly Limited to the Sixty Contributions Alleged to Form the Basis of Defendants' Ownership Claims.**

In December 2025, the Court conducted a discovery hearing to address then-pending motions to compel, including Paragon's motion to compel the Defendants to identify the specific intellectual property that they contend is the basis of their ownership claims to the Paragon Truss Software. (Doc. 117; *see also* Doc. 138, 139). Defendants were compelled to respond to a revised interrogatory asking them to identify each alleged intellectual-property contribution that forms the basis of their alleged ownership claims to Paragon's software. In response, Defendants identified sixty alleged engineering contributions. Discovery has since proceeded on this basis, including Paragon's production of Slack messaging files related to those 60 alleged contributions.

**C.    The Source Code Requests in This Case Are Overbroad and Disproportional to the Needs of This Action.**

To date, Defendants have served Paragon with *87* document requests, but *only two* of these requests seek production of Paragon's source code. *See* Doc. 142-6 at Request for Production Nos. 77-78. Paragon properly objected to those two requests because they were overbroad as written. (*Id.*). For instance, Paragon objected to Defendants' efforts to discover all "[s]ource code versions sufficient to show Engineering Inputs incorporated into the Paragon Truss Software…," in relevant part, because Defendants broadly defined the term "Engineering Inputs" to encompass all engineering-related information in the source code, not just the 60 alleged contributions that Defendants identifies as the basis of their ownership claims to Paragon's software.

In a letter dated February 12, 2026, Defendants' counsel claimed that issues related to source-code production "can be addressed through non-source-code materials, including design documentation, version histories, change logs, validation records, internal analyses, and related communications" and "[t]he Protective Order provides procedures governing *source code review, if and to the extent such review becomes necessary*." (Doc. 142-7 at 5-6) (emphasis added).

Paragon responded on February 25, noting issues with the scope of Defendants' source-code requests but nonetheless representing it was "willing to meet and confer with Defendants with an eye towards identifying a reasonable, proportional, and workable approach with respect to producing documents sufficient to show which, if an, of the 60 alleged engineering contributions identified by Defendants were incorporated into the Paragon Truss Software." (Doc. 142-8 at 4).

The next day, without any effort to confer with Paragon about the "non-source-code materials" previously referenced or about tailoring source-code production to Defendants' alleged contributions, Attorney Salemi sent Paragon a demand that Paragon make its full source code repository—"*all relevant versions of the code at issue during the relevant time period (2015 to*

*present)*"—available for inspection in both the '75 and '170 Actions. (Doc. 142-9) (emphasis added). Paragon's counsel promptly responded, reiterating Paragon's willingness to meet and confer (as Attorney Salemi initially proposed) regarding production of the non-source-code materials and relevant portions of Paragon's source code. (Doc. 142-10 at 5). Confusingly, Mr. Salemi then inaccurately claimed Paragon that "declined [Defendants'] proposal" to streamline the source-code production process and wrongly stated that "Paragon now refuses to provide access to its source code unless Plaintiffs first pre-identify specific portions for inspection." (*Id*. at 3-4).

Paragon again reiterated its willingness to "meet-and-confer to discuss a reasonable, proportional, and workable approach to identifying and producing relevant portions of source code – i.e., portions which pertain to your clients' alleged engineering contributions that form the basis of their ownership claim in the software. *We do not agree to provide the entire code base, consistent with your clients' previous request for only relevant portions pertaining [to] their alleged engineering contributions*." (*Id*. at 2-3) (emphasis added). Paragon asked Defendants to "let us know when you are available to have such a meeting" and concluded with a promise to "prepare a source code computer based on the parties' agreement as to what code should be installed on it." (*Id*.).

Two days later, without conferring with Paragon's counsel, Attorney Salemi declared the parties were "at an impasse" on the source-code production issue. (*Id*. at 1). Defendants then filed the pending motions to compel, changing positions from their prior demands by asking the Court to order Paragon to produce its *entire* source-code repository for the Paragon Truss Software.

## II.    LAW AND ARGUMENT

Pursuant to Rule 26, "discover sought must not only be relevant, but it must be proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Motorola Solutions, Inc. v. Hytera Comms. Corp.*, 365 F.Supp.3d 916, 924 (N.D. Ill. 2019) (internal citations omitted); Fed. R. Civ. P. 26. "In other words, relevance alone does not translate into automatic discoverability under Federal Rule of Civil Procedure 26." *Id*. "An assessment of proportionality is essential." *Id*.

"The discovery rules are not a ticket to unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." (*Id*. at 925). "Parties are entitled to a reasonable opportunity to investigate the facts and no more." (*Id*.)

A.    **Production of the Full Source-Code Repository Is Not Proportional to the Needs of This Case.**

Defendants seek to compel production of Paragon's entire software source-code repository, without making any real effort to demonstrate how such a broad request is proportional to the needs of this case. (Doc. 144 at 7). Defendants devote only a single paragraph of their moving brief to proportionality, and do not explain why Paragon's entire source-code repository from 2016 (when Paragon was formed) to the present is needed. (*Id*.). That's because Defendants know it is not.

Defendants' request to inspect the entirety of Paragon's highly-confidential, trade-secret source code is woefully overbroad and unnecessary. Paragon uses a software-development system that involves thousands of frequent updates and modifications to the Paragon Truss Software. *See e.g.*, Declaration of John Holland, filed contemporaneously with this Opposition ("Holland Decl."). Paragon's team of software developers consistently writes new source code that is merged into a production version of the source code. (*Id*. at ¶ 6). Each time source code changes are merged, the production source code is recompiled to create a new executable version of Paragon's software. (*Id*. at ¶ 7).

After nearly a decade of development of the Paragon Truss Software, Paragon has had over 12,000 different compilable versions of its production source code; most of those versions contain more than 500,000 lines of code. (*Id*. at ¶ 8). Additionally, there are thousands of other non-production code changes that were never merged into the production source code or compiled into the executable version of the Paragon Software made accessible to users. (*Id*.)

362 released versions of the Paragon Software have been publicly documented on Paragon's website. (*Id*. at ¶ 9). These release numbers are for purposes of informing users when Paragon has made more significant updates to the executable Paragon Software. (*Id*.) However, Paragon is continuously merging updates into its production source code and recompiling the Paragon Truss Software without constantly incrementing the software's public release number; otherwise, there would easily be more than 1,000 numbered release versions.    (*Id*.) In addition, Paragon software developers often work on source-code changes that are never implemented in the Paragon Truss Software or are subsequently undone or further altered by later changes. (*Id*. at ¶ 11).

Accordingly, given the expanse and breadth of Paragon's software repository, and the operational technicalities, it is simply not reasonable or even possible to inspect the files in every version of the Paragon source code on a laptop computer pursuant to the requirements of the Protective Order. (*Id*. at ¶ 10). It is further unclear why Defendants would need access to Paragon's source code files that were never implemented in the Paragon Truss Software at all. Such source-code files that have never been deployed, though requested by Defendants, are clearly irrelevant to the issues in this case and merely present an unwarranted production burden.

41045385v2

**B.      Production of a Single Version of Source-Code Files Actually Deployed in the Executable Paragon Truss Software Is Proportional to the Needs of This Case**

Paragon's production of source code, if any, should be consistent with Paragon's proposal to Defendants: "***Paragon agrees to prepare a source code laptop with all of the source code files that are compiled into its currently deployed version of the executable Paragon software application that is made available to customers***." *See* Declaration of Stephen Kabakoff, Exhibit 1, March 16, 2026 email from Paragon's counsel to Defendants. This is Paragon's second offer to produce source-code to Defendants, and it is even more generous than the first offer to produce source-code files related to the 60 alleged intellectual property contributions.

On March 17, 2026, Defendants rejected Paragon's source-code production offer and asserted that production of Paragon's currently-deployed software version is inadequate because it would not show the complete history of changes to the software over time. Defendants demand production of the full "version control history, commit logs, and repository branches" of the source code together with various technical documentation and review tools. (*See* Kabakoff Declaration, Exhibit 2, Defendants' March 17, 1016 Memorandum Regarding Source Code Review).

Defendants' refusal of Paragon's source-code proposal is unreasonable on its face. It requires Paragon to provide all commit logs, version histories, and repository branches for more than 12,000 source-code changes made over the life of the Paragon source code. As noted above, Paragon's software developers often work on source-code changes that are never implemented in the Paragon Software or are subsequently undone or further altered by later changes. (Holland Decl. at ¶ 11).  Producing all 12,000+ source-code change "commits" and each of their "histories" across every repository "branch" is not only impractical, but it also would be difficult to track which original changes actually found their way into the production codebase of the Paragon Software. (*Id.*) To the extent Defendants wish to show Paragon is using their alleged intellectual

property contributions, it is only the source-code changes that *have been merged into the production source code and compiled into the executable Paragon Software that were actually implemented* that would be relevant. That is precisely what Paragon proposed to produce—that is, a version of the software that is actually deployed to, and used by, Paragon's customers.

On March 18, 2026, Paragon further amended its offer to allow Defendants to identify which particular version (by date) of a complete set of compiled production source-code files they would like to inspect corresponding to an executable Paragon Truss Software application that has been made available to customers. Paragon also agreed to produce additional non-source code materials and provide an integrated development environment for the source-code review. (*See* Kabakoff Declaration, <u>Exhibit 3</u>, March 18, 2026, email from Paragon's counsel to Defendants).

## C. Defendants Failed to Meet and Confer on the Subject of Source-Code Production, Despite Multiple Offers to Do So.

When it comes to the subject of proprietary source-code production for discovery, it is important for parties to "approach these tasks cooperatively from a place of reasoned practicality." *Distefano v. Nordic Consulting Partners, Inc.*, 2024 WL 2252407 at *1 (W.D. Wis. May 17, 2024). Defendants have not acted cooperatively, instead filing a premature motion to compel without engaging in the required meet and confer process and without substantively responding to Paragon's first source-code production offer.

Defendants initially claimed source code issues could "be addressed through non-source-code materials" and acknowledged issues related to inspection of the actual source code files could be addressed "if and to the extent such review becomes necessary." (Doc. 142-7 at 5-6). Defendants then unexpectedly changed course, demanding production of Paragon's entire source code repository from 2015 to present. (Doc. 142-9). Before this motion was filed, Paragon maintained a willingness to meet and confer with Defendants regarding a reasonable, proportional,

and workable approach regarding source code production, and even made an offer for production of source code files related to Defendants' sixty alleged contributions at issue in this case. (Doc. 142-8 at 4; Doc. 142-10 at 2-3, 5).

On March 4, 2026, after refusing to acknowledge Paragon's requests to meet and confer on this issue, and without responding to Paragon's offer to produce source-code files related to their 60 alleged intellectual-property contributions, Defendants proceeded with filing the instant motion to compel. Defendants' motion is premature and violates the Court's Preliminary Pretrial Conference Order, which expressly provides "[a] party may not file a motion regarding discovery until that party has made a good faith attempt to resolve the dispute" and "the court requires all parties to a discovery dispute to attempt to resolve it quickly and in good faith." (Doc. 106 at 4).

Defendants' race to the courthouse, without any effort to meet and confer regarding the scope of source-code production and without responding to Paragon's outstanding source-code production offer, should be admonished. Paragon respectfully asks the Court to consider cost shifting and other appropriate sanctions under Rule 37, as cautioned in this Court's Preliminary Pretrial Conference Order. (*Id.*)

## III.     CONCLUSION

For the reasons above, Paragon respectfully submits Defendants' Motion to Compel should be denied in its entirety, as Defendants' request for production of Paragon's full source-code repository is overly broad and disproportional to the needs of this case. Paragon further asks the Court to consider sanctions against Defendants under Rule 37, including an award of Paragon's attorneys' fees incurred in responding to this premature motion.

Dated: March 18, 2026

/s/James T. Williams

Stephen E. Kabakoff, GA Bar No. 143164,
*appearing pro hac vice*
MILLER & MARTIN PLLC
1180 W. Peachtree Street NW, Suite 2100
Atlanta, Georgia 30309
Telephone: (404) 962-6100
Stephen.Kabakoff@millermartin.com

James T. Williams, TN BPR 16341
Erin E. Steelman, TN BPR 38463
MILLER & MARTIN PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402-2289
Telephone: (423) 756-6600
James.Williams@millermartin.com
Erin.Steelman@millermartin.com

/s/Tamar B. Kelber
Tamar B. Kelber, SBN 1101802
Joshua S. Greenberg, SBN 1107959
Gass Turek LLC
241 North Broadway, Suite 300
Milwaukee, WI 53202
Telephone: (414) 223-3300
kelber@gassturek.com
greenberg@gassturek.com

**Attorneys for Plaintiff Paragon Component Systems, LLC**

41045385v2

## CERTIFICATE OF SERVICE

I certify that on March 18, 2026, a copy of the foregoing **PLAINTIFF PARAGON COMPONENT SYSTEMS, LLC'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL** is being served on all counsel of record via email.

MILLER & MARTIN PLLC

*/s/James T. Williams*

*Counsel for Plaintiff Paragon Component Systems, LLC*

41045385v2