**IN THE UNITED STATED DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

PARAGON COMPONENT SYSTEMS,
LLC,

      Plaintiff,

  v.

QUALTIM, INC., CENTER FOR BUILDING
INNOVATION, LLC, DRJ ENGINEERING,
LLC, INSPIRED PURSUITS, LLC, KIRK
GRUNDAHL, and SUZANNE GRUNDAHL,

      Defendants.

Case No. 3:25-cv-00170-wmc

---

**PLAINTIFF PARAGON COMPONENT SYSTEMS, LLC'S RESPONSE TO
DEFENDANTS' MOTION TO CONSOLIDATE**

---

Plaintiffs' Motion to Consolidate attempts a *third* bite at the same apple, repeating the same request to consolidate two cases before this Court, namely, Nos. 3:25-cv-00075-wmc ("the '75 Action") and 3:25-cv-00170-wmc ("the '170 Action"). Nothing has changed on this third request to alter the Court's decision. If anything, given the progress in both cases since the last request, consolidation at this point would be more unwieldy than before. Furthermore, Plaintiffs' motion is premised on overgeneralizations and mischaracterizations of the underlying facts and legal issues, is unsupported by record citations, and is contradicted by Plaintiffs' prior representations to the Court.

Plaintiffs' request to designate the '170 action as the lead case makes their purpose clear – thwart this earlier-filed, straightforward action by enveloping it into the '170 Action. Paragon– and its four co-defendants in the '75 Action who are not parties to the '170 Action–would be severely prejudiced by consolidation. Accordingly, the Court should decline Plaintiffs' invitation to revisit its prior decisions.

1

I.    **INTRODUCTION**

Plaintiffs' consolidation motion omits relevant background concerning the different procedural postures of the cases. Paragon filed the '170 Action on July 23, 2024, in the Eastern District of Tennessee. (*See* E.D. Tenn. Docket No. 1:24-cv-246) Over six months later, Plaintiffs filed the '75 Action in the Circuit Court of Dane County, Wisconsin. (*See* W.D. Wis. Docket No. 3:25-cv-75 at Doc. 1-2) (the "'75 Action"). Paragon (and its' co-defendants) removed the '75 Action to federal court (*Id*. at Doc. 1), and the cases proceeded separately until Plaintiffs successfully moved to transfer the '170 Action to this district in March 2025. (*See* E.D. Tenn. Docket. No. 1:24-cv-246 at Doc. 73). Plaintiffs' Motion ignores this history and blurs the clear distinctions between the two pending cases without any support from or citations to the record.[1] That's because, when compared, the operative pleadings plainly demonstrate that these two cases raise different legal issues, involve different parties, and have properly proceeded on separate tracks for over a year.

### A.  *The '170 Action – Software Ownership Case*

On July 23, 2024, Paragon filed this case (the "'170 Action") in the Eastern District of Tennessee. (*See* E.D. Tenn. Docket No. 1:24-cv-246, at Doc. 1). The case ensued in Tennessee for almost eight months until it was ultimately transferred, at the request of Plaintiffs, to this Court. (*Id*. at Docs. 36 and 73).

The '170 Action is **between only Paragon and Plaintiffs** and **involves one narrow legal issue**: ownership of the Paragon Truss Software. (*See* '170 Action at Doc. 1). Paragon filed its

---

[1] The timing of Plaintiffs' motion is curious. Plaintiffs gave Defendants just two days to respond to their email concerning consolidation. (Doc. 148 at 2). Plaintiffs then filed their consolidation motions in both cases one day after they filed identical motions to compel source code from Paragon in both cases. (Doc. 142; *see* '75 Action at Doc. 91). As Paragon argued in opposing those source-code motions, Plaintiffs' duplicative motions to compel are just further attempts to try to blur the legal and factual distinctions between the two cases.

declaratory-judgment complaint after Kirk Grundahl and his companies (the Plaintiffs in the '75 Action) began making unfounded ownership assertions to the Paragon Truss Software. (*Id*. at ¶ 7). Paragon's lawsuit stems directly from its engineering consulting relationship with Kirk Grundahl and his companies, not any other business relationship. (*Id*. at ¶¶ 29-37, 52, 117-122). This engineering consulting relationship was for the sole purpose of verifying and testing the accuracy of the Paragon Truss Software, and Mr. Grundahl and his companies were paid significantly for their consulting services. (*Id*. at ¶¶ 29-37). Paragon seeks only "a declaratory judgment that it is the sole and exclusive owner of all right and interest in and title to its Paragon Truss Software including all intellectual property therein." (*Id*. at ¶¶ 8, 135, 136). The issue in the '170 Action is narrow: it involves one specific business relationship that was instituted for one narrow purpose, and seeks only declarations regarding ownership of the Paragon Truss Software and its intellectual property.

### B. The '75 Action – Business Model Case

On January 2, 2025, Kirk Grundahl and his companies (the Defendants in the '170 Action) elected to file a separate lawsuit against Paragon and others in the Circuit Court of Dane County, Wisconsin. (*See* '75 Action at Doc. 1-2). Paragon and its co-defendants removed the case to federal court (an action that Mr. Grundahl and his companies initially opposed). (*Id*. at Docs. 1 and 21).[2]

In stark contrast, the '75 Action stems from a business partnership dispute involving an alleged confidential business model. ***Six plaintiffs*** assert ***fourteen causes of action*** for contractual breaches and other tortious conduct against ***five defendants***. *See* Plaintiffs' Amended Complaint (*See* '75 Action at Doc. 39). The Amended Complaint concedes that "[t]he core of this case is a

---

[2] Plaintiffs maintained that the case should be remanded to Wisconsin state court until March 6, 2026 – the day they filed their consolidation motion. (*See* '75 Action at Docs. 94 and 96).

business model ("Developed TS/IP") that was not fully executed due to a number of civil violations…This case is about enforcing the joint venture between remaining parties." (*Id*. at 1). Plaintiffs' Amended Complaint states *157 allegations* that purport to explain the business relationship/model between *eleven* parties and contract-based violations that occurred. (*See e.g.*, Doc. 39). Only *thirteen* of those allegations even reference software at all. (*Id*. at ¶¶ 37, 39, 54, 55, 73, 92, 95, 127, 137, 139, 143, 147, 148).

Plaintiffs' Amended Complaint highlights the differences between the two cases (contrary to the present Motion):

> There is currently a case recently transferred to the Western District of Wisconsin from the Eastern District of Tennessee, wherein Paragon is seeking a Declaratory Judgement as to the authorship and ownership of the software which is a tool used in the partnership. *See Paragon Component Systems, LLC v. Qualtim, Inc., et al.*, Western District of Wisconsin Case No. 3:25-cv-00170-wmc. ***This case can be adjudicated independently from the Declaratory Judgment case. Even if Paragon prevails in the Declaratory Judgment case and the court finds that Paragon is the sole author and owner of the software ("IP-LLC Software") at issue,*** actual and consequential damages have already occurred and continue to occur due to the civil violations detailed herein.

(*Id*. at 1-2) (emphasis added).

In opposing Paragon's Motion to Dismiss ('75 Action at Doc. 28), Plaintiffs further characterized the nature of this action, representing that "[i]t is crucial to identify the ***two distinct items at issue here: the Paragon Truss software ("IP-LLC Software") and the Business Model, ("Developed TS/IP")***." (*See* '75 Action at Doc. 58 at 4) (emphasis added). Plaintiffs explained "[t]he background facts in the [Amended] Complaint provide the setting for the partnership and relationship between the entities and individuals in this case," and this case is "not strictly about the IP-LLC software alone." (*Id*. at 4-5). Plaintiffs also represented that "[t]he claims in the [Amended] Complaint…allege damaging wrongful conduct arising from Defendant's actions other than the unauthorized use and distribution of the IP-LLC software…"–i.e., the opposite of

4

what Plaintiffs now argue to support their consolidation motion. (*Compare* '75 Action at Doc. 58 at 4-5; Doc. 95 at 2, 6).

### C.  Prior Requests for Consolidation

Plaintiffs have presented the same consolidation issue to the Court on two prior occasions. First, during the initial case management conference and in the Rule 26(f) report, Plaintiffs' prior counsel proposed consolidation. After hearing argument, the Court declined to consolidate the cases and, instead, put them on similar (but slightly different) schedules. (*See* '170 Action at Doc. 106; '75 Action at Doc. 47). The '170 Action, Paragon's first-filed, narrower declaratory-judgment action, is scheduled for dispositive motions and trial first; the '75 Action, the later-filed business-model case involving significantly more claims and parties, proceeds to trial a few months later. (*Id.*).

Second, during a discovery hearing in the '170 Action on December 10, 2025, Kirk Grundahl (in his *pro se* capacity) argued his motion to stay Paragon's first-filed '170 Action in favor of the later-filed '75 Action and ultimately requested consolidation of the cases. (Doc. 139). In short, Mr. Grundahl asked the Court to stay the '170 Action so that the '75 Action (his affirmative case) could proceed and/or to consolidate the two cases because, he argued, the '75 Action "will solve everything." (*Id.* at 50-51). The Court declined Mr. Grundahl's request. (*Id.*) Since then, discovery has proceeded separately in the two cases.  Where appropriate, the parties have coordinated between the two cases, for example adopting parallel protective orders and coordinating overlapping discovery.  No party has claimed that this approach has created any inefficiencies, duplication or other concerns.

## II.    LAW AND ARGUMENT

Pursuant to Federal Rule of Civil Procedure 42(a), "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at

issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." "The rule was designed and intended to encourage . . . consolidation of matters that are one and the same, and touch [] each defendant with exactly the same effect where possible." *Wyngaard v. Woodman's Food Mkt., Inc.*, No. 19-CV-493-PP, 2022 WL 889384, at *1 (E.D. Wis. Mar. 25, 2022) (cleaned up) (quoting *Unites States v. Knauer*, 149 F.2d 519, 520 (7th Cir. 1945)).

"District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases." *Hall v. Hall*, 138 S. Ct. 1118, 1131 (2018). "Courts should decline to exercise their discretion to consolidate if consolidation would cause confusion or prejudice." *Wyngaard,* 2022 WL 889384, at *1 (collecting cases).

Despite identifying no changes in circumstance or other relevant developments, Plaintiffs now ask this Court for a third time to consolidate the two cases and designate their affirmative case, the later-filed '75 Action, as the "lead case." (Doc. 149 at 8). For multiple reasons, the Court should decline to consolidate these cases.

### A.  The '75 Action and the '170 Action Are Substantively Distinct.

Plaintiffs spend much of their opening brief trying to fabricate overlap between the two actions. Tellingly, Plaintiffs' arguments are not supported by record citations. (Doc. 149 at 2-4). This is perhaps because the actions involve different subject matters, different parties, and vastly different legal claims. The '75 Action is a partnership dispute premised on an alleged business model purportedly involving eleven parties that each played a distinct role in that model and asserts *fourteen* contractual and tort claims seeking to recover monetary damage. (*See, e.g.*, '75 Action at Doc. 39 at 1-4, 6). The '170 Action, in contrast, is a software ownership dispute involving Paragon and Plaintiffs and merely seeks declaratory judgment concerning the ownership interests between them. (*See, e.g.*,'170 Action at Doc. 1).

Plaintiffs contend "[d]iscovery in [the '75] [A]ction concerns overlapping aspects of the

6

development history, technical materials, communications, and intellectual property contributions that form the factual predicate for the ownership dispute in the '170 declaratory judgment action." (Doc. 149 at 3). This contradicts the Rule 26(f) reports jointly drafted and filed in the two cases, which clearly distinguish the relevant discovery topics in both cases. (*Compare* '75 Action, Doc. 44 at 4-5 (multiple topics addressing the alleged business model) *with* '170 Action, Doc. 103 at 4 (multiple topics addressing ownership of the Paragon Truss Software)). Furthermore, Plaintiffs' Amended Complaint in the '75 Action expressly contends the Paragon Truss Software is "merely a tool used in the partnership," "[t]his case can be adjudicated independently from the Declaratory Judgment case," and "[t]his case is about enforcing the joint venture between remaining parties." ('75 Action at Doc. 39 at 1-2).

Plaintiffs' Motion argues that "[b]oth [cases] arise from the same long-term business relationship and coordinated development enterprise…" (Doc. 149 at 5). This statement is incorrect. The '170 Action only concerns one business relationship: the engineering consulting relationship exclusively between Paragon and Plaintiffs in conjunction with development of the Paragon Truss Software (*see* '170 Action, Doc. 1 at ¶¶ 29-37, 52, 117-122). The '75 Action is, by Plaintiffs' own allegations, more broadly premised on a "business model" allegedly underway since 2009 that involves more parties who each played a distinct role in the alleged joint venture. (*See* '75 Action at Doc. 39 at 1-6). The '75 Action includes Clearspan Component Systems, Inc., a *customer* of Paragon and a *user* of Paragon's software, and other parties (including Rob Eason and James Holland, officers at Clearspan, and the Estate of Dan Holland) who were not directly involved in the development of Paragon's software. For instance, Clearspan has no ownership interest in the Paragon Truss Software and, thus, does not have any interest in the outcome or litigation of the software-ownership claims at issue in the '170 Action. (*See* '170 Action at Doc. 51-20).

Plaintiffs' contention that "[b]oth cases require review of overlapping source code history, Slack communications and development records, engineering and testing documentation, and testimony from core participants concerning the structure and operation of the enterprise" is also wrong. (Doc. 149 at 6). As Paragon emphasized in opposing Plaintiffs' motion to compel source code ('75 Action at Doc. 100), Paragon's source code is irrelevant to the allegations and legal claims presented in this business-model case. Likewise, Slack communications, development records, and other documents related exclusively to development of the Paragon Truss Software in the '170 Action are not relevant to the breach-of-contract issues and other business-model claims at issue in the '75 Action. Paragon's co-defendants in the '75 Action–Clearspan, James Holland, Rob Eason, and the Estate of Daniel Holland–played no direct role in the development of the Paragon Truss Software. Any software development documents, if relevant, would only be produced to Plaintiffs in the '170 Action, where the engineering consulting relationship is directly at issue.  And even if there were overlap, consolidation is not required for counsel to review the same documents once for purposes of both cases.

At best, there is one commonality between the two cases: the Paragon Truss Software. But even that shows the differences between them – it is the *core* of the '170 Action, as ownership of that software is the only issue presented for resolution. But in the '170 Action, it is alleged to be merely "a tool used in the partnership" that is *distinct* from the business model.  ('75 Action at Doc. 39 at 1-2; Doc. 58 at 4).  Plaintiffs' admissions to this Court about differences between the cases should not be ignored.  And "[t]he mere fact that a common issue is present does not require consolidation of the cases, particularly if the issue it not a central issue…" *Kendzierski v. Corey*, 1985 WL 5176, at *1 (N.D. Ind. June 28, 1985).

Paragon also respectfully submits that at least two summary-judgment motions, focused on entirely different legal issues, will be needed to adjudicate the dispositive legal issues in the

8

different cases. In the '170 Action, Paragon anticipates filing a narrow summary-judgment motion addressing ownership of the Paragon Truss Software and the propriety of Mr. Grundahl's (and his business entities') ownership assertions. In the '75 Action, Paragon anticipates filing a completely different dispositive motion, addressing Plaintiffs' contract and tort claims and the alleged business model among many parties (not only Paragon and Plaintiffs) underlying all fourteen claims in that case. The two cases therefore involve distinct legal issues that would not benefit from consolidation.

For the same reasons, a consolidated trial would be unwieldy, likely lead to significant confusion, and prejudice all parties in the two cases.  It would be difficult for the jury (as well as the Court and the parties) to keep separate the distinct claims, legal issues, and parties against whom the various claims are asserted.  There is a high probability of jury confusion and error should the '75 Action and the '170 Action be tried at the same time.  And, because of the high probability of jury confusion and error, consolidation would *not* promote trial convenience. Consolidation would make trial impractical and cumbersome.

In short, given the significant differences in substance and scope between the '75 Action and the '170 Action, the Court should not revisit consolidation. The '170 Action is a software ownership case arising from one limited business relationship; the '75 Action is a business partnership dispute arising from a "business model" involving additional parties. It is in the best interests of all parties and the Court to maintain separate dockets and schedules for adjudication of the separate legal issues presented in both cases.[3]

---

[3] To the extent there is overlapping discovery, Paragon and Plaintiffs have ***already agreed*** to streamline any overlapping discovery efforts in both cases. Specifically, in negotiating an Amended Protective Order, the Parties agreed that for purposes of convenience discovery need only be produced once and should not be required to be reproduced in both cases.

### B. The '75 Action and the '170 Action Are Procedurally Distinct.

The '75 Action (which Plaintiffs want as the "lead case") is far less developed than the '170 Action. At the time the '170 Action was transferred to this Court, written discovery was already underway; the parties had exchanged initial sets of discovery responses and document productions. Indeed, at present, the parties in the '170 Action have exchanged numerous sets of written discovery (interrogatories, requests for admission, and requests for production), filed several discovery-related motions, made multiple document productions, and Paragon has taken three fact depositions (with two more scheduled).

Conversely, discovery has progressed little in the '75 Action. Though the case was filed in January 2025, Plaintiffs made no effort to serve discovery until November 2025 (ten months later). Several sets of written discovery requests have since been exchanged, but the parties are still in the early stages of fact gathering through written discovery. No depositions have been requested or scheduled. And significantly, all five defendants in the '75 Action have motions to dismiss pending that could be dispositive. ('75 Action at Docs. 28, 29, 31, 33).

Consolidation would work to undermine and unnecessarily delay Paragon's diligent efforts to prepare its affirmative '170 Action for adjudication.

### C. Paragon Would Be Severely Prejudiced by Consolidation of the Cases.

Plaintiffs' argument that consolidation would not prejudice any party is incorrect. Paragon would be severely prejudiced by consolidation, as its first-filed, narrowly-tailored, declaratory judgment action (the '170 Action) is significantly more developed and closer to summary judgment disposition. Paragon has worked diligently to prepare the narrow software ownership issues for resolution. It is important to Paragon that this narrow legal issue to be resolved quickly: The Paragon Truss Software is Paragon's primary asset, and its ability to conduct business remains clouded by Kirk Grundahl's and his companies' ownership claims as long as the '170 Action

10

remains pending. Paragon would undoubtedly suffer from added delays and increased expenses in its first-filed '170 Action should additional parties (who never claimed ownership in the Paragon Truss Software and were not directly involved in its development at all) and different, less-developed legal issues from the '75 Action were to be consolidated with the '170 Action.

Further still, consolidated briefs and other filings would only complicate this already complex litigation by blurring the distinctions between the different business relationships at issue in each case. The '170 Action only involves one business relationship–the engineering consulting services that Plaintiffs provided to Paragon in the course of its software development. The '75 Action is premised upon a broad "business model" with multiple parties that had no direct involvement in the development of the Paragon Truss Software and are thus not parties to the '170 Action.  Consolidation is likely to confuse the legal issues, significantly increase expenses for all parties, and delay the resolution of any of the issues before the Court.

In summary, consolidation would unduly prejudice Paragon (as well as Paragon's co-defendants in the '75 Action who had no direct involvement in the software development) and would not promote judicial efficiency. It would likely lead to confusion, result in inefficiencies, increase the disposition times and expenses for the parties and the Court, and delay resolution of issues that, from Paragon's perspective, are nearly ready for adjudication in the '170 Action.

**III.    CONCLUSION**

For the reasons above, Paragon respectfully submits Plaintiffs' Motion to Consolidate should be denied in its entirety.

11

Respectfully submitted this 26th day of March, 2026.

**GASS TUREK LLC**
*Counsel for Plaintiff Paragon Component Systems, LLC*

/s Tamar B. Kelber
Tamar B. Kelber, SBN 1101802
kelber@gassturek.com
Joshua S. Greenberg, SBN 1107959
greenberg@gassturek.com
241 North Broadway, Suite 300
Milwaukee, WI 53202
T: 414-223-3300


Stephen E. Kabakoff, GA Bar No. 143164,
*appearing pro hac vice*
MILLER & MARTIN PLLC
1180 W. Peachtree Street, NW
Suite 2100
Atlanta, Georgia 30309
Telephone: (404) 962-6100
Stephen.Kabakoff@millermartin.com

James T. Williams, TN BPR 16341
Erin E. Steelman, TN BPR 38463
MILLER & MARTIN PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402-2289
Telephone: (423) 756-6600
James.Williams@millermartin.com
Erin.Steelman@millermartin.com

12

## CERTIFICATE OF SERVICE

I certify that on March 26, 2026, a copy of the foregoing **PLAINTIFF PARAGON COMPONENT SYSTEMS, LLC'S RESPONSE TO DEFENDANTS' MOTION TO CONSOLIDATE** is being served on all counsel of record via email.

MILLER & MARTIN PLLC

*/s/James T. Williams*

*Counsel for Plaintiff Paragon Component Systems, LLC*

13