UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

---

PARAGON COMPONENT SYSTEMS, LLC,

      Plaintiff,

v.

      Case No. 3:25-cv-00170-wmc

QUALTIM INC., CENTER FOR BUILDING
INNOVATION LLC, DRJ ENGINEERING LLC,
INSPIRED PURSUITS LLC, KIRK GRUNDAHL,
and SUZANNE GRUNDAHL,

      Defendants.

---

**DEFENDANTS' EMERGENCY MOTION TO COMPEL
COMPLIANCE WITH ORDER (ECF #160)**

---

**INTRODUCTION**

On March 25, 2026, this Court granted Defendants' motion to compel source code, ordered Paragon to produce the Development Record (defined below) by April 1, and set an April 8 deadline for Defendants' expert to identify four software versions for inspection, with inspection due April 17. (ECF #160.) The Development Record serves two purposes: it enables the expert to select four versions with a reasoned basis, and it enables the expert to navigate a 500,000-line codebase during the inspection—identifying where specific engineering contributions are located and what changed and when. Without the Development Record, the expert arrives at the laptop without a map. The Court was direct: "The last thing that I want or that anyone on the call wants is that we have an expert show up to inspection and the information that they need is not there or not usable." (ECF #162 at 48:19-22.)

Paragon produced something on April 1 at 4:15 p.m. CT—the final hour of the deadline. What it produced does not comply with the Court's order. What it produced cannot support a

reasoned version selection. What it produced cannot guide the expert through the inspection. What it produced was designated "Highly Confidential – Source Code" to prevent the Defendants most capable of using it from seeing it. And Paragon declared, unilaterally, that what it chose to produce is "sufficient." Defendants bring this motion to compel compliance before the April 8 deadline collapses the entire schedule the Court set.

## **BACKGROUND**

### I.    WHAT THE COURT ORDERED.

The Court's March 27 meet-and-confer obligation required the parties to address "what internal documentation, files, or applications plaintiff keeps in the ordinary course of business that memorialize version control of the software at issue" and to "make plans for the production of sufficient information for defendants' expert to identify versions of the source code at issue for inspection." (ECF #160 at 1–2.) The April 1 obligation was to "disclose the identified version control information"—meaning what was identified through the meet-and-confer as sufficient for the expert, not whatever Paragon chose to define for itself. Defendants refer to this body of materials as the "Development Record."

When Kabakoff argued that Defendants should simply pick dates from public release notes, the Court rejected it: "I don't find that to be a very satisfying proposal, because picking four dates, loading the executable software for those dates onto a laptop and asking the expert if it works is essentially a trial and an error. That's what I want to avoid... There needs to be a more reasoned approach to how the parties select the versions of software before the inspection actually goes forward." (ECF #162 at 51:19-26.)

The Court directed Kabakoff specifically: "You need to go back to your clients and get your arms around what internal documentation or applications or software interfaces there are that your client can make available to defendants' expert so that the defendants' expert can understand

2

what modifications were made to the software and when. This is not a production of the source code. It is simply notations that internally document what changes have been made to the software, and that does need to be turned over." (ECF #162 at 53:6-16.)

## II.    WHAT PARAGON TOLD THE COURT.

*First*, Paragon's counsel told the Court: "The documentation that we're all assuming exists, my understanding, does not exist." (ECF #162 at 34:7-9.) When the Court asked whether Paragon uses GitHub to track changes, counsel conceded it does. (ECF #162 at 34:12-14.) A professional software organization with 92 repositories, 14 developers, 6 teams, and an active project—as shown in PARAGON006904 (Salemi Decl. ¶6)—necessarily maintains the change history, commit records, and repository documentation that constitute the Development Record.

*Second*, the Holland Declaration argued burden—not non-existence. Holland stated: "It is also unreasonable to provide all commit logs, version histories, and repository branches for the more than 12,000 source-code changes ever made in the Paragon source code." Holland ¶11. That is a burden argument: producing the complete GitHub repository with source code removed takes approximately five minutes. (Salemi Decl. ¶15, Ex. 3.)

Third, Paragon's counsel framed GitHub production as "everything ever...all 12,000 versions...it can't even fit on a laptop." (ECF #162 at 52:7-18.) The Court corrected that immediately: "it wouldn't be the code; it would be looking at notes that make changes to the code... notations about what changes have been made." (ECF #162 at 52:18-22.) Counsel conceded: "Yeah, I think that's what I understand is the merge operations that are in GitHub." *Id.* The Court then ordered the full Development Record produced. Paragon's counsel offered release notes and stated: "And maybe that's sufficient. I don't know." (ECF #162 at 54:3-9.) Release notes are one component of the Development Record—and Paragon produced them incompletely, with versions 1 through 84 not produced and gaps throughout the remainder.

500,000 lines of code cannot be navigated without knowing how the software is organized, where specific engineering contributions are located, and what changed and when. Attorney Salemi explained at the hearing: "I need the directory to see when the next change was made and to see whether that change corresponds with a change relative to wind loading in the software in order to target when... this information was incorporated or...removed from the software...If I was to tell them, based simply on the public-facing information...I would be completely flying blind." (ECF #162 at 44:10–45:19.) Defendants' expert has confirmed that without technical documentation—architectural diagrams, module descriptions, interface specifications—navigating a codebase of this scale requires unguided, manual exploration. (Sheatsley Decl. ¶¶44-45.) Paragon has never engaged with the navigation purpose.

## WHAT WAS PRODUCED AND WHAT WAS NOT

### I.    THE COURT-ORDERED CONFERRAL, THE FOLLOW-UP LETTER, AND PARAGON'S RESPONSE.

The Court ordered the parties to meet and confer on March 27 regarding the Development Record. Throughout that conferral, Paragon's counsel framed the entire production obligation as commit history and merge operations. Every time Defendants referenced GitHub more broadly—pull requests, branch history, README files, architecture documentation—Paragon's counsel redirected to commits.

Paragon's counsel pre-announced the Highly Confidential – Source Code designation before producing a single document, stating the production would be provided "under the source code protections because this is coming directly out of the source code repository... we wouldn't want the in-house people looking at it." (Salemi Decl. ¶10.) Paragon's counsel also agreed production would be in text format: "my understanding is it would be a text file and it's something that's pulled out of the GitHub." (Salemi Decl. ¶11.) Paragon then produced a scanned PDF.

4

The March 30 follow-up letter identified each category of the Development Record, specified native text-based format, provided step-by-step instructions for producing the complete GitHub repository with source code removed—a five-minute process—and required written confirmation of six specific items by close of business. (Salemi Decl. ¶15, Ex. 3.)

The response came from Erin Steelman, who did not attend the March 27 conferral: "We disagree with most of your characterizations, assumptions, and other statements in the ten-page letter... we intend to comply with Judge Boor's order and we will produce version control information sufficient to reflect changes made in the Paragon Truss Software by the Court's deadline of April 1, 2026." (Salemi Decl. ¶16, Ex. 4.) Defendants' counsel replied: "The word 'sufficient' is concerning and familiar...The court has already rejected that approach. What is sufficient is not Paragon's determination to make." (Salemi Decl. ¶17, Ex. 4.)

On April 1, Paragon produced a commit log and partial release notes. It produced nothing from any other category of the Development Record—no pull requests, branch history, README files, wiki pages, XML documentation, AppVeyor build logs, architecture documents, or any inventory of what was searched—and has not stated whether any such materials exist.

## II.    THE GIT COMMIT LOG—WRONG FORMAT, UNUSABLE, AND COMPLETENESS UNVERIFIABLE.

Paragon produced a 638-page document (PARAGON-SOURCE-000001 to 000638) described as a list of 23,938 git commit operations. Each entry is in the form: date—developer—short message. The messages average approximately six words. (Sheatsley Decl. ¶30.) For example, an entry might read "2019-03-14—jholland—updated load calculation"—a date and a subject that identifies no file, no function, no engineering standard, and no specific change. It cannot guide the expert to any location in 500,000 lines of code.

5

The rest of the GitHub repository would provide what the commit log cannot. Pull requests contain the rationale, discussion, and review process for each code change—descriptions of the proposed change, references to linked issues, and developer commentary. (Sheatsley Decl. ¶¶20-21.) Issues link high-level requirements to specific code changes, providing a traceable chain from feature request to implementation to commit. (Sheatsley Decl. ¶22.) README files, wiki pages, and XML documentation describe codebase architecture and function-level specifications. (Sheatsley Decl. ¶23.) Paragon produced the index without the book.

The commit log was produced as a scanned PDF—not the text file Paragon's counsel agreed to produce—rendering it unsearchable. Defendants' expert confirmed that OCR techniques are unreliable at this scale and that searching 23,938 entries across 638 pages of scanned images is error-prone. (Sheatsley Decl. ¶47.) Paragon chose a format that makes the document unusable.

Defendants' expert confirmed that the commit log covers only commits merged into the production branch via pull requests and is therefore likely incomplete. (Sheatsley Decl. ¶30.) Without the pull request history and Slack JSON export, there is no independent record against which to verify whether the commit log is complete. (Sheatsley Decl. ¶42.) Paragon described the production as "a list of every source-code change that has ever been made"—a characterization the record cannot support.

## III.    RELEASE NOTES—MORE THAN HALF MISSING, ENTIRE FOUNDATIONAL PERIOD ABSENT.

Paragon produced a single PDF (PARAGON-392687 to 392845). Holland declared under oath that all 362 release numbers are publicly documented on the Paragon website. (Holland Decl. ¶9, ECF #155.) The production covers Version 85 (July 6, 2020) through Version 363—185 of 363 documented versions. Within that range, 94 versions have no release documentation. In total, 178 of 363 versions (more than half) were not produced. (Salemi Decl. ¶22.)

Versions 1 through 84 are not in the production. They cover Paragon's founding in February 2016 through July 6, 2020—four and a half years of development that includes key periods of Defendants' engineering contributions. The earliest version produced—Version 86 (July 13, 2020)—is addressed directly to DrJ: "Here are the things in Version 86, which is now live, that are of interest to DrJ." Paragon's counsel stated at the March 25 hearing that early release notes were distributed via Slack (ECF #162 at 50:24–51:3.)—those records have not been produced. Defendants' expert has confirmed that the absence of versioning markers over an extended development period would be atypical in standard software engineering practice. (Sheatsley Decl. ¶46.)

Kabakoff's April 1 email characterizes 178 missing versions as "some release versions for which our client could not find explicit release notes in its custody, possession, or control." He does not identify which versions, explain whether a search was conducted, or state whether records were destroyed or never created. 178 missing versions—including the entire foundational development period—is not "some" gaps. It is a categorical failure to produce the most relevant portion of the record.

## IV.    THE SLACK PRODUCTION—WRONG FORMAT, BOT INFORMATION DESTROYED.

The Court ordered production of the entire #drj-paragon-engineering-discussions channel. (ECF #160 at 1; ECF #162 at 70:23–71:2.) The order does not specify format. Fed. R. Civ. P. 34(b)(2)(E) requires ESI be produced in the form ordinarily maintained or in a reasonably usable form. Slack's native format is JSON. Paragon's vendor had the native JSON and converted it to TIFF/JPG images instead. Defendants demanded JSON in the March 24 letter (Salemi Decl. ¶5, Ex. 1), reconfirmed it on March 25 (Salemi Decl. ¶8, Ex. 2), and objected at the March 27 conferral when Paragon announced base-numbered pages: "You guys have previously produced Slack

7

channel in JSON format. And now that you're not producing it in JSON format, that's not acceptable." (Salemi Decl. ¶13.) Paragon also made at least four separate partial Slack productions before April 1 in different formats, making completeness impossible to verify. (Salemi Decl. ¶14.)

The GitHub bots—confirmed in PARAGON-004850—automatically posted real-time notifications into the channel when code was merged or a pull request was opened, interleaved alongside the human engineering discussions. In JSON format, the expert can programmatically identify bot posts, extract pull request numbers and timestamps, and cross-reference against the commit log—tracing a contribution from discussion to each code change that followed. (Sheatsley Decl. ¶¶39, 41.) When the vendor converted JSON to TIFF/JPG, bot user fields were flattened into bitmap text and pull request numbers became characters in an image—not machine-readable.

Paragon's security justification—that JSON contains active links to its Slack system—is technically false. A JSON export is a static snapshot with no credentials or authentication data. Paragon's April 1 email denied awareness of any bots posting in the ordered channels, after receiving two written communications identifying both bots by name, user ID, and Bates number from Paragon's own production. (Salemi Decl. ¶18, Ex. 5.) PARAGON-004850 proves the bots exist. The denial is precisely limited to the question the JSON production would have answered and the TIFF/JPG rendering ensures cannot.

## THE HIGHLY CONFIDENTIAL DESIGNATION IS IMPROPER

The Amended Protective Order authorizes the Highly Confidential – Source Code designation only for materials containing source code as defined in Paragraph 6. A commit message is a developer-written sentence describing what was changed. (ECF #162 at 52:18-22.) Release notes describe publicly documented software updates. Neither is source code. Defendants' expert reviewed the commit logs and observed no literal source code in the commit messages. (Sheatsley Decl. ¶35.) The designation has no technical basis.

Under Paragraphs 14 and 15 of the Protective Order, Kirk Grundahl—the engineer whose contributions are at the center of both actions—cannot review commit messages describing changes to software he helped build. Paragon is the plaintiff. It filed this action claiming exclusive ownership of software developed using Defendants' independently-developed engineering inputs. Paragon controls every key piece of evidence and has designated the record of Defendants' own contributions as off-limits to them. That is not a use of the Protective Order. It is an abuse of it.

**PARAGON'S CONDUCT IS WILLFUL**

This is not an isolated compliance failure. It is a consistent pattern dating back to December 2025, when the Court directed Paragon to approach discovery with a "problem-solving mentality," and through March 2026, when Paragon refused production and withheld GitHub, AppVeyor, and the GitHub-Slack integration from conferrals convened specifically to address them:

- **March 23 conferral:** Did not disclose GitHub, AppVeyor, or the GitHub-Slack bot integration. Told Defendants the Development Record does not exist. Could not answer foundational questions about its own software infrastructure.

- **March 24–30:** Defendants identified both GitHub bots by name and user ID from PARAGON-004850, required JSON, provided five-minute step-by-step production instructions, and required written confirmation of six items. Paragon did not respond to the March 24 letter. Steelman's two-sentence March 30 response identified no specific disagreement and committed to produce what Paragon deemed "sufficient."

- **March 25 hearing:** Counsel told the Court the Development Record does not exist. Court ordered production of the entire Slack channel.

- **March 27 conferral:** Pre-announced Highly Confidential – Source Code designation. Agreed to text format. Announced PDF for Slack over Defendants' immediate objection. Addressed only commits—never discussed other components of the Development Record.

- **April 1, 4:15 p.m. CT:** Scanned PDF commit log. Release notes missing 178 of 363 versions. Slack as TIFF/JPG. Denied awareness of GitHub bots after two letters identifying them from Paragon's own production. Designated Highly Confidential – Source Code. Self-certified sufficiency.

Paragon received detailed written instructions and explanations at every step, produced the least useful version of the least complete subset of what was ordered, then denied awareness of the very bots. It is a deliberate choice to neutralize the expert's ability to use what was produced.

## RELIEF REQUESTED

Defendants respectfully request that the Court enter an emergency order:

1.  **Immediate production within 48 hours** of the following, in native text-based format (not TIFF, not PDF, not HTML), designated Confidential—not Highly Confidential—under the Protective Order:

    •   The complete GitHub repository for ParagonTruss/ParagonCore with source code files (.cs and related extensions) removed by file type, including: full commit history with commit hash, author, date, and message; pull request history with titles, descriptions, reviewer comments, and merge dates; branch history; contributor list; README files; wiki pages; XML documentation; markdown files; and issue tracker records;

    •   Release documentation for all 363 public versions, including all versions absent from or missing within PARAGON-392687 through PARAGON-392845;

    •   The complete #drj-paragon-engineering-discussions Slack channel and #drj-paragon channel in JSON format, with all file attachments in native format;

    •   A written statement identifying each category of the Development Record that Paragon contends does not exist and what was searched;

2.  **Removal of the Highly Confidential – Source Code designation** from PARAGON-SOURCE-000001 through PARAGON-SOURCE-000638, re-designated as Confidential;

3.  **Extension of the April 8 deadline** by the number of days Paragon remains out of compliance. Defendants will make every effort to meet the April 8 deadline regardless and do not seek to move the April 17 inspection date;

4.  **If Paragon fails to comply within 48 hours**: (a) a two-hour Rule 30(b)(6) deposition of Paragon limited to what Development Record materials exist and Paragon's use of GitHub and AppVeyor; and (b) fees and costs under Fed. R. Civ. P. 37(b)(2)(C) for all attorney time caused by Paragon's non-compliance, including the March 24 letter, March 30 letter, post-hearing conferrals, and this motion.

Defendants further request a telephonic hearing at the Court's earliest availability given the approaching April 8 and April 17 deadlines.

10

Dated this 3rd day of April, 2026.

**MURPHY DESMOND S.C.**
Attorneys for Qualtim, Inc., Center for Building Innovation, LLC, DrJ Engineering, LLC, Inspired Pursuits, LLC, and Suzanne Grundahl.

Electronically Signed By: */s/ Scott G. Salemi*
    Scott G. Salemi
    State Bar Number: 1118960
    33 East Main Street, Suite 500
    Madison, WI 53701-2038
    Phone: (608) 257-7181
    Fax: (608) 257-2508
    ssalemi@murphydesmond.com

**KIRK GRUNDAHL**
Pro Se Defendant

Electronically Signed By: */s/ Kirk Grundahl*
    Kirk Grundahl
    1130 Fairway Court
    Lake Mills, WI 53551
    Phone: 608-217-3713
    kgrundahl@qualtim.com