**IN THE UNITED STATED DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

PARAGON COMPONENT SYSTEMS,
LLC,

      Plaintiff,

 v.

QUALTIM, INC., CENTER FOR BUILDING
INNOVATION, LLC, DRJ ENGINEERING,
LLC, INSPIRED PURSUITS, LLC, KIRK
GRUNDAHL, and SUZANNE GRUNDAHL,

      Defendants.

Case No. 3:25-cv-00170-wmc

---

**PLAINTIFF PARAGON COMPONENT SYSTEMS, LLC'S RESPONSE TO
DEFENDANTS' EMERGENCY MOTION TO COMPEL**

---

As directed by the Court (Doc. 166), Paragon respectfully submits this response to Defendants' Emergency Motion to Compel (Doc. 163).

## I.    BACKGROUND

The Court's Order (Doc. 160) required Paragon to produce "internal documentation, files, or applications [that Paragon] keeps in the ordinary course of business that memorialize version control of the software at issue . . . and [must produce] sufficient information for defendants' expert to identify versions of the source code at issue for inspection."

On April 1, 2026, in compliance with the Court's Order (Doc. 160), Paragon timely produced (i) "version control information" sufficient to allow Defendants' expert to identify up to four versions of the source code at issue for inspection, namely: (a) a compilation of *all release notes available to Paragon* corresponding to its public release versions of the Paragon Truss Software; **and** (b) a comprehensive list of *every source code-code change – 23,938 individual changes* – ever made in the Paragon production codebase over all time (the "main" or "master"

1

branch as Defendants' expert refers to it in his declaration) which Paragon's own software developers use in the ordinary course of business to track changes made in the Paragon source code, including the date of each revision and the software developer that requested the change; **and** (c) all high-level software design documentation that Paragon could identify in its internal files, which Paragon could only locate for the earliest versions of the software application; and (ii) the entire #drj-paragon-engineering-discusisons Slack channel in the same format that Defendants previously demanded for all other Slack productions in this case – load file format, with Bates numbered images (natives with a corresponding Bates number where appropriate), extracted text, and the metadata load files **and** in HTML file format. Paragon further produced to Defendants (though beyond the scope of the Court's order) the entire #drj-paragon Slack channel in the same format.  (*See* Doc. 164-5, April 1, 2026 email from S. Kabakoff re: Paragon's document production). The production of the foregoing technical documentation amounts to many thousands of technical documents that Paragon (a small start-up software company) keeps in the ordinary course of business, that have been made available to Defendants' expert, and provide technical information that can be used to identify four dates for source-code files to be loaded onto the source-code computer for further inspection under the Court's schedule.

Paragon heard *nothing* from Defendants about its document production before the instant emergency motion was filed.  The instant motion is Paragon's first indication of the alleged issues. For instance, Paragon produced a PDF version of a text file including Paragon's internal descriptions of every single one of its 23,938 source-code revisions that have ever been made in Paragon's production source-code files (the "main" or "master" branch as Defendants' expert refers to it in his declaration). Defendants' motion complains this PDF is not searchable. It was searchable at the time it was prepared, but the addition of Bates numbers and confidentiality

2

designations made it unsearchable. Paragon is producing the searchable version of this document today. This could have been handled by a simple phone call under normal cooperative procedures.

Defendants simply filed their "emergency motion" because Paragon has not (and in some instances cannot) give into their elaborate (eleven-page and ten-page) source code and Slack production demands. (*See* Doc. 164-1, Doc. 164-3). Defendants continue to make unfounded assumptions about Paragon's business and source code records and want to dictate the production process based on those assumptions. Paragon maintains that it has made a good faith effort to comply with the Court's Order (Doc. 160) and provide Defendants with the materials that their expert needs to "identify up to four versions of the source code at issue for inspection." (Doc. 160). Defendants have not adequately explained why the voluminous source code records provided by Paragon are insufficient for their expert to identify four versions of the source code for further inspection. And, concerning the Slack files, the format of Paragon's Slack production was *initially requested by Defendants*, is consistent with prior productions, and is justifiable given the complexity of this litigation.

## II.    ARGUMENT

Paragon addresses each argument raised in Defendants' motion in turn below.

**<u>Paragon's Release Notes</u>**

The Defendants' motion incorrectly suggests that Paragon is withholding certain Release Notes for certain versions of its software. Paragon commercially released its software around 2020 and made such Release Notes available to customers either through Slack or on its public website. In response to the Court's order, Paragon searched its internal files for all of the Release Notes that it could find, and Paragon produced a compilation of all located Release Notes in a single 159-page document PARAGON-392687 to PARAGON-392845. Paragon reported to Defendants that

3

Paragon could not locate Release Notes for every version of its software, especially the early versions before the software was commercially released.

The Court ordered Paragon to "internal documentation, files, or applications [that Paragon] keeps in the ordinary course of business that memorialize version control of the software at issue," which is precisely what Paragon has produced based on its searches of its files kept in the ordinary course of business.

**Paragon Slack Channels**

The Court ordered Paragon to produce a complete copy of its internal drj-paragon-engineering-discussion Slack channel, which Paragon produced with attachments in a contiguous range of Bates numbers PARAGON-387743 to PARAGON-392586. Separately, Paragon had previously produced most of another internal drj-paragon Slack channel with attachments at PARAGON-006907 to PARAGON-356520 and, at Defendants' request, Paragon produced the remaining portion of that drj-paragon channel in a supplemental production at PARAGON-357863 to PARAGON-387742.

As reflected by the large number of documents produced in these Bates ranges, these Slack channels contain thousands of technical discussions and related technical documents (including identifications of dates and names of software developers) that Defendants' expert can use to identify four dates of source-code files to load on the source-code computer. Defendants' expert's declaration does not suggest otherwise.

Instead, Defendants insist  that these materials must be reproduced in a native JSON format. This demand is problematic for multiple reasons and would make Paragon's document production unnecessarily complicated and unwieldy. For instance, in this case Paragon had previously produced PDF versions of certain native JSON files which, by their natures, are not in a human-readable format. Defendants complained. In response, to make the JSON files become

4

human readable, they were provided to a vendor that converted them into an HTML format that can be easily read by a human. The contents of the JSON files was not changed. The HTML documents were then converted to individual Bates-numbered images with confidentiality designations and produced. This conversion from HTML to TIFF image formats also did not change the contents of any of the original JSON files. Paragon has produced all of its Slack messages as sequentially Bates-numbered images with appropriate confidentiality designations as conventionally done in complex business litigation such as this.

In short, Paragon has processed the native JSON files, which are not in a human readable format, to convert them into a human-readable HTML format. That HTML format was simply converted to TIFF images so they could be produced with document production numbers and confidentiality designations. Paragon has produced the Slack messages in this manner throughout the litigation without complaint until recently.

Further, Defendants' demand for native JSON file would only complicate this case more. The JSON files could be assigned a Bates number but the contents within them could not be properly page referenced by individual document-production numbers. Worse still, the attachments in the JSON files would not be separately marked either, whereas Paragon's production includes individually Bates-numbered Slack messages adjacent to their separately Bates-numbered attachments. In other words, Paragon's sequential production retains the immediate proximity of the primary document and any of its attachments. Removing these production numbers using native JSON files would make tracking individual attachments unnecessarily difficult. Furthermore, Rule 34 does not require Paragon to produce the same electronically information in multiple different formats. Fed. R. Civ. P. 34(b)(2)(E)(iii) ("A party need not produce the same electronically stored information in more than one form").

Finally, Defendants improperly accuse Paragon of destroying "bot information" in the Slack production. This is absolutely incorrect. Paragon has collected the entire Slack channels and produced them. Paragon also indicated that it was not aware of any "bots" posting to any of the drj-paragon-engineering-discussion or drj-paragon Slack channels, nor have Defendants pointed to any such messages. At best, Defendants identify a produced document that may refer to a "bot," but Defendants do not contend that a bot was used to post messages to any of the produced Slack channels. In any event, Paragon has produced the entireties of these Slack channels, including Slack messages from all posters, and cannot reasonably allege any messages have been destroyed.

### **Defendants' Mischaracterize the GitHub Repository**

Defendants' expert states that "Git-based systems are centered around four fundamental concepts," namely, commits, branches, merges, and pull requests. Doc. 165 at ¶ 17. In this case, the four versions of Paragon's production source-code files to be produced are all in a single branch of Paragon's GitHub repository, which Defendants' expert refers to as the main or master branch. Id. at ¶ 17 n.4. Paragon's source-code repository contains ALL of Paragon's source-code files, including source code that is currently under development and source code that was changed or otherwise never implemented, across many different branches used by Paragon's software developers within the repository. In this case, Paragon has produced a complete list of all of Paragon's internal descriptions of the 23,938 commits ever made in the master branch (production source code at issue), including each of their dates and descriptions obtained directly from pull requests in Paragon's source-code repository. Any merge operations between other branches used by Paragon's software developer within the source code repository for software development are not relevant as they do not reflect the Paragon source code that was actually implemented.

Defendants motion incorrectly states that "[t]he rest of the GitHub repository would provide what the commit log [that Paragon produced] cannot." Motion at 6. We have continuously

explained to Defendants that the GitHub repository is all of the source code files ever created, whether in the production codebase (so-called master branch) or not. It would include trade secret artificial intelligence features currently under development as well as source code that was merely experimental or developmental and never implemented at all. Defendants' demands for the entire repository are unfounded and inconsistent with the parties' agreement that Paragon will produce its source-code files for production versions of its software that was made available to customers.

Further still, Defendants' demands for "pull requests, branch history, README files, architecture documentation" in Paragon's GitHub repository are misplaced. Doc. 163 at 4. Paragon's list of 23,938 descriptions of its source-code changes, over all time, obtained from the pull requests for its production-code branch, are what Paragon's own software developers use to locate source-code changes in its production source-code files. These are the "internal documentation, files, or applications [that Paragon] keeps in the ordinary course of business that memorialize version control of the software at issue" as the Court ordered. And the complete list of changes to Paragons production source-code files is the relevant branch history.

To the extent Defendants are really trying to use this second motion to compel to seek the *contents* of Paragon's source code files, Paragon will produce the source-code files under the Court's schedule. For instance, any "README files" are generic source-code files that may contain any type information that the software developers may want to refer back to at some time, whether containing actual excerpts of the source code or not. Any such generic documents will be produced (to the extent they exist) in Paragon's source-code production. Defendants' demands for "wiki pages, XML documentation, Appveyor build logs" is similarly misplaced. For instance, Defendants have been told that Paragon does not have any Appveyor build logs in its possession, custody, or control, and that Paragon has not used this service for years and does not keep a

7

subscription. The other demanded files are not the types of files that Paragon's software developers use to document and keep track of their source-code revisions in the ordinary course of business.

In summary, Paragon has produced the entire list of all 23,938 Git commits that were made to its production source code (master branch) over all time. Paragon has produced all of the Release Notes that it could locate for its commercial releases. Paragon has produced all of the software architecture and design documentation in its files dating to the early development days of the software.[1] Paragon has produced the entireties of its dr-paragon-engineering-discussions and drj-paragon Slack channels which contain technical discussions and documents relating to Paragon's software. In view of this production, Defendants cannot fairly argue that they do not have enough technical information to select four dates for source-code files for Paragon to produce.

**Paragon's Confidentiality Designations Are Proper**

Defendants have no basis to complain that Paragon designated the "version control information" (including internal release notes and a list of source code changes) it produced as "Highly Confidential – Source Code." The information that Paragon produced comes directly from Paragon's source-code repository, contains references to various contents in the source code files, and falls squarely within the definition of "Source Code" in the parties' Agreed Protective Order.[2]

---

[1] Note that Paragon does not update these technical documents from version to version. Paragon's counsel explained at the May 25 hearing that there appears to be an incorrect assumption that such updated version of systemic flowcharts, schematics, etc. exist. Unfortunately, Defendants' motion (Doc. 163 at 3) mischaracterizes this statement at the hearing as somehow suggesting that Paragon's counsel was referring to Paragon's source-code repository.

[2] The Court's Order (Doc. 160) required the parties to finalize and file an Agreed Amended Protective Order. On April 3, five days after Paragon circulated the Agreed Amended Protective Order previously negotiated by the parties, Mr. Grundahl finally responded and approved the Agreed Amended Protective Order on behalf of himself and Mr. Salemi (who represents the corporate entities). The Agreed Amended Protective Order will be submitted promptly by Paragon and, with respect to source-code protections, is identical to the current Protective Order.

8

The Agreed Protective Order (Doc. 110-1) broadly defines source code to "mean[] and include[] source code, object code, pseudo-code, application program interfaces, databases, database schema, and any associated software design, structure, organization, or architecture, and all related documentation defining or describing any of the foregoing." (Doc. 110-1 at p. 3, ¶ 6). The Agreed Protective Order allows any party producing source code to "designate documents, materials, or information 'Highly Confidential – Source Code' so long as the designating party believes, in good faith, that the [materials] not only warrant protection…but also contain highly confidential, proprietary or trade-secret computer Source Code *in any format*." (*Id*. at 4, ¶¶ 10-11) (emphasis added). The Agreed Protective Order expressly provides a list of limited persons who can review "Highly Confidential – Source Code" materials – parties to the litigation (i.e., Defendants) are not listed. (*Id*. at p. 7-8, ¶¶ 13-14).

On April 1, 2026, Paragon produced to Defendants and designated as "Highly Confidential – Source Code" a list of *every source code-code change* that has ever been made in the Paragon's Truss Software production codebase over time. Such documents fall squarely within the broad definition of "source code" (as agreed to by the parties), contain sensitive, proprietary, and highly confidential information related to the Paragon's software source code, and were properly designated under the Agreed Protective Order as "Highly Confidential – Source Code."

In essence, Defendants complain only because *pro se* defendant "Kirk Grundahl – the engineer whose contributions are at the center of both actions – cannot review" the documents designated as "Highly Confidential – Source Code." But that's precisely what the parties agreed to. (*See e.g*., Doc. 110-1). Defendants' complaint about Paragon's confidentiality designation for the source-code documents it produced is baseless and ignores the clear provisions of the Agreed Protective Oder (Doc. 110-1) governing this case. It also ignores the fact that this source-code

9

information was produced for **Defendants' expert** to identify four versions of Paragon's source code to produce on the source-code laptop for the **Defendants' expert** to inspect. (*See* Doc. 160).

### Paragon Has Acted In Good Faith

Defendants improperly contends Paragon's alleged failure to comply with the Court's Order is willful and violates the Court's directive to approach discovery with a "problem-solving mentality."[3] (Doc. 163 at 9). To the contrary, Paragon has continually engaged in the discovery process in good faith. Paragon complied with the Court's Order by producing voluminous source code documents sufficient to allow Defendants' expert to identify the source code versions he would like to inspect, and by producing complete copies of Slack files for the drj-paragon-engineering-discussions channel (and additional Slack files not required). (Doc. 160). Defendants simply are not satisfied because Paragon has not acquiesced to the particulars of their excessive ten and eleven-page source code and Slack production demands. (*See* Doc. 164-1, Doc. 164-3). Paragon has made good faith efforts to comply with the Court's Order and give Defendants the materials their expert needs to move this case forward. There is no basis for concluding Paragon has thwarted the discovery process, much less in a willful manner.

### III.    CONCLUSION

For the reasons above, Paragon respectfully submits Defendants' Emergency Motion to Compel should be denied.

Dated: April 3, 2026

*/s/Erin E. Steelman*

---

[3] Ironically, *Defendants* filed the instant emergency motion to compel without any effort to follow up with Paragon on its April 1st production, and Defendants filed their former motion to compel production of source code without any effort to confer with Paragon beforehand. Defendants' failure to make any effort to "meet and confer" certainly cannot be classified as approaching discovery with a "problem-solving mentality."

Stephen E. Kabakoff, GA Bar No. 143164,
*appearing pro hac vice*
MILLER & MARTIN PLLC
1180 W. Peachtree Street NW, Suite 2100
Atlanta, Georgia 30309
Telephone: (404) 962-6100
Stephen.Kabakoff@millermartin.com

James T. Williams, TN BPR 16341
Erin E. Steelman, TN BPR 38463
MILLER & MARTIN PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402-2289
Telephone: (423) 756-6600
James.Williams@millermartin.com
Erin.Steelman@millermartin.com

Tamar B. Kelber, SBN 1101802
Joshua S. Greenberg, SBN 1107959
Gass Turek LLC
241 North Broadway, Suite 300
Milwaukee, WI 53202
Telephone: (414) 223-3300
kelber@gassturek.com
greenberg@gassturek.com

***Attorneys for Plaintiff Paragon Component Systems, LLC***

11

## CERTIFICATE OF SERVICE

I certify that on April 3, 2026, a copy of the foregoing **PLAINTIFF PARAGON COMPONENT SYSTEMS, LLC'S RESPONSE TO DEFENDANTS' EMERGENCY MOTION TO COMPEL** is being served on all counsel of record via email.

MILLER & MARTIN PLLC

*/s/Erin E. Steelman*

*Counsel for Plaintiff Paragon Component Systems, LLC*