IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PARAGON COMPONENT SYSTEMS, LLC,

        Plaintiff,

v.

QUALTIM, INC., CENTER FOR BUILDING
INNOVATION, LLC, DRJ ENGINEERING,
LLC, INSPIRED PURSUITS, LLC, KIRK
GRUNDAHL, and SUZANNE GRUNDAHL,

        Defendants.

Case No. 3:25-cv-00170-wmc

---

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

---

## ANSWER

Defendants Qualtim, Inc. ("Qualtim"), Center for Building Innovation, LLC ("CBI"), DrJ Engineering, LLC ("DrJ"), Inspired Pursuits, LLC ("IP-LLC"), Kirk Grundahl, and Suzanne Grundahl (collectively, "Defendants") respond to the numbered paragraphs of Plaintiff Paragon Component Systems, LLC's ("Paragon") Complaint for Declaratory Judgment as follows. Except as expressly admitted herein, Defendants deny each and every allegation of the Complaint. Defendants' admissions are based on their own knowledge; all other responses are based on information and belief. Defendants expressly reserve the right to amend and supplement these responses as discovery proceeds.

The headings used in this Answer are adopted solely for organizational convenience and correspond to the headings in Paragon's Complaint. Defendants deny any characterization, implication, or legal conclusion contained in any heading in Paragon's Complaint.

Capitalized terms used in this Answer have the meanings ascribed to them in Defendants' Counterclaim filed simultaneously herewith.

## I.  INTRODUCTION

1.      Defendants deny the allegations of paragraph 1, except admit that Paragon seeks the declaratory relief described herein; Defendants deny that Paragon is entitled to such relief.

2.      Defendants admit that Daniel Holland owned and operated Clearspan Components, Inc., a manufacturer of structural building components including roof trusses, floor trusses, and related products. Defendants deny that a truss is "simply" a framework; structural component design requires professional engineering analysis and judgment, compliance with multiple industry standards, and must be sealed by a licensed professional engineer. Defendants admit that Daniel Holland formed Paragon in 2016 and was its majority owner. Defendants deny that the goal was to create a proprietary software application solely for Paragon's benefit; the purpose was to develop a software tool for use within the Joint Venture Enterprise, with Defendants providing Engineering Inputs and professional engineering sealing services to make the software function for the benefit of all Enterprise participants.

3.      Defendants deny the allegations of paragraph 3. Paragon did not independently develop the software or invest $5 million of its own resources in doing so. The software performs complex structural calculations using Defendants' Engineering Inputs and professional engineering judgment, and its outputs require sealing by a licensed professional engineer.

4.      Defendants admit that Kirk Grundahl is the principal owner of Qualtim, Inc. and its affiliates including DrJ Engineering, LLC and Center for Building Innovation, LLC. Defendants deny that the Qualtim Companies provided consulting services; the Qualtim Companies provided Engineering Inputs and professional engineering judgment developed independently for use in the Joint Venture Enterprise. Defendants deny the remaining allegations of paragraph 4.

5.      Defendants admit that Daniel Holland, Kirk Grundahl, and Suzanne Grundahl formed Inspired Pursuits, LLC as the intellectual property holding entity for the Joint Venture

Enterprise. Defendants deny that IP-LLC was formed in 2022; it was formed in Texas in 2017 and redomesticated in Wisconsin in 2022. Defendants deny that IP-LLC has had no connection to or involvement with the software; IP-LLC was formed by the Enterprise's principals to hold intellectual property arising from the Enterprise including the software at issue. Defendants deny the remaining allegations of paragraph 5.

6. Defendants admit that Daniel Holland died in January 2024. Defendants deny that Defendants' ownership interests arose after Daniel Holland's death; those interests arose through the Joint Venture Enterprise well prior to his death. Defendants deny the remaining allegations of paragraph 6.

7. Defendants admit that Paragon, the Estate of Daniel Holland, and Clearspan Components, Inc. received communications asserting Defendants' ownership interests. The documents speak for themselves. Defendants deny the remaining allegations of paragraph 7.

8. Defendants admit that a dispute exists between the parties, which is the subject of separate ongoing litigation. Defendants deny that Paragon is the sole and exclusive owner of the Paragon Truss Software or any related intellectual property, and deny that Paragon is entitled to the declaratory relief sought.

## II. PARTIES

9. Defendants admit that Paragon Component Systems, LLC is a Tennessee limited liability company. Defendants are without sufficient information to admit or deny the remaining allegations of paragraph 9 and therefore deny them.

10. Defendants admit the allegations of paragraph 10.

11. Defendants admit the allegations of paragraph 11.

12. Defendants admit the allegations of paragraph 12.

13.    Defendants admit that Daniel Holland was a member of Inspired Pursuits, LLC during his lifetime and owned a 50% membership interest. Defendants admit that Kirk Grundahl and Suzanne Grundahl are members. Defendants deny that the Estate of Daniel Holland is a member; upon Daniel Holland's death, the Estate holds only his financial interest in IP-LLC. Defendants admit the appointment of Marvin B. Speed as special independent executor of the Estate of Daniel Holland. Defendants deny the remaining allegations of paragraph 13.

14.    Defendants admit that Center for Building Innovation, LLC is a Wisconsin limited liability company with its principal place of business in Madison, Wisconsin and that Kirk Grundahl is its founder and principal. Defendants deny the remaining allegations of paragraph 14.

15.    Defendants admit that DrJ Engineering, LLC is a Wisconsin limited liability company with its principal place of business in Madison, Wisconsin and that Kirk Grundahl is its founder and principal. Defendants deny the remaining allegations of paragraph 15.

### III.  JURISDICTION AND VENUE

16.    Defendants admit the allegations of paragraph 16.

17.    Defendants admit the allegations of paragraph 17.

18.    Defendants admit that this Court has subject matter jurisdiction under 28 U.S.C. § 1332, that complete diversity of citizenship exists, and that the amount in controversy exceeds $75,000. Defendants admit the citizenship allegations in subparagraphs 18(b) through 18(d) as they relate to Defendants. Defendants are without sufficient information to admit or deny the citizenship allegations in subparagraph 18(a) as they relate to Paragon and John Holland and therefore deny them. As to subparagraph 18(e), Defendants admit that Kirk Grundahl and Suzanne Grundahl are members of Inspired Pursuits and citizens of Wisconsin, and deny that the Estate of Daniel Holland is a member of Inspired Pursuits; upon Daniel Holland's death the Estate holds only his transferable financial interest in IP-LLC. As to subparagraph 18(f), Defendants admit that

Daniel Holland was domiciled in Mississippi on the date of his death, that his estate is being administered in Mississippi, and that Marvin B. Speed serves as special independent executor with respect to the Estate's interests relating to Inspired Pursuits; Defendants deny that the Estate is a member of Inspired Pursuits. As to subparagraphs 18(g) and 18(h), Defendants admit that complete diversity of citizenship exists and otherwise deny the allegations as stated.

19.     Defendants deny the allegations of paragraph 19 and its subparagraphs.

20.     Defendants deny the allegations of paragraph 20.

## IV.  FACTS

### A.  Paragon and Its Development of the Paragon Truss Software

21.     Defendants admit that Daniel Holland was the majority owner of Paragon when it was formed in 2016 for the purpose of the Joint Venture Enterprise. Defendants deny the remaining allegations of paragraph 21.

22.     Defendants are without sufficient information to admit or deny the allegations of paragraph 22 and therefore deny them.

23.     Defendants admit that the Paragon Truss Software exists and is currently being used in the truss industry. Defendants deny that Paragon independently developed the software; the software uses Defendants' Engineering Inputs and professional engineering judgment, which Paragon is now marketing and commercializing without Defendants' authorization. Defendants deny the remaining allegations of paragraph 23.

24.     Defendants deny the allegations of paragraph 24. The software does not operate using "known mathematical equations"; it uses Defendants' proprietary Engineering Inputs and professional engineering judgment developed independently by the Qualtim Companies. Defendants deny the remaining allegations of paragraph 24.

25.    Defendants admit that Paragon provides the Paragon Truss Software to various customers, but deny that it is authorized to do so using Defendants' Engineering Inputs and professional engineering judgment.

26.    Defendants admit that no assignment exists between the parties. Defendants did not assign their interests in the Engineering Inputs or the Paragon Truss Software to Paragon, and Paragon cannot assign what it does not own. Defendants deny the remaining allegations of paragraph 26.

27.    Defendants deny the allegations of paragraph 27. The Paragon Truss Software was not developed solely by Paragon's employees or contractors. The software was developed using Defendants' Engineering Inputs and professional engineering judgment provided through the Joint Venture Enterprise. No work-made-for-hire agreement exists between Defendants and Paragon.

28.    Defendants deny the allegations of paragraph 28.

**B.  The Grundahls, Their Companies, and Their Claims to Ownership**

29.    Defendants admit that Kirk Grundahl is an owner of the Defendant entities and an executive of Qualtim, DrJ, and CBI. Defendants further state that Kirk Grundahl is a founding member of Inspired Pursuits, LLC, formed to hold intellectual property arising from the Joint Venture Enterprise.

30.    Defendants admit that Qualtim, CBI, and DrJ provide professional engineering services. Defendants deny that those services are accurately characterized as consulting services; the Qualtim Companies provided Engineering Inputs and professional engineering judgment through the Joint Venture Enterprise. Defendants deny that licensed professional engineers merely "certify" truss designs; under applicable law, a licensed professional engineer who seals engineering drawings bears full legal responsibility for the engineering contained therein. Defendants deny the remaining allegations of paragraph 30.

6

31.     Defendants deny the allegations of paragraph 31. The Qualtim Companies were not engaged to verify or test pre-existing software. The Paragon Truss Software uses Defendants' Engineering Inputs and professional engineering judgment through the Joint Venture Enterprise. Paragon was a software development entity without the professional engineering knowledge or licensure to independently create truss engineering software; it was Defendants who provided the engineering direction, methodology, and judgment that made the software function.

32.     Defendants deny the allegations of paragraph 32.

33.     Defendants deny the allegations of paragraph 33.

34.     Defendants deny the allegations of paragraph 34.

35.     Defendants deny the allegations of paragraph 35.

36.     Defendants admit that no assignment exists between the parties. Defendants did not assign their interests in the Engineering Inputs or the Paragon Truss Software to Paragon, and Paragon cannot assign what it does not own. Defendants deny that no confidentiality agreement exists; the Engineering Inputs were communicated within a confidential framework established through the course of dealing and agreements governing the Joint Venture Enterprise, including the August 8, 2023 Mutual Non-Disclosure Agreement executed by John Holland on behalf of Paragon.

That confidential framework also arose from fiduciary obligations. Daniel Holland, Paragon's founder and majority owner and the owner and operator of Clearspan, was at all relevant times a 50% member and one of three Managers of IP-LLC. Under Article XI, § 1 of the IP-LLC Operating Agreement and state law, Daniel Holland owed IP-LLC and its other members, Kirk Grundahl and Suzanne Grundahl, duties of good faith, care, and loyalty. Those duties extended to the Enterprise intellectual property that Inspired Pursuits was formed to hold, and Daniel Holland's

7

knowledge of the proprietary and confidential character of the Engineering Inputs is imputed to Paragon and Clearspan, the entities he owned and controlled. Paragon therefore received the Engineering Inputs subject to a relationship of trust and confidence, whether or not any single document is labeled a confidentiality agreement. Defendants deny the remaining allegations of paragraph 36.

37.     Defendants deny the allegations of paragraph 37.

## C.  Inspired Pursuits, LLC

38.     Defendants admit that Daniel Holland, Kirk Grundahl, and Suzanne Grundahl formed IP-LLC, with Daniel Holland owning a 50% membership interest and the Grundahls owning 50% in equal shares. Defendants deny that IP-LLC was formed in December 2022; it was formed in Texas in 2017 and redomesticated in Wisconsin in 2022. Defendants deny that the Estate of Daniel Holland owns a membership interest; upon Daniel Holland's death the Estate holds only his financial interest in IP-LLC. Defendants deny the remaining allegations of paragraph 38.

39.     Defendants deny the allegations of paragraph 39.

40.     Defendants admit that no assignment exists from Paragon to Inspired Pursuits. Defendants did not assign their interests in the Engineering Inputs or the Paragon Truss Software to Paragon, and Paragon cannot assign what it does not own. Defendants deny the remaining allegations of paragraph 40.

41.     Defendants deny the allegations of paragraph 41.

42.     Defendants deny the allegations of paragraph 42.

## D.  Defendant's (Purported) False Allegations of Intellectual Property Ownership

43.     Defendants deny the allegations of paragraph 43.

44.    Defendants admit that Kirk Grundahl sent Paragon a memorandum in March 2024 asserting Defendants' ownership interests. The document speaks for itself. Defendants deny the remaining allegations of paragraph 44.

45.    Defendants deny the allegations of paragraph 45. The document speaks for itself.

46.    Defendants admit that Paragon's counsel sent a letter dated May 23, 2024. Defendants deny the characterization of that letter as merely explaining Paragon's position. On May 21, 2024, John Holland presented Defendants with a surrender letter drafted to appear as though Kirk Grundahl and Suzanne Grundahl had authored and signed it disclaiming all ownership interests—a letter Defendants did not write and did not sign. The documents speak for themselves. Defendants deny the remaining allegations of paragraph 46.

47.    Defendants admit that Kirk Grundahl sent a response on May 29, 2024. The document speaks for itself. Defendants deny the remaining allegations of paragraph 47.

48.    Defendants admit that correspondence was sent to Paragon during June 2024 asserting Defendants' ownership interests. The documents speak for themselves. Defendants deny the remaining allegations of paragraph 48.

49.    Defendants deny the allegations of paragraph 49.

50.    Defendants deny the allegations of paragraph 50.

51.    Defendants deny the allegations of paragraph 51.

52.    Defendants deny the allegations of paragraph 52.

53.    Defendants deny that this declaratory judgment action presents a justiciable controversy requiring resolution in this proceeding; the parties' dispute is the subject of separate ongoing litigation in this Court. Defendants deny that Paragon is entitled to the relief sought.

## V.  CAUSES OF ACTION

### COUNT ONE
**(Declaratory Judgment of Ownership of
All Copyrights in the Paragon Truss Software)**

54.    Defendants incorporate by reference their responses to paragraphs 1 through 53 above.

55.    Defendants deny the allegations of paragraph 55.

56.    Defendants deny the allegations of paragraph 56.

57.    Defendants deny that this declaratory judgment action presents a justiciable controversy requiring resolution in this proceeding; the parties' dispute is the subject of separate ongoing litigation in this Court. Defendants deny that Paragon is entitled to the relief sought.

58.    Defendants admit that Paragon seeks the declaratory relief described. Defendants deny that Paragon is entitled to such relief.

59.    Defendants admit that the Paragon Truss Software contains copyrightable expression. Defendants deny that Paragon is the sole owner of the copyright rights therein.

60.    Defendants admit that the Paragon Truss Software is fixed in a tangible medium. Defendants are without sufficient information to admit or deny the remaining allegations of paragraph 60 and therefore deny them.

61.    Defendants deny the allegations of paragraph 61.

62.    Defendants deny the allegations of paragraph 62. No work-made-for-hire agreement exists between Defendants and Paragon.

63.    Defendants deny the allegations of paragraph 63.

64.    Defendants deny the allegations of paragraph 64.

65.    Defendants deny the allegations of paragraph 65.

66.    Defendants deny the allegations of paragraph 66.

67.     Defendants deny the allegations of paragraph 67.

68.     Defendants admit that Paragon has not executed any written assignment to any Defendant. Defendants did not assign their interests in the Engineering Inputs or the Paragon Truss Software to Paragon, and Paragon cannot assign what it does not own.

69.     Defendants deny the allegations of paragraph 69.

70.     Defendants deny the allegations of paragraph 70.

71.     Defendants deny the allegations of paragraph 71.

72.     Defendants deny the allegations of paragraph 72.

73.     Defendants deny that Paragon is entitled to the relief described in paragraph 73.

74.     Defendants deny the allegations of paragraph 74.

75.     Defendants deny the allegations of paragraph 75.

## COUNT TWO
### (Declaratory Judgment of Ownership of Trademarks)

76.     Defendants incorporate by reference their responses to paragraphs 1 through 75 above.

77.     Defendants deny the allegations of paragraph 77.

78.     Defendants deny that this declaratory judgment action presents a justiciable controversy requiring resolution in this proceeding; the parties' dispute is the subject of separate ongoing litigation in this Court. Defendants deny that Paragon is entitled to the relief sought.

79.     Defendants admit that Paragon seeks the declaratory relief described. Defendants deny that Paragon is entitled to such relief.

80.     Defendants deny that Paragon solely owns any rights in the user interfaces of the Paragon Truss Software; Defendants contributed to the design and development of the user

interfaces. Defendants are without sufficient information to admit or deny the remaining allegations of paragraph 80 and therefore deny them.

81.     Defendants deny the allegations of paragraph 81. The commercial name "Truss Pal" was developed as part of the Joint Venture Enterprise and is not solely owned by Paragon.

82.     Defendants are without sufficient information to admit or deny the allegations of paragraph 82 and therefore deny them.

83.     Defendants admit that no Defendant currently uses the Paragon Marks in United States commerce. Defendants deny the remaining allegations of paragraph 83.

84.     Defendants admit that no written assignment of trademark interests exists between the parties. Defendants did not assign their interests in the Engineering Inputs or the Paragon Truss Software to Paragon, and Paragon cannot assign what it does not own. Defendants deny the remaining allegations of paragraph 84.

85.     Defendants deny the allegations of paragraph 85.

86.     Defendants deny the allegations of paragraph 86.

87.     Defendants deny the allegations of paragraph 87.

88.     Defendants deny the allegations of paragraph 88.

89.     Defendants deny that Paragon is entitled to the relief described in paragraph 89.

90.     Defendants deny the allegations of paragraph 90.

91.     Defendants deny the allegations of paragraph 91.

## COUNT THREE
### (Declaratory Judgment of Ownership of Patentable Inventions)

92.     Defendants incorporate by reference their responses to paragraphs 1 through 91 above.

93.     Defendants deny the allegations of paragraph 93.

12

94. Defendants deny that this declaratory judgment action presents a justiciable controversy requiring resolution in this proceeding; the parties' dispute is the subject of separate ongoing litigation in this Court. Defendants deny that Paragon is entitled to the relief sought.

95. Defendants admit that Paragon seeks the declaratory relief described. Defendants deny that Paragon is entitled to such relief.

96. Defendants deny the allegations of paragraph 96. Paragon has identified no specific patentable inventions in the Paragon Truss Software in this litigation.

97. Defendants deny the allegations of paragraph 97.

98. Defendants deny the allegations of paragraph 98.

99. Defendants deny the allegations of paragraph 99 to the extent they purport to apply to Defendants. Defendants were not employees of Paragon and were subject to no obligation to assign any interest to Paragon.

100. Defendants deny the allegations of paragraph 100.

101. Defendants deny the allegations of paragraph 101.

102. Defendants admit that no written assignment exists between the parties. Defendants did not assign their interests in the Engineering Inputs or the Paragon Truss Software to Paragon, and Paragon cannot assign what it does not own. Defendants deny the remaining allegations of paragraph 102.

103. Defendants deny the allegations of paragraph 103.

104. Defendants deny the allegations of paragraph 104.

105. Defendants deny the allegations of paragraph 105.

106. Defendants deny the allegations of paragraph 106.

107. Defendants deny the allegations of paragraph 107.

108.    Defendants deny that Paragon is entitled to the relief described in paragraph 108.

109.    Defendants deny the allegations of paragraph 109.

**COUNT FOUR**
**(Declaratory Judgment of Trade Secret Ownership**
**Under the Federal Defend Trade Secrets Act)**

110.    Defendants incorporate by reference their responses to paragraphs 1 through 109 above.

111.    Defendants deny the allegations of paragraph 111.

112.    Defendants deny that this declaratory judgment action presents a justiciable controversy requiring resolution in this proceeding; the parties' dispute is the subject of separate ongoing litigation in this Court. Defendants deny that Paragon is entitled to the relief sought.

113.    Defendants admit that Paragon seeks the declaratory relief described. Defendants deny that Paragon is entitled to such relief.

114.    Defendants deny that the trade secret information described in paragraph 114 belongs solely to Paragon. The Engineering Inputs and professional engineering judgment used in the Paragon Truss Software are trade secrets owned by Defendants, not Paragon.

115.    Defendants are without sufficient information to admit or deny the allegations of paragraph 115 regarding Paragon's internal security measures and therefore deny them.

116.    Defendants deny that Paragon is the sole owner of the trade secret information that derives economic value from secrecy. The Engineering Inputs contributed by Defendants through the Joint Venture Enterprise are trade secrets from which Defendants derive independent economic value. Defendants deny the remaining allegations of paragraph 116.

117.    Defendants deny the allegations of paragraph 117. Defendants' Engineering Inputs and professional engineering judgment are trade secrets developed independently by the Qualtim

Companies through decades of professional engineering practice, maintained in confidence within the framework of the Joint Venture Enterprise, and not generally known or readily ascertainable.

118.    Defendants deny the allegations of paragraph 118.

119.    Defendants deny the allegations of paragraph 119.

120.    Defendants deny the allegations of paragraph 120. Defendants' Engineering Inputs were communicated within a confidential framework established through the course of dealing and agreements governing the Joint Venture Enterprise. The Engineering Inputs are proprietary methodologies developed independently by the Qualtim Companies and are not well-known or independently derivable from public standards.

121.    Defendants deny the allegations of paragraph 121.

122.    Defendants deny the allegations of paragraph 122.

123.    Defendants deny the allegations of paragraph 123.

124.    Defendants admit that no assignment exists between the parties. Defendants did not assign their interests in the Engineering Inputs or the Paragon Truss Software to Paragon, and Paragon cannot assign what it does not own. Defendants deny the remaining allegations of paragraph 124.

125.    Defendants deny the allegations of paragraph 125.

126.    Defendants deny the allegations of paragraph 126.

127.    Defendants deny the allegations of paragraph 127.

128.    Defendants deny the allegations of paragraph 128.

129.    Defendants deny that Paragon is entitled to the relief described in paragraph 129.

130.    Defendants deny the allegations of paragraph 130.

**COUNT FIVE**
**(Declaratory Judgment of Trade Secret Ownership**
**Under the Tennessee Uniform Trade Secrets Act)**

131.    Defendants incorporate by reference their responses to paragraphs 1 through 130 above. Defendants deny that Tennessee law governs any trade secret rights in the Engineering Inputs; the Engineering Inputs were developed by Wisconsin entities in Wisconsin through the Joint Venture Enterprise and are governed by Wisconsin law and the federal Defend Trade Secrets Act.

132.    Defendants deny the allegations of paragraph 132. Defendants further deny that Tennessee trade secret law governs Defendants' Engineering Inputs.

133.    Defendants deny that this declaratory judgment action presents a justiciable controversy requiring resolution in this proceeding; the parties' dispute is the subject of separate ongoing litigation in this Court. Defendants deny that Paragon is entitled to the relief sought.

134.    Defendants admit that Paragon seeks the declaratory relief described. Defendants deny that Paragon is entitled to such relief. Defendants deny that Tennessee trade secret law governs Defendants' Engineering Inputs.

135.    Defendants deny that the trade secret information described in paragraph 135 belongs solely to Paragon. The Engineering Inputs and professional engineering judgment used in the Paragon Truss Software are trade secrets owned by Defendants, not Paragon. Defendants deny that Tennessee trade secret law governs Defendants' Engineering Inputs.

136.    Defendants are without sufficient information to admit or deny the allegations of paragraph 136 regarding Paragon's internal security measures and therefore deny them.

137.    Defendants deny that Paragon is the sole owner of the trade secret information that derives economic value from secrecy. The Engineering Inputs contributed by Defendants through

16

the Joint Venture Enterprise are trade secrets from which Defendants derive independent economic value. Defendants deny the remaining allegations of paragraph 137.

138. Defendants deny the allegations of paragraph 138. Defendants' Engineering Inputs and professional engineering judgment are trade secrets maintained in confidence within the framework of the Joint Venture Enterprise and are not generally known or readily ascertainable.

139. Defendants deny the allegations of paragraph 139.

140. Defendants deny the allegations of paragraph 140.

141. Defendants deny the allegations of paragraph 141. Defendants' Engineering Inputs were communicated within a confidential framework established through the course of dealing and agreements governing the Joint Venture Enterprise. Defendants deny that Tennessee trade secret law governs Defendants' Engineering Inputs.

142. Defendants deny the allegations of paragraph 142.

143. Defendants deny the allegations of paragraph 143.

144. Defendants deny the allegations of paragraph 144.

145. Defendants admit that no assignment exists between the parties. Defendants did not assign their interests in the Engineering Inputs or the Paragon Truss Software to Paragon, and Paragon cannot assign what it does not own. Defendants deny that Tennessee trade secret law governs Defendants' Engineering Inputs. Defendants deny the remaining allegations of paragraph 145.

146. Defendants deny the allegations of paragraph 146. Defendants deny that Tennessee trade secret law governs Defendants' Engineering Inputs; Wisconsin law and the federal Defend Trade Secrets Act govern Defendants' trade secret rights in the Engineering Inputs.

17

147.    Defendants deny the allegations of paragraph 147. Defendants deny that Tennessee trade secret law governs Defendants' Engineering Inputs.

148.    Defendants deny the allegations of paragraph 148. Defendants deny that Tennessee trade secret law governs Defendants' Engineering Inputs.

149.    Defendants deny that Paragon is entitled to the relief described in paragraph 149. To the extent paragraph 149 seeks relief under Wisconsin law, Defendants assert that Wisconsin law governs Defendants' Engineering Inputs and that Paragon is not entitled to any declaration of non-ownership thereunder.

150.    Defendants deny the allegations of paragraph 150.

151.    Defendants deny the allegations of paragraph 151.

### VI.  PRAYER FOR RELIEF

Defendants deny that Paragon is entitled to any of the relief requested in paragraphs 135 [sic] through 139 [sic] of its Prayer for Relief, including any declaration of sole ownership, any award of attorneys' fees, costs, or expenses, or any other relief.

Defendants acknowledge Paragon's demand for trial by jury.

### AFFIRMATIVE DEFENSES

Without assuming any burden of proof that would not otherwise rest on Defendants, and without waiving any argument or right, Defendants assert the following affirmative defenses to Paragon's Complaint.

### FIRST DEFENSE—DECLARATORY JUDGMENT
### JURISDICTION SHOULD BE DECLINED

This Court should decline to exercise declaratory judgment jurisdiction. The parties' dispute is already the subject of pending litigation in this Court that will fully resolve the controversy.

## SECOND DEFENSE—FAILURE TO STATE A CLAIM

Paragon's Complaint fails to state a claim upon which relief can be granted.

## THIRD DEFENSE—JOINT OWNERSHIP

Defendants are joint owners of the Paragon Truss Software. A co-owner cannot be excluded from ownership of a jointly owned work.

## FOURTH DEFENSE—JOINT VENTURE PROPERTY

The Paragon Truss Software is property of the Joint Venture Enterprise and cannot be claimed as the sole property of one co-venturer.

## FIFTH DEFENSE—UNCLEAN HANDS

Paragon's claims are barred by unclean hands.

## SIXTH DEFENSE—BAD FAITH

Paragon has pursued this action and asserted its ownership claims in bad faith.

## SEVENTH DEFENSE—ESTOPPEL

Paragon's claims are barred by equitable and promissory estoppel.

## EIGHTH DEFENSE—WAIVER

Paragon waived any claim to sole ownership by accepting the benefits of Defendants' Engineering Inputs for years without objecting to Defendants' ownership interests.

## NINTH DEFENSE—ACQUIESCENCE

Paragon acquiesced in Defendants' ownership interests by participating in the Joint Venture Enterprise, forming Inspired Pursuits, LLC with Defendants, executing confidentiality agreements acknowledging the proprietary nature of the Engineering Inputs, and conducting itself for many years in a manner inconsistent with any claim of sole ownership.

### TENTH DEFENSE—PERMITTED USE WITHIN JOINT VENTURE

Paragon's use of Defendants' Engineering Inputs was permitted solely as part of the Joint Venture Enterprise. That permission terminated with the Enterprise. Any continued use by Paragon is without authorization.

### ELEVENTH DEFENSE—STATUTE OF LIMITATIONS

Paragon's claims are barred by the applicable statute of limitations.

### TWELFTH DEFENSE—LACHES

Paragon's claims are barred by laches.

### THIRTEENTH DEFENSE—NO WRITTEN ASSIGNMENT

Paragon's ownership claims are barred by 17 U.S.C. § 204(a). No written instrument transferring any copyright interest in the Engineering Inputs to Paragon exists.

### FOURTEENTH DEFENSE—FAILURE TO JOIN INDISPENSABLE PARTIES

Paragon has failed to join all parties whose interests would be directly affected by any declaration of ownership as required by Fed. R. Civ. P. 19.

### FIFTEENTH DEFENSE—FAILURE OF CONSIDERATION

Paragon made no adequate payment for Defendants' Engineering Inputs and professional engineering judgment. Any claim of ownership based on a contractual relationship with Defendants fails for failure of consideration.

### SIXTEENTH DEFENSE—LACK OF JUSTICIABLE CONTROVERSY

Paragon's claim for declaratory judgment of patent ownership fails to present a justiciable controversy. Paragon has identified no specific patentable inventions, filed no patent application, and holds no issued patent in the Paragon Truss Software.

### SEVENTEENTH DEFENSE—INVENTORSHIP

To the extent any patent rights exist in the Paragon Truss Software, Defendants contributed to the conception of the inventions and are co-inventors and co-owners of any such patent rights.

### EIGHTEENTH DEFENSE—PRIOR USE

Defendants used the Truss Pal and Paragon marks in commerce during the Joint Venture Enterprise and hold prior use rights in those marks.

### NINETEENTH DEFENSE—NO IRREPARABLE HARM

Paragon is not entitled to injunctive or equitable relief because it cannot demonstrate irreparable harm.

### TWENTIETH DEFENSE—RESERVATION OF DEFENSES

Defendants reserve the right to assert such additional affirmative defenses as may become available through discovery or investigation, subject to seeking appropriate leave of court under Fed. R. Civ. P. 15. This reservation is intended solely to preserve Defendants' rights and does not constitute a claim that additional defenses exist at this time.

### PRAYER FOR RELIEF

Defendants respectfully request that this Court:

1.    Dismiss Paragon's Complaint with prejudice and deny all relief requested therein;

2.    Declare that Defendants are joint owners of the Paragon Truss Software and all intellectual property rights therein;

3.    Declare that Paragon is not the sole and exclusive owner of the Paragon Truss Software or any related intellectual property;

4.    Award Defendants their attorneys' fees, costs, expenses, and interest incurred in defending this action; and

5.    Grant such other and further relief as the Court deems just and proper.

21

Dated this ___ day of June, 2026.

                              **MURPHY DESMOND S.C.**
                              Attorneys for Qualtim, Inc., Center for Building
                              Innovation, LLC, DrJ Engineering, LLC, Inspired
                              Pursuits, LLC, and Suzanne Grundahl.

                              Electronically Signed By: */s/ Scott G. Salemi*
                                     Scott G. Salemi
                                     State Bar Number: 1118960
                                     33 East Main Street, Suite 500
                                     Madison, WI 53701-2038
                                     Phone: (608) 257-7181
                                     Fax: (608) 257-2508
                                     ssalemi@murphydesmond.com

                              **KIRK GRUNDAHL**
                              Pro Se Defendant

                              Electronically Signed By: */s/ Kirk Grundahl*
                                     Kirk Grundahl
                                     1130 Fairway Court
                                     Lake Mills, WI 53551
                                     Ph.: 608-217-3713
                                     kgrundahl@qualtim.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PARAGON COMPONENT SYSTEMS, LLC,

      Plaintiff-Counterclaim Defendant,

v.                                  Case No. 3:25-cv-00170-wmc

QUALTIM, INC., CENTER FOR BUILDING
INNOVATION, LLC, DRJ ENGINEERING,
LLC, INSPIRED PURSUITS, LLC, KIRK
GRUNDAHL, and SUZANNE GRUNDAHL,

      Defendants-Counterclaim

Plaintiffs.

---

**COUNTERCLAIM**

---

**INTRODUCTION**

Counterclaim Plaintiffs bring this counterclaim to vindicate their co-ownership of the Paragon Truss Software, a structural engineering platform they spent almost a decade helping to build and that would not exist without the professional engineering judgment, proprietary testing, and authored specifications they contributed throughout the Joint Venture Enterprise.

Paragon Component Systems, LLC is a company of software coders. It has no licensed professional engineers on staff and never did. The Paragon Truss Software functions as a structural engineering tool only because Kirk Grundahl and the Qualtim Companies supplied the engineering intelligence that makes it work. When one of the founders of the Enterprise died in January 2024, Paragon seized the software, locked the Qualtim Companies out, and launched commercially, using Qualtim Companies' Engineering Inputs, without their authorization, and without accounting to them for a single dollar.

23

This counterclaim seeks a declaration of co-ownership, an accounting of the revenues and profits Paragon has derived from the jointly owned work, and a judicial wind-up of the Enterprise Paragon wrongfully abandoned.

## FACTUAL BACKGROUND

### I.  THE PARTIES

1.     Counterclaim Plaintiff Qualtim, Inc. ("Qualtim") is a Wisconsin corporation with its principal place of business in Madison, Dane County, Wisconsin.

2.     Counterclaim Plaintiff DrJ Engineering, LLC ("DrJ") is a Wisconsin limited liability company with its principal place of business in Madison, Dane County, Wisconsin. Its sole member is Kirk Grundahl, a resident of Wisconsin.

3.     Counterclaim Plaintiff Center for Building Innovation, LLC ("CBI") is a Wisconsin limited liability company with its principal place of business in Madison, Dane County, Wisconsin. Its members are residents of Wisconsin.

4.     Counterclaim Plaintiff Inspired Pursuits, LLC ("IP-LLC") is a Wisconsin limited liability company with its principal place of business in Madison, Dane County, Wisconsin. IP-LLC was initially formed as a Texas limited liability company in 2017 and subsequently redomesticated as a Wisconsin limited liability company in 2022. It was formed by Daniel Holland, Kirk Grundahl, and Suzanne Grundahl during the course of the Joint Venture Enterprise as the jointly controlled entity through which the Enterprise's intellectual property would be held. Its current members are Kirk Grundahl and Suzanne Grundahl, both residents of Wisconsin.

5.     Counterclaim Plaintiff Kirk Grundahl is an individual and resident of Wisconsin. He is a licensed professional engineer, the founder and principal of Qualtim, DrJ, and CBI, and a founding member of IP-LLC.

24

6.     Counterclaim Plaintiff Suzanne Grundahl is an individual and resident of Wisconsin. She is a founding member of IP-LLC and a Counterclaim Plaintiff.

7.     Qualtim, DrJ, and CBI are referred to collectively as the "Qualtim Companies." Qualtim, DrJ, CBI, IP-LLC, Kirk Grundahl, and Suzanne Grundahl are referred to collectively as "Counterclaim Plaintiffs."

8.     Counterclaim Defendant Paragon Component Systems, LLC ("Paragon") is a Tennessee limited liability company with its principal place of business in Chattanooga, Hamilton County, Tennessee. Paragon is the plaintiff in this declaratory judgment action.

## II.  JURISDICTION AND VENUE

9.     This Court has subject-matter jurisdiction over Counts I and II under 28 U.S.C. §§ 1331 and 1338(a), as Counts I and II arise under the Copyright Act of the United States, with declaratory relief sought pursuant to 28 U.S.C. §§ 2201–2202. This Court has supplemental jurisdiction over Count III under 28 U.S.C. § 1367(a), as Count III arises from the same nucleus of operative fact as the federal counts and forms part of the same case or controversy under Article III of the United States Constitution.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b). This action was transferred to this District, and the counterclaim arises from the same transactions and occurrences that are the subject of Paragon's complaint.

## III.  DEFINED TERMS

11.     The following defined terms, used consistently with those employed in discovery proceedings in this action and in the related case captioned Inspired Pursuits, LLC et al. v. Paragon Component Systems, LLC et al., Case No. 3:25-cv-00075-wmc (W.D. Wis.) (the "'75 Action"), are used throughout this counterclaim. Nothing in this counterclaim constitutes a concession that

25

the Engineering Inputs are not protected as trade secrets under the Defend Trade Secrets Act or the Wisconsin Uniform Trade Secrets Act, or that any determination in this action regarding copyright adjudicates the separate trade secret questions pending in the '75 Action.

(a)    "Joint Venture Enterprise" or "Enterprise" means the joint venture business relationship among Kirk Grundahl, Suzanne Grundahl, and their affiliated entities Qualtim, Inc., DrJ Engineering, LLC, and Center for Building Innovation, LLC, on one side, and Daniel Holland and his affiliated entities Paragon Component Systems, LLC and Clearspan Components, Inc. on the other, together with their jointly controlled entity Inspired Pursuits, LLC, involving the development, application, testing, validation, and commercialization of engineering technologies and related services used in the structural building component industry, arising from the parties' course of conduct and written, oral, and implied-in-fact agreements beginning in approximately March 2009 and continuing through approximately May 2024.

(b)    "Engineering Inputs" means the proprietary engineering knowledge and methodologies created by Kirk Grundahl and the Qualtim Companies through professional engineering practice long predating the Enterprise and the Paragon Truss Software. Engineering Inputs include engineering methods, calculations, design approaches, testing programs, calibration frameworks, engineering decision systems, engineering workflows, manufacturing systems and quality systems related to engineered designs, and professional engineering judgment used in structural component design and manufacturing. Engineering Inputs are independent of any software environment and were not created for Paragon. Any Engineering Inputs refined through Enterprise-related work were never assigned to Paragon.

(c)    "Paragon Truss Software" means the software environment created within the Joint Venture Enterprise as a computational tool for performing structural component design calculations using the Qualtim Companies' Engineering Inputs. The Paragon Truss Software did not exist before the Enterprise and was created specifically to serve the Enterprise's commercial purposes. It is the subject of Paragon's declaratory judgment action.

### IV.  THE JOINT VENTURE ENTERPRISE

#### A.  Origins and Formation

12.    The relationship between Kirk Grundahl and Daniel Holland dates to at least 1999, when Daniel Holland joined the board of the Wood Truss Council of America ("WTCA") trade association, of which Mr. Grundahl was a principal contributor.

13.    For decades, the truss design industry has been dominated by a small number of metal connector plate manufacturers who control both the plate supply and the truss design

26

software used throughout the industry, creating a supplier-controlled ecosystem in which independent engineering judgment was marginalized. The five TPI member companies—MiTek, Alpine, Simpson Strong-Tie, Eagle Metal Products, and Cherokee Metal Products—provide their design software to component manufacturers at no or limited direct charge, conditioned on exclusive use of the company's proprietary metal connector plates. Component manufacturers have historically had no ability to use lower-cost or independently sourced plates without abandoning their entire software investment and design infrastructure. This arrangement has commoditized truss design, eliminated value-added engineering differentiation, and concentrated pricing power in the plate manufacturers.

14.     Kirk Grundahl and Daniel Holland identified this as both a market problem and a commercial opportunity. The Enterprise was formed to develop and commercialize an independent platform—combining proprietary engineering inputs, independent software, and non-proprietary connector plates—outside the plate-centric supplier-controlled model, with the potential to restore value-added engineering margins for component manufacturers and deliver a disruptive competitive alternative to the industry.

15.     The Enterprise was structured as a shared-risk venture in which professional engineering services, manufacturing operations, and software-enabled design processing were to be undertaken in advance of full commercialization. Consistent with this structure, Counterclaim Plaintiffs provided substantial services on reduced-fee, deferred, and non-contemporaneously billed terms as part of the Enterprise's commercialization efforts. This shared-risk structure continued from 2009 through Paragon's termination of the Enterprise in 2024, with the Qualtim Companies still absorbing unreturned contributions in anticipation of the imminent commercial launch.

16.    During the course of the Enterprise, the principals, Daniel Holland, Kirk Grundahl, and Suzanne Grundahl, agreed that a jointly controlled holding entity was needed for the intellectual property being created within the Enterprise. In 2017, the principals formed IP-LLC for that purpose. IP-LLC was to serve as the vehicle through which the Enterprise's intellectual property would be held and managed for the benefit of all Enterprise participants. The IP-LLC members' understanding was first memorialized in a written document in 2017 and later disseminated as part of a December 31, 2019 agenda designated Confidential and bearing the DTSA footer, distributed to Daniel Holland, John Holland, Kirk Grundahl, and Suzanne Grundahl. That agenda, consistent with the members' prior agreement, identified IP-LLC as the holder of all software, software design, engineering analysis, testing, and related IP arising from the Enterprise's activities.

**B.  Enterprise Structure and Agreements**

17.    At a September 13, 2017 strategic meeting among the principals in Madison, Wisconsin, the parties discussed the LLC and IP ownership structure, the roles of each party in the Enterprise, and what would happen if either party ceased to exist. In that discussion, Daniel Holland acknowledged the mutual material dependency of the parties, stating that Paragon and DrJ and Qualtim were "more than symbiotic" and that if something happened to Paragon the Qualtim Companies would be materially injured, and vice versa, and asked how the parties could mitigate that risk. A written follow-up communication dated September 18, 2017, captioned "Dan Holland Comments on the Paragon DrJ CM Relationship," addressed the structure of the relationship between the Enterprise participants and their respective roles.

18.    The Enterprise's business relationships were governed by fifteen years of written, oral, and implied contracts and course of dealing among the principals and their respective entities,

including regular meetings between the parties throughout the Enterprise period, bi-weekly discussions between the parties reflected in over 300,000 Slack communications, the provision of professional engineering services by the only licensed professional engineers in the Enterprise, non-disclosure and confidentiality arrangements protecting the Engineering Inputs and intellectual property of the Enterprise, professional engineering services agreements for sealing and repairs, plant manufacturing inspections, software interface analysis and testing, and joint commercialization activities.

19.     Clearspan's president, Rob Eason, confirmed that despite substantial and ongoing payments between two Enterprise participants, Clearspan and Paragon, including at least $30,000 per month from Clearspan to Paragon for design service access, plus per-use sealing software fees, and occasional lump-sum payments including a $500,000 payment in December 2021, no written agreements governed their payment relationship. Eason further confirmed that the sole authorization for these payments was Daniel Holland's initials on the invoices, which Eason then approved by signing the checks.

20.     Clearspan Components, Inc., owned and operated by Daniel Holland, was the commercial manufacturing engine of the Enterprise: the structural component manufacturer that would bring the integrated platform to market and serve as the commercial vehicle through which the Enterprise's business model would be deployed.

21.     The Qualtim Companies occupied both the input and output sides of the design process. On the input side, DrJ and the Qualtim Companies provided the Engineering Inputs, expressed and fixed in tangible media and independently copyrightable, that Paragon used to define the software's engineering logic, calibration, and decision frameworks. On the output side,

DrJ provided the professional engineering seal on every structural component design drawing produced by the software, and those output drawings bear a DrJ Engineering, LLC copyright.

22.     Paragon served as the computational tool between these two functions, the software platform that received Engineering Inputs from the Qualtim Companies, processed structural component design calculations using that engineering logic, and produced output drawings that DrJ then reviewed and sealed, with Clearspan manufacturing the sealed structural components.

23.     Paragon has no licensed professional engineers on staff and never did. Paragon's own counsel acknowledged this distinction to this Court at the December 10, 2025 motion hearing, stating that "Our client is a computer programmer, and his company are computer software developers." (Dec. 10, 2025 Hearing Tr. at 22:3-5.) Paragon's 30(b)(6) deponent John Holland likewise confirmed under oath that Paragon's software developers are not professional engineers and that Paragon does not undertake professional engineering truss design. Daniel Holland, the founder of Clearspan and a principal of the Enterprise, was a mechanical engineer but was not a licensed professional engineer and never provided sealing services, as confirmed by his son James Holland at his deposition.

24.     The absence of licensed professional engineers at Paragon was not a technical oversight. It defined the fundamental limit of Paragon's structural engineering capacity. Truss design software functions as a structural engineering tool, and structural engineering tools require structural engineering judgment that only a licensed professional engineer can supply, validate, and seal. Every major competing platform in the industry maintains substantial licensed professional engineering staff for precisely this reason. MiTek, the dominant TPI member software provider, maintains professional engineers licensed in all fifty states and Canadian provinces and

has strategically located engineering offices across North America to provide that engineering expertise to component manufacturers.

25.    Paragon had no such capacity. Paragon's coders could implement engineering specifications once provided to them. They could not originate, evaluate, validate, or seal structural engineering judgments. That is not a relationship between a principal author and a helpful consultant. It is a relationship in which one party supplied the only structural engineering authorship the work could have. The Qualtim Companies did not make suggestions that Paragon could accept or reject on engineering merit. They provided the engineering direction that Paragon's coders had no independent ability to second-guess, because second-guessing structural engineering judgments requires a licensed professional engineer.

26.    The Paragon Truss Software functions as a structural engineering tool only because of the Engineering Inputs and professional engineering judgment of the Qualtim Companies. The Engineering Inputs used in the software are not generic professional engineering services. They are the specific, original expression of Kirk Grundahl and Qualtim Companies' decades of professional engineering practice. A different engineer would have produced different inputs resulting in a materially different software. Kirk Grundahl and Qualtim Companies' Engineering Inputs reflect a depth of structural component testing, calibration, and validation experience that is unique in the industry and that no other licensed professional engineer could have replicated.

27.    The specific numerical parameters, threshold values, decision criteria, calibration factors, and algorithmic sequences that constitute the Engineering Inputs were not dictated by any published standard and were not compelled by physical necessity. The ANSI/TPI 1 standard and ASCE 7 establish minimum requirements and general frameworks but explicitly leave the design engineer to supply specific implementation judgments through professional expertise. ANSI/TPI

31

states it does not intend to preclude designs not meeting its criteria when equivalent performance is demonstrated. ASCE 7 explicitly states it is not intended to replace the sound judgment of a competent professional.

28.    The same public standards were available to MiTek, Alpine, Simpson Strong-Tie, Eagle Metal Products, and Cherokee Metal Products, yet each company has developed proprietary truss design software whose engineering outputs differ materially from one another's and from the Paragon Truss Software. John Holland confirmed this at a meeting on or about February 22, 2023, stating that Paragon's analysis is "completely our own and separate from anything they do." The existence of multiple proprietary, non-identical software systems built from the same public baseline establishes that the Qualtim Companies' specific engineering judgments were chosen expressions of professional judgment, not transcriptions of compelled code requirements, and are therefore protectable as original authored expression, including independently as trade secrets and confidential information.

## C. The Engineering Inputs and Their Contribution to the Software

29.    Prior to the formation of Paragon, Kirk Grundahl and the Qualtim Companies had worked with Daniel Holland and Clearspan using CompuTrus, a third-party truss design software that had served as the computational tool for their collaborative engineering and manufacturing activities. CompuTrus was subsequently purchased by MiTek, the dominant metal connector plate manufacturer in the industry, returning it to the plate-centric supplier-controlled ecosystem the Enterprise had been formed to escape.

30.    Beginning in approximately 2014, Kirk Grundahl and the Qualtim Companies began providing Engineering Inputs to John Holland, then a coder at Clearspan, for use in developing an independent replacement. Paragon was formed in 2016 specifically to be that

32

replacement, the Enterprise's independent software tool designed to sit between DrJ's Engineering Inputs on the input side and Clearspan's manufacturing operations on the output side, and the Qualtim Companies continued providing Engineering Inputs to Paragon's coders through the termination of the Enterprise in 2024.

31. Paragon's complaint alleges it acquired certain undefined intellectual property from Clearspan Components, Inc. at formation in 2016. The record establishes what that transfer consisted of and what became of it. At a meeting on our around February 22, 2023, Daniel Holland described writing his own truss design program after MiTek acquired CompuTrus, acknowledging he was "naive to think I could do such a thing." He then stated that John Holland "took everything I had and threw it out the window and started over."

32. The software Clearspan transferred to Paragon at formation was Daniel Holland's personal, discarded attempt at a truss design program, abandoned entirely by John Holland before development of the Paragon Truss Software commenced. Whatever intellectual property Clearspan contributed at formation was not used. The Paragon Truss Software as it exists today is not derived from anything Clearspan owned or transferred.

33. Moreover, to the extent any Engineering Inputs contributed by the Qualtim Companies assisted Daniel Holland's early development effort, those Engineering Inputs were never assigned to Daniel Holland or to Clearspan. The Qualtim Companies' Engineering Inputs were always their own intellectual property, contributed within the Enterprise's confidential framework, and no instrument of assignment to Daniel Holland, Clearspan, or Paragon was ever executed. Paragon cannot derive title to the Engineering Inputs through a chain that was never formed.

34.     The Engineering Inputs are the product of Kirk Grundahl's and the Qualtim Companies' professional engineering practice, developed through decades of independent testing, calibration, validation, and professional judgment in the field of structural component design.

35.     Throughout the Enterprise period, Paragon used no fewer than sixty distinct Engineering Inputs of the Qualtim Companies in the Paragon Truss Software, identified by number and name in the table below. The specific content of each, including the engineering methodology, the basis for its development, and its distinction from any published standard, is set forth in Defendants' Answer to Revised Interrogatory No. 5 in this action and Defendants' Answer to Interrogatory No. 10, Schedule A, in the '75 Action, including all corrections, amendments, and supplements thereto, both designated Confidential under the applicable Protective Orders and incorporated herein by reference.

| No. | Engineering Input Contribution |
| --- | --- |
| 1 | QC Tolerance Polygon System |
| 2 | Engineering vs. Manufacturing Decision Framework |
| 3 | Composite Section/Stacked Chord Methodology |
| 4 | Bending Capacity Factor Analysis Protocol |
| 5 | Top Chord Bearing Software Module (StrongEnd Truss) |
| 6 | Gross Plate Area Design Methodology |
| 7 | Plate Shear Resistance Methodology |
| 8 | ASCE 7 Wind and Snow Load Implementation |
| 9 | TPI Standard Implementation and Interpretation |
| 10 | Testing Data and Calibration |
| 11 | Tooth Withdrawal and Incising Factor Specifications |
| 12 | Multi-Ply Girder Design Methodology |
| 13 | Finite Element Analysis (FEA) Methodology and Calibration |
| 14 | Heel Joint Moment Check Methodology (TPI Check 8.7.1.1) |
| 15 | Stacked Floor Truss Top Chord Bearing Force Distribution Protocol |
| 16 | LVL/LSL Lumber Design Value Implementation |
| 17 | Web Member Lateral Restraint and Bracing Design Methodology |
| 18 | Bearing Block Plating Rules |
| 19 | Split Vertical End Condition Analysis Methods |
| 20 | Wood Splitting Prevention |
| 21 | Strong Axis vs. Weak Axis Determination for Multi-Ply Members |
| 22 | Analog Model Calibration Methods |
| 23 | Vector Diagram Load Path Analysis Protocol |
| 24 | Preservative Treatment and Moisture Content Design Guidance |
| 25 | Applied Loads Review and Competitive Positioning Process |
| 26 | Panel Length Deflection Check Policy |
| 27 | Moment Reduction Method |

| No. | Engineering Input Contribution |
|---|---|
| 28 | Wood-to-Wood Force Transmission |
| 29 | Compression Reduction Rule for Plating |
| 30 | Wind Load Database Implementation |
| 31 | Fundamental vs. Risk-Targeted Spectral Response Acceleration |
| 32 | Roof Pitch and Slope Correction Factors |
| 33 | Repetitive Member Factor Application Protocol |
| 34 | Drag Strut and Diaphragm Load Transfer Methodology |
| 35 | Hip Set Engineering and Load Distribution |
| 36 | Cantilever Design Rules and Deflection Limits |
| 37 | Piggyback Truss Load Transfer Protocol |
| 38 | Structural Insulated Panel (SIP) Interface Design |
| 39 | Mono Truss Slope and Loading Protocol |
| 40 | Valley Set Design Methodology |
| 41 | Scissors Truss Design and Geometry Rules |
| 42 | Attic Truss Live Load and Storage Criteria |
| 43 | Parallel Chord Truss Panel Point Load Distribution |
| 44 | Floor Truss Vibration and Deflection Control |
| 45 | Strongback Bracing Design Methodology |
| 46 | Notch and Hole Placement Rules for Structural Members |
| 47 | Girder Hanger and Connector Load Path Rules |
| 48 | Engineering Judgment Override Protocol |
| 49 | Manufacturing Tolerance Integration Framework |
| 50 | Quality System Inspection and Certification Protocol |
| 51 | ANAB-Accredited Evaluation Criteria Integration |
| 52 | Seismic Design Category Implementation Protocol |
| 53 | Snow Drift and Unbalanced Load Protocol |
| 54 | Ponding and Rain-on-Snow Surcharge Methodology |
| 55 | Long-Term Deflection and Creep Adjustment Protocol |
| 56 | Truss Repair and Field Modification Engineering Protocol |
| 57 | Specialty Truss Configuration Rules (Bowstring, Curved) |
| 58 | Structural Component Manufacturer QC Certification Protocol |
| 59 | Multi-Story Load Stacking and Transfer Framework |
| 60 | PE Seal Workflow and Professional Responsibility Integration |

36.    The names in the table are generic descriptors identifying the subject matter of each Engineering Input for purposes of this pleading only. The specific content, methodology, and proprietary detail of each Engineering Input is set forth in the referenced discovery responses designated Confidential under the applicable Protective Orders. The use of generic names does not constitute a disclosure of that confidential content and is not a waiver of any trade secret, confidentiality, or other protection applicable to the Engineering Inputs.

37.    The Engineering Inputs are maintained by the Qualtim Companies in fixed form in their own records, including, but not limited to, Excel spreadsheets with defined cell formulas,

calculation sequences, and organizational frameworks; written engineering specifications and documented calculation protocols; annotated drawings and diagrams; documented decision frameworks; photographs; testing reports; and audiovisual recordings of engineering meetings, technical demonstrations, and strategic planning sessions at which Engineering Inputs were authored, communicated, and expressed by Kirk Grundahl and the Qualtim Companies' licensed professional engineers. In the course of the Enterprise, the Qualtim Companies communicated Engineering Inputs to Paragon's coders through bi-weekly meetings, email, and Slack communications, and in some instances shared source documents and recordings, all within the Enterprise's confidential framework. These works, in each of the forms identified above, constitute original works of authorship fixed in tangible media within the meaning of 17 U.S.C. § 102(a).

38.     From Paragon's formation through the termination of the Enterprise, the Qualtim Companies participated in regular meetings and bi-weekly discussions with Paragon's coders at which Engineering Inputs were provided, reviewed, and used to build, update, and refine the Paragon Truss Software.

39.     The produced record reflects a sustained and documented pattern in which Paragon's coders requested Engineering Inputs from the Qualtim Companies' licensed professional engineers, including Kirk Grundahl P.E., Joe Michels P.E., Daniel Lawless P.E., Eric Helmueller P.E., Jim Vogt P.E., and Ryan Dexter P.E., who provided the engineering direction, which was then used in the Paragon Truss Software. Paragon's own internal records confirm this pattern explicitly, including documents reflecting that software development was performed "per DrJ's instructions" and "based on a spec from DrJ," and implementation confirmations stating "implementing the spec you gave."

36

40.    Truss design drawings produced within the Enterprise carried a DrJ Engineering, LLC copyright notice from at least 2016, and the Paragon Truss Software generated that notice on its output drawings from the software's first commercial use through Paragon's wrongful termination (a/k/a wrongful dissociation) of the Qualtim Companies in 2024. The DrJ Engineering, LLC copyright notice was generated through the Paragon Truss Software as part of the output, and Paragon never objected to its inclusion.

41.    The truss design drawings were made to DrJ Engineering, LLC's specific engineering specifications. DrJ determined the content, format, and engineering requirements that the drawings needed to satisfy for professional engineering sealing purposes, reflecting the integral role of the Qualtim Companies as co-authors of both the inputs and the outputs of the Paragon Truss Software. Following Paragon's wrongful termination of the Qualtim Companies, Paragon removed the DrJ Engineering, LLC copyright notice from the truss design drawings, as confirmed by James Holland at his deposition, who stated he began seeing "different paper for truss designs, different engineer seals" following the termination.

42.    IP-LLC was initially formed in 2017 by Daniel Holland, Kirk Grundahl, and Suzanne Grundahl as the Enterprise's jointly controlled intellectual property holding entity, with all three principals as members and managers. IP-LLC's role was to hold intellectual property generated by the Enterprise.

43. No written instrument of conveyance, assignment, or transfer of the Engineering Inputs, or of any other intellectual property owned by the Qualtim Companies, was executed in favor of IP-LLC or Paragon. Under 17 U.S.C. § 204(a), an assignment of copyright is valid only if made in a writing signed by the owner. No such writing exists. The Engineering Inputs remained at all times the intellectual property of the Qualtim Companies, made available to the Enterprise within

37

the Enterprise's confidential framework, without assignment or transfer of ownership, and never conveyed to IP-LLC, Paragon, or any other entity.

44.    This understanding was memorialized in written documents described in paragraph 16 above, which identified IP-LLC as the holder of software, software design, engineering analysis, testing, and related IP arising from the Enterprise's activities, that is, forward-looking commercial IP created within the Enterprise, not the Qualtim Companies' pre-existing and independently developed Engineering Inputs contributed as the foundation for that work.

## D.  Meetings and Communications Confirming the Enterprise Structure

45.  At a meeting on or about November 16, 2021, Daniel Holland stated: "Clearspan in the last couple of months has made an enormous amount of money, and part of the reason for that is DrJ sealing my trusses. DrJ hasn't made any money doing that, and you guys have spent a considerable amount of money supporting Paragon and Clearspan in ways that allowed us to buy plates from anybody." Daniel Holland acknowledged that the Qualtim Companies had not been compensated for their contributions and stated he wanted to "get money to the people that deserve to have it," asking Kirk Grundahl to "figure out how I can square the ledger with you guys and what that number needs to be."

46.    Daniel Holland further stated: "I view all three of us at the same table, pulling the rope the same way...right now the money's all coming to one leg, and I need to spread it to the other two." Both Daniel Holland and Kirk Grundahl acknowledged that the compensation structure was not sustainable and that the parties needed to establish an ongoing profit-sharing model, discussing a square foot basis, a price per pound per plate basis, and other metrics. Daniel Holland stated that "we're on the same team and we're going to take care of each other."

47.     The payment amount that followed this discussion was determined through a conversation between Suzanne Grundahl and Daniel Holland, in which Daniel Holland indicated he did not want the payment to be a round number. In the same month, Clearspan also paid Paragon $500,000, consistent with Daniel Holland's statement at the meeting that he was asking Paragon to do the same thing, directing both parties to invoice Clearspan as a mechanism to redistribute Clearspan's profits to the other Enterprise participants. A payment of $262,847 to the Qualtim Companies followed. No written settlement, release, or agreement of any kind accompanied the payment. The amount paid did not represent the full value of the Qualtim Companies' investments in the Enterprise at that time, which substantially exceeded that amount.

48.     The Qualtim Companies continued to provide Engineering Inputs without compensation up until Paragon's termination of the Enterprise in 2024.

49.     At a meeting on or about February 22, 2023, attended by John Holland, Daniel Holland, Kirk Grundahl, Suzanne Grundahl, Keith Hershey, and a prospective customer, John Holland demonstrated the Paragon Truss Software. When asked about the software's analog model and how it differed from other plate manufacturers' software, John Holland stated: "Our analysis is completely our own and separate from anything they do. So our results will be different. Obviously, we think ours is right." John Holland further stated that "one of the great values of our partnership with DrJ/Qualtim is there's so much potential for things like that that we ourselves can do, or we think we can bring value to go beyond what's in TPI or what's in the codes."

50.     On or about December 6, 2023, Kirk Grundahl and Daniel Holland met at Clearspan's facility in Meridian, Mississippi as part of a two-day Enterprise strategic planning session. The parties addressed directly what constituted protected IP as distinguished from the publicly available engineering baseline. Kirk Grundahl, a licensed professional engineer, stated

that standard civil engineering statics combined with ANSI/TPI 1 constituted the public baseline, and that all Engineering Inputs beyond that baseline, developed by the Qualtim Companies' licensed professional engineers over more than a decade, constituted protected IP. Daniel Holland confirmed that "if you don't have 30 years of experience, you can't even read TPI." Daniel Holland further stated "we have a lot of IP that's everything past TPI and whatever's in the public domain," and then acknowledged that Paragon's coders "don't really have a way to distinguish what's on that list," expressing concern that Paragon's coders might inadvertently disclose or give away the confidential Engineering Inputs used to make the Paragon Truss Software work through TrussPal, Paragon's separate public-facing software then under development. The parties agreed on an action item to formally document the IP delineation so that Paragon's coders would have an operative framework to identify what was protected and prevent inadvertent disclosure.

51.    That documentation was never completed. Daniel Holland died on or about January 17, 2024, forty-two days after this meeting.

**E.  Confidentiality**

52.    Throughout the Enterprise period, all Engineering Inputs were provided and used within a framework of confidentiality and non-disclosure, including through agreements, DTSA-marked meeting agendas distributed to Daniel Holland and John Holland, and the parties' sustained course of dealing. John Holland executed the August 8, 2023 Mutual Non-Disclosure Agreement on behalf of Paragon, and Paragon employees separately executed the same agreement, at the August 2023 strategic planning meeting in Madison, Wisconsin. As part of the Enterprise, Paragon received the Engineering Inputs in confidence and with full knowledge that they were the proprietary intellectual property of the Qualtim Companies.

**F.  Termination of the Enterprise and Paragon's Seizure of the Software**

53.  The particular undertaking of the Enterprise, full commercialization of the integrated platform, had not been completed at the time of Daniel Holland's death on or about January 17, 2024. The planned commercial launch was scheduled for the first quarter of 2024.

54.    On or about February 27-28, 2024, Kirk Grundahl and Suzanne Grundahl met with Rob Eason and James Holland at Clearspan's offices in Meridian, Mississippi for a two-day strategic planning session. Kirk Grundahl presented the full Enterprise framework to Rob Eason and James Holland, including the role of the Qualtim Companies' Engineering Inputs in the Paragon Truss Software, the proprietary nature of those Engineering Inputs, and the mutual dependencies among the Enterprise participants. Kirk Grundahl stated that the Paragon Truss Software "has got all of DrJ's intellectual property in it, all of CCI's intellectual property in it. Because it's an engineering program." Kirk Grundahl further stated that the Engineering Inputs reflected judgments "embedded in that software" that he did not want exposed to the marketplace, and presented the DTSA framework governing the Enterprise's confidential information. Kirk Grundahl's references to DrJ's intellectual property being "in" the software referred to Paragon's use of the Engineering Inputs in the software's calculations, not to any transfer or assignment of ownership. Rob Eason stated that this information would be provided to John Holland and that John Holland would need to be part of any meetings going forward.

55.    Two days later, on or about March 1, 2024, Kirk Grundahl and James Holland spoke by phone. James Holland stated that he was "charged up" about the meetings and that knowing where things could go forward "gives me hope." Kirk Grundahl expressed that his goal was to ensure that "the legacy your father is going to be fulfilled."

56.    On or about March 22, 2024, the Qualtim Companies transmitted a written memorandum to Paragon, portions of which were previously sent to Daniel Holland and John

Holland in November 2023 and January 2024, outlining their ownership interests in the Engineering Inputs and the Paragon Truss Software. James Holland, a shareholder of Clearspan Components, Inc., confirmed at his deposition that he received and read this document when Suzanne Grundahl forwarded it to him on or about March 25, 2024. The Qualtim Companies continued to assert those ownership interests in further written communications with Paragon in May and June 2024. Paragon had actual written notice of the Qualtim Companies' ownership claims before undertaking the termination sequence described below, before filing the present declaratory judgment action, and before its approximately October 2024 commercial market launch.

57.    Following Daniel Holland's death, Paragon and Clearspan undertook a series of actions to remove the Qualtim Companies from the Enterprise. On or about May 21, 2024, John Holland personally presented the Qualtim Companies at Clearspan's offices in Meridian, Mississippi with a letter drafted by John Holland, written as if Kirk Grundahl and Suzanne Grundahl were disclaiming all ownership interests in the Engineering Inputs and the Paragon Truss Software, without their knowledge or authorization. On or about May 23, 2024, Paragon's counsel sent a letter asserting Paragon's sole ownership of the Paragon Truss Software and characterizing the Qualtim Companies' Engineering Inputs as consulting services, and Paragon downgraded DrJ's access to a sealing-only tier.

58.    On or about June 3, 2024, Paragon's counsel sent additional demands to the same effect, and Clearspan ceased all truss design drawing submissions to DrJ, ending a continuous sealing relationship dating to 2009. Between on or about July 11 and July 24, 2024, Paragon restricted all Qualtim Companies' access to the Paragon Truss Software and Enterprise systems and directly emailed the Qualtim Companies' clients stating that they could no longer share jobs

with DrJ using the Paragon Review app. On or about July 26, 2024, Rob Eason terminated the CBI/Clearspan inspection agreement in writing.

59.     On or about July 23, 2024, Paragon filed the present declaratory judgment action seeking a declaration of sole ownership of all copyright, trademark, patent, and trade secret rights in the Paragon Truss Software.

60.     In approximately October 2024, Paragon commercially launched the Paragon Truss Software to the broader market, licensing it to structural component manufacturers throughout the industry, including competitors of Clearspan, using the Qualtim Companies' Engineering Inputs, without their authorization or any accounting to them. This commercial launch was outside the Enterprise's intended business model, which was structured around the integrated participation of all three Enterprise participants and was not designed as a general public software licensing business.

61.     Paragon continues to use, market, and license the Paragon Truss Software, including the Engineering Inputs used therein, without authorization from, compensation to, or accounting to the Qualtim Companies.

62.  The Paragon Operating Agreement executed at formation and subsequently amended contains a mandatory buy-sell provision requiring that upon the death of either Daniel or John Holland, the Company, Paragon itself, shall purchase all membership units owned by the decedent from the estate. The purchase price was contractually fixed at the greater of the formulaic Total Value multiplied by the decedent's percentage interest, or the amount of life insurance maintained on the decedent's life. Under § 7.9(B) of the Operating Agreement, Paragon was required to purchase and maintain a life insurance policy on Daniel Holland's life in the amount of $1,020,000, with Paragon named as the sole owner and direct beneficiary. The Total Value of Paragon was

43

stipulated by Daniel Holland, John Holland, and Lisa Holland in January 2017 at $2,311,000; at Daniel Holland's percentage interest of approximately 44%, the contractual minimum purchase price was approximately $1,020,000, the precise amount the life insurance was sized to cover.

63.    Following Daniel Holland's death on or about January 17, 2024, the estate's attorneys began tracking the life insurance on or about January 25, 2024, eight days after his death, calling the firm of Meyer & Rosenbaum specifically regarding "life insurance owned by Paragon," with follow-up contacts in January, March, and April 2024. The existence and ownership of that policy was therefore known to and actively investigated by the estate from the outset of administration.

64.    In July 2024, Lisa Holland, as executrix, filed a sworn petition in the Chancery Court of Lauderdale County, Mississippi, which John Thomas Holland also signed under oath, disclosing that Paragon had offered to purchase the estate's and Lisa Holland's membership interests in Paragon "at a fair market value purchase price that is being determined by a business appraisal firm retained to value the businesses owned by the decedent for the federal estate tax return." As of the date of that petition, July 11, 2024, the fair market value had not yet been determined and the appraisal was still in progress. The petition also acknowledged that Lisa Holland had a conflict of interest with respect to any litigation involving Paragon and Inspired Pursuits, LLC, and sought appointment of a special independent executor to handle those matters.

65.    Notwithstanding the contractual mandatory buyout mechanism, the required life insurance coverage, the fair-market-value appraisal process that Paragon itself had represented to a court of record was underway, and the Operating Agreement's explicit requirement that the purchase price be paid in cash or other immediately available funds, the membership interests in Paragon were ultimately acquired by Paragon itself for consideration of ten dollars ($10), a sum

44

more than $1,000,000 below the contractual floor and facially inconsistent with the fair-market-value transaction Paragon had represented to the Mississippi Chancery Court was in progress. Whether the $1,020,000 life insurance policy was maintained in force, whether proceeds were collected upon Daniel Holland's death, and how any proceeds were applied are matters of ongoing discovery.

66.    What is established on the face of the probate record is that the mandatory buy-sell mechanism was not followed as written, the estate received consideration grossly below the contractual minimum, and Paragon's purchase of those interests left John Holland as Paragon's sole or majority owner. John Holland simultaneously controlled Paragon as its chief executive officer, stood as the primary beneficiary of a below-market acquisition, and subsequently became executor of the same estate from which the purchase was made. The approximately $2 million in outstanding loans from the Holland family to Paragon were not extinguished by the transaction and remain outstanding, owed to trusts of which John Holland serves as co-trustee with Southeast Trust Company of Chattanooga, Tennessee. John Holland confirmed at deposition that he had become the majority owner of Paragon by the time Paragon filed the present action on or about July 23, 2024.

67.    This transaction does not extinguish the Qualtim Companies' ownership interests in the Joint Venture Enterprise's intellectual property, which arose independently through their participation in the Enterprise and were never conveyed to Paragon, to Daniel Holland's estate, or to John Holland in any capacity.

## COUNTERCLAIM

### COUNT I
### (Declaration of Joint Copyright Ownership;
### No Transfer; No Work-For-Hire)

68.     Counterclaim Plaintiffs incorporate by reference paragraphs 1 through 67 of this Counterclaim as though fully set forth herein.

**Joint Authorship**

69.   The Paragon Truss Software, including its source code, object code, organizational structure, user interfaces, calculation logic, output formats, and the Engineering Inputs used therein, constitutes a work of authorship containing copyrightable expression within the meaning of 17 U.S.C. § 101 et seq.

70.     The Paragon Truss Software is a "joint work" within the meaning of 17 U.S.C. § 101, which defines a joint work as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." The Qualtim Companies' Engineering Inputs and Paragon's software code are inseparable and interdependent parts of the unitary whole that constitutes the Paragon Truss Software. The software would not function as a structural engineering tool without the Engineering Inputs — they define what the software calculates, how it calculates it, and whether its outputs are valid engineered designs. Paragon's coders could not have written the code without Engineering Inputs provided by licensed professional engineers, because the engineering judgment required to determine what the software should calculate, how structural components should be designed, and whether the results are valid is work that only a licensed professional engineer can perform.

71.     Paragon had no licensed professional engineers on staff and had no independent capacity to originate that engineering judgment. The source code implements the Engineering Inputs; without them there was nothing to implement.

72. The Qualtim Companies satisfy the intent element of joint authorship. Throughout the Enterprise period, the parties worked together with the shared intention that their respective contributions would be merged into a single, unified software product. The bi-weekly meetings organized specifically to incorporate Engineering Inputs into software development, Paragon's own records confirming development "per DrJ's instructions" and "based on a spec from DrJ," the formation of IP-LLC as a joint intellectual property holding entity, and the parties' fifteen years of course of dealing all confirm this shared intent.

73. The DrJ Engineering, LLC copyright notice carried on output drawings generated by the Paragon Truss Software, continuing a practice within the Enterprise dating to at least 2016, was not a ministerial label. It was an affirmative act by Paragon—generated through Paragon's own software and sustained without objection for over a decade—reflecting the parties' shared understanding that DrJ was a co-author of both the inputs and the outputs of the Paragon Truss Software. Paragon's removal of that notice following termination, confirmed by James Holland at his deposition, constitutes a post-termination act of repudiation, not evidence of original sole authorship.

74. The parties' own admissions further confirm this shared intent. Daniel Holland acknowledged in a recorded meeting that the Qualtim Companies' Engineering Inputs had been a direct cause of Clearspan's commercial success and that compensation was owed for their contributions to the Enterprise's software. John Holland stated in a sales meeting that "one of the great values of our partnership with DrJ/Qualtim" was the ability to go beyond the TPI standard and described the analysis as "completely our own," reflecting the shared understanding that the software's engineering capabilities were a joint product of the Enterprise. Daniel Holland

confirmed in December 2023 that the Engineering Inputs beyond the public baseline constituted protected IP used to make the Paragon Truss Software work.

75. The Qualtim Companies satisfy the copyrightable contribution element of joint authorship. The Engineering Inputs identified in paragraph 35 collectively constitute independently copyrightable expression: they were expressed and fixed in tangible media, required original professional engineering judgment going beyond any published standard, and translated engineering knowledge into specific authored expression reflecting original professional engineering judgment. The fact that the Engineering Inputs were communicated to Paragon's coders for use in the software does not diminish their status as original copyrightable expression. The authorship resided in the engineering judgment and expression that the Qualtim Companies contributed, not in the act of coding that Paragon performed.

76. The Engineering Inputs identified in paragraph 35 constitute independently copyrightable works of authorship in their own right, separate from their status as contributions to the joint work. They are expressed and fixed in tangible media including, but not limited to, Mathcad calculation packages, stiffness matrix formulation documents, rotational stiffness equation derivations, software module specifications, test interpretation reports, vector diagram load path analyses, FEA validation protocols, software specification and calibration files, and audiovisual recordings of engineering meetings, demonstrations, and technical sessions in which Engineering Inputs were communicated, authored, and expressed.

77. These authored works embody original expression in the selection, arrangement, and articulation of specific numerical parameters, decision criteria, threshold values, and algorithmic sequences that reflect the original professional engineering judgment of the Qualtim Companies. They are separately protectable as original works of authorship under 17 U.S.C.

48

§ 102(a). Paragon's continued use of these authored works in the current version of the Paragon Truss Software, and its licensing of that software to third parties, constitutes use of the Qualtim Companies' independently copyrightable works of authorship without their consent.

78.    The five truss design software platforms maintained by TPI member companies—MiTek, Alpine, Simpson Strong-Tie, Eagle Metal Products, and Cherokee Metal Products—were each developed from the same published standards baseline as the Paragon Truss Software, yet each produces materially different structural analysis outputs for the same design inputs. John Holland acknowledged this at a meeting on or around February 22, 2023, stating that Paragon's analysis is "completely our own and separate from anything they do." The existence of multiple non-identical software systems built from the same public standards, and Paragon's own acknowledgment of that fact, establishes that the specific engineering judgments expressed in the Engineering Inputs were chosen expressions of professional judgment, not the only or inevitable way to implement the underlying engineering concepts.

79.    Even if any individual Engineering Input were not independently copyrightable standing alone, the Qualtim Companies' aggregate Engineering Inputs, expressed and fixed in tangible media and used in the Paragon Truss Software, satisfy the requirement of copyrightable contribution to the joint work. The Engineering Inputs are not mere functional specifications or unprotectable ideas. As identified in the Qualtim Companies' Answer to Revised Interrogatory No. 5, the Engineering Inputs are embodied in specifically authored works—Mathcad calculation packages, stiffness matrix formulation documents, rotational stiffness equation derivations, software module specifications, test interpretation reports, vector diagram load path analyses, FEA validation protocols, software specification and calibration files, and audiovisual recordings of engineering meetings, demonstrations, and technical sessions—all fixed in tangible media and

communicated to Paragon's development team, including through bi-weekly meetings encompassing over 300,000 Slack communications. These authored works express original engineering judgment in the selection, arrangement, and articulation of specific numerical parameters, decision criteria, threshold values, and algorithmic sequences that no other engineer would have expressed in the same way. The ANSI/TPI 1 standard and ASCE 7 do not prescribe these parameters, thresholds, or sequences; they require the design engineer to supply them through professional judgment. The specific judgments the Qualtim Companies supplied are unique in the industry, and no independent firm combining their capabilities—licensed professional engineering, ANAB-accredited product certification, and a proprietary testing program focused on metal plate connected wood truss construction—has been identified anywhere in the field.

80.     The copyright claim asserted in this Count attaches to the specific authored expression of the Engineering Inputs—the particular calculation sequences, parameter selections, decision frameworks, and analytical arrangements fixed in the documents identified in paragraph 76—and not to the underlying engineering concepts, methods, or principles those documents address. A different engineer addressing the same engineering subjects would have produced documents with different sequences, different parameter selections, and different arrangements, because the published standards that govern structural component design require the engineer to supply specific implementation judgments through professional expertise and do not prescribe the particular choices the Qualtim Companies made. The copyright in the authored documents is separate from, and does not depend upon, the protectability of the engineering methods those documents express.

81.     Even if individual authored works were considered in isolation, the Qualtim Companies' original selection, coordination, and arrangement of the sixty Engineering Inputs into a coherent, unified operational system for the Paragon Truss Software independently constitutes copyrightable expression as an original compilation. The aggregate gave the software its functional meaning and engineering validity. The Enterprise was formed precisely because the existing TPI-member-controlled software ecosystem had commoditized truss design and left component manufacturers with no ability to compete on engineering quality or design differentiation; the Qualtim Companies' integrated Engineering Inputs were the mechanism by which the Enterprise's software would escape that ecosystem and deliver a genuinely disruptive competitive advantage to the market. Sole authorship cannot be attributed to Paragon's coding while disregarding the authored engineering expression that defined what the code was required to compute.

82.     The parties worked together with the shared intention that their respective contributions—the Qualtim Companies' authored engineering expression and Paragon's software code—would be merged into that single, unified platform. Paragon's own records confirm development was performed "per DrJ's instructions" and "based on a spec from DrJ," and the DrJ Engineering, LLC copyright notice carried on output drawings from at least 2016 reflects the parties' sustained course of dealing confirming that understanding.

83.     The formation of IP-LLC as the Enterprise's jointly controlled intellectual property holding entity, the fifteen years of joint work, including bi-weekly meetings organized specifically to receive and use Engineering Inputs in the software, and Daniel Holland's recorded acknowledgment that the Qualtim Companies' contributions had been a direct cause of the Enterprise's commercial success all further confirm this shared intent. The commercial significance of that intent is reflected in the Enterprise's structure: the integrated platform the

parties were building—combining the Qualtim Companies' proprietary Engineering Inputs, independent software, and non-proprietary connector plates—was designed to disrupt a market controlled by five vertically integrated TPI member companies and to restore value-added engineering margins that the plate-centric ecosystem had eliminated. The parties did not collaborate for over a decade, defer compensation, and form a joint intellectual property holding entity in anticipation of a work-for-hire arrangement; they did so because the integrated work they were creating together was intended to be jointly owned and jointly commercialized.

84.    Throughout the Enterprise period, there was no dispute among the parties regarding the ownership of the Engineering Inputs or the Qualtim Companies' co-authorship of the Paragon Truss Software. The parties were collaborating on the commercialization of the Enterprise's platform and operating on the shared understanding that the Engineering Inputs were the proprietary assets of the Qualtim Companies, contributed to and for the benefit of the Enterprise. The December 2023 strategic planning session, held shortly before Daniel Holland's death, addressed no ownership disputes but the mechanics of documenting the Enterprise's IP framework to facilitate the imminent commercial launch.

85.    No party repudiated the Qualtim Companies' ownership interests during the Enterprise period. Paragon executed the August 2023 Mutual Non-Disclosure Agreement confirming the confidential and proprietary nature of the Engineering Inputs, and the parties continued working together on commercialization through the end of 2023. The first unambiguous repudiation of the Qualtim Companies' ownership occurred on May 23, 2024, when Paragon's counsel sent a letter asserting sole ownership and characterizing the Qualtim Companies' Engineering Inputs as consulting services.

86. Count I is a claim for a declaration of co-ownership under 17 U.S.C. § 201(a) and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. Counterclaim Plaintiffs do not assert copyright infringement in this Count. The Qualtim Companies' co-ownership claim accrued no earlier than May 23, 2024, when Paragon's counsel first sent a letter asserting Paragon's sole ownership of the Paragon Truss Software and repudiating the Qualtim Companies' ownership interests.

87. The joint ownership claim asserted in this Count attaches to the Paragon Truss Software in its current form and all versions, updates, and revisions made after Paragon's termination of the Enterprise, including all versions currently being licensed to structural component manufacturers throughout the industry. The Qualtim Companies are entitled to a complete, fully functional copy of the Paragon Truss Software in its current form, including all versions, updates, and Engineering Inputs used therein, as joint owners of the work.

88. The Engineering Inputs of the Qualtim Companies are inseparable from the current version of the Paragon Truss Software. Paragon's own corporate representative confirmed at deposition that the current version of the Paragon Truss Software continues to rely on the Engineering Inputs, stating that truss design drawings produced by the software rely on many of the things described in the Engineering Inputs. No one at Paragon is a licensed professional engineer, and Paragon has not identified any licensed professional engineer or engineering firm that it has engaged to work on the engineering logic of the Paragon Truss Software since the termination of the Qualtim Companies and the Enterprise.

89. Any engineering intelligence in the current version of the software that goes beyond the public baseline of standard civil engineering statics and ANSI/TPI 1, and any engineering judgment reflected in the software's calculations, methodologies, and design decisions, originated

53

with and belongs to the Qualtim Companies. The Paragon Truss Software would not function as a structural engineering tool without those Engineering Inputs. Paragon's continued use of the Engineering Inputs in the current version cannot be severed from Paragon's post-termination development work.

**No Transfer of Copyright**

90.     Under 17 U.S.C. § 204(a), a transfer of copyright ownership is not valid unless an instrument of conveyance is in writing and signed by the owner of the rights conveyed. Paragon has never identified, produced, or relied upon any written agreement, instrument of conveyance, bill of sale, or assignment transferring copyright ownership or any other intellectual property rights from Qualtim, DrJ Engineering, CBI, or any affiliated Counterclaim Plaintiff entity to Paragon. Under Rule 26(a)(1) of the Federal Rules of Civil Procedure, Paragon was obligated to disclose any such document if it existed. No such document exists.

**No Work-for-Hire**

91.     Under 17 U.S.C. § 101, a work made for hire requires either an employment relationship or a written agreement signed by both parties expressly designating the work as made for hire. Paragon has never identified, produced, or relied upon any written work-for-hire agreement, specially commissioned work agreement, or any other written instrument designating any Engineering Input or any contribution by the Qualtim Companies to the Paragon Truss Software as a work made for hire. Under Rule 26(a)(1) of the Federal Rules of Civil Procedure, Paragon was obligated to disclose any such document if it existed. No such document exists.

92.     Paragon's own complaint in this action characterizes the Qualtim Companies' services as consulting services, constituting a judicial admission that the Qualtim Companies were not employees of Paragon. An independent consultant is not an employee within the meaning of

17 U.S.C. § 101, and work product provided by an independent consultant does not constitute a work made for hire absent a written agreement. Paragon, through its corporate representative John Holland, confirmed at deposition that Paragon never requested Qualtim to execute a work-for-hire agreement. No work-for-hire agreement thus exists between any Qualtim Company and Paragon.

## COUNT II
**(Accounting)**

93.    Counterclaim Plaintiffs incorporate by reference paragraphs 1 through 92 of this Counterclaim as though fully set forth herein.

94.    As joint owners of the copyright in the Paragon Truss Software, the Qualtim Companies are entitled to a proportionate share of all profits derived from Paragon's exploitation of the software. Under 17 U.S.C. § 201(a), each co-owner of a jointly owned copyright has an independent right to use or license the work, subject to a duty to account to the other co-owners for any profits. This duty arises from co-ownership status and is not discretionary.

95.    From Paragon's formation through the termination of the Enterprise, Paragon commercially exploited the Paragon Truss Software, including the Engineering Inputs used therein, for its own account without accounting to the Qualtim Companies. Throughout the Enterprise period, Clearspan Components, Inc. paid Paragon no less than $30,000 per month for design service access, plus per-use sealing software fees and occasional lump-sum payments including $500,000 in December 2021. These revenues were generated from the jointly owned work and were never shared with or accounted for to the Qualtim Companies.

96.    Following Paragon's approximately October 2024 market launch, Paragon has generated subscription fees, licensing revenues, and other profits from the jointly owned work by licensing the Paragon Truss Software to structural component manufacturers throughout the industry. None of those revenues have been shared with or accounted for to the Qualtim

55

Companies. The full amount of revenues and profits Paragon has derived from the jointly owned work is presently unknown to the Qualtim Companies and is within Paragon's exclusive possession and control. The accounting sought in this Count encompasses all revenues and profits derived from the Paragon Truss Software from all sources and for all periods during which Paragon exploited the jointly owned work without accounting to the Qualtim Companies, without limitation to the revenue streams specifically identified herein.

97.     The Qualtim Companies do not have access to Paragon's financial records and cannot at this time state with precision the total amount of profits derived from the Paragon Truss Software. A complete accounting is necessary to determine the full scope of profits to which the Qualtim Companies are entitled as joint owners.

## COUNT III
### (Joint Venture Wind-Up)

98.     Counterclaim Plaintiffs incorporate by reference paragraphs 1 through 97 of this Counterclaim as though fully set forth herein.

99.     The Joint Venture Enterprise was a partnership for a particular undertaking under applicable Wisconsin law, namely, the commercialization of an independent engineering-based structural component design platform outside the plate-centric supplier-controlled model. A partnership for a particular undertaking is not a partnership at will; it is formed for a defined purpose and is not dissolvable at the unilateral discretion of a partner before that purpose is accomplished. The Enterprise arose from the parties' written, oral, and implied-in-fact agreements and course of conduct beginning in approximately 2009, as confirmed by fifteen years of

documented collaboration, shared investment, and the parties' own admissions regarding mutual dependency and shared ownership of the Enterprise's intellectual property.

100.    At the time of Paragon's wrongful conduct, the Enterprise was on the cusp of commercial market entry: the planned launch was scheduled for the first quarter of 2024 with several sales visits scheduled, Daniel Holland and Kirk Grundahl had confirmed in December 2023 that the integrated platform was ready to go to market, and the Qualtim Companies had continued providing Engineering Inputs without full compensation in anticipation of that imminent commercialization. The particular undertaking was never completed; the Enterprise was wrongfully terminated at the precise moment the purpose it was formed to achieve was about to be realized.

101.    The Enterprise operated across multiple states, but Wisconsin law governs the rights and obligations of the Enterprise participants with respect to wind-up and distribution, as the Enterprise's intellectual property and Engineering Inputs originated in Wisconsin, are owned by Wisconsin entities, and the Qualtim Companies' claims of ownership are centered in Wisconsin.

102.    The Paragon Truss Software was created within the Enterprise, using the Engineering Inputs that the Qualtim Companies developed through decades of independent professional practice predating the Enterprise. The Paragon Truss Software did not exist before the Enterprise and would not exist without the Engineering Inputs. It was the primary computational tool through which the Enterprise's engineering services were to be delivered

57

commercially, and the Enterprise principals agreed it would be held by IP-LLC as the Enterprise's intellectual property holding entity.

103.    Paragon's conduct in abandoning the Enterprise by express will before completion of the particular undertaking constitutes wrongful dissociation within the meaning of Wis. Stat. § 178.0602(2)(b)1. A person that wrongfully dissociates is liable to the partnership and to the other partners for damages caused by the dissociation, in addition to all wind-up and distribution obligations. Wis. Stat. § 178.0602(3). Following Daniel Holland's death, dissolution of the Enterprise required the affirmative vote or consent of at least half of the remaining partners within 90 days under Wis. Stat. § 178.0801(2)(a). No such vote occurred, and no remaining partner consented to wind up the Enterprise's business. Paragon's unilateral seizure of the Enterprise's assets was not a lawful termination of the Enterprise.

104.    In winding up its business, the Enterprise is required to discharge its obligations, settle and close its business, and marshal and distribute its assets. Wis. Stat. § 178.0802(2)(a). Distribution of surplus must first return to each partner the value of unreturned contributions before distributing remaining surplus among partners. Wis. Stat. § 178.0806(2)(a). The Qualtim Companies' Engineering Inputs, provided throughout the duration of the Enterprise without adequate compensation, constitute unreturned contributions that must be valued and returned before any distribution of remaining surplus.

105.    The wind-up obligations also require Paragon to account for all revenues derived from the Paragon Truss Software following the Enterprise's dissolution, including all revenues

from Paragon's approximately October 2024 market launch, and to settle the Enterprise's accounts with the Qualtim Companies as required by Wis. Stat. § 178.0802(2)(a).

106.    The relief sought in this Count is limited to a proceeding between the Qualtim Companies and Paragon, addressing only Counterclaim Plaintiffs' own share.

### GENERAL PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiffs Qualtim, Inc., Center for Building Innovation, LLC, DrJ Engineering, LLC, Inspired Pursuits, LLC, Kirk Grundahl, and Suzanne Grundahl respectfully request that the Court enter judgment in their favor and against Counterclaim Defendant Paragon Component Systems, LLC as follows:

(a)    A declaration that the Paragon Truss Software, including all versions, updates, and revisions using the Qualtim Companies' Engineering Inputs, is a joint work within the meaning of 17 U.S.C. § 101, co-authored by the Qualtim Companies and Paragon;

(b)    A declaration that the Qualtim Companies are co-owners of an undivided interest in the copyright in the Paragon Truss Software and all versions thereof, with all rights attendant to joint copyright ownership under 17 U.S.C. § 201(a);

(c)    A declaration that no written instrument of conveyance, assignment, or transfer of any copyright interest in the Engineering Inputs or the Paragon Truss Software from any Counterclaim Plaintiff to Paragon exists, and that Paragon's claimed sole ownership is barred by 17 U.S.C. § 204(a);

(d)    A declaration that no work-for-hire agreement was ever executed between any Qualtim Company and Paragon, and that no Engineering Input or contribution by the Qualtim Companies constitutes a work made for hire under 17 U.S.C. § 101;

(e)    An order that Paragon provide Counterclaim Plaintiffs with a complete, fully functional copy of the Paragon Truss Software in its current form, including all versions, updates, and Engineering Inputs used therein, as well as all truss design drawings copyrighted and sealed by DrJ;

(f)    An order restoring Counterclaim Plaintiffs' full access to and use of the Paragon Truss Software as joint owners entitled to independently use, exploit, and license the jointly owned work;

(g)    An order enjoining Paragon from representing to any person or entity that it is the sole and exclusive owner of the Paragon Truss Software or of any intellectual property rights therein;

(h)    A complete accounting of all profits derived by Paragon from the Paragon Truss Software from all sources and for all periods during which Paragon exploited the jointly owned work without accounting to the Qualtim Companies, and payment to the Qualtim Companies of their proportionate share of such profits;

(i)    A judicial wind-up of the Joint Venture Enterprise, including return of all unreturned contributions of the Qualtim Companies, distribution of the Enterprise's assets in accordance with Wis. Stat. § 178.0806, and an accounting of all revenues derived from the Paragon Truss Software;

(j)    An award of Counterclaim Plaintiffs' attorneys' fees, costs, and interest as allowed by any applicable provision of law; and

(k)    Such other and further relief as the Court deems just and proper.

Dated this 8th day of June, 2026.

> **MURPHY DESMOND S.C.**
> Attorneys for Qualtim, Inc., Center for Building Innovation, LLC, DrJ Engineering, LLC, Inspired Pursuits, LLC, and Suzanne Grundahl.
>
> Electronically Signed By: */s/ Scott G. Salemi*
> Scott G. Salemi
> State Bar Number: 1118960
> 33 East Main Street, Suite 500
> Madison, WI 53701-2038
> Phone: (608) 257-7181
> Fax: (608) 257-2508
> ssalemi@murphydesmond.com
>
> **KIRK GRUNDAHL**
> Pro Se Defendant-Counterplaintiff
>
> Electronically Signed By: */s/ Kirk Grundahl*
> Kirk Grundahl
> 1130 Fairway Court
> Lake Mills, WI 53551
> Ph.: 608-217-3713
> kgrundahl@qualtim.com