# EXHIBIT 18

QUALTIM1134

# **Exhibit A**



# **QUALTIM**      **Mutual Non-Disclosure Agreement**

QF 37 | REVISED 9/8/2022 | REVISION 7

THIS AGREEMENT, dated ___8/8/23___, (the "Agreement") is made effective by and between ___John Holland___ and Qualtim, a Wisconsin corporation, DrJ Engineering, a Wisconsin Limited Liability Company, Center for Building Innovation, a Wisconsin Limited Liability Company and Pushing7, a DBA of Qualtim, Inc. (the parties hereto are sometimes referred to individually as a "Party" and together as the "Parties"), and applies to certain Confidential Information (as hereinafter defined) that has been or may be disclosed by a Party ("Disclosing Party") to the other party ("Receiving Party").

WHEREAS, the Parties intend to disclose to each other certain confidential information for the specific purpose of enabling the Parties to evaluate, propose and enter into a possible business relationship; and

WHEREAS, as a result of the above, negotiations between the Parties may result in the formation of a contractual relationship;

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the Parties agree as follows:

1.1   DEFINITIONS. "Confidential Information" means, without limitation, all tangible or intangible information respecting, or materials (in any medium) comprising, describing, embodying or incorporating: (A) technical, business or financial information and know-how, cost, performance or process data, methods of doing business, marketing or business operational plans, strategies, forecasts or forecast assumptions, trading volumes, trading patterns or practices, technology, computer software and hardware products, data bases, data processing or communications networking systems, practices or procedures or other systems or controls (existing, planned or in any stage of development) used, owned, developed or in development (or planned to be developed) by or on behalf of the Disclosing Party, samples, equipment, drawings, specifications, customer and prospective customer information, current and future product information, facilities tours, supplier information, contracts, prices, manufacturing information, reports, documents, photographs, machines, tools, prototypes, models, inventions, patent disclosures, materials, requests for proposal or quotation, characteristics and identities, trade secrets and other ideas, concepts, know-how, methodologies and information incorporated therein, items marked "confidential," and other items which, by their nature, are generally considered proprietary and confidential (regardless of whether such information is specifically labelled as such); (B) the content of the Parties' current communications, discussions, evaluations or negotiations in connection with a potential contractual relationship; or (C) any information or materials of the Disclosing Party related to any proposed transaction resulting from discussions between the Parties. "Confidential Information" includes both information owned by the Disclosing Party and information owned by third parties or that the Disclosing Party is obligated to treat as confidential. Confidential Information also includes all information or materials derived from or based on Confidential Information and all complete or partial copies or reproductions (in any form or medium) of Confidential Information. All information described herein and information about the Disclosing Party obtained from a third party shall be considered confidential information except as follows:

Confidential Information shall not include information which (i) is or becomes part of the public domain without breach of this Agreement by the Receiving Party, (ii) was acquired by the Receiving Party prior to receipt from the Disclosing Party and is not otherwise subject to an obligation of confidentiality, or (iii) is developed independently by the Receiving Party, without reference, directly or indirectly, to Confidential Information of the Disclosing Party, or (iv) is hereafter made available to the Receiving Party for use or disclosure by the Receiving Party from any third party having a right to do so. In the event of a disputed disclosure, the Receiving Party shall bear the burden of proof of demonstrating that the information falls under one of the within-described exceptions.

1.2   INDEPENDENT DEVELOPMENT. Disclosing Party understands that Receiving Party may currently or in the future be developing information internally, or receiving information from other parties, that may be similar to Disclosing Party's information. Accordingly, nothing in this Agreement shall be construed as a representation or inference that Receiving Party independently will not develop, or have developed on Receiving Party's behalf,

     THE QUALTIM FAMILY OF BRANDS
*Where building innovation thrives.*

**Qualtim1134**

 **QUALTIM**        QF 37: Mutual Non-Disclosure Agreement

products or systems, for itself or for others, that compete with the products or systems contemplated by Disclosing Party's information.

1.3   LIMITED USE. The Receiving Party shall use Confidential Information of the Disclosing Party only for the limited purpose of evaluating and/or entering into a business relationship and/or for the purpose of fulfilling the contractual relationship between the Parties, and for no other purpose, unless otherwise agreed in writing by the Disclosing Party or by the Parties mutually.

1.4   OWNERSHIP. All Confidential Information disclosed by the Disclosing Party to the Receiving Party shall remain, as between the Parties, the exclusive property of the Disclosing Party. The Receiving Party shall not be deemed to have any intellectual property right or other right, license, title or interest in Confidential Information of the Disclosing Party by reason of disclosure hereunder by the Disclosing Party, except the limited rights to use the Confidential Information stated in Section 1.3 of this Agreement.

1.5   DUTY OF NON-DISCLOSURE. Unless the Disclosing Party consents in writing, the Receiving Party shall not disclose any of the Disclosing Party's Confidential Information to any person or entity other than: (i) to those individuals among its employees, partners, officers, officers and directors of its partners, and its consultants (including, but not limited to, financial advisors, accountants and attorneys) (collectively, "Representatives") who have a need to receive such Confidential Information for the limited purposes described herein; and (ii) as required under any applicable law, regulation or final order or request of any court, administrative, regulatory or self-regulatory body or any other governmental agency, in which case, the Receiving Party shall where legally permitted: (a) promptly notify the Disclosing Party thereof; (b) consult with the Disclosing Party on the advisability of taking steps to restrict or narrow such request; and (c) if disclosure is required or deemed advisable, cooperate with the Disclosing Party in any attempt that it may make to obtain an order or other reliable assurance that confidential treatment will be accorded to designated portions of the Confidential Information.

1.6   SECURITY PRECAUTIONS. Before disclosure to any Representative, the Receiving Party will advise the Representative of the obligations and restrictions imposed herein. The Receiving Party shall instruct its Representatives to hold in confidence all such Confidential Information. After disclosure by the Receiving Party to certain of its Representatives, the Receiving Party shall be responsible for compliance by such Representatives with the confidentiality obligations set forth herein. In addition to the foregoing, the Receiving Party shall take such other reasonable steps to protect the Disclosing Party's Confidential Information, applying at least the same security measures and level of care as it employs to protect its own confidential information and trade secrets of like nature, but not less than a reasonable standard of care.

1.7   RESTRICTIONS ON COPYING. The Receiving Party shall not make any copies of any Confidential Information of the Disclosing Party, except those which are reasonably necessary to carry out the limited purposes stated in Section 1.3 of this Agreement.

1.8   RETURN OF CONFIDENTIAL INFORMATION. The Receiving Party shall, to the extent permitted by law, promptly return to the Disclosing Party or destroy all tangible copies of all Confidential Information of the Disclosing Party, including without limitation, all documents, all drawings, all sketches, all designs and other record-bearing media comprising, containing, derived from or based on, Confidential Information of the Disclosing Party, together with all copies thereof, upon the earliest of: (i) request by the Disclosing Party, or (ii) upon receipt of notice of breach from the Disclosing Party. The Disclosing Party may choose, at its option, to leave the original or a copy of any Confidential Information in the possession of the Receiving Party for the mutual convenience of the parties. Notwithstanding the above, legal counsel for the Receiving Party may retain one copy of such in its files for archival purposes only.

1.9   COOPERATION. The Receiving Party agrees that, either upon learning of, or upon a showing by the Disclosing Party of any threatened or actual breach of the provisions of this Agreement by (i) the Receiving Party or (ii) the Receiving Party's Representatives, the Receiving Party shall promptly notify the Disclosing Party thereof and shall cooperate as reasonably requested by the Disclosing Party, at the Disclosing Party's cost and expense, in connection with the Disclosing Party's efforts to seek appropriate injunctive relief or otherwise to prevent or curtail such threatened or actual breach or unauthorized use or disclosure of or to recover its Confidential Information.

Qualtim1135

 QUALTIM    QF 37: Mutual Non-Disclosure Agreement

1.10  NONSOLICITATION. Each Party agrees, during the duration of this Agreement, and for a period of one (1) year following the date of termination of this Agreement, that the Party shall not, either on its own account or for any person, firm, partnership, corporation, or other entity (a) solicit, interfere with, or endeavor to cause any employee of the other Party to leave his or her employment, or (b) induce or attempt to induce any such employee to breach her or his employment agreement with the other Party.

1.11  NOTICES. Notices must be in writing and sent either by hand delivery; messenger; by facsimile; certified mail, return receipt requested; overnight courier; or by e-mail (with a confirming copy by one of the other methods providing notice) and shall be effective when received by such party.

|  |  |
|---|---|
| If to: | |
| Address: | |
| City, State, ZIP: | |
| Attn: | |
| Telephone: | |
| Email: | |

|  |  |
|---|---|
| If to: | Qualtim, Inc. |
| Address: | 6300 Enterprise Lane |
| City, State, ZIP: | Madison, WI 53719 |
| Attn: | Suzanne Grundahl |
| Telephone: | 608-310-6710 |
| Email: | sgrundahl@qualtim.com |

1.12  TERMINATION; SURVIVAL OF OBLIGATIONS. This Agreement will terminate one (1) year from the end of evaluating and/or entering into a business relationship and/or for the purpose of fulfilling the contractual relationship between the Parties, or either Party may terminate this Agreement by providing one month's written notice to the other Party. The confidential obligations set forth in this Agreement shall survive for a period of five (5) years from the date of termination of this Agreement, except that trade secrets shall remain confidential for so long as the Disclosing Party treats such information as trade secrets.

1.13  SUCCESSORS AND ASSIGNS. No Party may assign or transfer this Agreement in whole or in part without the prior written consent of the other Party. Any purported assignment in violation of the foregoing shall be null and void. Notwithstanding the above, either party may assign this Agreement, without the consent of the other party, to an entity that acquires all or substantially all of its assets or business related to this Agreement.

1.14  GOVERNING LAW. This Agreement shall be governed by the laws of the State of Wisconsin without regard to its conflict of law provisions.

1.15  SEVERABILITY. If any provision of this Agreement should be held invalid or unenforceable in a court of law in any jurisdiction, such invalidity or unenforceability shall not affect the enforceability of this Agreement or any other provision hereof. In addition, the Parties agree that it is their intention that such provision shall be construed in a manner designed to effectuate the purposes of this Agreement to the fullest extent enforceable under applicable law. The Parties further agree that such ruling shall not affect the construction of that provision or any other of the provisions in any other jurisdiction.

1.16  FINAL AGREEMENT. This Agreement is the final and entire agreement between the Parties with regard to the subject matter hereof, and all previous discussions, promises and representations relative hereto are hereby superseded.

**Qualtim1136**

 **QUALTIM**    QF 37: Mutual Non-Disclosure Agreement

1.17 WAIVER; MODIFICATION.  No waiver by any Party of any term or condition hereof shall be valid unless made in writing signed by an authorized representative of that Party. No waiver on one occasion shall be effective to waive that or any other term or condition on any other occasion. No exercise of any remedy by any Party on one occasion shall be deemed an exclusive election of that remedy on that or any other occasion. All modifications to this Agreement shall be in writing and signed by authorized representatives of the Parties. No oral agreement, statement or representation shall be effective.

1.18 BREACH; REMEDIES. In the event of a threatened or actual breach of this Agreement by the Receiving Party, the Disclosing Party shall be entitled to: (1) seek immediate injunctive relief in a court of competent jurisdiction in accordance with Section 20 below (subject to notice and opportunity to defend in accordance with applicable law) and (2) demand the immediate return of all Confidential Information of the Disclosing Party from the Receiving Party subject to the same limitations set forth in Section 9. The foregoing shall be in addition to and without prejudice to such other rights as the Disclosing Party may have, subject to the express provisions of this Agreement (or any other applicable agreement), at law or in equity.

1.19 INJUNCTIVE RELIEF. The Receiving Party acknowledges and agrees that, in the event of a material unauthorized use or disclosure by the Receiving Party of, or the failure to return upon request, the Disclosing Party's Confidential Information in breach of the provisions of this Agreement, the Disclosing Party may suffer irreparable injury not compensable by money damages and for which the Disclosing Party will not have an adequate remedy available at law. Accordingly, if the Disclosing Party institutes an action or proceeding to enforce the provisions of this Agreement, the Disclosing Party shall be entitled to seek to obtain such injunctive or other equitable relief from a court of competent jurisdiction without the posting of bond, as may be necessary or appropriate to prevent or curtail any such breach, threatened or actual.

1.20 DISCLAIMER OF PARTNERSHIP/AGENCY; NO THIRD PARTY BENEFICIARIES. Each Party agrees that it is not an agent, joint venturer or partner of the other Party. This Agreement shall not be construed to constitute or to create a partnership or a joint venture or any other form of legal association that would impose liability upon one Party for the act or failure to act of the other Party or as providing any Party with the right, power or authority (express or implied) to create any duty or obligation on behalf of the other Party. Except as expressly provided to the contrary in this Agreement, no third party is intended to be, and no third party shall be deemed to be, a beneficiary of any provision of this Agreement.

1.21 NO WARRANTY. The Disclosing Party provides Confidential Information without representations, warranties, assurances or guarantees of any kind, including, but not limited to, with respect to the Disclosing Party's patents, copyrights, trademarks, trade secrets or other proprietary rights nor shall provision of such Confidential Information constitute an inducement by the Disclosing Party with respect to the infringement of patents, copyrights or other rights of others. The Disclosing Party will not be liable for any damages arising out of the Receiving Party's use of Confidential Information disclosed under, and in accordance with, this Agreement.

1.22 NO BUSINESS RELATIONSHIP. Nothing contained in this Agreement shall be construed as requiring either party to enter into a business relationship or any contractual relationship except as to the confidentiality obligations set forth therein.

1.23 EXECUTION OF AGREEMENT. This Agreement may be executed in counterparts. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission is deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**Qualtim1137**

 QUALTIM    QF 37: Mutual Non-Disclosure Agreement

IN WITNESS WHEREOF, each Party has caused this Agreement to be duly signed and delivered as of the date first set forth above.

Sincerely,

*Suzanne M Grundahl*

Suzanne Grundahl
Vice President
sgrundahl@qualtim.com
608-310-6710

Company

Signature

*John Holland*
Print Name

*President*
Title

*8/8/2023*
Date

Qualtim1138