**IN THE UNITED STATED DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

PARAGON COMPONENT SYSTEMS,
LLC,

       Plaintiff,

 v.

                                   Case No. 3:25-cv-00170-wmc

QUALTIM, INC., CENTER FOR BUILDING
INNOVATION, LLC, DRJ ENGINEERING,
LLC, INSPIRED PURSUITS, LLC, KIRK
GRUNDAHL, and SUZANNE GRUNDAHL,

       Defendants.

---

**BRIEF IN SUPPORT OF PLAINTIFF PARAGON COMPONENT SYSTEMS LLC'S
MOTION FOR SUMMARY JUDGMENT**

---

This case concerns ownership of Paragon's truss-design software. Software, by definition, is source code that is originally written by humans and can be converted (e.g., "compiled") into a form that is executable by computers. The software's source code is an original, creative work that is protected by copyright and initially owned, by federal statute, by the person(s) who wrote the code. The source code, as here, is typically the crown jewel of a software company and is maintained as its trade secret. The software code, in its executable form, may be marketed and sold to consumers in commerce under a company name or commercial brand, which are its trademarks. In some cases, source code may implement inventive methods that can be protected by patents.

Here, the undisputed material evidence demonstrates that Paragon alone owns its source code and all related intellectual property rights in its truss-design software ("Paragon Truss Software"). Only Paragon's software developers authored the source code in the Paragon Truss Software. Paragon is the only entity that possesses, manages, maintains, and modifies its source

code, which it stores in a secure source-code repository with strict access controls to keep the source code files secret and inaccessible to people outside of Paragon. Only Paragon markets and sells access to its Paragon Truss Software to consumers in commerce.

Defendants have made conflicting assertions of ownership of the Paragon Truss Software and the undisputed evidence disproves these assertions. Defendants fall into three categories—(1) Inspired Pursuits, LLC ("IP-LLC"); (2) Qualtim, LLC, Center for Business Innovation, LLC ("CBI"), and DrJ Engineering, LLC ("DrJ") (collectively "Qualtim"); and (3) Kirk and Suzi Grundahl ("Grundahls"). Early in the case, in an effort to obtain success on Defendants' motion to transfer this lawsuit out of Tennessee, Defendants repeatedly asserted that Defendant IP-LLC, alone, is the proper owner of the Paragon Truss Software. This cannot be clearer than in Defendants' briefing in support of their Motion to Dismiss:

> However, Paragon's answer brief is substantively based on "Qualtim and Affiliates" asserting co-ownership of the Paragon Software. (*See* generally Doc. 51). But that is not the case. Paragon is improperly lumping all the Defendants together. ***Qualtim already agrees with Paragon's contention that Qualtim and its family of businesses do not co-own the Paragon software. Inspired Pursuits, LLC is claiming ownership rights in the Paragon software, not Qualtim and its family of businesses.***

(Doc. 54 at 1) (emphasis added). Defendants maintained this ownership claim through several rounds of written discovery. *See* Steelman Decl., at **Ex. 20**, 2025-05-14 Defendants' Supplemental Answer to First Set of Interrogatories, at Resp. to Interrog. No. 1 ██████████

████████████████████████████████████████████

████████████████████████ ; *see also* Steelman Decl., at **Ex. 21**, 2025-06-30 Email from May La Rosa at Interrog. No. 1) ("As to the ownership of the Paragon Truss Software, our position is that the Software is owned by Inspired Pursuits, LLC ("IP-LLC")…"). Several months later, however, after obtaining transfer from Tennessee to Wisconsin based on lack of personal jurisdiction, IP-LLC and Qualtim have reversed course, ████████████████████████

2

██████████████████████████████████████████████████████████████

██████████████████████████████████ Steelman Decl., at **Ex. 8**, IP-LLC,

Dep., at 204:1-15 ███████████████████████████████; *see also* 130:15-131:6.

Defendants' prior sworn position and representation to the Court that IP-LLC owns the Paragon Truss Software (and the Qualtim entities do not) is belied by IP-LLC's subsequent, unequivocal admissions and allegations to the contrary. ████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████ These conflicting admissions—which are plainly established in the record—judicially estop all of Defendants from asserting an ownership interest in the Paragon Truss Software.

Summary judgment is also warranted with respect to Defendants' counterclaims. First, it is undisputed that none of the Defendants ever wrote any portion of the Paragon Truss Software source code; therefore they cannot claim ownership of Paragon's software based on copyright authorship. ██████████████████████████████████████████████

███████████████████████████████████. Second, Paragon maintains its compilation of source code as a confidential trade secret, creating value from secrecy. Defendants have no legally cognizable claim of ownership in the Paragon Truss Software or the source code trade secret, which are solely owned by Paragon. Third, Defendants fail to plead or otherwise prove the existence of a joint venture, and therefore any ownership claim based on the alleged joint venture fails as a matter of law. Additionally, it is undisputed that Paragon has never assigned its ownership interest in the software to any third party, let alone to the joint venture alleged by Defendants.

The undisputed evidence demonstrates that Paragon is entitled to a declaratory judgment that (i) Paragon is the sole and exclusive owner of all right, title, and interest in and to the Paragon Truss Software, including all copyright, trademark, patent, federal trade secret, state-law trade

secret, and all other property rights under federal and state law in the Paragon Truss Software; and (ii) no Defendant owns any right, title, or interest in or to the Paragon Truss Software, including without limitation any copyrights, trademarks, patents, federal trade secrets, and state-law trade secrets in the Paragon Truss Software. Defendants' eleventh-hour counterclaims alleging ownership of the Paragon Truss Software as a "joint work" and seeking an "accounting" and "wind up" of a joint venture also fail as a matter of law.  Paragon is entitled to dismissal of Defendants' counterclaims under Federal Rule of Civil Procedure 12(b)(6), as Defendants have failed to plead the existence of a viable joint venture under Wisconsin law to support its "wind-up" and "accounting" counterclaims.[1]   Alternatively, Paragon is entitled to summary judgment on Defendants' counterclaims that are premised on non-existence joint ventures that fail as a matter of law.  Accordingly, Paragon's motion for summary judgment should be granted in full.

## FACTUAL BACKGROUND

### *Paragon Component Systems, LLC*

Paragon Component Systems, LLC is a software company that was started by Daniel ("Dan") Holland and his son, John Holland in February 2016. *See* Plaintiff's Statement of Undisputed Material Facts ("SUMF") at ¶ 3. Before starting Paragon, Dan Holland ran Clearspan Components, Inc., a successful company that builds wall panels and trusses. SUMF at ¶ 1.  In his work at Clearspan, Dan Holland identified an industry need for new truss design software. SUMF at ¶ 2. In 2014, Dan hired his son as a software designer to help him with a prototype for that software. *Id*. After some initial development, the Hollands formed a new company, Paragon, tasked with developing and commercializing the new truss design software. SUMF at ¶¶ 3-4. When Paragon was formed, Clearspan assigned all of the code and associated intellectual property for

---

[1] Paragon's request for dismissal of Defendants' counterclaims under Rule 12(b)(6) is timely. Defendants filed their answer and counterclaims on June 8, 2026. (Doc. 178).  Paragon has not yet served a responsive pleading to the counterclaims, which it has 21 days to do under Fed. R. Civ. P. 12.

4

the product already in development. SUMF at ¶ 5. The Hollands ran Paragon together as co-owners and joint members of the Board of Directors until Dan Holland's passing in 2024. SUMF at ¶¶ 7-11.

### *The Paragon Truss Software*

The Paragon Truss Software has two primary functions: (1) performing an electronic sealing application whereby an engineer could review and approve—i.e., "seal"— truss design drawings using Paragon's electronic sealing software, and (2) creating truss design drawings based on various parameters that the user inputs into the software interface.  SUMF at ¶ 12. ███████

███████████████████████████████████████████

███████████████████████████████████████████

███████  SUMF at ¶ 13.

The Paragon Truss Software was developed exclusively by Paragon employees and independent contractors, each working under confidentiality, work for hire, and intellectual property assignment agreements. SUMF at ¶¶ 14-19. In total, Paragon has invested nearly $6 million in employee salaries associated with the development of the Paragon Truss Software. SUMF at ¶ 20. Paragon has complete decision-making authority over the coding and design decisions for the software. SUMF at ¶¶ 16-17. Changes to the source code are strictly tracked in a "commit log," which demonstrates that every change ever made was performed by a Paragon software developer. SUMF at ¶ 19. The software is branded with Paragon's logo, and the associated terms and conditions (which all customers must accept before using the software) makes clear that Paragon owns the software. SUMF at ¶¶ 21-22.

The Paragon Truss Software's source code is Paragon's most valuable and important asset, and its secrecy is paramount. SUMF at ¶¶ 23, 33-34. For this reason, Paragon goes to great lengths to protect the source code. *Id*. All source code files are kept in a secure repository accessed only

by authorized login credentials requiring multi-factor authentication. SUMF at ¶¶ 24-28. Paragon only issues these credentials to its software developers and only for the purpose of writing, modifying, or supplementing the Paragon Truss Software. SUMF at ¶ 26. Access is subject to Paragon's security policy. SUMF at ¶ 29. Customers of the Paragon Truss Software access it via a software-as-a-service subscription, and exclusively through web-based cloud access. SUMF at ¶¶ 30-32. Paragon's customers cannot access the actual executable software, nor can they access the secure repository where the source code resides. *Id.*

Paragon markets the Paragon Truss Software and its features under certain trademarks, including "Paragon," "Truss Pal," "Trusslink" and "AnyPlate" (the "Paragon Marks"). SUMF at ¶¶ 33-39. Paragon has used each of the Paragon Trademarks in commerce as a source identifier continuously and exclusively since their respective introductions. SUMF at ¶¶ 39, 42. As a result, Paragon's customers associate the Paragon Marks with Paragon and the Paragon Truss Software and Paragon has developed goodwill in the Paragon Marks. SUMF at ¶¶ 40-41. "Paragon" and "Truss Pal" are federally registered trademarks. SUMF at ¶¶ 33-37.

### *The Qualtim Family of Companies*

Defendants Qualtim, Inc., DrJ Engineering, LLC, and Center for Building Innovations, LLC are a family of related entities. SUMF at ¶ 49. Qualtim and DrJ provide engineering-related services. SUMF at ¶¶ 53-54. ███████████████████████████████████████
████████████████████████████████████████████████████████ SUMF at ¶ 50. When developing the Paragon Truss Software, Paragon wanted to consult with engineers to test and validate the accuracy of the mathematical equations used in the software for designing trusses and concerning the meaning of relevant engineering standards. SUMF at ¶ 56. ████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████ SUMF at



¶¶ 57-58. ████████████████████████████████████████████

███████████████████████. SUMF at ¶¶ 56-58, 60, 63. ████████████

SUMF at ¶¶ 60, 62, 82. ████████████████████████████████████

████████████████████████████████████ SUMF at ¶¶ 75-78. ████████

████████████████████████████████████████████████████████

████████████████████ SUMF at ¶¶ 79-80.

████████████████████████████████████████████████

████████████████████████████████████. SUMF at ¶¶ 64-66. ████████

████████████████████████████████████████████████

████████████ SUMF at ¶¶ 67-68. Paragon never assigned any of its intellectual property in the Paragon Truss Software to any of the Qualtim entities, nor did it intend to create a joint work with those entities. SUMF at ¶¶ 70-71.

### *Non-Existent Joint Venture*

████████████████████████████████████████████████████████

████████████████████████████████████████████ SUMF at ¶ 83. ████████

████████████████████████████████████████████████████████

████████████████████████████████████ SUMF at ¶ 85. Daniel Holland never unilaterally bound Paragon to any such joint venture, nor could he. SUMF at ¶¶ 7-11, 86-88. ████

████████████████████████████ SUMF at ¶¶ 90-92. ████████████████

████████████████████████████ SUMF at ¶¶ 93-94.

████████████████████████████████████████████████

████████████████████████████████████████████ SUMF at ¶ 98. ████████

████████████████████████████████████████████ SUMF at ¶¶ 99-100.

████████████████████████████████████████████████████████



SUMF at ¶¶ 98-99.

SUMF at ¶ 113.

Before the litigation and early in the case, Defendants stated in court filings and under oath testimony that Inspired Pursuits, LLC owned the intellectual property in the Paragon Truss Software in support of its request to transfer the case from the Eastern District of Tennessee to this Court. SUMF at ¶¶ 110-111.

SUMF at ¶ 112.

SUMF at ¶¶ 101-106.

SUMF at ¶ 104.

SUMF at ¶ 114.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial burden of informing the district court of the basis for its motion." *Home Casual Enter. Ltd. v. Home Casual LLC*, 2013 WL 4821311, at *4 (W.D. Wis. Sept. 10, 2013) (internal citations omitted). "Where the nonmoving party has the burden of proof on a particular issue, that initial burden may be discharged by showing…that there is an absence of evidence to support the nonmoving party's case." *Id*. (quotations omitted).

8

After the initial burden is met, the burden shifts to the nonmovant.  *Id*.  "In order to withstand summary judgment, the non-movant must allege *specific* facts creating a genuine issue for trial and may not rely on vague, conclusory allegations." *Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003).  The "non-movant does not satisfy its burden merely by pointing to self-serving allegations that otherwise are without evidentiary support." *Cliff v. Bd. of Sch. Comm'rs*, 42 F.3d 403, 408 (7th Cir. 1994).  Indeed, "[s]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005), *cert. denied*, 546 U.S. 1033 (2005) (quotations omitted).

## LAW AND ARGUMENT

Paragon is entitled to summary judgment as a matter of law on its declaratory judgment claims and Defendants' counterclaims for the following reasons: (1) Defendants' previous assertions that only IP-LLC has an ownership interest in the Paragon Truss Software judicially estops them from ███████████████████████████████; (2) the undisputed material facts demonstrate that Paragon is the sole and exclusive owner of the Paragon Truss Software and all intellectual property rights therein; (3) Defendants have failed to state a claim for, much less make a factual showing of, the alleged joint venture underlying their counterclaims and, therefore, cannot prevail or demonstrate they are entitled to the relief requested as a matter of law.

9

I. **DEFENDANTS' CONFLICTING ASSERTIONS PRECLUDE THEM FROM CLAIMING OWNERSHIP OF THE PARAGON TRUSS SOFTWARE.**

Defendants have made multiple, deliberate and clear judicial admissions that undercut their more recent position on ownership of the Paragon Truss Software and, thus, warrant summary judgment in Paragon's favor. *See Pierce v. City of Chicago*, 2012 WL 401026, at *3-5 (N.D. Ill. Feb. 7, 2012) (granting summary judgment based on conflicting, binding judicial admissions made during the course of the proceedings).

### 1. *Qualtim is Judicially Estopped from Asserting Ownership of the Paragon Truss Software.*

Judicial estoppel is a "flexible equitable doctrine" that "protects the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013) (internal quotations omitted); *see also In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 661 (7th Cir. 2010) ("Judicial estoppel is an equitable concept that prevents parties from playing 'fast and loose' with the courts by prevailing twice on opposing theories."). The doctrine "may be raised by any party, regardless of whether the party was prejudiced by the inconsistency, or by the court on its own motion." *Grochoncinski,* 719 F.3d at 795.

The doctrine "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Courts "uniformly recognize[] that" the doctrine's "purpose is 'to protect the integrity of the judicial process,' by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment[.]" *Id.* at 749-750 (citation omitted).

Judicial estoppel applies to legal questions as well as factual issues. *See, e.g., Matter of Cassidy*, 892 F.2d 637, 641-42 (7th Cir. 1990) ("[T]he change of position on the legal question is

every bit as harmful to the administration of justice as a change on an issue of fact."). The Supreme Court has identified three factors courts typically consider: (1) whether "a party's later position" is "clearly inconsistent" with "its earlier position;" (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"' and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire,* 532 U.S. at 750-751 (quotations and citations omitted). The Court emphasized, however, that these factors are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Id.* at 751.

Instead, as the Seventh Circuit has consistently observed, they are "general guideposts that must be considered in the context of all the relevant equities in any given case." *In re Knight-Celotex, LLC*, 695 F.3d 714, 722 (7th Cir. 2012); *Grochocinski*, 719 F.3d at 796 (adopting a "flexible" approach that "turns on the specific circumstances of an individual case"). Each of these three factors conclusively supports application of judicial estoppel to Qualtim's ownership claims in the Paragon Truss Software.

a. <u>Defendants' Current Position on Ownership of the Paragon Truss Software is Clearly Inconsistent with Their Earlier Position</u>.

From the inception until shortly after the transfer of this case, Defendants clearly and unequivocally maintained this claim: Defendant IP-LLC owns the Paragon Truss Software and its intellectual property and the Qualtim family of companies do not. In their opposition to litigating the action in the Eastern District of Tennessee, Defendants represented that "it [was] important to clarify some fundamental facts" to the Court, stating: "Qualtim already agrees with Paragon's contention that Qualtim and its family of businesses do not co-own the Paragon software. ***Inspired***

11

***Pursuits, LLC is claiming ownership rights in the Paragon software, not Qualtim and its family of businesses***. (Doc. 54 at 1) (emphasis added); *see also id.* at 2 (stating that Doc. 1-10 attached to the complaint "confirms that there are no [ownership] claims asserted by Qualtim or the Grundahls as individuals").

Defendants' prior assertion that IP, LLC owns the Paragon Truss Software (and Qualtim and its family of companies do not) was no accident. Defendants reiterated this position on multiple occasions:



- ████████████████████████████████████ ████████████████████████████████████ ██████ (Doc. 1-15) (emphasis added).

- ████████████████████████████████████ ████████████████████████████████ Steelman Decl., at **Ex. 20** (2025-05-14 Defendants' Supplemental Answer to First Set of Interrogatories, Resp. to Interrog. No. 1) (emphasis added).

- ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████ Steelman Decl., at **Ex. 21** (2025-06-30 Email from May LaRosa at Interrog. No. 1). (emphasis added).

- ████████████████████████████████████ ████████████████████████████████████ ████████████ (Doc. 1-10) (emphasis added).

- ████████████████████████████████████ ████████████████████ June 10, 2024 letter from Kirk Grundahl to Paragon attorney Stephen Kabakoff. 1:24-cv-00246, Doc. 1-15 at PageID #104 (Tennessee Action) (Mr. Grundahl characterizing Mr. Kabakoff's assertion that Qualtim was claiming ownership in the Paragon software as a "misrepresentation" of Qualtim's position) (emphasis added).

It was only *after* Defendants persuaded the Tennessee court to transfer this case to Wisconsin, and shortly before the corporate deposition of IP-LLC, that Defendants reversed course

and asserted for the first time that,  ███████████████████████████████████████

███████████████████████████████████████████████ Steelman Decl., at **Ex. 22**, 2025-12-31

Defendants' Supplemental Objections and Answers to Plaintiff's First Set of Interrogatories, Resp.

to Interrog. No. 1 (emphasis added)███████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████ *Id.*

IP-LLC's corporate witness, Kirk Grundahl, similarly admitted under oath that ██████

██████████████████████████████████████████████████████████ *See,*

*e.g.*, Steelman Decl., at **Ex. 8**, IP-LLC Dep, at 204:1-15 ████████████████████

██████████████████████████████████████████████████████████

██████; 130:15-131:6, 208:2-209:24 ██████████████████████████

████████████████████████████████.

Instead, ██████████████████████████████████████████████

██████, despite their previous representation to the Eastern District of Tennessee court that

"Qualtim and its family of businesses **do not** co-own the Paragon software." (Doc. 54 at 1)

(emphasis added); *see e.g.*, Doc. 178, Countercl.; Steelman Decl., at **Ex. 22** and at **Ex. 8**, Inspired

Pursuits, LLC Deposition Testimony ("IP-LLC Dep.")[2] at 307: 14-17 ████████████████

---

[2] Mr. Grundahl's shifting position on ownership even changed during his deposition. ████████████
████████████████ *See id.* at 304███████████████████████████████

██████ However, with the assistance of leading questions from his counsel, together with an admonishment to
████████████ Mr. Grundahl subsequently changed his answer to ███ *Id.* at 306-07 ██████████████
██████████████████████████████████████████████████████████
██████████████ Mr. Grundahl also submitted an Errata sheet reflecting his changed answer from ██████████
Steelman Decl., at **Ex. 8**, IP-LLC Dep. at Errata Sheet.

███████████████████████████████████████████████████████████████

████. Defendants' prior and current positions on ownership could not be more inconsistent, and Paragon satisfies this element.

        b.      <u>Judicial Acceptance of Defendants' Current Position on Ownership Would Create the Perception that the Tennessee Court Was Misled.</u>

The Eastern District of Tennessee court transferred the case to this Court, finding in part that it lacked personal jurisdiction over Inspired Pursuits, LLC. (Doc. 73 at 6). The Court cited to and relied upon IP-LLC's alleged exclusive ownership interest in the Paragon Truss Software in concluding that IP-LLC's lack of personal jurisdiction justified transferring this action. Specifically, the Court found it significant that "Mr. Grundahl asserted that Inspired Pursuits is the sole owner of the at-issue intellectual property…[Doc. 1-10]" and assessed whether there was "specific jurisdiction over Inspired Pursuits [based on] contacts ***related to Inspired Pursuits efforts to assert ownership of the at-issue intellectual property***." (*Id*. at 3, 9) (emphasis added). Thus, Defendants' assertion that IP-LLC was the sole owner of the Paragon Truss Software— represented to the Tennessee Court by Defendants as a "fundamental fact," no less—played a pivotal role in the Court's decision to transfer this action based on lack of personal jurisdiction. *Id*.; *see In re Airadigm Commcns, Inc.,* 616 F.3d at 662 ("What matters for purposes of judicial estoppel is whether, in reaching its earlier decision, the court relied on the representation of the one against whom estoppel is asserted."); *Kale v. Obuchowski*, 985 F.2d 360, 361-62 (7th Cir. 1993) (finding judicial estoppel may apply even if the issue was not decided in a prior proceeding, but merely relied upon by the court).

The notion that the Qualtim Defendants ████████████████████████

███████████████████████████████████████████████████████████████

████████, strongly suggests that the transferor court was misled.  Indeed, had Defendants

14

disclaimed IP-LLC's software ownership in the Tennessee proceeding – ██████████

████████ – IP, LLC presumably would not have been a necessary party to this declaratory

judgment action, which may have resulted in the Tennessee court asserting jurisdiction over the

remaining Defendants.  Accordingly, Paragon easily meets this factor.

      c.     <u>Defendants Would Derive an Unfair Advantage or Impose an Unfair Detriment on Paragon if Not Estopped</u>.

Defendants have already gained an advantage from their contradictory positions; they have

successfully moved this action from Plaintiff's chosen forum to Defendants' chosen forum

(multiple states away). If permitted to continue to play fast and loose with their ownership claims

to further their strategic objectives, Defendants would surely gain unfair advantage and "impose

an unfair detriment" on Paragon. *New Hampshire*, 532 U.S. 742 at 750 (holding judicial estoppel

forbids use of "intentional self-contradiction . . . as a means of obtaining unfair advantage"). When

a party changes its position intending "to delay the inevitable day of reckoning," and is "trying to

whipsaw this court," judicial estoppel is appropriate as "[t]hat is exactly the evil that the doctrine

of judicial estoppel was meant to avoid." *Matter of Cassidy*, 892 F.2d at 641.

Defendants' intention behind their shifting ownership theory is no secret: Their stated

████████████████████████████████████████████████████████

████████████████ Steelman Decl., at **Ex. 23**, QUALTIM-001026.[3] It is therefore abundantly

clear Defendants took one position in Tennessee for a strategic advantage (i.e., to   have this case

transferred away from Paragon's home forum and to theirs) and then completely changed their

ownership position simply to drive up Paragon's litigation costs.  Defendants' contrary position-

taking creates a major unfair detriment to Paragon. Defendants should be held to their initial

---

[3] Indeed, even this document expressly states that ████████████████████████ *Id.*

representation to the Court (and Paragon) that IP-LLC is the only party asserting any ownership interest in Paragon's software.

Accordingly, Paragon meets the third factor. The Qualtim Defendants and Grundahls should therefore be judicially estopped from asserting ownership in the Paragon Truss Software. Summary judgment should be granted in Paragon's favor.

### 2.    *Defendants' Binding Judicial Admissions Preclude as a Matter of Law Any Claim of Ownership with Respect to the Paragon Truss Software.*

Defendants' prior, unequivocal representations that only IP-LLC asserts ownership of the Paragon Truss Software are also binding and preclusive as judicial admissions. In the Seventh Circuit, judicial admissions are "formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them," which "may not be controverted at trial or on appeal." *Keller v. U.S.*, 58 F.3d 1194, 1198 n. 8 (7th Cir. 1995). An admission is binding if it is "a deliberate, clear, and unequivocal statement." *Neita v. City of Chicago*, 148 F.4th 916, 927 (7th Cir. 2025). "Any 'deliberate, clear, and unequivocal' statement, either written or oral, made in the course of judicial proceedings qualifies as a judicial admission." *Pierce*, 2012 WL 401026, at *3 (citing *In re Lefkas Gan. Partners*, 153 B.R. 804, 807 (N.D. Ill. 1993)). Indeed, "admissions made by counsel in documents other than Rule 7(a) pleadings can be judicial admissions." *Id*. At *4 (citing *United States v. One Heckler-Koch Rifle*, 629 F.2d 1250, 1253 (7th Cir. 1980) (holding that a representation in a brief, although "neither in a pleading nor an affidavit," nonetheless "may be treated as a [judicial] admission")). "As set forth by the Seventh Circuit in *Keller*, a judicial admission has 'the effect of withdrawing a fact from contention.'" *Id*. at *3 (quoting *Keller*, 58 F.3d at 1198, n.8).

Here, Defendants have deliberately, clearly, and unequivocally admitted in pleadings filed with the Court that only IP-LLC – and not Qualtim, DrJ, or CBI – asserts ownership of the Paragon

Truss Software and related intellectual property. (Doc. 54 at 1). As noted above, this claim was intended to persuade the Court to rule in Defendants' favor on the critical issue of whether to transfer the case to this District based on a lack of personal jurisdiction – a result which Defendants ultimately obtained. Defendants then repeated this in a verified interrogatory response. Steelman Decl., at **Ex. 22**, 2025-12-31 Defendants' Supplemental Objections and Answers to Plaintiff's First Set of Interrogatories, Resp. to Interrog. No. 1.  These prior (and strategic) judicial admissions, combined with ██████████████████████████████ ████████████████████████████████████, are dispositive of Paragon's requested declaratory judgments in the Complaint.

Accordingly, Paragon is entitled to summary judgment on its claims of exclusive authorship and ownership of its software and related intellectual property based on the doctrines of judicial estoppel and/or judicial admission.

## II. PARAGON IS THE SOLE AND EXCLUSIVE OWNER OF THE PARAGON TRUSS SOFTWARE AND ALL OF THE COPYRIGHT, TRADE SECRET, TRADEMARK, AND PATENT RIGHTS THEREIN.

The undisputed material facts unequivocally demonstrate that the Paragon Truss Software is proprietary to Paragon, and Paragon alone. As shown below, Paragon owns all intellectual property in its proprietary truss software, including all copyright, trade secret, trademark, and patent rights. Defendants cannot provide any affirmative evidence to demonstrate otherwise.

### 1. *Pargon is the Sole Owner of All Copyrights in the Paragon Truss Software.*

Paragon is entitled as a matter of law to a declaration that it is the sole and exclusive owner of all copyright rights in the Paragon Truss Software and that no Defendant jointly owns any copyright rights in the Paragon Truss Software. For the same reason, Count I of Defendants' Counterclaim seeking a declaration of joint copyright ownership, should be dismissed as a matter of law.

It is undisputed that the Paragon Truss Software – including its computer programs, source code, object code, organizational structure, and user interfaces – is an original work of authorship, fixed in a tangible form, and containing copyrightable literary and visual works protected under the U.S. Copyright Act, 17 U.S.C. § 101 *et seq.*; *Atari Games Corp. v. Nintendo of Am., Inc.*, 975 F.2d 832, 838 (Fed. Cir. 1992) (copyright protection extends to computer programs as literary works); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996) (same); Doc. 178, Ans. ¶¶ 59, 60 (admitting copyrightability of the Paragon Truss Software); Doc. 178 Countercl. ¶ 69 (affirmatively asserting copyrightability of the Paragon Truss Software). The only dispute is over ownership of the copyrighted material in that software, and the material facts demonstrate that Paragon is its sole owner.

a.    Paragon is the Owner of the Paragon Truss Software by Virtue of Its Sole Authorship of the Software's Copyrightable Material.

Under the U.S. Copyright Act, 17 U.S.C. § 201(a), ownership of a copyrighted work "vests initially in the author or authors of the work." The work's "author" is "the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). To qualify as an author, one must supply more than direction or ideas. *Id.*

Paragon and its employee software developers are the sole authors of Paragon Truss Software. Holland Decl., at ¶¶ 18, 19, 29-36; Steelman Decl., at **Ex. 2**, Van Stelle Dep., 10:6-8, and **Ex. 5**, Hershey Dep., 136:12-18, 271:21-272:2.  Stated another way, Paragon is the exclusive entity that translated the idea for the Paragon Truss Software into a fixed, tangible form (its source code). Holland Decl., at ¶¶ 29-36. This basic fact is not seriously disputed. *See, e.g.*, Doc. 178 Countercl. at 23 ("Paragon Component Systems, LLC is a company of software coders."); Steelman Decl., at **Ex. 8**. IP-LLC Dep., at 126:24-127:2; 128:19-23; 130:15-131:6; 251:10-14

18

██████████████████████████████████████████, and **Ex. 5**, Hershey Dep. at 135:6-136:18

██████████████████████████████████████, and **Ex. 15**, Helmueller Dep., at 40:21-41:2;

52:23-14 ████████████████████████████████████████████████████████████████████.

Defendants' ownership arguments rely on a tortured understanding of what constitutes authorship of protectable material under the Copyright Act and a purposeful misconstruction of the parties' business relationship. Both arguments fail as a matter of law.

b.       The Paragon Truss Software is Not a Joint Work.

Defendants cannot meet their burden of establishing joint authorship of the Paragon Truss Software. Under the Copyright Act, a joint work is "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. Mere collaboration is insufficient to constitute joint ownership. *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1068-69 (7th Cir. 1994). When evaluating joint authorship, it is important to recognize that "published creations are almost always collaborative efforts to some degree—peers make suggestions, editors tweak words, and so forth. Were we to deem every person who had a hand in the process a co-author, copyright would explode." *Woods v. Resnick*, 725 F. Supp. 2d 809, 819 (W.D. Wis. 2010).

Instead, parties are only appropriately deemed co-authors where they (1) each intend to create a joint work; and (2) each contribute independently copyrightable material. *Erickson*, 13 F.3d at 1071. The purported co-author bears the burden to establish both elements as a matter of law. *Gaylord v. U.S.*, 595 F.3d 1364, 1377 (Fed. Cir. 2010). Defendants cannot meet this burden.

As a threshold matter, consistent with their shifting theories of ownership, Defendants have never articulated which Defendant entity they allege co-authored the Paragon Truss Software. *See, e.g.*, Doc. 178 Countercl. ¶¶ 69-89 (claiming joint authorship by the "Qualtim Companies," defined as Qualtim, DrJ, and CBI). As argued, *supra*, in Section I, Defendants

19

initially argued IP-LLC had exclusive ownership of the Paragon Truss Software, only to later change course and ███████████████████████. To adequately assess joint authorship, the Court needs to know which specific entity is alleged to have co-authored which specific independently copyrightable software element. Critical to this inquiry is whether the purported author was an employee or a consultant of the claiming entity, key considerations when assessing whether the work was made for hire. 17 U.S.C. § 201(b). Because they have failed to establish proof on even these basic facts, Defendants have not met their burden of establishing a *prima facie* claim that any entity is a joint author and the Court does not need to even reach the two-factor test for joint authorship.

> i.  *Paragon Maintained Complete Control Over All Additions to the Source Code of the Paragon Truss Software and did not Intend to Create a Joint Work.*

No record evidence demonstrates that Paragon intended to create a joint work with any of Defendants. When considering intent to create a joint work, the Court must evaluate whether the parties intended their contributions to be merged "at the time the work was created."[4] *Erickson*, 13 F.3d at 1068. Each party must intend for its respective contributions to be merged into a unitary whole, and mere collaboration will not suffice. *O'Connor v. Cindy Gerke & Associates, Inc.*, 300 F. Supp. 2d 759, 768 (7th Cir. 2002) (finding lack of intent for joint authorship as a matter of law on summary judgment). One party's complete decision-making authority over whether and where contributions are included weighs heavily against intent to create a joint work. *Erickson,* 13 F.3d at 1071-72. Likewise, lack of credit given to the purported joint author weighs against intent. *O'Connor*, 300 F. Supp. 2d at 768.

---

[4] Defendants' pointed vagueness and shifting theories about which entity claims authorship is fatal to the intent element, as well. How can the Court determine, as a matter of law, that the parties intended to create a joint work at the time of creation if it is not even clear who the intended joint author was?

20

The history of development of the Paragon source code demonstrates that Paragon is the sole author. The development of the Paragon Truss Software began at Clearspan in late 2014 was a collaboration between Dan Holland and John Holland. Holland Decl., at ¶ 8. In February 2016, they formed Paragon as a new entity for developing and commercializing the Paragon Truss Software and the developed code was assigned to Paragon. *Id*. at ¶¶ 11-13; Steelman Decl., at **Ex. 3**, Holland Dep. (Day 2) at 252:20-253:24. From February 2016 forward, Paragon, and its employees and contractors, under documented work for hire agreements, authored, developed, and commercialized the Paragon Truss Software. Holland Decl., at ¶¶ 30, 41. The source code files reside on a secure GitHub repository only accessible by Paragon software developers. Holland Decl. ¶¶ 32, 38-29; Steelman Decl., at **Ex. 5**, Hershey Dep., at 218:2-12, and **Ex. 16**, Heise Dep., at 33:6-9 (DrJ engineering consultant never had access to source code repository). Paragon had complete decision-making authority over all software coding and design decisions, including what to include or not include in the source code. Holland Decl. ¶¶ 32-35; Steelman Decl., at **Ex. 5**, Hershey Dep., at 138:5-21 (admitting Qualtim and DrJ were unaware of what information was incorporated into the software). For example, the log of source code modifications for the Paragon Truss Software, containing about 24,000 entries, shows that a Paragon software developer made every change ever incorporated into the source code. Holland Decl., at ¶ 36; *see also* Steelman Decl., at **Ex. 3**, Holland Dep. (Day 2) at 460:6-16 (GitHub (only accessible by Paragon) is where Paragon memorializes and tracks all source code changes). ██████████████████████ ████████████████████████████████ Steelman Decl., at **Ex. 5**, Hershey Dep., at 194:19-195:2. The Paragon Truss Software is prominently branded with the Paragon logo and its terms of use make clear that the software is owned by Paragon. Holland Decl., at ¶ 44; www.paragontruss.com/terms (last visited June 21, 2026).

21

By contrast, ██████████████████████████████████████████████████

██████████ Holland Decl., at ¶ 59; Steelman Decl., at **Ex. 4**, Bierema Dep., 143:15-16, and **Ex. 5**, Hershey Dep., 135:6-136:18, and **Ex. 8**, IP-LLC Dep., 126:24-127:2; 128:19-23; 130:15-131:6; 155:6-16; 251:10-14, and **Ex. 15**, Helmueller Dep., 52:12-14.  It is undisputed that ██████████

██████████████████████████████████████████████████

Holland Decl., at ¶ 61; Steelman Decl., at **Ex. 4**, Bierema Dep., 132:20-136:15, and **Ex. 5**, Hershey Dep., 135:6-136:1; 137:19-21; 194:19-195:2; 218:2-12, and **Ex. 16**, Heise Dep., 33:6-13. Defendants do not claim they had any decision-making authority as to what to include in the source code, ████████████████████████████████████████. Steelman Decl., at **Ex. 5**, Hershey Dep. at 136:20-137:2. To support this, Defendants may point to a handful of references outside the source code that demonstrate DrJ consulted on aspects of the software. Doc. 178 Ans. ¶ 182. But none of those references show authorship of the code itself. *Id*. at **Ex. 3**, Holland Dep. (Day 2) at 455:19-21 (Paragon source code contains engineering information, but none of it "belongs" to DrJ, Qualtim, or CBI); **Ex. 5**, Hershey Dep., at 73:6-9.

Finally, none of Defendants have ever been credited with authorship of the Paragon Truss Software. *See, e.g.*, www.paragontruss.com; Steelman Decl., at **Ex. 3**, Holland Dep. (Day 2) at 376:23-25 (IP-LLC does not have an ownership interest in the Paragon Truss Software). Defendants may argue that drawings generated by DrJ Engineering, LLC as a customer of Paragon using the Paragon Truss Software bore a copyright notice attributed to DrJ. Doc. 178 Ans. ¶ 182. But ownership of drawings generated using the software is not ownership of the software itself. Nor does ownership of the drawings demonstrate anything about Paragon's earlier intent regarding the Paragon Truss Software when the work was created. *Erickson*, 13 F.3d at 1068. It therefore cannot be that truss design drawings output by already-created software evidence a joint intent to create that existing software.

As a matter of law, there is no evidence that Paragon intended to create a joint work with any of Defendants when it wrote the Paragon Truss Software.

ii.      *Defendants' Alleged Contributions Are Not Copyrightable Material.*

Whether a contribution is copyrightable is a question of law for the Court. *Woods v. Resnick*, 725 F. Supp. 2d 809, 817 (W.D. Wisc. 2010); *Janky*, 576 F.3d at 363. And, because Defendants are claiming joint authorship, they bear the burden of establishing copyrightability of their alleged contributions. *Gaylord*, 595 F.3d at 1377. They cannot.

Defendants' alleged contributions take two forms: ███████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████ Neither amount to independently copyrightable contributions to the Paragon Truss Software.

## 1.    Engineering Inputs.

It is well established that copyright protection extends only to the expression of an idea, not the idea itself. *Mazer v. Stein*, 347 U.S. 201, 217 (1954). This tenet applies when evaluating components or elements of a software program that is otherwise subject to copyright protection. *SAS Institute, Inc. v. World Programming Ltd.*, 64 F.4th 1319, 1326 (Fed. Cir. 2023). Likewise, "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). And further included as generally unprotectable concepts are equations and figures, when they are "common components of mathematical science used to depict ideas." *Seng-Tiong Ho. v. Tavlove*, 648 F.3d 489, 499 (7th Cir. 2011); *see also Roshan v. New Jersey Institute of Technology*, No. 2:24-cv-10933, 2025 WL 2463146 (D.N.J. Aug. 27, 2025). According to these principles,

"[i]deas, refinements, and suggestions" are not copyrightable contributions for purposes of establishing joint ownership. *Janky v. Lake County Convention & Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009).

After extensive discovery, Defendants cannot articulate any independent copyrightable contributions. ███████████████████████████████████████████████████████████ ████████████████████████████████████████████ *See, e.g.*, Steelman Decl., at **Ex. 5**, Hershey Dep. at 136:20-137:2. But such alleged "ideas, refinements, and suggestions" are not copyrightable material. *Janky*, 576 F. 3d at 362. ████████████████████████

████████████████████████████████████████████████████████████

██████████ Even if supported, these too are unprotectable. *Tavlove*, 648 F.3d at 499 ("common components of mathematical science"). Even a cursory look at the list of alleged "Engineering Input Contributions" cited in Defendants' answer demonstrates the unprotectable nature of the claimed independent contributions. *Compare* Doc. 178 at 34-35 (describing a "system," "framework," "methodology," "protocol," "specifications," and "rules") with 17 U.S.C. § 102(b) (barring protection for "systems," "procedures," "methods," "processes," and "principles").

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ . But this work effort is not relevant. First, ███████████ ████████████████████████ . Holland Decl., at ¶ 56; Steelman Decl., at **Ex. 1**, Holland Dep. (Day 1) 156:10-20; 157:8-158:13, and **Ex. 3**, Holland Dep. (Day 2) 306:12-308:24, and **Ex. 10**, S. Grundahl Dep., 75:13-14; 77:16-78:12. Second, copyright protection is not about rewarding the so-called "sweat of the brow." *Gates Rubber Co. v. Bando Chem. Industrial, Ltd.*, 9 F.3d 823, 842-43 (10th Cir. 1993) (rejecting, under "sweat of the brow" doctrine, party's claim that otherwise unprotectable mathematical inputs "should be protected because it spent thousands of hours testing

the relationships and because engineers ultimately had to determine the best figure to represent the test results").

Defendants also broadly describe materials that may on their face be independently copyrightable, ███████████████████████████████████ But Defendants make no effort to connect those supposed materials to the source code underlying the Paragon Truss Software. Absent a nexus to the work at issue, those materials are irrelevant.

### 2. Engineering Drawing Outputs.

Defendants also attempt to claim that copyright protection over truss drawings generated from the Paragon Truss Software somehow makes them a joint author of the software they used. Under Defendants' theory, any permitted end-user of software would have an ownership claim simply by using software as it is intended. This makes no sense; it would turn a writer of a novel using Microsoft Word into an owner of that software, an architect using AutoCAD to develop architectural drawings would gain a stake in that program, and so on. Defendants' theory is also wholly inconsistent with the terms and conditions governing use of the Paragon Truss Software:

> Paragon Content; Copyright and Trademark Notice. All media, software, text, images, graphics, user interfaces, music, videos, photographs, trademarks, logos, data, artwork and other content on the Site, made available through the Services, and within the Widgets (collectively, but not including any User Content, "Paragon Content"), including but not limited to the design, selection, arrangement, and coordination of such Paragon Content on the Site, is owned by or licensed to Paragon, and is protected by copyright, trade dress, and trademark laws, and various other intellectual-property rights laws. Except as expressly provided in these Terms, no part of the Site and no Paragon Content may be reproduced, recorded, retransmitted, sold, rented, broadcast, distributed, published, uploaded, posted, publicly displayed, altered to make new works, performed, digitized, compiled, translated or transmitted in any way to any other computer, website or other medium or for any commercial purpose, without Paragon's prior express written consent. Except as expressly provided herein, you are not granted any rights or licenses to any patents, copyrights, trade secrets, trade dress, rights of publicity, or trademarks with

25

respect to any of the Paragon Content, and Paragon reserves all rights not expressly granted under this section.;

*See* www.paragontruss.com/terms. ███████████████████████████████████████████.

Holland Decl., at ¶ 63. ███████████████████████████████████████████

███████████████████████████████████████████████████████████

██████ *See e.g.*, Steelman Decl., at **Ex. 5**, Hershey Dep., 81:10-86:10 and **Ex. 3** to Hershey Dep.,

(Qualtim-14309-321) ███████████████████████████████████████

█████████████████████████████████████████.

In sum, Defendants' joint authorship claim is far weaker than in *Woods v. Resnick*, where this Court found that software source code was not a jointly authored work. 725 F. Supp. 2d at 809. Woods and Resnick were co-owners and members of F&I Source, LLC, a business formed to develop and license finance and insurance management software for use by automotive dealers. *Id.* at 814. Woods wrote the majority of the code and had the only password to access and maintain the source code. *Id.* at 815. Resnick's contributions were limited to a prototype and some general direction on what the program should do and how. *Id.* at 813-814. When a dispute arose, the parties filed cross declaratory judgment actions claiming copyright ownership of the software. *Id.* at 809. On summary judgment, the Court found as a matter of law that Resnick was not a joint owner of the copyrighted software. The Court determined that contributions by Resnick, including (1) limited code written by Resnick; (2) Excel spreadsheets containing values that were translated by Woods into code; and (3) input provided in the form of mock-ups and diagrams, did not as a matter of law constitute copyrightable contributions sufficient to make the software a jointly authored work. *Id.* at 819-822.

As in *Woods*, Paragon maintained exclusive control over the source code, which it exclusively authored. Unlike *Woods*, ███████████████████████████████████

26

███████████████████████████████████████████████████████

██████████████████████████████████████, the record evidence does not show that Paragon intended any Defendant entity to own the Paragon Truss Software, or that Defendants contributed any independently copyrightable material. Defendants cannot meet their burden of establishing a joint work.

> c. Defendants Cannot Otherwise Establish Ownership Because It is Undisputed that Paragon Has Not Assigned the Copyright in the Paragon Truss Software to Any Defendants.

Under the Copyright Act, a transfer of copyright ownership is not valid unless in writing and signed. 17 U.S.C. § 204(a). To be valid, a purported copyright assignment must clearly identify the deal and its basic parameters. *Resnick*, 725 F. Supp. 2d at 826. Additionally, the assignment must reflect a "clear and unequivocal" intent to transfer ownership. *Id.; see also Price v. Fox Entertainment Group, Inc.*, 473 F. Supp. 2d 446, 460 (S.D.N.Y. 2007) (mere existence of partnership and its supporting documents and certificates did not satisfy § 204(a) because "those documents by their terms do not transfer the copyright itself").

It is undisputed that Paragon never made a written transfer of copyright ownership to any of the Qualtim entities. Doc. 178 Ans. ¶¶ 26, 36, 68 ("Defendants admit that no assignment exists between the parties.") The only assignment in the record is from Clearspan to Paragon when that entity was newly formed and acquired the code initially drafted at Clearspan. Holland Decl., at ¶ 13 and **Ex. 3** to Holland Decl. Clearspan does not dispute that Paragon owns the Paragon Truss Software. (Doc. 51-20 at ¶ 4). As a matter of law, no Defendant entity can claim ownership by virtue of assignment.

> 2. *Paragon is the Sole Owner of all Trade Secret Rights in the Paragon Truss Software.*

27

Paragon is entitled to a declaratory judgment of ownership of trade secrets contained in its Paragon Truss Software. Source code embodied in computer software is both a "program" and a "compilation," each of which are entitled to trade secret protection under federal and state laws. *See*, *e.g.*, *ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F. Supp. 1310, 1323 (N.D. Ill. 1990) ("The computer programs which ISC has created also are protectable as trade secrets, and fall squarely within the statutory definition."); *ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 641 n. 5 (6th Cir. 2020) (stating plaintiff "held a *trade secret* in its 'software source code.'") (emphasis in original). Apparently realizing this, Defendant Grundahl, Qualtim and DrJ's President, has testified that ██████████████████████████████████████ ████████████████ (**Ex. 8**, IP-LLC Dep. 154:2-15████████████████; *see also id.* at 169:3-4 ██████████████████████████████.

Paragon is accordingly entitled to summary judgment on its trade secret ownership claim. Paragon is the sole owner of Paragon's software and trade secrets found therein – and the Defendants in this action (Qualtim, Inc.; Center for Building Innovation, LLC; DrJ Engineering, LLC; Inspired Pursuits, LLC; Kirk Grundahl; and Suzanne Grundahl)[5] have no rightful claim of ownership in Paragon's source code. While the Qualtim entities have asserted trade secret misappropriation in a separate action, that assertion is distinct from the ownership claim at issue here. Paragon wholly disputes that it has misappropriated any alleged Qualtim entities' trade secrets, but even if the Qualtim entities could prove their unsupportable claims, such a finding would <u>not</u> make the Qualtim entities owners of Paragon's software. *See e.g.*, 18 U.S.C. § 1336(b)(3) (outlining remedies for trade secret misappropriation). That is, despite any outcome of

---

[5] Only Qualtim/DrJ/CBI have asserted entitlement to any intellectual property in the other case involving these parties. *See* Steelman Decl., at **Ex. 6** 2026-03-20 Defendants' Supplemental Answers to Plaintiff's 4th Set of Interrogatories, at Interrog. No. 9, p. 4-6 ████████████████████████. Accordingly, neither Mr. Grundahl nor Mrs. Grundahl make any assertions in either case regarding any intellectual property, tacit admissions that summary judgment is proper as to those individuals in this case on that basis as well.

the Qualtim entities' separate misappropriation proceeding, Paragon will nonetheless remain the owner of its software and the attendant trade secrets based on the design and compilation of its source code that it keeps a trade secret. Separate (non-ownership) statutory remedies would apply if trade secret misappropriation were to be established in the separate action filed by the Qualtim entities – but that would not affect Paragon's ownership here. Defendants attempt to conflate the two distinct trade secrets analyses (ownership and misappropriation), but they can and should be separately decided.

The test for trade secret protection under Tennessee law[6] is commensurate with the Defend Trade Secrets Act ("DTSA"),[7] and is defined under Tenn. Code Ann. § 47-25-1702 as information (including a "compilation" and "program") where each of the following apply: (1) the information "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and (2) the information "[i]s the subject of efforts that are reasonable under the circumstances" to maintain its secrecy.[8] *N. Highland Inc. v. Jefferson Mach. & Tool Inc.*, 898 N.W.2d 741, 749 (Wis. 2017).

---

[6] Paragon's claim for trade secret ownership was filed originally in Tennessee and invokes Tennessee trade secret law, as well as the DTSA. Both Tennessee and Wisconsin legislatures have adopted versions of the UTSA, and the definition of a "trade secret" is largely the same under both laws. Wisconsin's trade secret statute is codified at Wis. Stat. § 134.90(1)(c) and similarly requires a showing that: (1) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and (2) "[t]he information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances."

[7] Wisconsin courts consider the UTSA and DTSA standards together. *See*, *e.g.*, *Kuryakyn Holdings, LLC v. Ciro, LLC*, 242 F. Supp. 3d 789, 797–98 (W.D. Wis. 2017) ("[T]he court's analysis will use Wisconsin's UTSA, but the analysis would apply as well to the DTSA.").

[8] The DTSA similarly defines a "trade secret" as information (including "programs" and "compilations") where "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

Here, the undisputed facts confirm that Paragon's source code meets this criteria.[9]  First, "[t]he information "is the subject of efforts to maintain its secrecy that are reasonable under the circumstances," as set forth in the Tennessee trade secret statute.[10] Paragon takes reasonable measures of secrecy to protect its compilation of source code, providing access to Paragon personnel on a need-to-know basis and prohibiting disclosure of the source code outside of Paragon. Holland Decl. ¶¶ 32, 38-39.  Employees and contractors of the company sign confidentiality agreements prohibiting disclosure of the source code, and each employee or contractor executes assignments providing ownership of the source code to Paragon.  *Id*. at ¶¶ 30, 32, 38-39, 41 and **Exs. 7 and 9** to Holland Decl.  Commensurate with this, access to Paragon's source code is exclusively limited to those with a need to access it for purposes of writing the source code within Paragon.  *Id*. ¶¶ 37-44.

Further, Paragon's source code was created within and is maintained in a confidential database (GitHub) that is only accessible to authorized Paragon employees and contractors through password protected and two-factor authentication access.  Holland Decl., ¶¶ 32, 38-39.   No non-

---

[9] ███████████████████████████████
████████████████████████████████
████████████████████████████████
███████  *See* Holland Decl., at ¶¶ 21-24.

[10] To be clear, the Paragon Truss Software provides functions that involve data, information, and computations that do not qualify for trade secret protection because they are disclosed in public standards and/or otherwise known in the truss industry.  However, that issue need not be resolved for purpose of Paragon's claim.  Paragon's software architecture design and compilation of information into written source code qualifies as a trade secret under applicable law.  *See, e.g., Options Unlimited Rsch. Corp. v. W. & S. Fin. Grp., Inc.*, No. 1:21-CV-192, 2025 WL 676257, at *12 (S.D. Ohio Mar. 3, 2025) (holding that although "a user may learn 'the way [the software] works' from a non-trade secret user guide (indeed, from the [software] itself), the information constituting the inner workings of the Runtime Files—to the extent it satisfies the DTSA/OUTSA prongs—is a trade secret."); *ECIMOS*, 971 F.3d at 641 n. 5 (noting that "[the plaintiff] held a trade secret in its 'software source code including the algorithms for the valid test and test procedures and the way the software source code interacts with [its] database.'"); *Computer Associates Intern. v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 695 (N.D. Ill. 2004) ("[T]he entire EDBA source code may qualify for trade secret protection…"); *Unix Systems Laboratories, Inc. v. Berkeley Software Design, Inc.,* 1993 WL 414724, 27 U.S.P.Q.2d 1721, 1733–34 (D.N.J. 1993) ("[E]ven if all of the pieces of the [] code had been thoroughly revealed in the publicly available literature, the overall organization of the code might remain a trade secret unless it too had been disclosed.").

Paragon employee or consultant has ever authored any line of code in the Paragon software. *Id.* at ¶¶ 18, 19, 29-36; *see also*, Steelman Decl., at **Ex. 3**, Holland Dep. (Day 2) at 460:6-16 (GitHub (only accessible by Paragon) is where Paragon memorializes and tracks all source code changes). Instead, only those employees with appropriate confidentiality agreements have been provided access to GitHub, and the source code is not distributed outside of this restricted database. Holland Decl. ¶¶ 30, 37-44.

The Paragon Truss Software is made available for use by third parties as a software-as-a-service (SaaS), accessible through cloud access. Holland Decl. ¶ 43. Only compiled (non-readable) executable software files are stored in the cloud. *Id.* At no time does the customer have access to Paragon's underlying source code. *Id.*; *see, e.g, Computer Associates*, 333 F. Supp. 2nd at 692 ("When a customer purchases computer software, he or she typically receives only these executable files, not the readable source code."). Thus, access to the underlying source code is strictly limited and the secrecy prong relating to Paragon's ownership in the trade secret source code is satisfied.

Next, Paragon's source code likewise "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." *See* Tenn. Code. Ann.§ 45-25-1702 and the DTSA. Paragon has invested substantial time and expense into creating its source code. Holland Decl., at ¶¶ 18, 19, 30, 40-41. The Qualtim entities concede that the source code is valuable to the company, taking the express position that the software provides commercial value to Paragon. Defs.' Ans. (Dkt. No. 178 at 96 (stating that Paragon has generated subscription fees, licensing revenues, and other profits … by licensing the Paragon Truss Software to structural component manufacturers throughout the industry.")). And as found in other cases, it is Paragon's secrecy of its source code that provides value to the company. Holland Decl., at ¶ 46;

*see Options Unlimited*, 2025 WL 676257 at *11 ("[I[t is easy to infer that the information constituting [the software] derives value in great part from its being nonobvious…."). Accordingly, because Paragon precludes disclosure, competitors are unable to replicate the specific compilation of software created by Paragon, providing Paragon market value in its compilation of programmatic source code. *See*, *e.g.*, *dmarcian, Inc. v. dmarcian Europe BV*, 60 F.4th 119, 141 (4th Cir. 2023) (holding that a company's software code derived value from its secrecy because of the possibility of competition).

As such, each prong supports a finding that Paragon's software constitutes a trade secret owned by Paragon.  As noted above, Paragon employees and contractors created the Paragon source code over the course of multiple years and through much time and expense to Paragon. Holland Decl. ¶¶ 18, 19, 30, 40, 41.  This alone confirms that the underlying architecture and compilation of source code is not readily ascertainable by others in the industry as it would take competitors enormous time and expense to replicate the software compilations embodied in the source code. *See*, *e.g.*, *dmarcian*, 60 F.4th at 141 ("[I]f other [] companies knew the source code, they could … entice customers with a competing product."); *Computer Assocs.*, 333 F. Supp. 2d at 696 ("The evidence indicates that … the EDBA source code as a whole[] were valuable trade secrets.").  Paragon's specific selection and design of the software architecture is known only to Paragon and is embodied in source code defining functions spanning hundreds of thousands of lines of written source code. Doc. 155 (Holland Decl. in Resp. to Mot. to Compel) ¶ 8. The result is that Paragon's source code is "a body of information that is not generally known to its competitors and which gives it a competitive advantage in the marketplace." *See*, *e.g.*, *ECT Int'l, Inc. v. Zwerlein*, 228 Wis. 2d 343, 352, 597 N.W.2d 479, 483 (Ct. App. 1999) (quoting ROBERT C. SCHEINFELD & GARY M. BUTTER, Using Trade Secret Law to Protect Computer Software, 17 Rutgers Computer & Tech. L.J., 381, 383 (1991)).  And from a practical standpoint, the source

32

code compilation and architecture cannot be recreated by any third-party, supporting that it remains valuable to Paragon because it is "not [] readily ascertainable by proper means by … persons who can obtain economic value from its disclosure or use." Tenn. Code Ann. § 47-25-1702 and DTSA.

Finally, to the extent the Qualtim entities assert ownership of the Paragon Truss Software and the underlying trade secret compilations therein based on a joint venture/enterprise argument, this assertion fails for reasons outlined in the other sections of Paragon's summary judgment brief.[11] Inasmuch as the basic tenants of a joint venture cannot be proven, any claims of ownership of the software (and attendant trade secret status of the source code) likewise fail for the same reasons.

### 3. *Paragon is the Sole Owner of all Trademarks Associated with the Paragon Truss Software.*

Paragon is entitled as a matter of law to a declaration that (1) Paragon is the sole and exclusive owner of all trademark rights in the trademarks used in commerce in connection with the Paragon Truss Software and (2) no Defendant jointly owns any rights in the trademarks used

---

[11] Again, any assertion by the Qualtim entities that they have ownership of the software via incorporation of their "trade secrets" is a non-starter. The Qualtim entities have asserted a separate action for trade secret misappropriation, which has statutory remedies that could (if proven) allow for monetary remedies and an injunction, but that would not transfer ownership of Paragon's software to the Qualtim entities. Ultimately, the Qualtim entities will bear the burden of establishing misappropriation, and they will be unable to do so. The Qualtim entities can neither prove the existence of their own trade secrets or reasonable measures of secrecy to protect any alleged "engineering judgment" or "engineering inputs," both of which broadly encompass widely known industry knowledge. The Qualtim entities also have failed to specifically identify cognizable trade secrets as required by Seventh Circuit precedent, pointing to broad swaths of generalized concepts without attempting to show that any information has been maintained as a "secret" in view of their own consulting and industry activities. *See, e.g.*, *Kuryakyn Holdings*, 242 F. Supp. 3d at 798 ("Kuryakyn offers vague, generalized descriptions of its purported trade secrets without demonstrating that any specific piece of information meets the statutory definition of trade secret."). Further still, factual knowledge that is understood within the industry cannot qualify as a trade secret as a matter of law. *U.S. Gypsum Co. v. LaFarge N. Am., Inc.*, 508 F. Supp. 2d 601, 623 (N.D. Ill. 2007), adhered to in part on reconsideration, No. 03 C 6027, 2007 WL 2091020 (N.D. Ill. July 18, 2007) ("Information that is generally known or understood within an industry, even if not known to the public at large, does not qualify as a trade secret."). The Qualtim entities make no effort to differentiate between what they provide to the industry, what is already known in the industry, and how they prevent disclosure of engineering knowledge from disclosure as part of its services. As such, any complaint of misappropriation cannot be substantiated even at the pleading stage.

in commerce in connection with the Paragon Truss Software. The Paragon trademarks include TRUSS PAL, PARAGON, TRUSSLINK, and ANYPLATE (the "Paragon Trademarks").[12] Holland Dep. (Day 1) at 74:8-12.

>   a.   It is Undisputed Paragon has Continuously Used All Trademarks Associated with the Paragon Truss Software in Commerce within the United States, and that Paragon Owns Federal Registrations in PARAGON and TRUSS PAL.

"[I]t is a bedrock principle[ ] of trademark law that trademark ownership is not acquired by federal or state registration, but rather from prior appropriation and actual use in the market." *S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660, 665 (7th Cir. 2016) (internal quotations omitted). The Lanham Act, 15 U.S.C. § 1127, defines "use in commerce" as the bona fide use of a mark in the ordinary course of trade. Further, federal registration of a trademark with the United States Patent and Trademark Office creates a rebuttable presumption of use in commerce as of the filing date. *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 504 (7th Cir. 1992).

The undisputed evidence shows that Paragon has continuously and exclusively used the trademarks associated with the Paragon Truss Software in commerce and therefore is the exclusive owner of the Paragon trademarks. Holland Decl. at ¶¶ 49-52. As evidenced by specimens of use submitted under oath in the United States Patent & Trademark Office, Paragon has continuously and exclusively used the Paragon trademarks in the ordinary course of trade in connection with the Paragon Truss Software as follows: (1) PARAGON, since May 1, 2017; (2) TRUSS PAL[13],

---

[12] ████████████████████████████████████████ *See* Steelman Decl., at **Ex. 6** 2026-03-20 Defendants' Supplemental Answers to Plaintiff's 4th Set of Interrogatories, Interrog. No. 9. ████████████ ████████ Holland Decl. ¶ 53.

[13] TRUSS PAL is a d/b/a of Paragon and is used in connection with the Paragon Truss Software. *See* Steelman Decl., at **Ex. 3**, Holland Dep. (Day 2), 374:11-375:13.

since August 24, 2023; (3) TRUSSLINK, since June 19, 2024; (4) ANYPLATE, since June 19, 2024. *Id*. at ¶ 50.

Further, Paragon has a federal trademark registration for the PARAGON and TRUSS PAL trademarks with the USPTO. *See* Holland Decl., at ¶¶ 49-50 (citing "Paragon," Reg. No. 5779493, Jun. 18, 2019; "Truss Pal," Reg. No. 7750019, Apr. 08, 2025).

By contrast, Defendants have admitted that none of the Defendants have ever used any of the Paragon Trademarks in commerce. Doc. 178 Ans. ¶ 83; *see also* Steelman Decl., at **Ex. 6**, 2026-03-20 Defendants' Supplemental Answers to Plaintiff's 4th Set of Interrogatories, Interrog. No. 9). Defendants also have disclaimed an ownership interest in Paragon's federally registered marks. *Id*. at **Ex. 7**, Kirk Grundahl Deposition Testimony ("K. Grundahl Dep. (Day 2)") 235:17-237:14 and **Ex. 8**, IP-LLC Dep. 208:7-10.

Instead, Defendants allege that the Paragon Trademarks were developed in connection with the alleged "Joint Venture Enterprise." *See* Doc. 178 Ans. ¶ 81. However, as detailed below, no joint venture existed between the parties and therefore, none of the Paragon Trademarks were developed in connection with a joint venture. Regardless, because the touchstone for establishment of trademark rights is use in commerce, any joint development is irrelevant to the inquiry. As explained in the primary treatise on trademark law:

> Trademark rights grow out of use, not mere invention. To acquire ownership of a trademark, one must actually use the designation in the marketplace as a mark in the sale of goods or services. No trademark rights accrue to someone who merely selects a designation without actual use of it in the advertising or sale of goods. A business plan or a concept for a new trademark does not itself create legally recognizable trademark rights.

McCarthy on Trademarks and Unfair Competition § 6:3 (5th ed.).

Paragon is thus entitled as a matter of law to a declaration that Paragon is the sole and exclusive owner of all trademark rights in the Paragon Trademarks.

b.      It is Undisputed That Paragon Has Not Assigned any of the Paragon Trademarks to Any of the Defendants.

Under the Lanham Act, trademark rights, both registered and applied for, cannot validly be assigned unless in writing. 15 U.S.C. § 1060(a)(3); *see also* 15 U.S.C. § 1060(a)(3)-(5) (The assignment of a registered or applied for trademark shall be reflected in a record maintained by the USPTO and constitutes prima facie evidence of the execution of such assignment). This is because assignments of trademarks without their associated goodwill (a so-called "assignment in gross") are invalid. *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 676 (7th Cir. 1982).

There is no record of an assignment or abstract of title for the registered PARAGON and TRUSS PAL trademarks with the USPTO. Steelman Decl., at ¶ 25. Furthermore, no record of an assignment or abstract of title exists for the applied for TRUSSLINK and ANYPLATE trademark application with the USPTO. *Id*. Defendants also have admitted there are no written assignments of trademark interests between the parties for the Paragon Trademarks.[14] Doc. 178 Ans. ¶ 84; Steelman Decl., at **Ex. 8**, IP-LLC Dep., at 208:7-10 ███████████████████████ ██████████████████████ .

Therefore, Defendants do not own the Paragon Trademarks by assignment.

4.      ***Qualtim Has Not Asserted Patent Rights in the Paragon Truss Software***.

A declaration judgment relating to Paragon's patent rights in the Paragon Truss Software is also warranted.  While Paragon has not currently filed any patent applications and does not maintain any patents in the United States or any other country relating to the Paragon Truss Software (*see* Holland Decl. at ¶¶ 47-48), Qualtim has not identified any patent rights that it claims

---

[14] Even if there were an assignment, it would not be valid because Paragon alone developed the goodwill associated with the Paragon Trademarks by using them in commerce in connection with its marketing and sale of the Paragon Truss Software. Holland Decl. at ¶ 52.

36

are at issue in this case.[15] Accordingly, Paragon's claim of ownership relating to potential patent rights in the Paragon Truss Software is uncontested.

### III. DEFENDANTS CANNOT, AS A MATTER OF LAW, PREVAIL ON THEIR COUNTERCLAIMS PREMISED ON A JOINT VENTURE THEORY.

Two weeks before the summary judgment deadline, Defendants filed an Answer and Counterclaims in this action. *See e.g.*, Doc. 178. Defendants assert three counterclaims against Paragon, all premised on the existence of an alleged "Joint Venture Enterprise": (1) Declaration of Joint Copyright Ownership – Joint Authorship; (2) Accounting; and (3) Joint Venture "Wind Up". *Id*. As detailed below, Defendants cannot prevail on their counterclaims as a matter of law and Paragon is thus entitled to dismissal under Fed. R. Civ. P. 12(b)(6) or, alternatively, a judgment in its favor under Fed. R. Civ. P. 56.

#### 1. *Defendants Fail to Articulate a Joint Venture Claim under Wisconsin Law.*

Defendants' counterclaims are premised on allegations regarding a "joint venture" with Paragon and purported rights/obligations arising therefrom. *See e.g.*, Doc. 178 at Section IV (facts re: "The Joint Venture Enterprise) and Counterclaims, ¶¶ 69-106. Defendants' pleading is fundamentally flawed, as they have failed to articulate a claim for joint venture under Wisconsin law. *See Fail-Safe LLC v. A.O. Smith Corp.*, 744 F. Supp. 2d 831, 861 (E.D. Wis. Sept. 3, 2010) (internal citations omitted) (explaining that, in Wisconsin, the party asserting the existence of a joint venture bears the burden of proving its existence by showing: (1) the contribution of money or services by each of the parties; (2) joint proprietorship and mutual control over the subject matter of the venture; (3) an agreement to share profits; and (4) an express or implied contract establishing the relationship). Defendants make no effort whatsoever to state a claim for a joint

---

[15] Qualtim has not identified any claims of patent rights in this case. Steelman Decl., at **Ex. 6**, 2026-03-20 Defendants' Supplemental Answers to Plaintiff's 4th Set of Interrogatories, Interrog. No. 9.

venture and, instead, merely *presume* that a joint venture existed (and ask the Court to do the same) to support their ownership, accounting, and wind-up claims. This, of course, is legally deficient. Defendants are not entitled to the relief sought in their counterclaims without articulating, and proving, a joint venture claim. Because Defendants have wholly failed to articulate a claim for a joint venture under Wisconsin law, their counterclaims are facially deficient and subject to dismissal under Fed. R. Civ. P. 12(b)(6). *See Servicios Especiales Al Comercio Exterior, s.c. v. Johnson Controls, Inc.,* 2010 WL 323177, at *3 (E.D. Wis. Jan. 20, 2010) (dismissing complaint under Rule 12(b)(6) for failure to adequately plead the existence of a joint venture). Alternatively, as detailed below, Paragon is entitled to summary judgment, as a matter of law, on Defendants' counterclaims.

> ### 2.    *Defendants Cannot Prove that a Joint Venture Was Ever Established in Accordance with Wisconsin Law.*

To support their counterclaims, Defendants provide a "defined term[]" for "Joint Venture Enterprise" – which they assert "means the joint venture business relationship among Kirk Grundahl, Suzanne Grundahl, and their affiliated entities Qualtim, Inc., DrJ Engineering, LLC, and Center for Building Innovation, LLC, on one side, and Daniel Holland and his affiliated entities Paragon Component Systems, LLC and Clearspan Components, Inc. on the other, together with their jointly controlled entity Inspired Pursuits, LLC, involving the development, application, testing, validation, and commercialization of engineering technologies and related services used in the structural building component industry, arising from the parties' course of conduct and written, oral, and implied-in-fact agreements beginning in approximately March 2009 and continuing through approximately May 2024." Doc. 178 at 25-26. Defendants then attempt to demonstrate the joint venture through "fact" allegations. *Id*. at 26-32, 38-45. As explained above, *supra*, Defendants have failed to even state a legal claim for a joint venture and that omission alone

38

warrants summary judgment in Paragon's favor. Nevertheless, even if a joint venture claim was articulated, the undisputed evidence demonstrates a joint venture was never established in accordance with Wisconsin law.

In Wisconsin, the party asserting the existence of a joint venture – i.e., Defendants/Counter-Plaintiffs– bears the burden of proving such a relationship existed. *Fail-Safe LLC*, 744 F. Supp. 2d at 861 (citing *Troy Co. v. Perry*, 68 Wis. 2d 170, 177 (1975)). A joint venture can only be established by showing: (1) the contribution of money or services by each of the parties; (2) joint proprietorship and mutual control over the subject matter of the venture; (3) an agreement to share profits; and (4) an express or implied contract establishing the relationship. *Id.* (citing *Ruppa v. American States Ins. Co.*, 91 Wis.2d 628, 645 (1979)). "The parties' [joint venture] agreement must also establish a relationship whereby each co-venturer is both a principal and an agent of the others." *Id*. (citing *Edlebeck v. Hooten*, 20 Wis.2d 83, 88, 121 N.W.2d 240, 243 (1963)) ("Each must agree expressly or impliedly to a community of interest as to the purpose of the undertaking and to stand in the relation of agent as well as principal to the other coadventurers with equal right of control of the means employed to carry out the common purpose.")).

"[I]n order to create a joint adventure it is not enough that the parties act in concert to achieve some economic objective." *Intercity Air Freight v. Lewensohn*., 99 Wis.2d 806, at *5, 301 N.W.2d 461 (table) (Wis. Ct. App. 1980) (unpublished); *Studio & Partners, s.r.v. v. KI*, 2008 WL 426496, at *14 (E.D. Wis. Feb. 14, 2008) ("[C]ollaboration on its own does not mean the parties have entered into a joint venture."). "The ultimate inquiry is whether the parties manifested by their conduct a desire to comingle their profits, control, and risks in achieving the objective." *Intercity Air Freight,* 99 Wis.2d 806, at *5.

Wisconsin similarly recognizes the existence of a joint enterprise, only where there is "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be

39

carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Servicios Especiales Al Comercio Exterior v. Johnson Controls, Inc.,* 791 F.Supp. 2d 626, 636 (E.D. Wis. 2011). Despite the slight difference in elements for a joint venture and joint enterprise, Wisconsin courts use the terms interchangeably. *See id.* ("joint venture and joint enterprise are fairly interchangeable.").[16]

Defendants cannot establish a cognizable joint venture or enterprise as a matter of Wisconsin law. ██████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████ *See e.g.*, Holland Decl., at ¶¶ 55, 56, 58, 62 and **Ex. 10** and **Ex. 15**. Absent a joint venture, Defendants have no basis to seek, and are not entitled to recover, the relief requested in their counterclaims.

     a.     There was No Agreement Regarding Sharing of Profits and Losses.

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████.

Steelman Decl., at **Ex. 10**, S. Grundahl Dep., 129-15-20. ████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

---

[16] *See also Edlebeck ,* 121 N.W.2d at 243 (noting joint venture and joint enterprise have been used interchangeably by the Supreme Court of Wisconsin and other courts); *cf.* 46 Am.Jur.2d *Joint Ventures* § 4 (basic difference is that a business relationship is necessary for joint venture, not for joint enterprise; where "joint enterprise" used to describe business undertaking, often used interchangeably with "joint venture").



████████████████████████; and **Ex. 11**, K. Grundahl Dep. (Day 1): 152:12-16 ███████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████ Steelman Decl., at **Ex. 10**, S. Grundahl Dep., 129:15-24 and **Ex. 11**,

K. Grundahl Dep. (Day 1), 152:2-16; 175:4-177:2; 239:20-244:24 and **Ex. 15** to K. Grundahl Dep.

(Day 1) (collective exhibit of ██████████████████████████████████████

██████████████████████████████████████ Steelman Decl., at **Ex. 11**, K.

Grundahl Dep. (Day 1), 244:11-24. Defendants further admit that, although Paragon acquired

intellectual property from Clearspan, "[t]he Paragon Truss Software as it exists today is not derived

from anything Clearspan owned or transferred." Doc. 178 at ¶¶ 31, 32; *see also* Holland Decl., at

¶ 13 and **Ex. 3** to Holland Decl. ████████████████████████████████████████

████████████████████████████████████████████████████████████████.

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████, *see*

Holland Decl., at ¶ 62 and **Ex. 15**; Steelman Decl., at **Ex. 1**, Holland Dep. (Day 1), 163:1-3, and

**Ex. 2**, Van Stelle Dep., 21:13-16, and **Ex. 10**, Suzi Grundahl Deposition Testimony ("S. Grundahl

Dep.") 27:9-22 ████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████, *see* Holland Decl., at ¶ 55, 56 and **Exs. 10, 11, and 12** to Holland Decl.; Steelman Decl., at **Ex. 1**, Holland Dep. (Day 1) 156:10-20; 157:8-158:13; 162:11-18 and **Ex. 2**, Van Stelle Dep. 123:13-25, and **Ex. 3**, Holland Dep. (Day 2) 306:12-308:24, and **Ex. 10**, S. Grundahl Dep., 75:13-14; 77:16-78:12. Indeed, the commercial arrangements here were straightforward and siloed: █████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████. Holland Decl., at ¶ 67. ███████████████

███████████████████████████████████████████████████████████

██████████████████████████ Steelman Decl., at **Ex. 10**, S. Grundahl Dep., 21:16-22:18; 125:14-126:4.

The record is completely devoid of any evidence, let alone material evidence, that ███████

███████████████████████████████████████████████████████████

█████████████████████████████████. The absence of such evidence on this critical element is fatal to Defendants' claims. *Compare Lewis v. Leiterman,* 4 Wis. 2d 592, 597, 91 N.W.2d 89, 91-92 (1958) (no joint venture; profit of certain alleged co-venturers was "quite independent of any profit or benefit, as well as any loss, accruing to [other alleged co-venturer]") *and Ruppa v. American States Ins. Co.,* 91 Wis. 2d 628, 284 N.W.2d 318 (1979) (claim of joint venture rejected where no participant received proceeds of the alleged venture) *with Reinig v. Nelson,* 199 Wis. 482, 484-85, 227 N.W. 14 (1929) (joint venture found where parties purchased and jointly owned real property for apparent purpose of sharing in net proceeds of sale). Because this element for a joint venture or enterprise under Wisconsin law is absent, Qualtim has not met its burden and Paragon is entitled to summary judgment.

42

b.        There Was No Mutual Control or Principal/Agent Relationship.

The undisputed facts are incompatible with any notion that the parties to the alleged joint venture or enterprise had "joint control and the right to control the operation," *Lewis,* 4 Wis. 2d at 596, 91 N.W.2d at 91, or otherwise "st[ood] in the relation of agent as well as principal to the other co-adventurers." *Edlebeck,* 121 N.W.2d at 243 (1963). The Seventh Circuit has held that there is no mutual control unless each party can "force the other" to enter into transactions or "compel the use of each other's employees or resources." *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 548 (7th Cir. 2005) (applying similar joint venture elements under Illinois law: "These parties could not exercise any control over each other's operations or policies whatsoever, and therefore we affirm the district court's grant of partial summary judgment on the joint-venture claims for lack of mutual control.").



. Steelman Decl., at **Ex. 10**, S. Grundahl Dep., at 106:6-109:15

. The undisputed evidence plainly establishes that Paragon, and Paragon alone, controlled, authored, and had access to the Paragon Truss Software source code. *Supra* at Section II.

. Steelman Decl., at **Ex. 11**, K. Grundahl Dep. (Day 1), 155:6-20.

████████████████████████████[17]██████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████ Steelman Decl., at **Ex. 7**, K. Grundahl Dep. (Day 2), 38:7-46:10 and **Ex. 16** to K. Grundahl Dep. (Day 2).

Such a description cannot be reconciled with the notion that Defendants now advance, i.e.,

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████. *See e.g.*, Doc. 178; Steelman Decl., at **Ex. 7**, K. Grundahl Dep. (Day 2), 38:7-46:10 and **Ex. 16** to K. Grundahl Dep. (Day 2).

This sort of arrangement, █████████████████████████████████████

███████████████████████████████████████, is a far cry from the sort of facts under which courts have found the requisite mutual control to support a joint venture or enterprise. *Compare Bulgrin v. Madison Gas & Elec. Co.,* 125 Wis. 2d 405, 373 N.W.2d 47 (1985) (parties had multiple agreements addressing ownership, operation and maintenance of a specific facility, established an operating committee responsible for operation and maintenance policies, and all parties contributed money and shared expenses); *Raasch v. Dulany,* 273 F. Supp. 1015 (E.D. Wis. 1967) (parties' express agreement specified: geographic limits of where products could be sold; required monthly reports, insurance, use of a specific agreement, acceptance of certain credit cards, and exclusivity; specified advertising and auto servicing requirements; and allowed for some control over rates charged).

In sum, a hallmark of any joint venture or joint enterprise is the equal right of all venturers to direct and control the enterprise and stand in the role of principal and agent to each other. There is simply no record evidence to support this element. Because Plaintiffs cannot establish the

---

[17] Defendants voluntarily produced this attorney-client communication. *See* Doc. 134 (Defendants' Response to Motion to Compel, stating that "Defendants agree to voluntarily produce the subject emails in advance of the scheduled hearing.").

existence of these critical elements, the alleged joint venture enterprise consequently fails as a matter of law.

        c.      <u>There was No Express or Implied Agreement for a Joint Venture.</u>

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████ Steelman Decl., at **Ex. 10**, S. Grundahl Dep., 124:23-125:12 and **Ex. 11**, K. Grundahl Dep. (Day 1), 140:25-145:11.  Defendants also cannot identify any express or implied contract establishing the relationship. *Fail-Safe LLC*, 744 F. Supp. 2d at 861.  In fact, █████

███████████████████████████████████████████████████

██████████████████████████████████ Steelman Decl., at **Ex. 18**, QUALTIM-1134 ██████████████████████████████

█████████████████████

        *i. Express Agreements*

███████████████████████████████████████████████████

██████████████████████████████████████ Steelman Decl., at **Ex. 8**, IP-LLC Dep., 69:3-70:1; 71:23-72:11; 75:6-18; 75:13-25; 77:1-3; 81:18-84:14; 93:1-12; 101:13-18; 207:5-17, and **Ex. 10**, S. Grundahl Dep., 156:17-158:24; 159:18-160:1, and **Ex. 11**, K. Grundahl Dep. (Day 1), 116:1-117:14; 121:6-122:5, and **Ex. 19**, QUALTIM-002060.  Under oath in both written discovery and deposition testimony, Defendants asserted this ██████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████ *Id*. at **Ex. 14**, 2026-03-18 Plaintiffs' Answers to Defendant Paragon's First Set of Interrogatories, Interrog. No. 3); *see also* (Doc. 178 at ¶¶ 16-17). ████████████████████████████

███████████████████████████

███████████████████████ "agreement" falls woefully short of constituting a valid, enforceable contract under Wisconsin law. *See Greenley v. Janesville Mills*, 204 F.2d 526 (7th Cir. 1953) (holding joint venture agreements are subject to the same contract construction principles as any other contract). In Wisconsin, "[a] contract must be definite and certain as to its basic terms and requirements to be enforceable." *Metro. Ventures, LLC v. GEA Assocs.*, 291 Wis. 2d 393, 408 (2006). "Certainty of contract terms and definiteness require mutual assent by way of a meeting of the minds." *Id*. at 409.

████████████████████████████████████████████████████

███████████████████████. Steelman Decl., at **Ex. 8**, IP-LLC Dep., 69:3-70:1; 71:23-72:11; 75:6-18; 75:13-25; 77:1-3; 81:18-84:14; 93:1-12; 101:13-18; 207:5-17, and **Ex. 10**, S. Grundahl Dep., 156:17-158:24; 159:18-160:1, and **Ex. 11**, K. Grundahl Dep. (Day 1), 116:1-117:14; 121:6-122:5, and **Ex. 19**, QUALTIM-002060). ████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████ *Id*. at **Ex. 10**, S. Grundahl Dep., 158: 21-24. ██████████████████████████████████

████████████████████████████████████████████████████

████████████

████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████ Steelman Decl., at **Ex. 10**, S. Grundahl Dep., at **Ex. 16** (DHE0004520). ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████. *Id*. at **Ex. 8**, IP-LLC Dep.,

at 82:19-83:7, 85:4-19, 123:23-25, 126:24-127:2, 128:19-23, 130:15-131:6, 132:7-23, 143:1-8,

173:13-174:6, 207:5-17, 208:2-209:24, 251:10-14; **Ex. 10**, S. Grundahl Dep., at 158:17-161:24.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ *Id*. at **Ex. 8**, IP-LLC Dep., at 82:19-83:7.

His self-serving vision ████████████████████████████████████ does not and

cannot bind Paragon to an alleged joint venture enterprise. *Cf. Skyrise Consr. Group, LLC v. Annex*

*Constr, LLC*, 956 F.3d 950, 956 (7th Cir.2020) ("Agreements to agree are not enforceable contracts

under Wisconsin law.") (citing *Dunlop v. Laitsch*, 16 Wis.2d 36, 113 N.W.2d 551, 554 (1962)).

Regardless, the terms of the purported joint venture are far too indefinite and uncertain to

be enforced. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████ Steelman Decl., at **Ex. 10**, S. Grundahl Dep., at **Ex. 16** (DHE0004520).

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ "agreement" is not a contract and is facially

unenforceable as a matter of law. *Vohs v. Donovan*, 322 Wis. 2d 721, 726 (2009) ("A contract is

not enforceable if an essential term is indefinite.")

47

Wisconsin federal courts have rejected similar attempts to unilaterally establish a joint venture. In *Fail-Safe, LLC*, the Eastern District of Wisconsin found one party's interpretation of a business relationship was not sufficient to "indicate that the parties actually had reached an agreement to jointly-develop a [product] where the two parties would be sharing the profits of such a venture or exercising joint control over each other in the project." 744 F. Supp. 2d at 861-62. The joint venture theory was premised on the Plaintiff's founder's interpretation of correspondence from Defendant, which merely "propose[d] that [Defendant] would like to 'work and develop concepts for [a product]' with [Plaintiff]," and did not "solidify any sort of relationship between the parties." *Id*. The "letter, at best, indicate[d] a general and non-specified interest on the part of [Defendant] to work with [Plaintiff] with regard to developing" certain technology. *Id*. There was no "other evidence that the parties actually agreed to engage in mutual control over a venture, share profits or proceeds of a project, or be principals and agents for each other…." as required for a joint venture in Wisconsin. *Id*. Similarly, here, Defendants' self-serving interpretation (albeit, an inaccurate one) of certain business relationships does not establish an agreement to engage in a joint venture.

### ii. *Implied Agreements*.

Defendants' alleged "implied" joint venture agreement fares no better. ███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████[18] ████████████

████████████████████████. Doc. 178; Steelman Decl., at **Ex. 14**, 2026-03-18 Plaintiffs' Answers to Defendant Paragon's First Set of Interrogatories, Interrog. No. 2. However, "collaboration on its own does not mean the parties have entered into a joint venture. One can

---

[18] Of course, Paragon did not exist until February of 2016 and thus, could not have entered into any agreement or joint venture arrangement with Plaintiffs prior to that time. Holland Decl. at ¶¶ 11-12.

contribute ideas to another with the expectation that the two are simply engaged in a buyer-seller relationship, not a joint venture." *Studio & Partners, s.r.v. v. KI*, No. 06-C-0628, 2008 WL 426496, at \*14 (E.D. Wis. Feb. 14, 2008). ███████████████████████████.



███████████████████████████████████████████████████

███████████████████████████████████████████ Holland Decl.,

at ¶ 67.  ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████. *Fail-Safe LLC*, 744 F. Supp. 2d at 861. Consequently, based on the record, only one conclusion can be reached under Wisconsin law – there was no joint venture relationship between the parties, and Defendants' counterclaims premised on the existence of a joint venture fail.

### 3. *Because the Paragon Truss Software is Not a Joint Work, Defendants are Not Entitled to an Accounting.*

The right to an accounting of profits under the Copyright Act rests on joint ownership of the copyrighted work. *Gaiman v. McFarlane*, 360 F.3d 644, 652-53 (7th Cir. 2004); *O'Connor v. Cindy Gerke & Associates, Inc.*, 300 F. Supp. 2d 759, 767 (W.D. Wisc. 2002). Because Defendants

cannot, as a matter of law, establish they are joint owners of the Paragon Truss Software, Count II of Defendants' counterclaim should likewise be dismissed. *Supra*, at Section II.

## **CONCLUSION**

For the reasons above, pursuant to Fed. R. Civ. P. 56, the Court should grant summary judgment in Paragon's favor on its declaratory judgment claims and Defendants' counterclaims premised upon the joint venture. Based on the undisputed evidence, the Court should find and declare (i) that Paragon is the sole and exclusive owner of all right, title, and interest in and to the Paragon Truss Software, including all copyright rights, trademark rights, patent rights, federal trade secret rights, Tennessee state trade secret rights, and all other property rights under federal or state law in the Paragon Truss Software; and (ii) that no Defendant owns any right, title, or interest in or to the Paragon Truss Software, including without limitation any copyright rights, trademark rights, patent rights, federal trade secret rights, or Tennessee state trade secret rights in the Paragon Truss Software.  Alternatively, the Court should dismiss Defendants' counterclaims as facially deficient under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for a joint venture under Wisconsin law.

Respectfully submitted this 22nd day of June, 2026.

/s/ James T. Williams
Tamar B. Kelber, SBN 1101802
Joshua S. Greenberg, SBN 1107959
GASS TUREK LLC
241 North Broadway, Suite 300
Milwaukee, WI 53202
Telephone: (414) 223-3300
kelber@gassturek.com
greenberg@gassturek.com

David S. Moreland, GA Bar No. 521998
Eileen Rumfelt, GA Bar No. 040608,
*appearing pro hac vice*
MILLER & MARTIN PLLC
1180 W. Peachtree Street NW, Suite 2100

50

Atlanta, Georgia 30309
Telephone: (404) 962-6100
david.moreland@millermartin.com
eileen.rumfelt@millermartin.com

James T. Williams, TN BPR 16341
Erin E. Steelman, TN BPR 38463
MILLER & MARTIN PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402-2289
Telephone: (423) 756-6600
James.Williams@millermartin.com
Erin.Steelman@millermartin.com

***Attorneys for Plaintiff Paragon Component
Systems, LLC***

## CERTIFICATE OF SERVICE

I certify that on June 22, 2026, a copy of the foregoing **PLAINTIFF PARAGON COMPONENT SYSTEMS, LLC'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** is being served on all counsel of record via email.


> _/s/ James T. Williams_
> James T. Williams
>
> _Counsel for Plaintiff Paragon Component Systems, LLC_