# Exhibit A

33 East Main Street Suite 500
Madison, WI 53703-3095

**Mailing Address:**
P.O. Box 2038
Madison, WI 53701-2038

**Phone:**
608.257.7181

**Fax:**
608.257.2508

www.murphydesmond.com

Scott G. Salemi
Direct Line 608.268.5646
Facsimile 608.257.2508
ssalemi@murphydesmond.com

MurphyDesmond S.C.
LAWYERS

22 August 2026

**VIA EMAIL ONLY**
James T. Williams, et al.
Volunteer Building Suite 1200
832 Georgia Avenue
Chattanooga, TN 37402
james.williams@millermartin.com

Re: *Paragon Component Systems, LLC v. Qualtim, Inc., et al.*
U.S. Dist. Court WDWI 3:25-cv-00170-wmc

Dear Counsel:

This confirms our conferral of Thursday, August 20, 2026. Below is our understanding of where each item stands, the action items and dates, and the matters on which we are at impasse and do not believe further conferral is required. Please let us know promptly if your understanding differs on any point.

**A. Matters on which we understand the parties are at impasse**

We do not believe further conferral is required on the following, and we intend to proceed accordingly.

1. Paragon's financial information designated AEO. Attorney Williams confirmed Paragon will maintain its designations. We note that Paragraph 8 of the Amended Protective Order does not create a blanket designation for financial information; it requires a showing that disclosure would create a substantial risk of serious harm that the Confidential tier would not prevent. When asked to articulate that harm, Paragon referred only to prior correspondence. We also note that Clearspan did not designate comparable material as AEO.

2. Document-by-document identification. In regard to Paragon's recent production of documents relative to its tortious interference claims, Paragon refuses to identify which documents are responsive to which requests. Paragon confusingly describes some documents as having been "generated" but when confronted Paragon claims they were not "generated for the litigation" and instead are business records produced as kept in the normal course of business; they cannot be both. Paragon refuses to otherwise identify the documents, including spreadsheets, claiming their contents is self-evident. This claim was immediately disproven by examination of Paragon-AEO-000018 which contains no headings, labels, tabs, or other identification. At the conferral Paragon casually remarked

this particular spreadsheet was related to the Early Adaptors Program; however, there is no reference to such anywhere on that document. Paragon maintains the position that if Qualtim wants to know what these documents are, Qualtim needs to conduct discovery, including depositions to discovery what these documents are. Paragon's refusal to identify these documents is so unreasonable and uncooperative as to be sanctionable.

**B. Action items and dates**

3. Commit-log black boxes. Attorney Moreland agreed to investigate. We requested a response by Tuesday, August 25. Given the September 15 dispositive motion deadline we cannot leave this open-ended, and as set out below the explanation is a precondition to the page-level process discussed.
4. Commit log—page-level re-designation. Attorney Moreland raised the possibility of parsing out specific portions rather than treating the log as a single unit, and said he would consider it. As a starting point, we identified the entries discussed at approximately paragraph 96 of the expert report. Once you confirm that Paragon is willing to consider page-level re-designation, including those in the expert report, we will provide the pages for redesignation. We would prefer not to expend the effort if the answer is categorically "no." Please note that this process cannot operate on pages bearing the unexplained black boxes. We cannot identify a page as one we need if we cannot read it. We therefore ask that item 3 be resolved first.
5. Deposition testimony concerning source code. We will send you the specific portions we ask be re-designated, consistent with the re-designations already made to the expert materials. Attorney Moreland confirmed this would be helpful. We will get that to you shortly.
6. Financial AEO testimony. Attorney Williams indicated he would consider specific passages if directed to them. Our position is that none of this testimony warrants AEO treatment. If Paragon intends to re-designate any of it, please advise by Tuesday, August 25; otherwise we will treat this as within item 1 above.
7. Privilege logs. Attorney Williams suggested that the more workable line is the nature of the communication rather than a date cutoff—for example, excluding attorney-client communications with no third party copied—in light of the dispute posture that began with the March 2024 memorandum. We are willing to consider that approach. Please send proposed language and a proposed exchange date. But to be clear, all common interest/joint defense communications must be logged.
8. Interrogatory responses. Attorney Rumfelt confirmed Paragon's responses will be served Monday, August 24. We stressed that document production must be made that day as well.

**C. Damages material**

We cannot agree to rolling production of the material underlying Paragon's damages claim. The dispositive motion deadline is September 15. Damages are not a peripheral element of a tortious interference claim, and we have been asking for this material for some time.

It bears reminding that Paragon has asserted the same damages figure since December 10, 2024. Its proposed First Supplemental Complaint, filed that date in the Eastern District of Tennessee, alleged that the conduct at issue "caused Paragon to lose at least $1,000,000 in revenue" and that Paragon "has been damaged in the amount of at least $1,000,000 in lost revenue and in other ways." Case No. 1:24-cv-00246, Doc. 53-1 ¶¶ 16, 32.

Paragon re-alleged the identical figure, verbatim, in its First Supplemental Complaint in this action. Doc. 196 ¶¶ 16, 32 (June 23, 2026). A pleaded floor of that magnitude presupposes some computation. Either Paragon had evidentiary support for the figure when it was first asserted twenty months ago, in which case that support should have been produced long ago, or it did not, which presents a different problem.

If the source material is not produced promptly, we will have no practical alternative to raising it with the Court, and we would prefer not.

## D. The customer and recipient lists

We proposed that once Paragon identifies the business relationships it claims were interfered with, both sides can then re-designate the specifically identified individuals and companies so that each client may see the names that actually are at issue.

Attorney Rumfelt indicated Paragon was not prepared to agree. We will renew the proposal once Monday's responses are in hand, and we ask that Paragon consider it seriously at that point.

We also want to supplement the record on the basis for Qualtim's designation of the recipient list, because our answer on the call was not complete. The reciprocity point—that Paragon has repeatedly represented that the parties are competitors and designates its own customer information accordingly—is accurate, but it is not the whole of it.

The list comprises approximately 2,600 individual names together with addresses and contact information. Mr. Holland is the principal of a company that he characterizes as a competitor of Qualtim, selling truss design engineering software into the same truss design engineering market that Qualtim provides both engineering/testing services. The identity of the recipients is one thing; their contact information is another, and it is not probative of any element of Paragon's claim.

It is, however, precisely the component that carries independent competitive value. Courts in this Circuit have restricted customer-list material of this kind to counsel and experts for that reason.

It further should be pointed out that Paragon has had the list, designated AEO, since August 3. Nothing has precluded Paragon's counsel or its retained experts (excluding Mr. Holland) from comparing that list against the identities of the customers Paragon claims were interfered with. Paragon has claimed knowledge of those relationships since December 10, 2024, when it first sought leave to plead this claim in the Eastern District of Tennessee. Paragon does not need Qualtim's recipient list to identify prospects Paragon itself approached.

The proposal described above is the only one presently on the table, and we are not prepared to go further in advance of Paragon's interrogatory responses. Once those responses identify the relationships Paragon claims were interfered with, we will consider what further accommodation

is appropriate as to the specific names at issue, and we expect Paragon to do the same. We reserve all rights in the meantime.

**E. The Native Excel Workbooks Designated AEO**

We want to be precise about our position because we do not believe the characterization in your August 19 email is accurate.

9. The testimony. Mr. Grundahl did not testify that the native Excel workbooks were provided to Paragon. He testified that information was shared over the course of the consulting relationship. On the specific question of whether that information was incorporated into Paragon's software, his testimony was expressly qualified: "I suspect even today, although you guys won't let me see the source code, so I can't tell—and I should be able to do that so I can actually provide accurate information here." K. Grundahl Tr. at 150:1-21 (June 3, 2026). In the same examination he testified that the spreadsheets are "trade secret information" and "intellectual property." *Id.* at 151:8-25. We do not think that testimony bears the weight your email places on it.

10. Paragon's production. If the spreadsheets had been provided to Paragon as your email asserts, Paragon would already possess them and would have been obligated to produce them. Paragon has produced none of them. We have reviewed Paragon's production and have found no evidence that these files were shared.

11. What was in fact transmitted. Any documents or information that Qualtim sent to Paragon were static outputs rather than the native workbooks. One example is directly relevant here. QUALTIM-065781 is Joe Michels' email of August 22, 2017, addressed to jeffreyc@paragontruss.com and johnh@paragontruss.com. It is designated Confidential, not AEO and attached the output related to one particular joint. Paragon has therefore been free to review that document with Mr. Holland since the date of production. We note that Paragon did not produce this document, notwithstanding its evident relevance and Paragon's possession of it, and we ask that you look into that.

12. The redaction proposals. I suggested one option may be that Paragon identify the portions of the spreadsheets it wishes to review with Mr. Holland, that we review those portions and redact what is proprietary, and that the redacted material then be shared with him, the same approach used for the expert materials in connection with the source code. It should be pointed out that Mr. Grundahl was not in agreement with this approach. If, as Paragon has stated, the code is based upon public domain information only, then there is no real need for Qualtim to redesignate any of its proprietary workbooks so that John Holland can review them, particularly when counsel and its retained expert can review them.

    Attorney Williams's counter-proposal, that Qualtim instead review all twenty-seven workbooks and redact whatever was not communicated to Paragon, is not workable. It asks Qualtim to establish a negative across the entire body of files, and it asks the wrong party to do it. Paragon holds Mr. Cox's files, its own email, and its Slack history, and is far better positioned to identify any specific material it believes it received. Our proposal remains open for discussion.

13. Nor have you explained why the request extends to all twenty-seven workbooks. In its summary judgment papers in the '75 action, Paragon represented to the Court that QUALTIM-AEO-005037 and -001043 "are identical documents with different Bates numbers," and made the same representation as to QUALTIM-AEO-005583, -005455, -005518, -005648, -005714, and -005780. If that is Paragon's position, a demand that Qualtim review and redact twenty-seven workbooks would impose burden without apparent purpose, particularly in light of the fact that Paragon purports to provide public domain truss design software.

    Please explain the scope of the request in light of the representations made to the Court, and identify which workbooks Paragon contends are distinct.

14. We also note that Paragon's summary judgment brief states at page 49 that "Plaintiffs do not cite evidence that these spreadsheets were ever provided to Paragon," and at page 30 n.5 that Paragon "does not concede that Plaintiffs' engineering information is embedded in the software." Those positions are difficult to reconcile with the premise of your de-designation demand. We raise it now in the hope that Paragon will reconsider the demand rather than requiring the issue to be briefed.

We remain willing to confer further on the items outlined above, but we need your position as to certain items we discussed. Once we receive your discovery responses and production of documents on Monday, August 24, we will be in a better place to fully address the outstanding items.

Sincerely,

Scott G. Salemi

cc: See corresponding email.
4937-6028-9738 v. 1